Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to Douglas J. Pick, as Assignee
for the Benefit of Creditors of the Alleged Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

Hearing Date: **To Be Determined**
Time: **To Be Determined**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:

SCHIFF FINE ART, LLC,

               Alleged Debtor.

---------------------------------------------------------x

Chapter 7
(Involuntary) (Contested)

Case No. 24-10039 (DSJ)

## ALLEGED DEBTOR'S MOTION FOR ENTRY OF AN ORDER DISMISSING THIS INVOLUNTARY CASE AND AWARDING DAMAGES, INCLUDING ATTORNEYS' FEES

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

SUMMARY OF ARGUMENT ............................................................... 1

BACKGROUND ................................................................................... 6

    A. The Alleged Debtor and its Principal, Lisa Schiff ........................... 6

    B.  Execution of the Assignment and Administration of the Assignment Proceeding ..... 9

    C.  The Involuntary Petition ........................................................ 11

JURISDICTION, VENUE AND STANDING ........................................ 12

ARGUMENT ...................................................................................... 13

    POINT I - THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE REQUIREMENTS OF § 303(B) OF THE BANKRUPTCY CODE FOR ELIGIBILITY ARE NOT SATISFIED AS BONA FIDE DISPUTES EXIST WITH RESPECT TO THE PETITIONING CREDITORS' CLAIMS ............................................................ 14

        A.   Standard for Reviewing a Motion to Dismiss Under § 303(b) .................. .14

        B.   Standard for Determining Existence of a Bona Fide Dispute as to Liability or Amount ............................................................ 15

        C.  The Petitioning Creditors' Claims are Subject to Bona Fide Disputes ............ 18

            a.  Candace Barasch ....................................................... 19

            b.  Richard Grossman .................................................... 21

    POINT II – ABSTENTION UNDER § 305 OF THE BANKRUPTY CODE IS WARRANTED ............................................................ 22

        A.  Application of the Seventh Factor ................................................ 22

        B.  Application of the First and Second Factors ...................................... 24

        C.  Application of the Third, Fourth and Fifth Factors .................................. 25

POINT III – THE PETITIONING CREDITORS HAVE CONSENTED TO THE JURISDICTION OF THE STATE SUPREME COURT ......................... 26

POINT IV – THE INVOLUNTARY PETITION WAS FILED IN BAD FAITH AND, ACCORDINGLY, AN AWARD OF DAMAGES IS WARRANTED ............................................................... 27

POINT V – THE PETITIONING CREDITORS SHOULD BE DIRECTED TO POST A BOND ............................................................. 36

CONCLUSION ...................................................................................... 37

## INTRODUCTION

Douglas J. Pick, as Assignee (the "Assignee") for the Benefit of Creditors of Schiff Fine Art LLC, the alleged debtor (the "Alleged Debtor") in the this involuntary Chapter 7 case (the "Involuntary Case"), pursuant to a Deed of Assignment executed and recorded in the Office of the Clerk of New York County on May 15, 2023 (the "Assignment")[1] and Article 2 of the New York Debtor and Creditor Law (the "Debtor and Creditor Law"), hereby moves this Court for entry of an Order, pursuant to §§ 303, 305 and 707(a) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"): (a) dismissing the Involuntary Case and the Involuntary Petition filed herein (the "Involuntary Petition")[2] by petitioning creditors Candace Barasch, Adam Sheffer, Lauren Schor and Richard Grossman (collectively, the "Petitioning Creditors"); (b) awarding damages, including attorneys' fees, as against the Petitioning Creditors, and directing the Petitioning Creditors to post an undertaking to secure payment of such damages as may be awarded by this Court; and (c) granting such other and further relief as may be just and proper (the "Motion").

## SUMMARY OF ARGUMENT

For the reasons more fully set forth below, it is respectfully submitted that the relief sought by way the Motion should be granted, upon any one or all of the following grounds:

*First*, contrary to the allegations in the Involuntary Petition, the Petitioning Creditors were not on the date of their filing of the Involuntary Petition and are not presently eligible under § 303(b) of the Bankruptcy Code to file the Involuntary Petition because the claims

---

[1] A copy of the Assignment is attached to the accompanying Declaration in Support, executed by Douglas J. Pick on January 16, 2024 ("Pick Decl."), as *Exh. A*.

[2] A copy of the Involuntary Petition is attached to the Pick Decl. as *Exh. B*.

asserted by the Petitioning Creditors therein against the Alleged Debtor are subject to bona fide dispute. Thus, the requirements of § 303(b) of the Bankruptcy Code are not satisfied with respect to the Involuntary Petition warranting dismissal of the Involuntary Case.

*Second*, abstention under § 305 of the Bankruptcy Code is appropriate with respect to the Involuntary Case since the interests of creditors and the Alleged Debtor would be better served by dismissal of the action. In this respect, the filing of the Assignment on May 15, 2023 commenced a proceeding pursuant to Article 2 of the Debtor and Creditor Law which is now pending before the Supreme Court of the State of New York, County of New York (the "State Supreme Court"), entitled *In the Matter of the General Assignment for the Benefit of Creditors of Schiff Fine Arts, LLC, Assignor -to- Douglas J. Pick, Assignee (Sup. Ct., N.Y. Cty.* - Index No. 5100009/2023) (the "Assignment Proceeding").[3] The Assignee has, to date, been economically and efficiently administering the assets of the estate within the context of the Assignment Proceeding and under the supervision of the State Supreme Court without the need for federal proceedings to reach any alternative solution. Thus, the Involuntary Petition should be dismissed so as to permit the Assignment Proceeding to continue.

*Third*, the Petitioning Creditors have consented to the jurisdiction of the State Supreme Court, having each filed a proof of claim in the Assignment Proceeding[4] thereby triggering the State Supreme Court's authority to allow or disallow their claims through the claims administration process, including the power to inquire into the validity of the alleged debts or

---

[3] A copy of the New York State Courts Electronic Filing ("NYSCEF") case docket with respect to the Assignment Proceeding as of the date hereof is attached to the Pick Decl. as *Exh. C*. The Court should note that, although it was commenced on May 15, 2023, the Assignment Proceeding was not converted to an "e-file case" by the State Supreme Court until July 5, 2023. There were multiple motions and other court filings in the Assignment Proceeding prior to July 5, 2023 which are not reflected on the NYSCEF docket report.

[4] Copies of the Petitioning Creditors' proofs of claim filed in the Assignment Proceeding are attached to the Pick Decl. as *Exhs. D, E* and *F*.

obligations on which a demand or a claim is made. *See* § 15 of the Debtor and Creditor Law. Notwithstanding, by way of the Involuntary Petition, the Petitioning Creditors are asserting the very same claims.

*Fourth,* the Petitioning Creditors filed the Involuntary Petition, in bad faith, more than eight (8) months after the Assignment Proceeding was commenced.   Throughout the Assignment Proceeding, the Petitioning Creditors have actively and continuously participated with the assistance of their counsel, Mazzola Lindstrom LLP.[5]   Specifically, the Involuntary Petition was filed in an improper attempt by the Petitioning Creditors to "forum shop" the administration of the Alleged Debtor's estate, which is being conducted by the Assignee within the context of the Assignment Proceeding with respect to the claims and interests asserted by the Petitioning Creditors and all other alleged creditors, away from the State Supreme Court and the Honorable Shahabuddeen A. Ally to a new court/judge and to avoid a scheduled evidentiary hearing set to be heard on February 8, 2024.

*Fifth,* should it dismiss the Involuntary Case, and regardless of whether or not it finds that the Involuntary Petition was filed bad faith, this Court should grant judgment pursuant to § 303(i) of the Bankruptcy Code against the Petitioning Creditors: (a) for reasonable attorney's fees and costs, and (b) should bad faith be found, for compensatory and/or punitive damages.

*Additionally,* the Assignee wishes to highlight and stress from the start that the pending Assignment Proceeding adequately protects the interests of all creditors, including the Petitioning Creditors.  Upon the execution of the Assignment, title to all of the property of the Alleged Debtor was vested in the Assignee to be held by him in trust for the benefit of all

---

[5] Notably, since it was filed more than 120 days after the date of the filing of the Assignment, the Petitioning Creditors cannot avail themselves of the provisions of § 303(h)(2) of the Bankruptcy Code to support the entry of an Order for Relief herein.

creditors.   *See In re Jamaica Concrete Corp.*, 177 Misc. 866, 868, 32 N.Y.S. 2d 41 (N.Y. Sup. Ct. 1941).   An "assignment is a voluntary transfer by the debtor of all his property, to a trustee of his own selection, for administration, liquidation and equitable distribution among his creditors."   *Century Factors, as Assignee for First Choice Fabrics & Just in Material v. Everything New, Inc.*, 122 Misc. 2d 89, 468 N.Y.S. 2d 987 (N.Y. City Civ. Ct. 1983).   The Petitioning Creditors cannot seriously allege that the Assignment Proceeding is insufficient to protect their interests or that it is less favorable to them than a federal bankruptcy proceeding. In fact, the most significant difference between an Assignment for the Benefit of Creditors and a federal bankruptcy proceeding is that a discharge of the assignor's debts is not available in an Assignment for the Benefit of Creditors.   *Century Factors, as Assignee for First Choice Fabrics & Just in Material v. Everything New, Inc.*, 122 Misc. 2d 89, 468 N.Y.S. 2d 987 (N.Y. City Civ. Ct. 1983).

The Assignee has essentially the same duties and responsibilities and performs the same tasks as a trustee in bankruptcy.   In this respect, the Assignee had been (until the filing of the Involuntary Petition) actively marshaling the former assets of the Alleged Debtor (which was engaged in the business of advising and assisting clients in the purchase and sale of fine art)  in an effort to maximize the eventual distribution to be made to creditors including, but not limited to, having retained or otherwise engaged the Winston Art Group as the Assignee's Art Advisor pursuant to Court Order dated June 1, 2023[6], the Eisner Advisory Group LLC as his financial

---

[6] In her Memorandum of Law in Opposition to Assignee's Order to Show Cause to Direct Turnover of Funds filed in the Assignment proceeding on November 14, 2023 (*see* Pick Decl., *Exh. N*), petitioning creditor Candace Barasch addressed Winston Art Group as follows:

> Winston Art Group is well-known as a reputable appraiser, and is hired or used by many in the relatively small art world.  It appears that they are also serving as the Assignee's "muscle" in this ABC proceeding.  We understand that while Ms. Schiff and SFA failed to transmit full payments for artworks purchased by other SFA clients, the Assignee and Winston Art Group have not been pursuing funds belonging to those clients with the same aggressiveness shown toward Gladstone

advisor (NYSCEF No. 1, 2023; Index No. 510009/2023) and Phillips Auctioneers LLC as auctioneer (NYSCEF No. 224; Index No. 510009/2023) to conduct a public auction sale of certain of the Alleged Debtor's art inventory which is expected to generate over one million dollars for the Alleged Debtor's estate in the Assignment Proceeding. The Assignee has also commenced an action against the former principal of the Alleged Debtor, Lisa Schiff, to recover art inventory and other property that the Assignee believes constitutes property of the Alleged Debtor's estate (NYSCEF No. 1; Index No. 655672)[7] and has separately been pursuing negotiations for the private sale of additional art inventory (subject to higher and better bids) for multiple hundreds of thousands of dollars (which inventory would achieve less value if subjected to a public auction sale). The Assignee has also identified and has pursued marshalling missing inventory of the Alleged Debtor and most recently had sought to retain special counsel to aid in possibly prosecuting a substantial claim against Ms. Schiff on account of the Assignee having discovered that not less than approximately $6.0 million was transferred from the Alleged Debtor to her since 2019 and to investigate other possible improper monetary and inventory transfers made to and/or in the name of her child. The Assignee has also posted a provisional bond, advertised for creditors to submit notice of claims as well as has performed other substantial tasks in relentlessly attempting to find and collect on all assets of the Alleged Debtor. A distribution in the Assignment Proceeding would very likely be better than any

---

Gallery and Thaddeus Ropac Gallery on account of funds paid for Ms. Barasch's purchases of the Mutu sculpture and the Cory Arcangel *TOPLINE* installation. Claimant is unaware of the sources of the other funds that the Assignee seeks by the current application, but the amounts listed in the Assignee's affidavit are much less than those paid by Ms. Barasch. (NYSCEF No. 108, p.2).

[7] On January 4, 2024, and, upon information and belief, due largely to the Assignee's filings and investigations regarding her affairs, Ms. Schiff filed a personal voluntary petition for relief under Chapter 7 of the Bankruptcy Code which is now pending under Case No. 24-10010 (DSJ). (*See* Pick Decl., *Exh. G*).

distribution that the Petitioning Creditors would receive if the Alleged Debtor were to be liquidated pursuant to Chapter 7 of the Bankruptcy Code.

The Assignee submits that in evaluating the best interests of the creditors and the Alleged Debtor, efficiency and economy of administration are primary considerations. *In re Michael Starbuck*, 1 B.R. 134, 135 (Bankr. S.D.N.Y. 1981). Predictably, it will be more costly and time consuming for the Petitioning Creditors and to the Alleged Debtor if this Court were to exercise its jurisdiction in light of the fact that there is an active Assignment Proceeding pending. Under § 15 of the Debtor and Creditor law, the Court in which an Assignment for the Benefit of Creditors is brought has broad powers which enable the court to protect the interests of the creditors. *See* N.Y. DCL §15 (McKinney's 2000), *Florence Trading Corporation v. Rosenberg*, 128 F. 2d 557, 559 (2d Cir. 1942). The Petitioning Creditors have failed to advance and will be unable to advance any reason why the State Supreme Court's supervision of the Assignment Proceeding would be prejudicial to their interests. The purpose of an assignment for the benefit of creditors is the economic, efficient and expeditious administration of the assignor's estate. The Petitioning Creditors cannot show any reason why the Federal Bankruptcy Court should be substituted for the State Supreme Court. A federal bankruptcy proceeding commenced at this point would render the Assignee's efforts, as well as the corresponding costs incurred to date to the Estate, an unnecessary waste of time and money. The Assignment process has been efficient and economical, the Petitioning Creditors set forth no reasons why the Debtor's Estate should not continue to be administered in this fashion.

## BACKGROUND

### A.    The Alleged Debtor and its Principal, Lisa Schiff

The Alleged Debtor was engaged in the business of advising and assisting clients in the purchase and sale of fine art. Its principal place of business was located at 45 White Street,

6

New York, New York 10003.  The Alleged Debtor's sole member is Lisa Schiff, a well-known and influential art advisor to individuals, corporations, foundations and/or institutions dealing with contemporary and modern art. Apparently Ms. Schiff's world of influence began to unravel in April-May, 2023.

According to a Complaint filed with the State Supreme Court in an action entitled *Candace Carmel Barasch, Michael A. Barasch and Brady A. Carmel Living Trust v. Lisa Schiff, Schiff Fine Art LLC, SFA Advisory LLC and Does 1-10*, Index No. 652380/2023, dated May 17, 2023 (two days after the execution of the Assignment) (*see* NYSCEF No. 1; Index No. 652380/2023) (*see* Pick Decl., *Exh. H*):

> 6. . . . on May 8, 2023, Schiff confessed to Candace that she did not pay for many artworks that Plaintiffs believed they had purchased through Defendants, and for which Plaintiffs had submitted payment in full to Schiff Fine Art, per Schiff's requests and SFA Advisory's invoices.  The most recent of these payments was a $190,531.25 wire that Schiff requested five days earlier from the Trust to Schiff Fine Art on or about May 3, 2023.  When Candace asked Schiff on May 8 about those funds plus $150,000 that Candace wired on April 7, 2023 at Schiff's request to pay for Plaintiffs' artwork purchases, *Schiff responded that she "did not know"* (*emphasis added*).

> 7.   Since the Ghenie case was filed, Candace has received numerous text messages, phone calls and emails from galleries regarding works that Schiff purported to purchase for Plaintiffs but which were never paid for, or in a few cases, were not fully paid for.  Based on emails and communications received since May 8, Plaintiffs are informed and believe that their wires that were supposed to pay galleries for many artworks, were used by Defendants to cover art purchases by other clients and to fund Schiff's lavish lifestyle.   *Plaintiffs currently estimate that Defendants embezzled nearly $3 million, . . .* (*emphasis added*)

> 8.   Schiff's civil attorney (referring to Mr. Cahill) has indicated that Schiff has been having '*financial problems for years*" (*emphasis added*).

> \*\*\*

> 34.   *On the morning of Monday, May 8, 2023, Schiff (who Candace has spoken with every day, multiple times a day, for*

> *many years) called Candace and admitted that monies which
> Plaintiffs had wired to Defendants for the purchase of artworks
> was gone*; that Defendants had dug themselves into a large
> financial hole that they could not get out of; *that this had been
> going on for many years*; and that Schiff had considered filing for
> bankruptcy prior to the start of the COVID-19 pandemic, but did
> not do so because she was afraid of a criminal investigation.
> Schiff explained that she had intended to map out a plan to get
> Defendants out of this financial hole during her stay in a
> rehabilitation center in San Francisco, that she went to in January
> 2020 to treat an addiction.  (She also mentioned that rehab cost
> over $100,000). (*Emphasis added*).

According to a separate Complaint filed with the State Supreme Court in an action

entitled *Candace Barasch and Richard Grossman v. Lisa Schiff, Schiff Fine Art LLC, SFA

Advisory LLC and Does 1-10*, Index No. 652287/2023, dated May 11, 2023 (four days prior to

the execution of the Assignment) (*see* NYSCEF No. 1; Index No. 652287/2023) (*see* Pick Decl.,

*Exh. I*)[8]:

> 5.  When Grossman texted Schiff on Friday, May 5, 2023, about
> the payment due on Monday, May 8, 2023 – which Schiff knew
> was needed for assisted living arrangements for Grossman's
> hospitalized in-laws – Schiff responded, "working on it."  On
> Sunday May 7, 2023, she emailed Grossman's spouse
> recommending other works of art being offered for sale.  But on
> Monday, May 8, 2023, when Grossman's spouse met with Schiff
> in persona and asked about the payments due on the Ghenie
> painting, Schiff told him she did not have the money owed to
> Plaintiffs, and to call her attorney – and then walked away from
> him.   Subsequently  Schiff  texted  Grossman's  spouse,
> acknowledging her wrongdoing:
>
>> Did you call him
>> I am sorry and have every intention to make things
>> right
>> It's just complicated
>> I know you will never speak to me again but I will
>> try to make it right regardless

---

[8] Plaintiffs subsequently dismissed "SFA Advisory LLC" from the action. (*See* NYSCEF No. 56; Index No.
652380/2023).

6.. Subsequent communications with Schiff's civil attorney indicated that Schiff cannot pay the funds owed to Plaintiffs on the sale of the Ghenie painting, and that this is actually just the tip of the iceberg. Plaintiffs are now the victims of the latest art swindler, for which they are forced to seek redress from the Court.

According to her counsel, Ms. Schiff "self-reported" the allegations of financial misdeeds to the New York County District Attorney's Office (see NYSCEF No. 49, p. 8; Index No. 652380/2023). An investigation has also been commenced by the United States Attorney's Office and Ms. Schiff is subject to a Federal Grand Jury subpoena.

## B. Execution of the Assignment and Administration of the Assignment Proceeding

On May 15, 2023, the Alleged Debtor executed the Assignment, which was filed with the State Supreme Court that same day, appointing Assignee to administer the assets of the Alleged Debtor for the benefit of its creditors under Article 2 of the New York Debtor and Creditor Law. (*See* Pick Decl., *Exh. A*). The Assignee's administration of the Assignment Proceeding is detailed at length in his Assignee's First Interim Report filed in the Assignment Proceeding on November 28, 2023. (*See* Pick Decl., *Exh. J*). Rather than repeat such matters, the Assignee hereby incorporates his Assignee's First Interim Report herein by reference. The Assignee has made additional efforts to marshal the assets of the estate and otherwise administer the case since the filing of the First Interim Report, as more particularly reflected on the NYSCEF case docket with respect to the Assignment Proceeding. (*See* Pick Decl., *Exh. C*).

Briefly, and as it pertains to the Motion (and in addition to the above-referenced estate administration efforts discussed above), immediately following the execution of the Assignment, the Assignee began preparing a list of creditors from the books and records of the Alleged Debtor obtained by the Assignee, the Alleged Debtor's mail which the Assignee had

9

arranged to be forwarded to his office and calls that the Assignee was receiving from creditors. The Assignee subsequently sought and obtained an Order dated May 22, 2023, authorizing the Assignee to advertise for creditors to file their claims against the Alleged Debtor's estate and the Assignee's Interim Bond was set at $100,000. In accordance therewith, a Notice to File Claims on or before July 31, 2023 was: (a) served by first class mail (along with a Proof of Claim form for use in the Assignment Proceeding case) on all known (at that time) or potential creditors of the Alleged Debtor on May 24, 2023; and (b) published in: (1) the *New York Post* on June 10, 2023; and (2) the *Wall Street Journal* on June 14, 2023. The Assignee also filed a conforming Interim Bond which was approved by Order dated June 21, 2023 (Motion Seq. No. 3).[9] For the purposes of maximizing creditor participation in the estate, the Assignee also sent a letter advising of the filing of the Assignment, along with a Proof of Claim form, to each creditor/potential creditor from whom an invoice, statement, demand, payment notice, etc. addressed to the Alleged Debtor forwarded to the Assignee's office by the United States Postal Service (whether received prior to or after July 31, 2023 who was not previously served with the Notice to File Claims by mail on May 24, 2023. Among the completed proofs of claim received by the Assignee were the three (3) proofs of claim submitted by the respective Petitioning Creditors. (*See* Pick Decl., *Exhs. D, E* and *F*).

In the interim, and again as more fully discussed in his First Interim Report (Pick Decl., *Exh. J*), the Assignee has continued his efforts to marshal the Alleged Debtor's assets. The Assignee currently has in excess of $218,000 on deposit (net of expenses). However, as a result of the filing of the Involuntary Petition, the Assignee has had to cease such efforts, as well as all

---

[9] On August 11, 2023, the Assignee filed an *ex parte* application seeking entry of an Order: (a) authorizing the Assignee to file schedules containing an accounting of all of the assets and liabilities of the Alleged Debtor and an accounting of all of the general unsecured, priority and/or secured creditors of the Alleged Debtor with their last known place of business or residence per the Alleged Debtor's books and records made available to the Assignee;

other efforts to administer the Alleged Debtor's estate in the Assignment Proceeding. As more fully discussed below, it would appear that this was the sole intended purpose of the filing of the Involuntary Petition.

### C.   The Involuntary Petition

On January 10, 2024 (the "Filing Date"), the Petitioning Creditors filed the Involuntary Petition against the Alleged Debtor.  The Assignee received a copy of a Summons to Debtor in Involuntary Case, along with a copy of the Involuntary Petition, via e-mail on the same day. The Involuntary Petition wrongly designates the Alleged Debtor's address as 249 ½ East 13th Street, New York, New York which is actually the apartment in which Lisa Schiff, the sole member of the Alleged Debtor, resides and further wrongly alleges that the Alleged Debtor's assets are located at the offices of Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York.  The former business premises of the Alleged Debtor located at 45 White Street, New York, New York  was previously surrendered by the Assignee (after the Assignee had arranged for the removal of all artwork inventory, books and records from the premises) pursuant to an Order of the State Supreme Court.  (NYSCEF No. 199; Index No. 510009/2023)

The Petitioning Creditors signed the Involuntary Petition thereby declaring, under penalty of perjury, that all the information contained therein is true and correct.  The Involuntary Petition was also signed by Wendy Lindstrom, Esq. of Mazzola Lindstrom LLP, attorneys for each of Petitioning Creditors.  The Mazzola Lindstrom LLP firm has been an active participant throughout the Assignment Proceedings and has filed four (4) proofs of claim including those discussed above on behalf of the three (3) Petitioning Creditors.  (*See* Pick Decl., *Exhs. D, E* and *F*).

---

and (b) fixing the amount of the Assignee's Permanent Bond at $2,000,000.  Said Order has not been entered as of the date hereof.

The Involuntary Petition contains the allegation that the Petitioning Creditors are eligible to file the Involuntary Petition (pursuant to 11 U.S.C. § 303(b)), which (as hereinafter discussed) is materially false, though declared to be true under the penalty of perjury. The claims in relation to the Alleged Debtor are actually subject to a bona fide dispute and have been asserted (against both Lisa Schiff and the Alleged Debtor together) as *estimated* by two of the three Petitioning Creditors and/or classified as being, "in part" or "wholly" secured. The Involuntary Petition further alleges that the nature of all three (3) Petitioning Creditors' claims is "stolen money/artwork." No supporting documents to the designated amounts alleged to be owed to each of the Petitioning Creditors were attached to the Involuntary Petition. Notwithstanding, Ms. Barasch and Mr. Grossman filed the two (2) actions discussed above in the State Supreme Court (Index Nos. 652287/2023 and 652380/2023) which discuss their estimated claims at greater length and which are more particularly discussed below.

## JURISDICTION, VENUE AND STANDING

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, in as much as the Southern District of New York is a proper venue.

The Assignee has standing to respond to the Involuntary Petition. *See* Section 14 of the Debtor and Creditor Law; *see also Century Factors, as Assignee for First Choice Fabrics & Just In Material v. Everything New, Inc.*, 122 Misc.2d 89, 468 N.Y.S.2d 987 (N.Y. City Civ. Ct. 1983), *citing In matter of Lewis*, 81 N.Y. 421; *cf. Cherno v. Bank of Babylon*, 54 Misc.2d 277, aff'd 29 A.D.2d 767. The Assignment also expressly provides as follows:

> AND, in furtherance of the premises, the Assignor does hereby make, constitute and appoint the Assignee its true and lawful

attorney, irrevocable, with full power and authority to do all acts and things which may be necessary in the premises to the full execution of the trust hereby created . . .

AND, the Assignor hereby authorizes the Assignee to sign the name of the Assignor to . . . any instrument in writing, whenever it shall be necessary so to do, to carry into effect the object, design and purpose of this trust.

## ARGUMENT

With respect to the Assignee's request for dismissal of the Involuntary Case, this Court must resolve one or both of the following issues: (1) whether the Petitioning Creditors' claims are the subject of a bona fide dispute as to liability or amount such as to make them ineligible from filing the Involuntary Petition under § 303(b) of the Bankruptcy Code, and (2), independent of its determination of the foregoing issue, whether abstention pursuant to § 305 of the Bankruptcy Code is warranted in light of the Assignment Proceeding and other matters pending before the State Supreme Court, including the Petitioning Creditors having consented to the jurisdiction of the State Supreme Court and the adequacy of remedies available to the parties in non-bankruptcy court.

Also, if this Court determines that the Involuntary Petition should be dismissed, whether based on the Petitioning Creditors' ineligibility or principles of abstention, the Petitioning Creditors should be made to pay damages, including attorney's fees pursuant to § 303(i) of the Bankruptcy Code. In the interim, pursuant § 303(e) of the Bankruptcy Code, this Court should require the Petitioning Creditors to post a bond sufficient in amount to secure payment of such damages as may be awarded.

13

## POINT I

### THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE REQUIREMENTS OF § 303 OF THE BANKRUPTCY CODE FOR ELIGIBILITY ARE NOT SATISFIED AS BONA FIDE DISPUTES EXISTS WITH RESPECT TO THE PETITIONING CREDITORS' CLAIMS

Only a holder of a claim that is not the subject of a bona fide dispute as to liability or amount can commence an involuntary case under § 303 of the Bankruptcy Code. "A creditor must satisfy both prongs of th[e] test [under § 303(b)]: the claim must not be subject to a bona fide dispute either as to liability or as to amount." *In re TPG Troy, LLC*, 492 B.R. 150, 158 (Bankr. S.D.N.Y. 2013). The Petitioning Creditors cannot satisfy this test as their claims are the subject of a bona fide dispute as to amount. As reflected above, the Petitioning Creditors themselves cannot establish an actual amount owed or whether their claims are secured or unsecured. Thus, the Involuntary Petition must be dismissed.

A.     **Standard for Reviewing a Motion to Dismiss Under § 303(b)**

Determining "whether a bona fide dispute exists involves a burden shifting test." *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 2002 WL 449856 *3 (S.D.N.Y. 2002); *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013); *and In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555 *3 (Bankr. S.D.N.Y. 2010). The Petitioning Creditors have the initial burden to show that their claims are not the subject of a bona fide dispute as part of their prima facie case. *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2d Cir. 2003); *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013); *and In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555 *3 (Bankr. S.D.N.Y. 2010) (a petitioning creditor "generally [has] the burden of proving all statutory requirements of Bankruptcy Code Section 303[, including that] they hold debts that are not in dispute and…qualify as separate creditors meeting the statutory [numerosity] threshold[s], [and]…the

14

debtor is generally not paying its bills on time."); *see also In re Dilley*, 339 B.R. 1, 6 (1st Cir. BAP 2006); *citing Platinum Financial Services Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 437 (4th Cir. 2004). Only after the Petitioning Creditors have met their *prima facie* burden, the burden shifts to the involuntary debtor to establish that a bona fide dispute exists. *In re Dilley*, 339 B.R. at 6; *and In re Persico*, 2010 WL 3766555 *3 ("once that burden is met, the burden then shifts to the debtor to show that there's a dispute as to material fact *like the existence of liability or its amount*.").

The parties must sustain their respective burdens by a preponderance of the evidence. *In re Dilley*, 339 B.R. at 7. The court's role in determining if a bona fide dispute exists is limited to an inquiry into whether there is a bona fide dispute and not a resolution on any genuine issues of fact or law. *Id*. If the court determines that the Petitioning Creditors' pleadings (*i.e.*, the pending complaints in the State Supreme Court) and arguments (*i.e.*, reflected on the proofs of claim) clearly establish that a claim is subject to a bona fide dispute, the Involuntary Petition and the Involuntary Case should be dismissed, except for the purpose of entertaining an application by the Assignee for fees and damages. *In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555 (Bankr. S.D.N.Y. 2010); *In re Mt. Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007); *and In re Euro-Am. Lodging Corp.*, 357 BR 700 (Bankr S.D.N.Y. 2007); *and see Key Mech. Inc. v. BDC 56LLC (In re BDC 56 LLC)*, 2002 WL 449856 at *4.

**B. Standard for Determining Existence of a Bona Fide Dispute as to Liability or Amount**

In 2005, Congress, through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the phrase "as to liability or amount" to §303(b)(1) and (h)(1) following the phrase "*bona fide* dispute", and, in so doing, explicitly expressed its policy

15

determination that any "objective basis for either *a factual or a legal dispute* as to the" amount or liability of a petitioning creditor's claim will render such claim subject to a bona fide dispute, necessitating an immediate dismissal. *See, e.g. In re Euro-American Lodging Corp.*, 357 B.R. 700, 714-715 (Bankr. S.D.N.Y. 2007); *In re Mt. Dairies, Inc.*, 372 B.R. 623, 630 (Bankr. S.D.N.Y. 2007); *In re BDC 56 LLC*, 330 F.3d at 117-18; and *In re TPG Troy, LLC*, 492 B.R. 150, 158 (Bankr. S.D.N.Y. 2013).

Furthermore, this demonstration must be done "at the earliest practicable point," because otherwise, creditors could, on the basis of relatively untested claims, haul alleged debtors with whom they have legitimate disputes into bankruptcy court and force them to defend involuntary petitions while leaving for a later time a merits determination on whether the debtor is properly before it in the first place. *In re Mt. Dairies, Inc.*, 372 B.R. 623, 630 (Bankr. S.D.N.Y. 2007). Absent exigent compelling circumstances, (not here relevant) it is clear that a petitioner should use non-bankruptcy, rather than bankruptcy, approaches to debt collection. *See In re Mt. Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) ("[t]he bankruptcy court is not a collection agency."). Nonetheless, the Assignee believes that the Petitioning Creditors are seeking a more favorable forum in their collective efforts. The Petitioning Creditors are represented by counsel, who were aware when they filed the Involuntary Petition that it was bypassing the normal approach to debt collection, commercial litigation and dispute resolution.

The Bankruptcy Code does not define the term "bona fide dispute." However, the Second Circuit has explicitly adopted and settled on an objective standard in determining whether a claim is subject to a bona fide dispute. *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir. 2003); *and In re TPG Troy, LLC*, 492 B.R. 150, 158 (Bankr. S.D.N.Y. 2013). In 2007, then-sitting former Chief Judge Bernstein in addressing the

bona fide dispute inquiry and the Second Circuit's *Key Mechanical* decision, held that under the objective standard "[a] bona fide dispute exists where there is an objective basis for either a ***factual or a legal*** dispute as to the validity of the debt." *In re Euro-American Lodging Corp.*, 357 B.R. 700, 714 (Bankr. S.D.N.Y. 2007); *citing Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC),* 330 F.3d 111, 117-18 (2d Cir. 2003). Citing to, and partially quoting with approval, *In re Elsa Designs, Ltd.*, 155 B.R. 859, 864 (Bankr. S.D.N.Y. 1993), former Chief Judge Bernstein added that "[t]he bona fide dispute inquiry involves determining whether factual or legal challenges to claims have 'any genuine and objectively determinable legal merit'." *In Re Euro-American Lodging Corp.*, 357 B.R. 700, 714-715 (Bankr. S.D.N.Y. 2007) (internal citations omitted). Notably, any pending litigation over a claim alone strongly suggests the existence of a bona fide dispute. *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013). (Pick Decl. at Exhs. G and H). This suggestion is even stronger where pending litigation involves the same nucleus of facts. *Id.* .

As a result, if an objective basis for *either* a *factual* or *legal dispute* as to the validity of debt exists the Petitioning Creditors would be precluded from serving as eligible petitioning creditor under § 303(b), and the Involuntary Case must be dismissed. Thus, any dispute directly related to the underlying petitioning creditors' claims regarding the amount of the claim renders such claim subject to a bona fide dispute, and disqualifies it as a claim for purposes of 11 U.S.C. § 303(b).

This Court has opined on the contours of whether a claim is the subject of a bona fide dispute as to liability or amount in *In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555 *2 (Bankr. S.D.N.Y. 2010). The Court stated in relation to the underlying policy consideration effectively articulated by former Chief Judge Morris in her opinion in *In re Mt.*

*Dairies, Inc.,* that, in effect, an involuntary bankruptcy case should not be the basis for a creditor that has a dispute with a debtor to gain leverage in that dispute. *Id.*; and *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013).

Notably and relevant to the instant proceeding, in *In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555 *2 (Bankr. S.D.N.Y. 2010) advanced the safeguards in place to protect defendants and debtors in stating that if an amount is in dispute *even though an amount is not in dispute*, the Bankruptcy Code as amended renders the petitioning creditor ineligible to commence—or to seek commencement of an involuntary case."

*In re Euro-Am. Lodging Corp.*, 357 BR 700, 714-15 (Bankr. S.D.N.Y. 2007), provides a clear direction as to the extent to when the bona fide dispute inquiry must end:

> Once the Court identifies a *bona fide* dispute, the inquiry ends. "The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *In re BDC 56 LLC,* 330 F.3d at 118 (quoting *715 In re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991)); *accord In re Byrd,* 357 F.3d at 437 ("The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists."); *In re Dilley,* 339 B.R. at 6 ("The bankruptcy court is not to *resolve* any genuine issues of fact or law; its inquiry is to determine if such an issue exists.")

Indeed, in *In re Mt. Dairies, Inc.*, as in the instant case, former Chief Judge Morris [held the petitioner ineligible and dismissed the petition because she found that "there [was] no doubt that the dispute over both the liability and amount of [petitioner's] claim against [the alleged debtor] would continue after the entry of an order for relief."

## C. The Petitioning Creditors' Claims are Subject to Bona Fide Disputes

The claims of each of the Petitioning Creditors in this Involuntary Case are disputed. Neither the filed Complaints (Pick Decl., *Exhs. H and I*) nor the exhibits attached to the

Complaints support Petitioning Creditors' eligibility to sign the Involuntary petition.   In summary, the evidence on hand relating to the claims is as follows:

| Petitioner(s) | Amount set forth in the sworn to Involuntary Petition of Schiff Fine Art LLC | Amount set forth in the sworn to Chapter 7 Petition of Lisa Schiff[10] | Proof of Claim filed with the Assignee | Amount Set forth in the Alleged Debtor's Books and Records |
|---|---|---|---|---|
| (i) Candace Barasch | $5,598.945.97 | "Unknown" | "Not less than $2.3 million" classified as general unsecured plus "not less than $3.4 million" classified as secured.  Total is $5.7 million[11] | Unknown |
| (ii) Adam Sheffer and Richard Grossman | $1,025,000.00 | $900,000 | "Not less than $2,300,000" (the claim only makes reference to Richard Grossman and not to Adam Sheffer) | Unknown |
| (iii) Lauren Schor | $249,849.63 | $249,843.63[12] | $249,843.63 (classified as "secured") | Unknown |

As reflected above, the amounts vary from document to document as to what is actually owed to each of the Petitioning Creditors, including apparent confusion as to secured classification of each claim (*i.e.,* both Ms. Barasch and Ms. Schor have also asserted that their claims are in part or wholly "secured").  A review of the filed Complaints offer no assistance to clarify the confusion as to the amounts alleged to be owed.

   a.  Candace Barasch

Ms. Barasch has asserted, without attaching any supporting documentation to the Involuntary Petition that she has an undisputed claim for $5,598,945.97.  A review of the

---

[10] The above debt obligations are listed in Ms. Schiff's Chapter 7 Petition as being "Disputed" and "Contingent". (*See* Pick Decl., *Exh. G*).

[11] The Rider to the proof of claim reflects that the claim is "estimated" and is made on the collective behalf of Candace and Michael Barasch and the Bradley A. Carmel Living Trust.

[12] Ms. Schor is referred to as Lauren Gelber in both Ms. Schiff's Chapter 7 Petition and in the proof of claim filed with the Assignee   The proof of claim asserts that  the claim is fully secured against both the  Alleged Debtor and against Ms. Schiff  individually.  Thus, Ms. Schor is an ineligible petitioner under § 303(b).

Complaint dated May 17, 2023 entitled *Candace Carmel Barasch, Michael A. Barasch and Bradley A. Carmel Living Trust against Lisa Schiff, Schiff Fine Arts LLC and SFA Advisory LLC and Does 1-10* under Index No. 652380/2023 (Pick Decl., *Exh. H*) lists the following Causes of Action made on the collective behalf of all of the Plaintiffs therein:

| Count | Relief Sought (Against all Defendants) | Amounts Demanded |
|---|---|---|
| 1 | Breach of Contract | "At least $2,500,000" for damages plus an unliquidated additional amount for commissions and expenses plus damages of over $1,000,000 for failure to remit proceeds |
| 2 | Conversion | In excess of $3,000,000 |
| 3 | Fraud | At least $1,500,000 plus punitive damages |
| 4 | Breach of Fiduciary Duty | At least $2,500,000 plus punitive damages |
| 5 | Conspiracy | In excess of $3,000,000 |
| 6 | Replevin | No Amount |
| 7 | Accounting | To determine the actual amounts taken and used by Defendant |
| 8 | Unjust Enrichment | No amount |

The attachments to the Complaint actually dispute the amount that Ms. Barasch alleges is owed to her in the Involuntary Petition. Notably, on September 18, 2023 an Answer was filed to the Complaint (Pick Decl., *Exh. K*) (NYSCEF No. 80; Index No. 652380), which pled both the Fifth Amendment and Article 1, Section 6 of the New York State Constitution, together with six affirmative defenses thus disputing the amounts owed. The existence of an affirmative defense to a Petitioning Creditor's claim clearly suggests the existence of a bona fide dispute *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013). Plaintiffs have never filed a Motion for Summary judgment nor for a Declaratory Judgment on the pleadings. Accordingly,

Ms. Barasch is an *ineligible* petitioner under 11 U.S.C. § 303(b). Thus, the Involuntary Petition

and this Involuntary Case should be dismissed.

      b.  <u>Richard Grossman</u>

On May 11, 2023 (and in addition to the amounts asserted above) Ms. Barasch and Mr.

Grossman together filed a Complaint on a different set of facts entitled *Candace Barasch and*

*Richard Grossman against Lisa Schiff, Schiff Fine Art LLC and SFA Advisory LLC and Does 1-*

*10* (Index No. 652287/2023). A review of the May 11, 2023 Complaint (Pick Decl., *Exh. I*)

reflects five (5) joint Causes of Action as follows:

| Count | Relief Sought (Against all Defendants) | Amounts Demanded |
|---|---|---|
| 1 | Breach of Contract (references an oral agreement) | Damages of "at least $1,025,000" each |
| 2 | Conversion | Not less than $2,050,000 to be determined at trial |
| 3 | Fraud | Punitive Damages |
| 4 | Breach of Fiduciary Duty | At least $1,800,000 plus disgorgement of $250,000 |
| 5 | Conspiracy | In excess of $2,000,000 to be proven at trial |

An Answer to this Complaint was also filed on September 18, 2023 (Pick Decl., *Exh. L*)

(NYSCEF No. 38; Index No. 652287) which again pled the Fifth Amendment and Article 1,

Section 6 of the New York State Constitution plus seven affirmative defenses, thus disputing

the amounts owed. Plaintiffs have never filed a Motion for Summary Judgment nor for a

Declaratory judgment on the pleadings. Accordingly, Mr. Grossman is an *ineligible* petitioner

under 11 U.S.C. § 303(b). Thus, the Involuntary Petition and this Involuntary Case should be

dismissed.

## POINT II

### ABSTENTION UNDER § 305 OF THE BANKRUPCY CODE IS WARRANTED

A bankruptcy court may, in its discretion, abstain from and dismiss a case pursuant to

§ 305(a)(1) of the Bankruptcy Code. That provision of the Bankruptcy Code provides that:

> (a) The court, after notice and a hearing, may dismiss a case under
> this title, or may suspend all proceedings in a case under this title,
> at any time if—
>     (1) the interests of creditors and the debtor would be better
> served by such dismissal or suspension[.]

Bankruptcy Courts in the Southern District of New York have developed and utilized

the following seven (7) factors for consideration in evaluating whether the interests of creditors

and the debtor would be better served by abstention and dismissal under § 305 (a)(1):

1)    the economy and efficiency of administration:

2)    whether another forum is available to protect the interests of both parties
      or there is already a pending proceeding in state court;

3)    whether federal proceedings are necessary to reach a just and equitable
      solution;

4)    whether there is an alternative means of achieving an equitable
      distribution of assets;

5)    whether the debtor and the creditors are able to work out a less expensive
      out-of-court arrangement which better serves all interests in the case;

6)    whether a non-federal insolvency has proceeded so far in those
      proceedings that it would be costly and time consuming to start afresh
      with the federal bankruptcy process; and

7)    the purpose for which bankruptcy jurisdiction has been sought.

See *In re Newbury Operating LLC*, 2021 Bankr. LEXIS 773 at $37 (Banks. S.D.N.Y. 2021).

A.  **Application of the Seventh Factor**

The last factor has been identified as the most important in evaluating a motion for

abstention and dismissal pursuant § 305(a)(1). *In re Persico Contracting and Trucking, Inc.*,

2010 WL 3766555, at *4 (Bankr. S.D.N.Y. 2010); and *In re Mt. Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) (stressing clearly that "[t]he bankruptcy court is not a collection agency."); *and see In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) ("[w]hile all factors are considered, not all are given equal weight in every case... [t]he decision to abstain under § 305(a)(1) should be made on a case-by-case basis. *In re Monitor Lift 1 Ltd.*, 318 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).

Placing great emphasis on the last factor is consistent with Congress' legislative intent in its promulgating § 305(a)(1), where with respect to same it is written that "the prototypical fact pattern under section 305(a)(1)" involves efforts by recalcitrant creditors to commence involuntary cases to gain leverage over and extract more favorable treatment from debtors. H.R Rep. No. 95-595, 95th Cong., 1st Sess. 325 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1979).   In the instant proceeding there are no reasons provided (nor do they exist) by the Petitioning Creditors warranting its filing of an Involuntary Petition except to extract more favorable treatment from a trustee.  The Assignee has been acting diligently and aggressively in the marshalling of assets and is pursuing every avenue of possible recovery for the benefit of all creditors of the estate, including pursuing claims against the former member of the Alleged Debtor.

In *In Re Mt. Dairies*, former Chief Judge Morris concluded that the involuntary filing was pursued and commenced by (what for all intents and purposes was) a single creditor, rather than the act of the debtor's creditor-body at-large, with the intent to use the bankruptcy court to collect on an obligation the creditor believed the alleged debtor owed. So too here, in this Involuntary Case, the Petitioning Creditors are acting in their own self-interests, all represented by Mazzola Lindstrom LLP, and not in conjunction with the debtor's creditor-body at-large,

with the intent of finding a more favorable forum to collect monies and/or recover artworks that
the Petitioning Creditors believe are owed to them only. *In re Mt. Dairies, Inc.*, 372 B.R. 623,
634-36 (Bankr. S.D.N.Y. 2007); *accord In re Persico Contracting and Trucking, Inc.*, 2010 WL
3766555, at *5 (Bankr. S.D.N.Y. 2010) (discussing former Chief Judge Morris' decision in In re
Mt. Dairies). The normal reasons for filing a bankruptcy petition are absent here and the
appropriate forum for adjudication of the parties' dispute belongs in the State Supreme court. *Id.*
Similarly, Chief Judge Glenn determined, in *In re TPG*, that the debtors before him in that case
had met their burden in demonstrating that abstention was proper under section 305(a) because,
*inter alia*, "another forum…[was] available to protect the interests of [the] parties,
as…proceedings [were] already pending in state…court (second factor)."

Accordingly, as stated by Chief Judge Glenn in *In re TPG*, abstention is proper in this
case because the Supreme Court Actions are pending in another forum where Petitioning
Creditors' and the Alleged Debtor's interests will be protected. The appropriate forum to litigate
Petitioning Creditors' (apparent) discontent is not in bankruptcy court, it is in New York State
Supreme Court in New York County.

## B. Application of the First and Second Factors

The actions commenced by the Petitioning Creditors in the State Supreme Court are also
relevant to, among others, the first and second factors. Here, we have a pending Assignment
Proceeding in the State Supreme Court that has been and can continue to efficiently achieve the
same equitable distribution to creditors.  As Bankruptcy Judge James L. Garrity, Jr. similarly
determined in *Newbury Operating LLC*, 2021 Bankr. LEXIS 773 at *38-39:

> Application of the Factors in this case clearly weighs in favor of
> dismissing the case.  First, this Court is not the most economical
> and efficient forum in which to resolve this dispute because,
> among other things, as discussed above, neither the Alleged
> Debtor, nor its three creditors need relief under the Bankruptcy

Code. (Factor 1). The Debtor is not operating, has de minimis assets (if any) and does not qualify for a bankruptcy discharge. The creditors do not require the protection of the automatic stay. Moreover, the Landlord can get all the protection it needs in State Court, and that court is the most economical and efficient forum in which to resolve the Landlord's dispute with the Alleged Debtor. Courts group Factors 2-6 together "because they touch upon the availability of an alternate forum to efficiently achieve an equitable distribution." *See In re Acis Capital Mgmt., L.P.*, 584 B.R. at 146. "A suitable alternate forum will be deemed to exist if in that forum 'there are pending arrangements that will equitable satisfy the creditors and not be unduly burdensome or prejudicial to the debtor,' so that continuation of the bankruptcy proceeding will be 'duplicitous and uneconomical.'" *In re Navient Solutions, LLC*, Case No. 21-10249, 625 B.R. 801, 2021 Bankr. LEXIS 533, 2021 WL 857114, at *14 (Bankr. S.D.N.Y. March 8, 2021) (*quoting In re RAI Marketing Services, Inc.*, 20 B.R. 943, 946 (Bankr. D. Kan. 1982)). There is no question that the State Court—the forum of the Landlord's choice—is such a forum. It can efficiently adjudicate the Landlord's claims against the Alleged Debtor. Moreover, an involuntary proceeding in this Court is neither necessary, nor appropriate, to reach a just and equitable solution for the Landlord.

## C. Application of the Third, Fourth and Fifth Factors

As stated above, the normal reasons for filing a bankruptcy petition are absent. No issue in this Involuntary Case requires federal proceedings in order to achieve an equitable distribution of assets. Where "federal proceedings are not necessary because the primary claims at issue are based on state law [which]… can be adequately determined in the state court proceedings…" abstention is proper under §305(a) (Factor 1). *In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013).

Moreover, there is a pending Assignment Proceeding that has the mechanisms and means to provide an equitable distribution to creditors without federal intervention (Factor 4). The fifth factor is not relevant to the facts here. Accordingly, the Assignee respectfully submits that abstention and dismissal under 11 U.S.C. § 305(a)(1) is appropriate.

## POINT III

### THE PETITIONING CREDITORS HAVE CONSENTED
### TO THE JURISDICTION OF THE STATE SUPREME COURT

Each of the Petitioning Creditors has consented to the jurisdiction of the State Supreme Court (i) as a result of their having each filed proofs of claim with the court and with the Assignee (Pick Decl. at Exhs. D, E and F) and (ii) because of the active participation of their state court counsel, Mazzola Lindstrom LLP, in the Assignment Proceeding. An Assignment Proceeding is analogous to a Chapter 7 proceeding in the Bankruptcy Court. The Debtor and Creditor Law (as similarly provided in the Bankruptcy Code) gives the State Court Judge the same equitable power and authority[13] (as the Bankruptcy Court has) to inquire into the validity of any alleged debt or obligation as reflected in Petitioning Creditors' filed proofs of claim in the Assignment Proceedings (see § 15 of the Debtor and Creditor Law). As this Court has held in *In re China Fishery Grp. Ltd. (Cayman)*, 2017 Bankr. LEXIS 2017 at * 17 (Bankr. S.D.N.Y. 2017):

> ". . . it is well settled that the filing of a proof of claim waives an individual's due process right to insist on minimum contacts within the forum state before being subject to the court's jurisdiction. *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 269 F.3d 17, 26 (1st Cir. 2001). That is because "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990) (*per curiam*) (*citing Granfinanciera v. Nordberg*, 492 U.S. 33, 58-59, 109 St. Ct. 2782, 106 L. Ed. 2d 26 & n.14 (1989)). *See also In re Hooker Inv., Inc.*, 937 F.2d 833, 838 (2d Cir. 1991) (noting the claims allowance process "is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the claim."); *Buena Vista TV v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004) (finding that "[a]s the Supreme Court's decisions . . . particularly *Langenkamp*—make

---

[13] *See* § 20 of the Debtor and Creditor Law entitled "General powers of court."

clear, when the Copyright Owners filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of this Court . . . ."). Indeed, some courts liken the filing of a proof of claim to the filing of a complaint against a debtor. *See*, *e.g.*, *In re Stokes*, 320 B.R. 821, 825 (Bankr. D. Md. 2004) (noting that in filing a proof of claim, the IRS submitted to the personal jurisdiction of the District Court since the proof of claims "is analogous to a complaint filed in the District Court."); *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) ("[A] proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim.").

## POINT IV

### THE INVOLUNTARY PETITION WAS FILED IN BAD FAITH AND, ACCORDINGLY, AN AWARD OF DAMAGES IS WARRANTED

Section § 303(i) of the Bankruptcy Code provides:

"[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment:

(1) against the petitioners and in favor of the debtor for—
   a. costs; or
   b. a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—
   a. any damages proximately caused by such filing; or
   b. punitive damages."

"There is a presumption that costs and attorney's fees will be awarded to a putative debtor where an involuntary petition is dismissed." *In re TPG Troy, LLC*, 492 B.R. 150, 162 (Bankr. S.D.N.Y. 2013). Bad faith is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1). *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013) *quoting Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000). However, where a petitioner files its petition in bad faith, then under

section 303(i)(2), a putative debtor may be awarded "any damages proximately caused by [the] filing", which though inclusive of attorney's fees is also inclusive of other damages. 11 U.S.C. § 303 (i)(2)(A). The Court may order an award of punitive damages under 11 U.S.C. § 303(i)(2)(B).

Former Bankruptcy Judge Robert E. Gerber, in *In re Cantico Int'l, Ltd.,* 2008 WL 755022, at *4 (Bankr. S.D.N.Y. Mar. 19, 2008), held that:

> The Second Circuit, in *Lubow Machine Co., Inc. v. Bayshore Wire Products Corp.,* 209 F.3d 100 (2d Cir.2000), noted that courts have used four different approaches to determine whether an involuntary petition was filed in bad faith: (a) an "improper use test," which inquires into whether the petitioner is using the bankruptcy system to obtain a disproportionate advantage over other creditors rather than attempting to protect itself against other creditors obtaining a disproportionate advantage; (b) an "improper purpose test," which inquires into whether the petitioner was motivated by such things as ill will, malice or a desire to embarrass or harass the alleged debtor; an "objective test," which inquires into what a reasonable person would have believed in connection with the purpose of Section 303 and the allegations required to be made; and (d) a "Rule 9011 test," which inquires into whether the petition: (i) was justified based upon a reasonable inquiry into the facts and the law; and (ii) was interposed for an improper purpose. *Id.,* 209 F.3d at 105–106.

Those tests were also summarized by Former Judge William F. Tuohey in *In re Landmark Distributors, Inc.* 189 B.R. 290 (Bankr. D.N.J. 1995) who applied five (5) separate tests to make a determination whether the Petitioning Creditors had acted in bad faith. Judge Tuohey stated:

> Whether or not a petitioning creditor acted in bad faith is essentially a question of fact. *In re Wavelength, Inc.,* 61 B.R. 61, 620 (9th Cir. BAP 1986) (citing Advance Press and Litho., 46 B.R. at 704); *K.P. Enterprise,* 135 B.R. at 179, fn. 13, Court have, however, developed and applied various tests to make the determination.

Those tests have been referred to extensively by the *K.P. Enterprise* and *West Side Community Hosp.* courts and categorized as:

(1)   the "improper use" test, which "finds bad faith when a petitioning creditor uses involuntary bankruptcy proceedings in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner would have advanced its own interests in a different forum." 135 B.R. at 179, n.14; 112 B.R. at 258 [FN20]

> FN20. Under the "improper use" test, courts have found bad faith where there has been an attempt to use the involuntary proceedings in an attempt to gain control of a corporation. *See In re Better Care Ltd.*, 97 B.R. 405, 411 (Bankr. N.D. Ill. 1989) (creditors filed involuntary petition in bad faith where evidence indicated that creditors intended to shut down debtor's business); *In re Wavelength*, 61 B.R. at 620 (petition filed as part of jockeying for corporate control); *In re F.R.P. Industries, Inc.*, 73 B.R. 309, 313 (Bankr. N.D. Fla. 1987) finding bad faith where involuntary petition utilized where the bad faith involved using the bankruptcy process as a collection tool. *See K.P. Enterprise*, 135 B.R. at 179 fn. 14 and cases cited therein.

(2) the "improper purpose" test, which finds bad faith based upon the petitioner's improper motivation for filing the petition. Cases under this line of reasoning have emphasized that the petition was motivated by ill will, malice or for the purpose of harassing the debtor. [FN21]

> FN21. The "improper purpose" test has also focused on such motivations as an attempt to "ruin and destroy" the debtor or other malicious attempt to shut down a debtor's business.. *See K.P. Enterprise*, 135 B.R. at 179 fn. 15 (*citing In re Salmon*, 128 B.R. at 411). In *In re Better Care*, 97 B.R. at 412, the court specifically found ample evidence of bad faith where personal antipathy for the debtor resulted in the filing of the involuntary petition. *See also Basin Electric Power Cooperative v. Midwest Processing Company*, 769 F.2d 483, 487 (8th Cir. 1985) *cert. denied*, 474 U.S. 1083, 106 S. Ct. 854, 88 L. Ed. 2d 894 (1986); *Fox Island*, 106 B.R. at 967, *Allen Rogers*, 34 B.R. at 633.

(3) the "objective test", which essentially, asks the question whether or not a reasonable person would have filed the involuntary petition under the same circumstances; [FN22]

> FN22. The objective test was cited *K.P. Enterprise*, 135 B.R. at 179, n.16, as being employed by the courts in *In re Midwest Processing Co.*,

29

41 B.R. 90, 102 (Bankr. D.N.D. 1984) and *In re Grecian Heights Owners' Assn.*, 27 B.R. 172, 173 (Bankr. D.Or. 1982).

(4) the "subjective test" which is almost identical to the "improper purpose" test in that they both look to the subjective motivation of the petitioning creditor for the filing;  [FN23] and

FN23. *See K.P. Enterprise*, 135 B.R. at 179 fn. 17.

(5) the "combined" or "two part" test which finds bad faith based upon consideration of both the subjective motivation and the objective reasonableness of the petitioning creditors(s). [FN24]

FN24.  The cases that employ both subjective and objective finding of fact often use Bankruptcy Rule 9011 as a guide.  *K.P. Enterprise*, 135 B.R. at 179, fn. 18; *West Side Community Hosp.*, Inc., 112 B.R. at 258. Bankruptcy Rule 9011 provides in relevant part:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney or party knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

*See also Landon v. Hunt*, 977 F.2d. 829 (3rd. Cir. 1992) (filing of an improper involuntary petition may expose the petitioners or their attorneys to sanctions under Rule 9011), and *In re Turner*, 80 B.R. 618, 623 (Bankr. D.Mass. 1987) wherein the court stated:

Rule 9011 appears to be all-encompassing in the indicia of bad faith which it sets forth, including a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law.

It is respectfully submitted that the facts of this case establish that the Petitioning Creditors have acted in bad faith by filing the instant Involuntary Petition.  Bad faith may be found if either improper motivation or inadequate investigation is demonstrated.  *In re Robert J. Roveley, et al.*, 148 B.R. 398, 408 (Bankr. S.D.N.Y. 1992).  The Involuntary Petition Was Filed in Bad Faith

The Petitioning Creditors' bad faith filing in this case follows on the heels of a scheduled evidentiary hearing to be heard in the New York State Supreme Court on February 8, 2024, which the Petitioning Creditors, by their counsel are seeking to avoid.  By way of example only, on October 19, 2023 the Honorable Shahabuddeen Ally signed an Order to Show Cause (*see* Pick Decl., *Exh. M*) (NYSCEF No. 115; Index No. 510009/2023) scheduling a hearing for the turnover of deposits held by multiple galleries, to which the pre-filing Alleged Debtor had tendered funds for the purchase of specific works of art, as follows :

| Gallery | Artwork | Total Price | Deposits/ Payments | Balance |
|---------|---------|-------------|--------------------|---------|
| Kaufmann Repetto Art Gallery | Lily van der Stocker, *Yelling Older Women*, 2022 | €38,500.00 | €21,474.96 | €17,025.04 |
| Nina Johnson Gallery | Yasue Maetake, *Grilled Crescent*, 2022 | $6,750.00 | $2,000.00 | $4,750.00 |
| Canada Gallery | RJ Messineo, *Piano*, 2021 | $23,000.00 | $5,000.00 | $18,000.00 |
| 15 Orient Gallery | Dustin Hodges, *Meeting Sequence*, 2022 | $36,000.00 | $6,000.00 | $30,000.00 |
| Thaddaeus Ropac Gallery | Cory Arcangel, *TOPLINE*, 2019 | $750,000.00 | $575,000.00 | $175,000.00 |
| Gladstone Gallery | Wangechi Mutu, *The Seated IV*, 2019 | $650,000.00 | $398,000.00 | $252,000.00 |
| High Art Gallery | Kentaro Kawabata, *Spoon*, 2022 AND Julien Creuzet, *Untitled*, 2022 | Unknown | To be determined | To be determined |

The requested relief was opposed by Candace Barasch to the limited extent that the Motion sought entry of an Order directing Thaddeus Ropac Gallery and the Gladstone Gallery to turn over all cash deposits and/or other amounts tendered to them by the pre-filing Alleged Debtor.  Ms. Barasch alleged that the deposits made by the Alleged Debtor to the respective galleries constituted payments made by her to the Alleged Debtor and accordingly that Ms. Barasch was entitled to possession of the Cory Arcangel, *TOPLINE 2019* and to the Wangechi Mutu, *The Seated IV, 2019* (*see* Pick Decl., *Exh. N*) (NYSCEF No. 114; Index No. 510009/2023).

In response to Ms. Barasch's opposition, the Assignee had filed an Affidavit in Reply addressing each of the arguments raised by Ms. Barasch including, as following:

(a)    Ms. Barasch's reliance upon the proof of claim which she submitted in Assignment is without merit. At the outset, no copy of the proof of claim is attached to Ms. Barasch's opposition papers. In any case, it should not be disputed that a proof of claim is just that – a claim for the alleged debt obligation stated therein – and the filing thereof does not convey any rights or remedies other than the right to the treatment of the claim within the ordinary claims reconciliation process of the assignment proceeding. At this point in the case, the Assignee and his professionals have not yet made any decision as to the validity of the proof of claim and/or whether to object to Ms. Barasch's proof of claim (but reserve the right to do so at any time under § 14 of the Debtor and Creditor Law) and the fact that no objection has yet been filed does not render Ms. Barasch's claim "valid" or otherwise support her contentions in opposition to the Motion;

(b)    Similarly without merit is Ms. Barasch's reliance upon certain UCC-1 Financing Statements purportedly evidencing "Ms. Barasch's security interest in these artworks". Once again at the outset, copies of the purported UCC filings are not attached to Ms. Barasch's opposition papers. Nevertheless, the Assignee is considered a judicial lien creditor of the Alleged Debtor and enjoys priority over any party asserting an unperfected lien, including any consignment interest. See UCC § 9-102(52). This is important as all of the referenced UCC-1 Financing Statements were filed on May 30, 2023, i.e., after the Assignment was executed and recorded on May 15, 2023. These filings do not appear to have been authorized under any agreement (e.g., a consignment agreement, security agreement or other required authorization) entered into with the Alleged Debtor prior to the execution and filing of the Assignment nor were they authorized by the Assignee after the execution and filing of the Assignment. Indeed, pursuant to the Assignment, any interests with respect to any and all assets of the Alleged Debtor were transferred and assigned to the Assignee and constitute property of the Alleged Debtor's Estate. As such, Ms. Barasch's purported "security interests" are meaningless as any property against which her security interests are asserted do not constitute property of the Alleged Debtor. Again, at this point in the case, the Assignee and his professionals have not yet made any decision as to whether to object to Ms. Barasch's proof of claim, including with respect to any purported security interest securing the amount claimed, but reserve the right to do so at any time as permitted under Article 2 of the Debtor and Creditor Law; and

(c)    Lastly, Ms. Barasch has not, by way of her opposition papers with respect to the Motion or otherwise, demonstrated that the funds that were deposited by the Alleged Debtor with the Galleries with respect to the two artworks at issue are traceable in any manner to any monies paid or otherwise belonging to Ms. Barasch. Rather, it appears that any such funds were commingled with the

Alleged Debtor's general funds (presumably including funds in which other clients may have or assert to have an interest) and were then disbursed by the Alleged Debtor for, among other reasons, to pay operating expenses, in furtherance of purchases of artworks of various clients and to pay what are believed to be, certain of Ms. Schiff's personal expenses. Indeed, according to Ms. Barasch's assertions, any payments that she made occurred several years ago. By way of example only, Ms. Barasch asserts that she paid $650,000 in February 2020 (by written check)[14] (*see* ¶ 20 to the Barasch Affidavit; NYSCEF No. 253; Index No. 510009/2023) with respect to the Mutu sculpture.    Ms. Barasch should not now be heard to say, more than three (3) years later, that any of the funds which the Assignee is seeking turnover of by the Galleries is specifically identifiable as her money. In fact, Ms. Barasch repeatedly confirms as much in her sworn-to Affidavit (NYSCEF No. 153; Index No. 510009/2023), wherein she alleges:

3.    . . . [W]e instructed Defendants to purchase a number of artworks, and transmitted funds amounting to at least $1.5 million to Defendants to pay for these artworks.  Defendants did not use the funds to pay for our artworks, but instead used them for other purposes, including, to the best of my knowledge, information and belief, to fund Schiff's lavish lifestyle, to cover debts she owed to other clients, and to purchase artworks for other clients.

***

5.   On May 8, 2023, Schiff confessed to me that she was in financial distress, could not pay the overdue installments on the Ghenie Artwork, and that hundreds of thousands of dollars which I and my co-Plaintiffs in this action transferred to Defendant for the purchases of the artworks described below, were "gone."

***

10. . . . All funds for my and my family's purchases and sales of artwork passed through Defendants' accounts, rather than directly between me and the sellers or purchasers of artworks.  To facilitate these transactions, Schiff requested, and I authorized, access to certain of my credit card(s).  In addition, Defendants were authorized to access, manage and transfer artworks in and out of storage accounts in my name in a number of fine art storage facilities.  Schiff sent me lists of recommended artworks for which Defendants placed deposits on my behalf.

***

19. On the morning of Monday, May 8, 2023, Schiff (who I have spoken with every day, multiple times a day, for many years), called me and admitted that monies which I had wired to Defendants for the purchase of artworks was "gone;" that Defendants had dug themselves into a large financial hole that

---

[14] To date Ms. Barasch has refused to produce a copy of the February 2020 check for $650,000 notwithstanding having been served with a subpoena directing the production of a copy of the alleged check.  The reason is because the check does not exist

they could not get out of; that this had been going on for many years; . . .
Schiff explained that she had intended to map out a plan to get Defendants
out of this financial hole during her stay in a rehabilitation center in San
Francisco, which she went to in January 2020 to treat an addiction (she also
mentioned that the rehab cost over $100,000).

\*\*\*

21. . . . I learned from Schiff on May 8, 2023 that the last two wires I sent to
Schiff (from the Trust) did not go towards payment on the paintings they
were earmarked for. The last transfer of $190,531.25 was made just four
days before Schiff's confession. When I asked Schiff on May 8, 2023 where
this money went, Schiff said she did not know.

Contrary to Ms. Barasch's claim to the Mutu sculpture the Assignee came into
possession of a copy of the underlying invoice dated December 10, 2019 from the Gladstone
Gallery to the Alleged Debtor relating to the Mutu and the purchase price of $650,000 (less a
10% discount to the Alleged Debtor) (see NYSCEF No. 150; Index No. 510009/2023)
confirming that "[t]itle will not pass until payment is received in full." There is no dispute that
full payment was never made to the Gallery. In fact ,the invoice reflected that  no deposit had
been made on the Mutu sculpture and that $117,000 (20%) was due upon receipt of the invoice.
The Assignee also came into possession of a second invoice dated February 26, 2020 (*Id.*),
apparently from the Alleged Debtor  to "Candy Barasch" which expressly provided, among
other things that:

    (i) "Payment of the full purchase price is due upon receipt of
       invoice";

    (ii) "Title shall not pass until payment is received in good, cleared
        funds"; and

    (iii) "Schiff Fine Art is conveying good title to Purchaser [upon
        full payment]".

The February 26, 2020 Invoice failed to reflect any deposits or payments having been
made by Ms. Barasch for the Mutu sculpture.  Correspondingly, at approximately 6:45 p.m. on

November 15, 2023 counsel to the Gladstone Gallery filed with the State Supreme Court a letter with supporting exhibits (NYSCEF No. 160;   Index No. 510009/2023) reflecting only the following payments totaling $335,000 having been made for the Mutu sculpture (none of which could be tied to Ms. Barasch):

| Date of Payment | Amount |
| --- | --- |
| August 3, 2021 | $85,000 (wire transfer) |
| December 9, 2021 | $100,000 (wire transfer) |
| January 24, 2022 | $25,000 (wire transfer) |
| February 18, 2022 | $25,000 (wire transfer) |
| March 31, 2023 | $50,000 (Amer. Exp. card ending 3001) |
| April 3, 2023 | $50,000 (Amer. Exp. card ending 3001) |
| **Total:** | **$335,000** |

The wire transfers were made by the Alleged Debtor and the American Express card ending in 3001 belonged to the Alleged Debtor.

At the hearing on the Motion, Judge Ally directed that an evidentiary hearing would be held on February 8, 2024 and that the parties should exchange discovery and schedule depositions dates.

A *Subpoena Duces Tecum and Ad Testificandum*, dated December 9, 2023, was issued by the Assignee to Ms. Barasch. However, each of the Assignee's document requests contained therein were objected to and not a single page was produced by Ms. Barasch in response. In accordance with the State Supreme Court's direction, and  on January 10, 2024, a letter was filed by the Assignee addressing the discovery issues and the inability of the Assignee to conduct an examination of Ms. Barasch on January 11, 2024 as was anticipated. (NYSCEF No. 223; Index No. 510009/2023) Prior to the State Supreme Court addressing Ms. Barasch's refusal to provide any discovery, her counsel, who again represents all of the Petitioning Creditors, signed and filed the Involuntary Petition.

It is highly unlikely that any of the three (3) Petitioning Creditors or their counsel conducted any sort of investigation or made any inquiry into the facts and the law or even investigated into whether viable alternatives to the filing of the Involuntary Petition existed. Also, as evidenced by the "late" filing of the Involuntary Petition, the Petitioning Creditors never had any reason to believe that assets were being improperly diverted or that any collectible trade preferences existed.    To effectuate proper implementation of federal bankruptcy policy, it is the province of the Court to ascertain a creditor's objective in filing for relief and determine whether the petition was filed in good faith.    *See e.g., Basin Elec. Power Coop. v. Midwest Processing Co.*, 47 B.R. 903 (D.N.D. 1984) aff'd 769 F.2d 483 (8th Cir. 1985).    As such, and absent an explanation as to why the Involuntary filing was needed, a reasonable inference is that the Petitioning Creditors attempted to improperly use the Bankruptcy Court as a court of collection in an effort to put their own interests ahead of the other creditors of the Estate.    *See e.g., In re Waldrun*, 785 F.2d 936, 940 (11th Cir. 1986). Respectfully, the Involuntary Petition was filed in bad faith and the Petitioning Creditors should be sanctioned for their conduct.

Accordingly, this Court should grant judgment pursuant to § 303(i) of the Bankruptcy Code against the Petitioning Creditors: (a) for reasonable attorney's fees and costs, and (b) for compensatory and/or punitive damages due to the filing of the Involuntary Petition in bad faith.

## POINT V

### THE PETITIONING CREDITORS SHOULD BE DIRECTED TO POST A BOND

Furthermore, pursuant to § 303(e) of the Bankruptcy Code, the Assignee respectfully requests that this Court order that the Petitioning Creditors file a bond to indemnify the Alleged Debtor for such amounts as may later be allowed under 11 U.S.C. § 303(i). The bond under this section was intended to "discourage frivolous petitions as well as more spiteful petitions based

36

on the desire to embarrass the debtor". As a result of this Involuntary Case, the Assignee has experienced delays in the retention of Phillips Auctioneers to schedule public auction sales of certain art inventory estimated to generate over $1.0 million to the estate and delays pursuing the sale of additional other inventory that is expected to generate hundreds of thousands more in cash to the estate.    These delays have already increased the Alleged Debtor's legal costs associated with multiple projects, resulted in increased storage charges  to maintain the inventory and increased insurance costs. In addition, the Alleged Debtor has and will have to continue to expend additional funds and incur additional costs associated directly with defending this bad- faith Involuntary Case.

## CONCLUSION

For the foregoing reasons, the Assignee respectfully requests that the Court enter an Order granting the Motion in its entirety together with such other relief as may be just and proper.

Dated: New York, New York
          January 17, 2024

PICK & ZABICKI LLP
Counsel to Douglas J. Pick, as Assignee
for the Benefit of Creditors of the Alleged Debtor

By: _____
Douglas J. Pick, Esq.
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000