UNITED STATES BANKRUPTCY COURT  <u>NOT FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:          :
            :  Chapter 7 (Involuntary)
   SCHIFF FINE ART, LLC,  :
            :  Case No. 24-10039 (DSJ)
     Alleged Debtor.  :
-----------------------------------------------------------x

## DECISION AND ORDER GRANTING MOTION TO INTERVENE, DENYING MOTION TO DISMISS, AND RESERVING DECISION ON MOTION TO ABSTAIN

**ARTXLAW PLLC**
*Counsel for the Debtor*
8 North Front Street
Kingston, NY 12401
By: John R. Cahill, Esq.

**MAZZOLA LINDSTROM LLP**
*Counsel for the Petitioning Creditors*
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
By: Laura D. Castner, Esq.; Wendy J. Lindstrom, Esq.

**A.Y. STRAUSS, LLC**
*Counsel for the Petitioning Creditors*
290 West Mount Pleasant Avenue, Suite 3260
Livingston, NJ 07039
By: Eric H. Horn, Esq.; Maria A.G. Harper, Esq.

**PICK & ZABICKI LLP**
*Counsel for Douglas J. Pick, as Assignee for the Benefit of Creditors of Schiff Fine Art LLC*
369 Lexington Avenue
Manhattan, NY 10017
By: Douglas Pick, Esq.

**WILK AUSLANDER LP**
*Counsel for Lisa Schiff*
825 8th Avenue, Suite 2900
New York, NY 10019
By: Eric J. Snyder, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions filed by Douglas J. Pick, not individually but in his capacity as Assignee for the Benefit of Creditors of Schiff Fine Art LLC ("**Mr. Pick**" or "**Assignee**"): a motion to intervene in this involuntary Chapter 7 case [ECF No. 10] ("**Intervention Motion**"), and a motion to dismiss this involuntary Chapter 7 case [ECF No. 8] ("**Dismissal Motion**"). The Intervention Motion argues that Mr. Pick should be permitted to intervene in the instant involuntary case either as a matter of right or permissively to advance interests he asserts he has in the assets of Schiff Fine Art LLC ("**SFA**") in his capacity as Assignee for the benefit of SFA's creditors. The Dismissal Motion offers two independent grounds for dismissal: first, that the petitioning creditors' claims assertedly are subject to a bona fide dispute and as such ineligible to serve as the basis for an involuntary petition, and second, that abstention is appropriate to permit continuation of an ongoing assignment proceeding that is already pending in the Supreme Court of the State of New York.

The four creditors who filed the involuntary petition—Candace Barasch ("**Ms. Barasch**"), Adam Sheffer ("**Mr. Sheffer**"), Richard Grossman ("**Mr. Grossman**"), and Lauren Schor ("**Ms. Schor**") (collectively, the "**Petitioning Creditors**")—have filed a joint opposition[1] to Mr. Pick's Intervention and Dismissal Motions [ECF No. 15] ("**Opposition**"). The Opposition asserts that Mr. Pick lacks standing to contest whether the Petitioning Creditors are eligible to file an involuntary case against SFA, and that Mr. Pick lacks sufficient interest in the case to warrant intervention permissively or as a matter of right.

---

[1] Two additional oppositions were filed, one by SFA and another by SFA's sole member, Lisa Schiff, incorporating by reference SFA's opposition. The SFA and Schiff objections do not raise arguments that do not also appear in the Petitioning Creditors Opposition. This Decision and Order therefore focuses on the Petitioning Creditors' Opposition, but its analysis equally applies to and resolves the submissions of SFA and Ms. Schiff.

The Court heard oral arguments for and against the Intervention Motion and Dismissal Motion on February 8, 2024 (the "**Hearing**"). For the reasons discussed below, the Intervention Motion is granted, and the Dismissal Motion is denied for reasons including that Mr. Pick is statutorily unauthorized to contest the petition under Bankruptcy Code Section 303. In light of this determination, and in light of Debtor's previous filing of a consent to the petition, an order for relief will be entered and a Chapter 7 Trustee appointed without delay.  With respect to the portion of Mr. Pick's Dismissal Motion that seeks abstention under Bankruptcy Code Section 305, the Court invites but does not require supplemental briefing from the soon-to-be-appointed Chapter 7 Trustee on a date to be determined after that trustee is appointed, with a continued hearing date to be scheduled if appropriate. To minimize uncertainty and delay in the important process of marshalling assets for the benefit of SFA's creditors, the Court's expectation is that any such hearing should occur within thirty days of the appointment of a Chapter 7 Trustee.

## SUMMARY OF FACTS SIGNIFICANT TO DISPOSITION OF MOTION

SFA is a New York limited liability company engaged in the business of advising and assisting clients in the purchase and sale of fine art. *See* Dismissal Motion at 6; Objection ¶ 9. On January 10, 2024, the Petitioning Creditors filed an involuntary Chapter 7 petition (the "**Petition**") against SFA following the Chapter 7 filing of SFA's sole member, Lisa Schiff ("**Ms. Schiff**"), six days earlier. In the year prior to the bankruptcy filing, several lawsuits were filed against SFA and Ms. Schiff in relation to art sales transactions that allegedly involved financial misdeeds.

Specifically, on May 11, 2023, Mr. Grossman and Ms. Barasch filed an action against SFA in the Supreme Court of New York, New York County (Index No. 652287/2023) (the "**Grossman Action**") asserting claims for breach of contract, conversion, fraud, breach of

3

fiduciary duty, and conspiracy in relation to a sale of a piece of artwork by Mr. Grossman and

Ms. Barasch through SFA and Ms. Schiff, following which SFA allegedly failed to remit the

entirety of the sale proceeds to Mr. Grossman and Ms. Barasch. *See* Objection ¶¶ 17–19. A week

later, on May 17, 2023, Ms. Barasch, Michael A. Barasch, and the Bradly A. Carmel Living Trust

filed suit against SFA and Ms. Schiff in the Supreme Court of New York, New York County

(Index No. 652380/2023) (the "**Barasch Action**") asserting claims for breach of contract,

conversion, fraud, breach of fiduciary duty, conspiracy, replevin, accounting, and unjust

enrichment, based on allegations that SFA and Ms. Schiff failed to use millions of dollars of their

funds to purchase artworks as instructed. *See* Objection ¶¶ 22–25.

Following the filing of the Grossman Action and prior to the filing of the Barasch Action,

an assignment proceeding was commenced in the Supreme Court of the State of New York,

County of New York (the "**State Supreme Court**") entitled, *In the Matter of the General*

*Assignment for the Benefit of Creditors of Schiff Fine Arts LLC, Assignor -to- Douglas J. Pick,*

*Assignee* (Sup Ct., N.Y. Cty. – Index No. 5100009/2023) (the "**Assignment Proceeding**"). *See*

Dismissal Motion at 2. Since the filing of the Assignment Proceeding on May 15, 2023, the

Assignee, Mr. Pick, has taken steps to marshal the former assets of SFA so as to fund an eventual

distribution to SFA's creditors. Among his work to date, Mr. Pick has retained an art advisor, a

financial advisor, and an auctioneer to conduct a public auction sale of some of SFA's art

inventory, and has commenced an action against Ms. Schiff to recover art inventory and other

property allegedly belonging to SFA. *See* Dismissal Motion at 5. Mr. Pick represents that he has

also been taking steps toward the private sale of additional art inventory, posted a provisional

bond, and advertised for creditors to submit notice of claims. *Id.*

Soon after the Petition was filed, SFA filed an answer consenting to the involuntary case [ECF No. 11], and Mr. Pick filed both the Intervention Motion, seeking to intervene to protect his interest in the assets of SFA as Assignee, and the Dismissal Motion, seeking dismissal based on two theories. The first asserted ground for dismissal is that the Petitioning Creditors lacked eligibility to file an involuntary case against SFA, and the second that abstention is warranted because the State Supreme Court is a more suitable forum for marshalling and distributing assets given the progress Mr. Pick says he has already made toward that objective. The Petitioning Creditors filed an Opposition, disputing Mr. Pick's contentions as to the Petitioning Creditors' eligibility and challenging Mr. Pick's standing to raise the defenses he advances. The Opposition also argues that, under the language of the assignment agreement ("**Assignment Agreement**"), Mr. Pick has not been conferred the power to litigate this case. This contention flows from the relevant section of the Assignment Agreement appointing Mr. Pick, which provides:

> Assignor [*i.e.*, SFA] shall retain the sole and exclusive right to defend any litigation or investigations (whether civil, criminal, or regulatory in nature) to which Assignor is a party, to select counsel to represent Assignor (as well as any former employees, members, and agents of Assignor) in the same, and to be the sole decision-maker in all such pending or future litigations and investigations.

*See* Dismissal Motion, Ex. A at 3, (the "**Reservation Clause**").

Mr. Pick filed a reply [ECF No. 19] ("**Reply**"), which primarily focused on addressing the standing arguments raised in the Opposition.

## DISCUSSION

### 1. Availability of Intervention in Contested Matters; Governing Standards

Mr. Pick moves to intervene under Bankruptcy Rule 7024, which appears in Part VII of the Bankruptcy Rules and applies Federal Rule of Civil Procedure 24 ("**Rule 24**") to adversary proceedings. While this dispute is not itself an adversary proceeding, no party has disputed

5

whether the Court may nonetheless apply Rule 24. Bankruptcy Rule 9014 governs contested

matters and states that "the court may at any stage in a particular matter direct that one or more

of the other rules in Part VII shall apply." While the Bankruptcy Code does not define "contested

matter," the Notes of the Advisory Committee to the 1983 amendment to Rule 9014 instruct that,

"[w]henever there is an actual dispute other than an adversary proceeding, before the bankruptcy

court, the litigation to resolve that dispute is a contested matter." *See* Fed. R. Bankr. P. 9014

Advisory Committee's Notes (1983); *see also In re Dynegy, Inc.*, 770 F.3d 1064, 1069 (2d Cir.

2014). Thus, this dispute is a contested matter to which the Court may, in its discretion, apply

Rule 24. It does so here.

Rule 24(a) governs intervention as of right, and states, in relevant part,

On timely motion, the court must permit anyone to intervene who […] claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. § 24(a).

Rule 24(b) governs permissive intervention and states, in relevant part,

[o]n timely motion, the court may permit anyone to intervene who […] has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. § 24 (b).

To be granted intervention as of right or permissively, "an applicant must (1) timely file

an application, (2) show an interest in the action, (3) demonstrate that the interest may be

impaired by the disposition of the action, and (4) show that the interest is not protected

adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir.

2014) (citation omitted) (internal quotation marks omitted). An application for intervention may

be denied upon the failure to satisfy any one of these four requirements. *See id.* (citing *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (internal quotation marks omitted)). However, "the test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *See Grewal v. Cuneo*, No. 13-CV-6836, 2014 U.S. Dist. LEXIS 69180, 2014 WL 2095166 *3 (S.D.N.Y. May 20, 2014) (citations omitted).

Permissive intervention is discretionary, and in addition to the above four factors, courts must consider whether intervention will cause "undu[e] delay or prejudice the adjudication of the rights of the original parties," and may consider additional relevant factors such as "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *See id.* (citing *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir.1986); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000)).

### *The Timeliness of Mr. Pick's Application Is Undisputed*

The first factor that proposed intervenors must satisfy is the timeliness of their intervention application. Mr. Pick undisputedly has met this requirement.  He filed an application for emergent relief almost immediately upon the filing of the involuntary Petition.

### *Mr. Pick Has a Sufficient Interest in the Action to Pursue Intervention*

Mr. Pick asserts that he has an interest in this bankruptcy case in his capacity as the Assignee of SFA's assets. A proposed intervenor must assert "an interest relating to the property

or transaction which is the subject of the action" that is direct, substantial, and "significantly protectable." *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inc. Sec. LLC*, 550 B.R. 241, 249–50 (Bankr. S.D.N.Y. 2016) (quoting *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 130 (2d. Cir 2001)) (citing *Donaldson v. United States*, 400 U.S. 516, 531 (1971) (citation omitted)). A claim based only on an indirect economic effect of some action is rarely considered a protectable interest justifying intervention. *See Madoff*, 550 B.R. at 250 (citation omitted).

The Reply states that "upon the execution of the Assignment, the Assignee took title to the Assignor's estate as trustee for all creditors under the supervision of the State Court, and 'stands in the shoes' of the assignor." *See* Reply ¶ 7. Mr. Pick argues that, as assignee, he has an interest in "the collection and preservation of corporate assets" of the SFA estate, which has been challenged and attacked by the filing of the Involuntary Petition. *See* Reply ¶ 7. The Petitioning Creditors deny that Mr. Pick has any cognizable interest in SFA's assets, and, rather, insist that Mr. Pick's sole interest is in recovering fees and costs for his services rendered as Assignee. *See* Objection ¶ 71.

The Court concludes that Mr. Pick's role as Assignee for the benefit of SFA's creditors gives him an interest in SFA's assets, and that those assets are among "the property or transaction which is the subject of the action." This conclusion finds support in the language of the Assignment Agreement, which is attached to the Dismissal Motion as Exhibit A, and which states:

> [The Assignor] has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, his successors and assigns, all and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, stocks, promissory notes, claims, demands, property and effects of every description belonging to the said Assignor, of whatsoever nature and wheresoever the same may be situated […].

*See* Dismissal Motion, Ex. A, at 1.

This provision explicitly grants Mr. Pick all SFA (or "Assignor") property, and that same property also will be administered in this bankruptcy case unless the case is dismissed. This interest can only be termed direct and substantial, as is required to constitute an interest that meets the requirements of Rule 24.

### *Mr. Pick's Interest May Be Impaired by the Disposition of the Action*

If the SFA bankruptcy goes forward, a Chapter 7 Trustee will be appointed and tasked with liquidating the same assets that Mr. Pick is attempting to liquidate in his state-court authorized role as Assignee. This reality means that the disposition of this case will necessarily impact his interest in SFA's assets, or, at a minimum and as the relevant intervention standard puts it, his interests "may be impaired" by a proceeding in this Court. Thus, "as a practical matter, an adverse decision may compromise [Mr. Pick's] claim." *E.g., Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 161–62 (S.D.N.Y. 2000) (internal quotation marks omitted) (citation omitted)).

In reaching this conclusion, the Court is not swayed by the contention of the Petitioning Creditors that Mr. Pick's interest in "collecting the largest return possible for the benefit of creditors will not be impaired by barring [Mr. Pick] from intervening in the instant action," because appointment of a Chapter 7 trustee will accomplish essentially the same objective (but, in their view, would do so more effectively). *See* Objection ¶ 72. Contending that proceeding in this Court will not affect Mr. Pick's interests because of the similar objectives of a Chapter 7 bankruptcy ignores the reality that Mr. Pick believes he has made great progress and is on the cusp of taking long-planned steps that he thinks will realize creditor recoveries, and the fact that Mr. Pick asserts he has been actively marshalling SFA assets and planning further recoveries and

monetizations for the benefit of SFA creditors. Specifically, Mr. Pick is in the midst of

conducting a public auction sale of some of SFA's art inventory, is pursuing negotiations for the

private sale of additional art inventory, and initiated a lawsuit against Ms. Schiff to recover

SFA's former assets. Further, Mr. Pick has invested compensable time and effort and incurred

expenses by posting a provisional bond and advertising for creditors to submit notice of claims.

Thus, Mr. Pick has shown, at a minimum, that his interest in this SFA's assets "may be

impaired" by the disposition of this case.

### *Mr. Pick's Interest Is Not Adequately Protected by the Parties to this Action*

Mr. Pick's interest is not adequately represented by SFA, Ms. Schiff, or the Petitioning

Creditors—indeed, all oppose the relief he seeks. Case law in this district provides that "a

proposed intervenor's interests cannot be 'identical' to those of other parties and cannot be

adequately represented by another party." *E.g., In re Del. Trust Co.*, 534 B.R. at 509. The burden

of showing that a party's representation may be inadequate is often described as "minimal," but

courts have "demanded a more rigorous showing of inadequacy in cases where the putative

intervenor and a named party have the same ultimate objective." *In re Ambac Fin. Grp., Inc.,*

*Derivative Litig.*, 257 F.R.D. 390, 393 (S.D.N.Y. 2009).

Mr. Pick takes the position that SFA and its creditors would be best served by dismissal

or abstention by this Court, and he raises concerns of forum shopping on the part of the

Petitioning Creditors. *See* Dismissal Motion at 22–23. The Dismissal Motion details the efforts

Mr. Pick has undertaken to administer SFA's assets economically and efficiently in the

Assignment Proceeding, and asserts that the filing of this case has caused delay in the

administration of SFA's assets by halting an upcoming auction of artwork and an evidentiary

hearing which was scheduled in State Supreme Court. *See* Dismissal Motion at 5–6. Mr. Pick is

the only party advancing these contentions in this Court, while all other parties who filed papers or appeared at the Hearing oppose Mr. Pick's motions or, at best, fail to support those motions.

It is no answer to argue, as the Petitioning Creditors do, that Mr. Pick's interests are closely aligned with those of a Chapter 7 trustee because both Mr. Pick and a Chapter 7 trustee would attempt "to liquidate the debtor's assets in a way that maximizes the largest return possible for the debtor's creditors" to Mr. Pick's efforts to marshal the Debtor's assets. *See* Objection ¶ 73. Mr. Pick seeks to remain the professional charged with achieving and implementing creditor recoveries, and he asserts that he is best positioned to do so. To say that a bankruptcy case would pursue similar remedies does not eliminate the demonstrated possibly that Mr. Pick's interest "may be impaired" if the bankruptcy goes forward, and that reality alone satisfies the requirements of Rule 24. The same reasoning causes the Court to be unmoved by the Petitioning Creditors' observation that Mr. Pick could file a bankruptcy-case proof of claim for his services as Assignee, which they argue might align his interests with others' interests in having a bankruptcy trustee attempt to maximize return for the benefit of all creditors. *See* Objection ¶ 74. In fact, there is a significant chance that causing Mr. Pick to file a proof of claim for the value of his pre-petition services would deprive him of court-approved full fee payment in the state court proceedings, and instead subject him to a possible cents-on-the-dollar recovery as an unsecured creditor of a bankruptcy estate.

Mr. Pick's interests and preferred approach thus are not represented by any other entity currently a party to this bankruptcy case, and accordingly Mr. Pick has satisfied this prong of the applicable intervention-eligibility test.

In sum, Mr. Pick has satisfied all four requirements for intervention as of right under Rule 24.

## 2. Standing-Based Arguments Against Intervention and/or Dismissal

The Objection challenges Mr. Pick's standing or entitlement to be heard here, making

varied arguments under Article III of the U.S. Constitution; the prudential standing doctrine[2];

Section 303(d) of the Bankruptcy Code; and the terms of the Assignment Agreement by which

Mr. Pick was designated as Assignee. These arguments are addressed in turn.

### *Mr. Pick Need Not Establish Independent Article III Standing to Oppose the Relief Petitioning Creditors Seek*

First, the Objection contends that Mr. Pick lacks Article III standing to pursue the relief

he seeks here.  The Supreme Court has instructed, however, that an intervenor as of right must

demonstrate Article III standing only when it seeks additional relief beyond that requested by the

plaintiff. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Where an

intervenor intends merely to oppose the relief that a plaintiff requests, there is no "additional

relief" being pursued, and as a result, the proposed intervenor need not demonstrate independent

Article III standing. *See Gerschel v. Bank of Am., N.A.*, No. 20 CIV. 5217 (NRB), 2021 U.S.

Dist. LEXIS 79191, 2021 WL 1614344, at *3 n.8 (S.D.N.Y. Apr. 26, 2021); *Does 1 Through 7 v.*

*The Taliban*, No. 6:22-CV-990, 2023 U.S. Dist. LEXIS 120155, 2023 WL 4532763, at *5

(N.D.N.Y. July 12, 2023) ("But where a proposed intervenor merely intend[s] to oppose the

---

[2] Case law in this jurisdiction applies Article III standing analysis to intervention applications where the proposed intervenor seeks additional relief beyond that already being sought in the case, but the parties and the Court have not identified cases that subject the proposed intervenor to prudential standing requirements. *See, e.g., 1199SEIU United Healthcare Workers East v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 567 (S.D.N.Y. 2022) ("If non-party intervenors seek different relief from that which the parties to an action are seeking, then the intervenors must demonstrate their Article III standing to pursue that relief." (Citations omitted)); *Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21CV2771, 2022 U.S. Dist. LEXIS 15084, 2022 WL 247996, at *8 (E.D.N.Y. Jan. 27, 2022) ("[A]n intervenor as of right under Rule 24(a)(2) 'must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.'" (Citation omitted)). For this reason, and because other aspects of the Court's ruling make it unnecessary to determine whether the prudential standing doctrine applies, the Court will not apply a prudential standing analysis to the Motion at this time. This ruling is without prejudice to any party's right to raise prudential standing arguments during possible future proceedings regarding Mr. Pick's request that the Court abstain from hearing this matter pursuant to Bankruptcy Code Section 305.

relief that [plaintiff] requests ... [t]here is no additional relief for the Court to consider and so the
proposed intervenor need not independently establish Article III standing." (Citation Omitted)
(Internal quotation marks omitted)).

Thus, to the large extent that Mr. Pick's Dismissal Motion merely opposes the Petitioning
Creditors' request for the entry of an order for relief, Mr. Pick does not need to demonstrate
Article III standing to be heard on that issue.

*Mr. Pick is Barred from Seeking Dismissal of the Petition Under Bankruptcy Code
Section 303(d) Because Only Debtors are Statutorily Authorized to Contest Involuntary
Petitions*

The Objection contends that the Court may not entertain Mr. Pick's Dismissal Motion
because Bankruptcy Code Section 303(d) and Bankruptcy Rule 1011(a) ("**Rule 1011(a)**")
provide that only a debtor may contest an involuntary petition. *See* Objection ¶¶ 60–64. The
Court agrees.

Section 303(d) of the Bankruptcy Code, titled, 'Involuntary Cases,' provides that "[t]he
debtor, or a general partner in a partnership debtor that did not join in the petition, may file an
answer to a petition under this section." 11 U.S.C. § 303(d). Similarly, Rule 1011(a) provides
that "[t]he debtor named in an involuntary petition may contest the petition" and further provides
circumstances applicable to a partnership debtor wherein a general partner may answer a
petition. Fed. R. Bankr. P. 1011(a). Notably absent from these provisions is any express
authorization for any other party to contest an involuntary petition.

As Mr. Pick observes, some courts in other jurisdictions have permitted assignees to
answer a petition in cases where a debtor has not appeared. *See* Intervention Motion ¶ 11 (citing
*In re A&B Liquidating Inc.*, 18 B.R. 922, 925 (Bankr. E.D. Va. 1982); *In re 318 Retail, LLC*, 640
B.R. 407 (Bankr. N.D. Ill 2022)). These cases are materially distinguishable, however, because

they all involve instances where the debtor failed to file an answer to the involuntary petition, whereas here, the debtor, SFA, has appeared and has consented to the petition; in fact, SFA has represented that it likely would file a voluntary bankruptcy petition if the involuntary Petition is dismissed. *In re A&B Liquidating, Inc.* expressly considered the lack of an answer by the debtor as relevant to its analysis, stating, "[i]n light of an assignee's responsibilities and interests, this Court concludes that *absent the filing of an answer by the Debtor*, the assignee for the benefit of creditors has standing to file an answer." 18 B.R. at 925 (emphasis added) (citation omitted).

Mr. Pick's Dismissal Motion calls for dismissal under two distinct legal theories that draw on two separate Bankruptcy Code provisions. The first attacks the Petitioning Creditors' eligibility to file an involuntary case against SFA under Section 303(b), and the second argues that abstention is warranted under Section 305(a) on the theory that the New York State Supreme Court is a more suitable forum. The first contention—Mr. Pick's attack on the Petitioning Creditors' eligibility, sounding in Section 303(b), directly contests the Petition, which is a course of action statutorily reserved for the Debtor and not authorized to be taken by others. *See In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 (Bankr. S.D.N.Y. 2006) (finding that a non-debtor could not move to dismiss an involuntary proceeding on 303(b) petitioning creditor eligibility grounds because "the sufficiency of an involuntary petition may only be challenged by the debtor and not by creditors or third parties […]."). Mr. Pick thus is statutorily precluded from contesting the Petition (*i.e.*, seeking dismissal) under Section 303.

This result does not necessarily extend beyond the workings of Section 303, however, and there is persuasive authority for permitting non-debtor parties in involuntary bankruptcies to seek other types of relief such as abstention under Section 305. *See* 2 Collier on Bankruptcy ¶ 303.20[1] (16th ed. 2023); *see also In re MacFarlane Webster Associates*, 121 B.R. 694, 696–97

(Bankr. S.D.N.Y. 1990) (granting a creditor's motion to dismiss an involuntary case under

Section 707(a)); *see also In re Market XT Holdings Corp.*, 347 B.R. at 160, n. 4 (while a third-

party lacks standing to challenge the sufficiency of an involuntary petition, "[t]here are of course

grounds on which a party in interest may seek dismissal after an order for relief has been entered,

including motions to dismiss or abstain pursuant to 11 U.S.C. §§ 1112 and 305(a).").Thus, the

Court will further consider Mr. Pick's arguments regarding abstention, but will not weigh the

merits of his contentions regarding the Petitioning Creditors' eligibility under Section 303(b).[3]

> ### *The Terms of the Assignment Agreement Reserve Defensive Litigation Rights to SFA, and Thus Independently Preclude Mr. Pick from Seeking Dismissal Under Section 303; Further Briefing is Required as to Mr. Pick's Contentions Relying on Section 305*

The Petitioning Creditors argue—at least partly correctly—that reservation of rights

language contained in the Assignment independently bars Mr. Pick from pursuing the relief he

seeks in this bankruptcy case. The Assignment's Reservation Clause states, "the Assignor shall

retain the sole and exclusive right to *defend* any litigation or investigations (whether civil,

criminal, or regulatory in nature) to which Assignor is a party, to select counsel to represent

Assignor (as well as any former employees, members, and agents of Assignor) in the same, and

to be the sole decision-maker in all such pending or future litigations and investigations." *See*

Dismissal Motion, Ex. A at 3 (emphasis added). Thus, SFA as Assignor expressly retained and

retains the right to "defend" any litigation, but the same contractual language contains no such

reservation of exclusive rights to prosecute or affirmatively pursue litigation claims. This

limitation on the authority conferred on Mr. Pick as Assignee makes him contractually not

---

[3] Creditors have been permitted to question petitioning creditors' pre-petition conduct in moving to dismiss an involuntary petition 'for cause' under Section 707(a). *See In re MacFarlane Webster Associates*, 121 B.R. at 696–97. But Mr. Pick did not advance such an argument here.

entitled to engage in litigation defense of SFA, which is reserved "solely and exclusively" to SFA itself.[4]

An application to dismiss a petition pursuant to Bankruptcy Code Section 303 is inherently "defensive" "litigation."  It is defensive in that it is a motion or other response to a petition that was filed seeking relief against SFA, and it is "litigation" for myriad reasons, including that contested petitions entail motion practice and can lead to discovery and even evidentiary hearings, and that, under the Bankruptcy Rules, contested petitions generally are subject to discovery and other procedural rules that also apply to civil actions generally. *See* Fed. R. Bankr. P. 1018. Mr. Pick's sole contention to the contrary was an unsupported assertion that "contested matters" are different from "adversary proceedings" and thus are not "litigation."  *See* Reply ¶ 3. But this contention is foreclosed by the Advisory Committee Notes to the rule governing contested matters, Rule 9014, which explains that "[w]henever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the *litigation* to resolve that dispute is a contested matter."  1983 Advisory Committee Note to Rule 9014 (emphasis added). Mr. Pick cannot overcome this explicit language that directly contradicts his unsupported position.

The Court therefore concludes that Mr. Pick lacks contractual authority under the terms of his appointment as Assignee to conduct defensive litigation for SFA, but he is not necessarily precluded from pursuing affirmative litigation relief. Thus, and because "contesting" or responding to a petition is a form of defensive litigation, Mr. Pick lacks contractual authority to

---

[4] The unambiguity of the Reservation makes it unnecessary and impermissible to consider parol evidence in the form of a prior draft of the Assignment Agreement that was filed as Exhibit 1 to SFA's Objection Motion [ECF No. 14].

pursue dismissal under Section 303. This limitation is an additional and independent basis to deny the portion of his Dismissal Motion that relies on Section 303.

The Court has not determined with confidence whether seeking abstention under Section 305, whether in the form of dismissal or a suspension of activity in a bankruptcy case, constitutes affirmative or defensive litigation. The parties have not adequately if at all briefed this question, and it is a topic on which an eventual Chapter 7 Trustee may wish to be heard, along with other factors relevant to abstention motions such as which available forum will best serve the interests of creditors and the Debtor. *See In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013). The Court therefore invites but does not require further briefing from the not-yet-appointed Chapter 7 Trustee on whether the terms of Mr. Pick's appointment preclude him from seeking abstention under Section 305, and whether abstention is appropriate on the merits. Upon request, the Court also will consider whether further responsive submissions are appropriate from any other party.

## CONCLUSION

For the reasons stated above, the Court:

1. Grants Mr. Pick's Intervention Motion as of right.

2. Denies in part Mr. Pick's Dismissal Motion to the extent it is premised on Bankruptcy Code Section 303.

3. Directs the prompt issuance of the order for relief pursuant to Bankruptcy Code Section 303(h), without prejudice to further proceedings regarding Mr. Pick's request for abstention pursuant to Bankruptcy Code Section 305 as set forth herein.

4. Invites but does not require any Chapter 7 Trustee who is appointed in this bankruptcy case to file briefing and any supporting submissions concerning Mr.

17

Pick's motion seeking abstention under Bankruptcy Code Section 305 as soon as practicable, and, absent further order of the Court, within three weeks of the date of this Decision and Order.

5. The Court will advise the parties whether it wishes to conduct a further hearing regarding Mr. Pick's application for relief.

6. This Order shall be effective immediately upon entry.

SO ORDERED.


Dated: New York, New York
     March 12, 2024

                                    *s/ David S. Jones*
                                 Honorable David S. Jones
                                 United Sates Bankruptcy Judge