**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Chapter 7 Trustee*
*of the estate of Schiff Fine Art, LLC*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
Jill Makower, Esq.
mbrownstein@tarterkrinsky.com
jmakower@tarterkrinsky.com

**GERON LEGAL ADVISORS LLC**
*Attorneys for Yann Geron, as Chapter 7 Trustee*
*of the estate of Lisa Schiff*
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
Yann Geron, Esq.
Jeannette Litos, Esq.
Nicole N. Santucci, Esq.
ygeron@geronlegaladvisors.com
jlitos@geronlegaladvisors.com
nsantucci@geronlegaladvisors.com

**Hearing Date: September 25, 2024**
**Hearing Time: 10:00 a.m. (ET)**

**Objection Deadline: September 18, 2024**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:

LISA SCHIFF,

               Debtor.

----------------------------------------------------------x

In re:

SCHIFF FINE ART, LLC,

               Debtor.

----------------------------------------------------------x

Chapter 7

Case No. 24-10010 (DSJ)

Chapter 7

Case No. 24-10039 (DSJ)

**NOTICE OF HEARING ON TRUSTEES' JOINT MOTION FOR ENTRY OF: (I) AN ORDER AUTHORIZING THE TRUSTEES TO RETAIN PHILLIPS AUCTIONEERS LLC AS THEIR AUCTIONEER UNDER THE TERMS OF CERTAIN PROPOSED AUCTION AGREEMENTS, PURSUANT TO 11 U.S.C. §§ 327 AND 328 AND FED. R. BANKR. P. 2014 AND 6005; APPROVING THE AUCTION AGREEMENTS AND AUTHORIZING PHILLIPS AUCTIONEERS LLC, AS TRUSTEES' RETAINED AUCTIONEER, TO SELL, BY WAY OF ONE OR MORE PUBLIC AUCTIONS, PRIVATE SALES OR OTHER TRANSACTIONS, CERTAIN ARTWORKS CONSTITUTING PROPERTY OF THE DEBTORS' ESTATES, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m); AND GRANTING RELATED RELIEF; AND (II) AN ORDER SCHEDULING A HEARING ON ANY TIMELY-FILED OBJECTIONS TO THE SALE OF ANY SPECIFIC ARTWORKS, AND GRANTING RELATED RELIEF**

**TO: CREDITORS AND PARTIES IN INTEREST, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES ENTITLED TO NOTICE PURSUANT TO FED. R. BANKR. P. 2002:**

**PLEASE TAKE NOTICE**, that on August 29, 2024, Deborah J. Piazza, as Chapter 7 trustee (the "SFA Trustee") in the above-captioned involuntary Chapter 7 case of Schiff Fine Art, LLC ("SFA"), and Yann Geron, as Chapter 7 trustee (the "Schiff Trustee") in the above-captioned voluntary Chapter 7 case of Lisa Schiff ("Schiff"), filed a joint motion (the "Retention/Sale Motion"), together with the Declaration of Elizabeth von Habsburg (the "von Habsburg Decl.") and the Declaration of Hartley Waltman, Esq. (the "Waltman Decl."), for entry of:

(i)     an order, in substantially the same form as that annexed to the Retention/Sale Motion as Exhibit A (the "Proposed Retention/Sale Order"):

> a) authorizing the SFA Trustee and the Schiff Trustee (the "Trustees"), pursuant to sections 327 and 328 of title 11, United States Code (the "Bankruptcy Code") and Rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to retain Phillips Auctioneers LLC ("Phillips") as auctioneer under the terms of the Auction Agreements;[1] and

> b) approving the Auction Agreements and the terms thereof including authorizing Phillips, as retained auctioneer to the Trustees, to sell, by way of one or more public auctions, private sales or other transactions, certain artworks constituting property of the SFA bankruptcy estate (the "SFA Estate") and certain artworks constituting property of the Schiff bankruptcy estate (the "Schiff Estate"), "as is" and "where is" and without any representations or warranties by the SFA Estate or the Schiff Estate (together, the "Estates") or by the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty) free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m), with the successful bidders and purchasers to be entitled to the status of a good faith purchaser under Bankruptcy Code section 363(m), and with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order of this Court; and

> c) directing that all persons and entities served with notice of the Retention/Sale Motion in accordance with the Bankruptcy Rules and the Local Rules (the "Noticed Parties") are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; and

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Retention/Sale Motion.

d)  directing that, upon the Published Advertisement of the Trustees' anticipated sales of the artworks listed on the Phillips Property Schedules, all persons and entities other than the Noticed Parties (who are required to file any objection to the Retention/Sale Motion or to the sale of any specific artwork(s) listed on the Phillips Property Schedules by the September 18 Objection Deadline) are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline set out in the Published Advertisement; and

e)  directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and

f)  directing that, with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any kind or nature, and all interests or claims of any kind or nature whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips); and

(ii)    an order, in substantially the same form as that annexed as Exhibit F to the Retention/Sale Motion (the "Proposed Sale And Scheduling Order"), authorizing Phillips, as the Trustees' retained auctioneer, to sell all artworks listed on the Phillips Property Schedules, pursuant to the terms of the Auction Agreements, except those artworks excluded by the Trustees or by order of this Court (the "Excluded Artworks") after a hearing on any timely-filed objections to the sale of any specific artworks listed on the Phillips Property Schedules; scheduling a hearing on any timely-filed objections (the "Artwork Objections Hearing"); and granting related relief.

**PLEASE TAKE FURTHER NOTICE**, that the Auction Agreements (Exhibits B and C to the Retention/Sale Motion) are voluminous, and have therefore been intentionally omitted from the mailed copies of the Retention/Sale Motion.  Exhibits B and C have been filed with the Bankruptcy Court.  If you would like copies of the Auction Agreements, please contact the undersigned counsel for the Trustees by email.

**PLEASE TAKE FURTHER NOTICE**, that a hearing on the Retention/Sale Motion will be held via Zoom for Government, before the Honorable David S. Jones, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004 on September 25, 2024, at 10:00 a.m. (the "Hearing").

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to: (i) the Retention/Sale Motion or any of the relief requested therein, or (ii) the sale of any specific artwork(s) listed on the Phillips Property Schedules annexed to the Retention/Sale Motion:

(1)    shall be set forth in a writing describing the basis therefor, identify the specific

artwork(s) at issue, attach all relevant documentation, and conform to the Bankruptcy Rules and the Local Rules; and

(2)     shall be filed and served as follows, so as to be received no later than **September 18, 2024**:

(i)     shall be filed with the United States Bankruptcy Court for the Southern District of New York (a) in accordance with General Order M-399, electronically, by registered users of the Bankruptcy Court's case filing system, or (b) in accordance with Local Rules 5005-1 and 9004-1, submitted to the Clerk of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004;

(ii)    shall be submitted in hard-copy form directly to the chambers of the Honorable David S. Jones, United States Bankruptcy Judge, at the Bankruptcy Court, One Bowling Green, New York, New York 10004 in accordance with Local Bankruptcy Rule 9070-1; and

(iii)   shall be served upon: (a) Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018 (Attn: Michael Z. Brownstein, Esq. and Jill Makower, Esq.), counsel to Deborah J. Piazza, as SFA Trustee; (b) Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1208, New York, New York 10017 (Attn: Yann Geron, Esq.), counsel to Yann Geron, as Schiff Trustee; (c) SFA's counsel, ARTXLAW PLLC, 8 North Front Street, Kingston, New York 12401 (Attn: John R. Cahill, Esq.); (d) Wilk Auslander LLP, 825 Eighth Avenue, Suite 2900, New York, New York 10019 (Attn: Eric J. Snyder, Esq.), counsel to Schiff; and (e) the Office of the United States Trustee, One Bowling Green, Room 534, New York, New York 10004 (Attn: Shara Cornell, Esq. and Attn: Annie Wells, Esq.).

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**PLEASE TAKE FURTHER NOTICE**, that the Hearing before Judge Jones will be held via Zoom for Government.[2] The Hearing may be adjourned, from time to time, by announcement in open Court without any further or other notice thereof.

Dated: New York, New York
      August 29, 2024

 

                                **TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, Chapter 7 Trustee of the estate of Schiff Fine Art, LLC*

By: *s/ Michael Brownstein*
      Michael Z. Brownstein, Esq.
      Jill Makower, Esq.
      1350 Broadway, 11th Floor
      New York, New York 10018
      (212) 216-8000
      mbrownstein@tarterkrinsky.com
      jmakower@tarterkrinsky.com

Dated: New York, New York
      August 29, 2024

                                  **GERON LEGAL ADVISORS LLC**
*Attorneys for Yann Geron, Chapter 7 Trustee of the estate of Lisa Schiff*

By: *s/ Yann Geron*
      Yann Geron, Esq.
      Jeannette Litos, Esq.
      Nicole N. Santucci, Esq.
      370 Lexington Avenue, Suite 1208
      New York, New York 10017
      (646) 560-3224
      ygeron@geronlegaladvisors.com
      jlitos@geronlegaladvisors.com
      nsantucci@geronlegaladvisors.com

---

[2] Any party who wishes to appear at the Zoom Hearing, whether making a "live" or "listen only" appearance before the Court, needs to register by September 24, 2024 at 4:00 p.m. an electronic appearance by going to Judge Jones' chambers page on the Court website, https://www.nysb.uscourts.gov/content/judge-david-s-jones, and clicking on the "eCourtAppearances" tab.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Chapter 7 Trustee*
*of the estate of Schiff Fine Art, LLC*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
Jill Makower, Esq.
mbrownstein@tarterkrinsky.com
jmakower@tarterkrinsky.com

**GERON LEGAL ADVISORS LLC**
*Attorneys for Yann Geron, as Chapter 7 Trustee*
*of the estate of Lisa Schiff*
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
Yann Geron, Esq.
Jeannette Litos, Esq.
Nicole N. Santucci, Esq.
ygeron@geronlegaladvisors.com
jlitos@geronlegaladvisors.com
nsantucci@geronlegaladvisors.com

Hearing Date: September 25, 2024
Hearing Time: 10:00 a.m. (ET)

Objection Deadline: September 18, 2024

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LISA SCHIFF,

                      Debtor.
-----------------------------------------------------------x
In re:

SCHIFF FINE ART, LLC,

                      Debtor.
-----------------------------------------------------------x

Chapter 7

Case No. 24-10010 (DSJ)

Chapter 7

Case No. 24-10039 (DSJ)

**TRUSTEES' JOINT MOTION FOR ENTRY OF: (I) AN ORDER
AUTHORIZING THE TRUSTEES TO RETAIN PHILLIPS AUCTIONEERS
LLC AS THEIR AUCTIONEER UNDER THE TERMS OF CERTAIN
PROPOSED AUCTION AGREEMENTS, PURSUANT TO 11 U.S.C. §§ 327
AND 328 AND FED. R. BANKR. P. 2014 AND 6005;APPROVING THE
AUCTION AGREEMENTS AND AUTHORIZING PHILLIPS
AUCTIONEERS LLC, AS TRUSTEES' RETAINED AUCTIONEER, TO
SELL, BY WAY OF ONE OR MORE PUBLIC AUCTIONS, PRIVATE
SALES OR OTHER TRANSACTIONS, CERTAIN ARTWORKS
CONSTITUTING PROPERTY OF THE DEBTORS' ESTATES, FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS,
PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m); AND GRANTING
RELATED RELIEF; AND (II) AN ORDER SCHEDULING A HEARING ON
ANY TIMELY-FILED OBJECTIONS TO THE SALE OF ANY SPECIFIC
ARTWORKS,
<u>AND GRANTING RELATED RELIEF</u>**

**TO: THE HONORABLE DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Deborah J. Piazza, as Chapter 7 trustee (the "SFA Trustee") in the above-captioned involuntary Chapter 7 case of Schiff Fine Art, LLC ("SFA"), by her retained general counsel, Tarter Krinsky & Drogin LLP, and Yann Geron, as Chapter 7 trustee (the "Schiff Trustee") in the above-captioned voluntary Chapter 7 case of Lisa Schiff ("Schiff"), by his retained counsel, Geron Legal Advisors LLC, submit this joint motion (the "Retention/Sale Motion"), together with the Declaration of Elizabeth von Habsburg (the "von Habsburg Decl.") and the Declaration of Hartley Waltman, Esq. (the "Waltman Decl."), for entry of the following orders:

(i)       an order, in substantially the same form as that annexed hereto as **Exhibit A** (the "Proposed Retention/Sale Order"),

       a)       authorizing the SFA Trustee and the Schiff Trustee, pursuant to sections 327 and 328 of title 11, United States Code (the "Bankruptcy Code") and Rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to retain Phillips Auctioneers LLC ("Phillips") as auctioneer under the terms of the proposed *Seller's Live Auction and Online Auction Agreement with Enhanced Hammer Potential* by and between (i) the SFA Trustee as consignor and Phillips as the SFA Trustee's exclusive agent, annexed hereto as **Exhibit B** (the "SFA Auction Agreement"), and (ii) the Schiff Trustee as consignor and Phillips as the Schiff Trustee's exclusive agent, annexed hereto as **Exhibit C** (the "Schiff Auction Agreement"); and

       b)       approving the SFA Auction Agreement and the Schiff Auction Agreement (together, the "Auction Agreements") and the terms thereof including

authorizing Phillips, as retained auctioneer to the SFA Trustee and the Schiff Trustee (together, the "Trustees"), to sell, by way of one or more public auctions, private sales or other transactions, certain artworks constituting property of the SFA bankruptcy estate (the "SFA Estate") and certain artworks constituting property of the Schiff bankruptcy estate (the "Schiff Estate"), "as is" and "where is" and without any representations or warranties by the SFA Estate or the Schiff Estate (together, the "Estates") or by the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m), with the successful bidders and purchasers to be entitled to the status of a good faith purchaser under Bankruptcy Code section 363(m), and with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order of this Court; and

c) directing that all persons and entities served with notice of this Retention/Sale Motion in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules" or "LBR") (the "Noticed Parties") are precluded from filing an objection to the sale of any specific artwork(s) listed on the schedule annexed hereto as **Exhibit D** (the "SFA/Phillips Property Schedule") or listed on the schedule annexed hereto as **Exhibit E** (the "Schiff/Phillips Property Schedule") after the deadline for objections to the Retention/Sale Motion set forth in the Trustees' notice of the Retention/Sale

Motion, which is September 18, 2024 (the "<u>September 18 Objection Deadline</u>"); and

d)     directing that, upon the Published Advertisement (defined below) of the Trustees' anticipated sales of the artworks listed on the SFA/Phillips Property Schedule and the Schiff/Phillips Property Schedule (each, a "<u>Phillips Property Schedule</u>" and together, the "<u>Phillips Property Schedules</u>") that the Trustees intend to place in a publication such as the New York Times and/or ARTnews, all persons and entities other than the Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the objection deadline set out in the advertisement, which is October 10, 2024 (the "<u>October 10 Objection Deadline</u>"); and

e)     directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and

f)     directing that, with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any kind or nature, and all interests or claims of any kind or nature whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips); and

(ii)    an order, in substantially the same form as that annexed hereto as **Exhibit F**

(the "Proposed Sale And Scheduling Order"), authorizing Phillips, as the Trustees' retained auctioneer, to sell all artworks listed on the Phillips Property Schedules, pursuant to the terms of the Auction Agreements, except those artworks excluded by the Trustees or by order of this Court (the "Excluded Artworks") after a hearing on any timely-filed objections to the sale of any specific artworks listed on the Phillips Property Schedules; scheduling a hearing on any timely-filed objections (the "Artwork Objections Hearing"); and granting related relief.

In support of this Retention/Sale Motion, the Trustees respectfully state as follows:

## PRELIMINARY STATEMENT

1. Schiff, the founder and sole shareholder of SFA, operated SFA from its formation through approximately May 15, 2023, when SFA filed an assignment for the benefit of creditors proceeding in New York State Supreme Court.

2. SFA was engaged in the business of advising and assisting clients in the purchase and sale of fine artworks, including the buying and selling of artworks for its own account and on behalf of clients. The primary assets of the Estates are relatively valuable high-end artworks. The Trustees hereby seek entry of two orders: (i) the Proposed Retention/Sale Order, (a) authorizing the Trustees to retain Phillips, a premier auctioneer with a leading global platform for buying and selling 20th and 21st century artworks, as their auctioneer under the financial and other terms stated in the Auction Agreements; and (b) approving the Auction Agreements and the terms thereof, pursuant to Bankruptcy Code sections 363(b), (f) and (m), including authorizing Phillips, as Trustees' retained auctioneer, to sell, in public auctions, private sales and other transactions, certain artworks which are property of the SFA Estate, and certain artworks which are property of the Schiff Estate (with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order this Court), "as is" and

"where is" and without any representations or warranties by the Estates or the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), free of all liens, claims, interests and encumbrances; (c) directing that all Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; (d) directing that, upon the Published Advertisement (defined below) of the Trustees' anticipated sales of the artworks listed on the Phillips Property Schedules that the Trustees intend to place in a publication such as the New York Times and/or ARTnews, all persons and entities other than the Noticed Parties (who must file an objection by the September 18 Objection Deadline) are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline; and (e) directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and  (f) directing that, with the  exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any type, nature or kind, and all interests or claims of any type, nature, or kind whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips); and (ii) the Proposed Sale and Scheduling Order, authorizing Phillips, as the Trustees' retained auctioneer, to sell all artworks listed on the Phillips Property Schedules, except the Excluded Artworks, pursuant to the terms of the Auction Agreements; scheduling the Artwork Objections Hearing; and granting

related relief.

3.	During the pendency of SFA's assignment for the benefit of creditors proceeding, Phillips performed very substantial due diligence with respect to hundreds of artworks in SFA's inventory, and SFA's assignee for the benefit of creditors entered into a sales agreement with Phillips providing for Phillips to sell numerous artworks. Due to the filing of the involuntary petition against SFA, the contemplated Spring and Fall 2024 sales were put on hold.

4.	In view of the Estates' valuable inventories of fine artworks; Phillips' expertise in selling fine art of the type included in the Estates; Phillips' substantial knowledge of the SFA inventory; and Phillips' previous extensive work in connection with preparing for sales of SFA artworks, it is necessary and appropriate and in the best interest of the Estates for the Trustees to retain Phillips as their auctioneer under the terms of the Auction Agreements, and to approve the Auction Agreements to provide for Phillips to sell property of the Estates free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code section 363(b), (f) and (m), "as is" and "where is", and without recourse against the Estates (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), with any and all liens to attach to the net proceeds in their order of priority under the Bankruptcy Code.  Accordingly, the Trustees request entry of the Proposed Retention/Sale Order shortly after the September 25, 2024, hearing on this Retention/Sale Motion, so that Phillips may commence its preparation for auctions beginning on or around November 18, 2024.

5.	The Trustees further respectfully request entry of the Proposed Sale and Scheduling Order shortly after the September 25, 2024 hearing on this Retention/Sale Motion so that any timely-filed objections to the sale of any specific artwork(s) may be resolved as promptly as practicable.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

6.      This Court has jurisdiction over this Retention/Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

7.      Venue of the Chapter 7 cases of SFA and Schiff (the "Debtors") in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 327, 328 and 363; Bankruptcy Rules 2002, 6004 and 6005; and Local Rules 2002-1, 6004-1 and 6005-1.

## BACKGROUND

### A.  General

9.      On January 4, 2024 (the "Schiff Petition Date"), Schiff filed the above-captioned voluntary Chapter 7 case (the "Schiff Case") in this Court.  Shortly thereafter, Yann Geron was appointed as the interim Chapter 7 trustee of the Schiff Estate, subsequently became the permanent trustee of the Schiff Estate by operation of law and continues in that capacity.

10.     On January 10, 2024, an involuntary Chapter 7 petition was filed against SFA by petitioning creditors Candace Barasch, Adam Sheffer, Lauren Schor and Richard Grossman (collectively, the "Petitioning Creditors"), pursuant to Bankruptcy Code section 303, commencing the above-captioned involuntary Chapter 7 case against SFA (the "SFA Case").

11.     On March 12, 2024, an order for relief was entered in the SFA Case.

12.     On March 15, 2024, the SFA Trustee was appointed the interim Chapter 7 Trustee of the SFA Estate.  [SFA ECF No. 31].  The SFA Trustee became the permanent Trustee in the

SFA Case by operation of law and continues in that capacity.

**B. SFA's Pre-Assignment Proceeding Business Operations**

13. SFA is a New York limited liability company formed in or about 2005. Prior to SFA's commencement of its Assignment Proceeding (defined below), SFA was engaged in the business of advising and assisting clients in the purchase and sale of fine art, including the buying and selling of artworks for its own account and on behalf of clients. SFA's founder and sole member is Schiff.

**C. Background Leading Up To The SFA Case**

14. Schiff was named as a party in lawsuits alleging fraud and other claims against her, and a criminal investigation was commenced relating to these allegations, leading to SFA's May 15, 2023 filing of an assignment for the benefit of creditors proceeding entitled *In the Matter of the General Assignment for the Benefit of Creditors of Schiff Fine Arts LLC, Assignor -to- Douglas J. Pick, Assignee* (Sup. Ct., N.Y. Cty. – Index No. 5100009/2023) (the "Assignment Proceeding") in the Supreme Court of the State of New York, County of New York (the "State Court"). Douglas J. Pick ("Mr. Pick" or the "Assignee") was appointed as Assignee for the Benefit of Creditors of SFA.

15. Upon the commencement of the Assignment Proceeding, the Assignee began his investigation into SFA's business and its inventory of numerous artworks.

16. Prior to the Assignment Proceeding, SFA had stored various artworks at UOVO storage facilities in Long Island City and Orangeburg, New York, and at the DAX Transportation Inc. ("DAX") storage facility in Massachusetts. Prior to the Assignment Proceeding, Schiff also had a storage account in her individual name at DAX.

17. The Assignee determined that SFA owned numerous valuable artworks and other

property that should be liquidated for the benefit of SFA's creditors.  In furtherance thereof, and after due deliberation, the Assignee determined the interests of SFA's creditors would best be served by the Assignee's retention of an experienced art advisor to assist and advise him in identifying, marketing and ultimately liquidating SFA's art property.

18.　　The Assignee consulted with and retained Winston Art Group ("WAG") to serve as his art advisor because of WAG's extensive experience and excellent reputation in providing advisory services with respect to artworks like those in SFA's inventory.  The State Court approved the Assignee's retention of WAG as his art advisor by order entered on June 1, 2023.

19.　　WAG began assisting in the cataloguing and negotiating with auction houses and interested parties, toward the ultimate sale of the property belonging to SFA.  Between WAG's retention by the Assignee and the filing of the involuntary Chapter 7 petition against SFA  on January 10, 2024, WAG expended over nine hundred (900) hours in providing services to the Assignee to create a detailed and comprehensive master inventory list of all property, used its leverage in the art market to negotiate with interested parties for sale of the property, and oversaw all collection management and logistical matters relating to the property.

20.　　WAG personally catalogued and oversaw the collection of works located at 45 White Street (SFA's former place of business) and Schiff's former residence.

21.　　In approximately June 2023, the Assignee and WAG caused certain artworks, books and other items that the Assignee retrieved from SFA's office and Schiff's residence (hereinafter, the "Lockson Stored Artworks") to be stored at the Lockson Inc. ("Lockson") art storage facility in New Jersey.  (Neither SFA nor Schiff ever stored any property at Lockson.)

22.　　WAG identified and catalogued over 1,000 artworks (the "Catalogued Artworks") (including the 285 artworks that the Assignee and WAG moved into Lockson), spread through

many lists and located across multiple sites in Manhattan, Long Island, Massachusetts, and California. WAG liaised with storage companies, galleries, and Schiff and her counsel to confirm locations of hundreds of works, although there remained (and continued to remain) works that are still unaccounted for.

23.     When WAG completed the inventory relating to SFA in a clear enough matter that WAG could approach interested parties for the sale of the Catalogued Artworks, WAG leveraged its close relationships with major and regional auction houses and local furniture and furnishings buyers to obtain competitive estimates and buyout offers for the Catalogued Artworks. WAG also organized the Catalogued Artworks into four buckets: 1) SFA Inventory: Artworks belonging to SFA with no active claims against them; 2) Group-A: Artworks belonging to former SFA clients; Group B: Personal property allegedly belonging to Schiff and Leo Schiff; and Group C: Artworks purportedly under consignment agreements to SFA.

24.     WAG spent considerable time putting together a comprehensive inventory list with as many Catalogued Artworks as could possibly be identified to try to maximize the amount of property that could be sold and thereby maximize sale proceeds. WAG approached auction houses, including Phillips, and negotiated a sale agreement between the Assignee and Phillips, excluding Groups A and C, which the Assignee executed. WAG created clear comparisons of the estimates obtained from various auctioneers and reviewed them with the Assignee to weigh the sales options and arrive at the conclusion that a two-pronged approach of the auction of the higher-value Catalogued Artworks via Phillips combined with the outright sale of the decorative items to Millea Brothers Auctioneers ("Millea") was the path most likely to maximize sale proceeds.

25.     This sale strategy was the product of eight (8) months of work and extensive cataloguing and negotiation efforts. WAG was in the final stages of organizing the Spring and

Fall 2024 auctions of most of the Catalogued Artworks via Phillips which would have generated substantial sums. However, those sales were put on hold when the Involuntary Petition was filed against SFA.

26. As discussed below, based on WAG's conclusion that the auction of the higher-value Catalogued Artworks via Phillips would likely maximize sale proceeds; Phillips' substantial knowledge of the SFA inventory; Phillips' previous extensive work in connection with preparing for sales of SFA artworks; and the very favorable terms to be provided by Phillips, which were negotiated by WAG, the Trustees believe that retaining Phillips as their auctioneer is in the best interests of the Estates.

**D.  Schiff's Chapter 7 Filing**

27. On January 4, 2024 (the "Schiff Petition Date"), Schiff filed the above-captioned Chapter 7 case (the "Schiff Case") in this Court.

28. The Schiff Trustee was subsequently appointed as interim trustee of the Schiff Estate, has since qualified as the permanent trustee of Schiff under the Bankruptcy Code, and is currently serving in that capacity.

29. On February 5, 2024, Schiff filed her Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs. [Schiff ECF No. 8]

30. Schiff's Schedule A/B reflects hundreds of non-exempt assets available for liquidation for the benefit of the Schiff Estate's creditors including high-end artwork, collectibles, costume jewelry and designer handbags. To date, the Schiff Trustee has taken considerable steps to locate, inventory, and secure these assets. In February 2024, at the Schiff Trustee's direction and with his supervision, Maltz Auctions, Inc. ("Maltz") coordinated and conducted a site visit at Schiff's home during which Maltz took into its possession, among other things, over one hundred

pieces of jewelry, several pieces of art, three teak stools, and various collectibles and handbags. Maltz is currently storing these assets for the Schiff Trustee at its secure and bonded warehouse. The Schiff Trustee tasked Maltz with removing and safeguarding certain assets until the Schiff Trustee is prepared to market them for sale. The Schiff Trustee also asked Maltz to remove and store certain Schiff Estate assets that remain stored at the DAX storage facility in Massachusetts following Phillips' and Millea's removal of certain property in preparation for the contemplated sales, as discussed below.[1]

### E.  The Filing of The Involuntary Chapter 7 Case Against SFA

31.     On January 10, 2024, the Petitioning Creditors commenced the SFA Case by filing an involuntary petition against SFA.

32.     On March 12, 2024, an order for relief was entered in the SFA Case.

33.     On March 15, 2024, the SFA Trustee was appointed the interim Chapter 7 Trustee of the SFA Estate.  [SFA ECF No. 31].  The SFA Trustee conducted the § 341 meeting of creditors in the SFA Case on May 1, 2024, and the SFA Trustee became the permanent Trustee in the SFA Case on that date by operation of law.

### F.  The Amended Stipulation Between The SFA Trustee And Mr. Pick So Ordered On May 1, 2024

34.     On May 1, 2024, the Bankruptcy Court "So Ordered" an amended stipulation between the SFA Trustee and the Assignee dated April 24, 2024 (the "SFA Trustee/Assignee Amended Stipulation") [SFA ECF No. 54].

35.     Pursuant to the SFA Trustee/Assignee Amended Stipulation, among other things,

---

[1]  By order of the Court dated July 3, 2024, the Schiff Trustee was authorized to pay Maltz from the funds in the Schiff Estate for its services in connection with this role [Schiff ECF No. 48].

[2]  The Schiff Trustee was a signatory to the DAX Storage Stipulation and consented to the UOVO Storage Stipulation and the Lockson Storage Stipulation.

the Assignee terminated the Assignment Proceeding; the Assignee filed his Final Report and Account [SFA ECF No. 66]; and the SFA Trustee filed applications to retain Tarter Krinsky & Drogin LLP as her general counsel, WAG as her art advisor, Pick & Zabicki LLP as her special counsel, and Eisner Advisory Group LLP as her financial advisors and accountants, all of which applications were granted effective as of March 15, 2024 [SFA ECF Nos. 59, 60, 63, 73].

### G. The Trustees' WAG Allocation Stipulation

36.     On June 11, 2024, the SFA Trustee and the Schiff Trustee entered into a stipulation (the "WAG Allocation Stipulation"), subject to Bankruptcy Court approval, under which they agreed to apportion the prepetition commissions, fees and expenses of WAG as between the SFA Estate and the Schiff Estate.  The WAG Allocation Stipulation was approved by order entered on July 3, 2024.  [Schiff ECF No. 49; SFA ECF No. 92].

37.     On July 8, 2024, the Court entered an order approving the Schiff Trustee's retention of WAG effective as of March 15, 2024 [Schiff ECF No. 50].

### H. SFA's Schedules and Statements of Financial Affairs

38.     On May 16, 2024, SFA filed its Schedules [SFA ECF No. 65] and on August 5, 2024, SFA filed its Statement of Financial Affairs [SFA ECF No. 98].

39.     SFA's Schedule A/B reflects hundreds of artworks.  The SFA Trustee believes that all or virtually all of those artworks either: (a) are owned by SFA, or (b) were consigned to SFA prior to the Assignment Proceeding, or otherwise delivered to or held by SFA for purposes of present or future sale by SFA or its agents.

### I. The Trustees' Stipulations With The Storage Companies, The Trustees' 9019 Motion To Approve The Storage Company Stipulations, And The Rule 9019 Order

40.     As of the filing of the Debtors' Chapter 7 cases, almost all of the Catalogued

Artworks were located at storage facilities operated by UOVO, Lockson and DAX (collectively, the "Storage Companies").  After the Schiff Trustee had Maltz take possession of many of Schiff's personal property, most Schiff property was located at either Maltz or at storage facilities operated by the Storage Companies.

41.     Each of the Storage Companies was owed significant storage fees by the Estates which were continuing to accrue during the Debtors' Chapter 7 cases.   In order to stop the accumulation of storage fees and to prepare for the contemplated sales by Phillips, the contemplated private sale of various artworks by the Trustees to Millea, and the contemplated sales of certain Schiff property by Maltz, the SFA Trustee negotiated and executed stipulations with UOVO (the "UOVO Storage Stipulation"), Lockson (the "Lockson Storage Stipulation") and DAX (the "DAX Storage Stipulation" and, together with the UOVO Storage Stipulation and the Lockson Storage Stipulation, the "Storage Company Stipulations").2   The Storage Company Stipulations provided, inter alia, for the SFA Estate to pay certain amounts owed to the Storage Companies and for each of the Storage Companies to cooperate fully with the Trustees and their agents in (i) releasing all of the SFA and Schiff artworks in its possession, and (ii) allowing all of such artworks to be picked up from the Storage Companies by Phillips and/or Millea or their respective agents (and also by Maltz or its agents, with respect to DAX).

42.     On July 31, 2024, the Trustees filed a joint motion (the "9019 Motion") for an order approving the Storage Company Stipulations.  The 9019 Motion was granted by order entered on August 14, 2024 (the "9019 Order") [SFA ECF No. 108; Schiff ECF No. 57].  The 9019 Order approved the Storage Company Stipulations and, inter alia, authorized the Trustees to execute all documents necessary, including but not limited to the contemplated custody agreements with

---

2 The Schiff Trustee was a signatory to the DAX Storage Stipulation and consented to the UOVO Storage Stipulation and the Lockson Storage Stipulation.

Phillips and Millea, to effectuate the removal of the property from the Storage Companies, the pickup of the property from Lockson and UOVO by Phillips and/or Millea or their respective agents, the taking of custody of the property by Phillips and/or Millea, the pickup of the property from DAX by Phillips and/or Millea and/or Maltz or their respective agents, and the taking of custody of the property by Phillips and/or Millea and/or Maltz.

43. On August 16, 2024, certain of the UOVO Stored Artworks (as defined in the 9019 Motion) were transported to Phillips, pursuant to the terms of the UOVO Storage Stipulation. On August 20, 2024, certain of the Lockson Stored Artworks (as defined in the 9019 Motion) were transported to Phillips, pursuant to the terms of the Lockson Storage Stipulation. Certain of the DAX Stored Artworks (as defined in the 9019 Motion) are scheduled to be transported to Phillips on September 3, 2024, pursuant to the terms of the DAX Storage Stipulation.

**J. WAG's Review of SFA's Artbase Information**

44. In early July 2024, SFA provided the Trustees and WAG with access to SFA's Artbase data. WAG thoroughly reviewed the SFA Artbase data and compared it to the information WAG had previously compiled, including information received from the Assignee, the Storage Companies and Phillips. WAG analyzed this information and prepared a detailed list of the SFA inventory which would be delivered to Phillips from the Storage Facilities and from WAG, and a detailed list of the Schiff inventory which would be delivered to Phillips from the Storage Facilities and from WAG. Those artworks were subsequently delivered to Phillips under the terms of certain custody agreements between the Trustees and Phillips (described below). The Trustees believe each of these artworks (with certain possible exceptions) constitute either property of the SFA Estate or property of the Schiff Estate.

**K. The Trustees' Custody Agreements With Phillips**

45.     On August 14, 2024, the SFA Trustee and Phillips entered into a custody agreement (the "SFA Custody Agreement") providing, *inter alia*, that pending Bankruptcy Court approval of the Trustees' Retention/Sale Motion and the SFA Auction Agreement, the SFA Trustee appoints Phillips as her agent for the temporary removal, care, custody, and control of the property described in the SFA/Phillips Property Schedule, which was attached thereto.  A copy of the fully executed SFA Custody Agreement is annexed hereto as **Exhibit G**.

46.     On August 14, 2024, the Schiff Trustee and Phillips entered into a custody agreement (the "Schiff Custody Agreement") similarly providing that pending Bankruptcy Court approval of the Trustees' Retention/Sale Motion and the Schiff Auction Agreement, the Schiff Trustee appoints Phillips as his agent for the temporary removal, care, custody, and control of the property described in the Schiff/Phillips Property Schedule, which was attached thereto.  A copy of the fully executed Schiff Custody Agreement is annexed hereto as **Exhibit H**.

47.     The SFA Custody Agreement and the Schiff Custody Agreement (the "Custody Agreements") each state that the property on the list attached thereto will be under the care, custody and control of Phillips from the time of release to Phillips until the sales of such property are concluded by Phillips and returned to the locations to be determined by the respective Trustee by a date mutually agreed upon by Phillips and the respective Trustee.  The Trustees filed UCC financing statements in Delaware (where Phillips is incorporated) and in New York to perfect their consignment/security interests in the artworks identified on the Phillips Property Schedules.

## L.  **The Auction Agreements**

48.     WAG negotiated with Phillips for Phillips to provide very favorable terms for sales of the Estates' property, as previously detailed in the Trustees' applications to retain WAG.  [See SFA ECF No. 72; Schiff ECF No. 36].  First, WAG was able to negotiate that the Trustees will

pay a zero (0%) percent Seller's Commission at Phillips.[3]  Second, rather than just obtaining the hammer price on each artwork sold at auction, WAG negotiated with Phillips for the Trustees, as sellers, to receive an additional five (5%) percent of the hammer price on every artwork sold (an "enhanced hammer"). This means that out of the buyer's premium (an amount paid by the buyer in excess of the hammer price that the auction house normally keeps from each artwork sold[4]), the Trustees will receive the full hammer price (with no seller's commission deducted) plus an additional five (5%) percent that Phillips would give up from its buyer's premium[5].  Third, other standard fees that auction houses typically charge to sellers are 1-2% on each artwork for insurance and a per artwork fee for photography and cataloguing of $150 or more.  WAG has negotiated a full waiver of these fees from Phillips.  Fourth, the Estates will benefit from certain marketing and other incentives.  [See SFA ECF No. 72, ¶ 34; Schiff ECF No. 36, ¶ 31].

49.    On August 29, 2024, the SFA Trustee and Phillips entered into the SFA Auction Agreement, subject to Bankruptcy Court approval, and the Schiff Trustee and Phillips entered into the Schiff Auction Agreement, subject to Bankruptcy Court approval.  The Auction Agreements set forth the aforementioned terms and various other terms governing Phillips' sales of property of the Debtors' Estates.

50.    The Auction Agreements provide that the property to be consigned by the Trustees to Phillips under each Auction Agreement will be included as Part 3 of the Auction

---

[3] The industry standard for auction house seller's commissions is 10% at the major auction houses, and 10-20% or more at the regional auction houses.

[4] For each artwork sold at auction by Phillips in the United States, Phillips charges the respective buyer a non-negotiable "Buyer's Premium" in addition to the hammer price as follows: (a) 27% on the amount of the hammer price up to and including $1,000,000; (b) 21% on the amount of the hammer price above $1,000,000 up to and including $6,000,0000; and (c) 14.5% on the amount of the hammer price above $6,000,000. [See SFA ECF No. 72, n. 3; Schiff ECF No. 36, n.3].

[5] As this Court is aware, pursuant to the orders approving the Trustees' retention of WAG, for any Artworks selling for ten thousand US dollars ($10,000) and below, the Trustees agree to pay WAG a fee of eight percent (8%) of the hammer price, and for any Artworks selling for more than ten thousand US dollars ($10,000), the Trustees agree to pay WAG a fee of five percent (5%) of the hammer price.

Agreement. The list of artworks to be attached to the SFA Auction Agreement will be attached after the Court conducts the Artwork Objections Hearing and makes a determination as to which artworks, if any, should be excluded from sale, either because they are not property of the SFA Estate, or pending a resolution of a proper and timely filed objection. The list of artworks to be attached to the Schiff Auction Agreement will be attached after the Court conducts the Artwork Objections Hearing and determines which artworks, if any, should be excluded from sale, either because they are not property of the Schiff Estate, or pending a resolution of a proper and timely filed objection.

51. The Auction Agreements are substantially identical to each other except for the identity of the Trustee and except for the fact that each Auction Agreement will have a different property list attached.

52. The salient terms of the Auction Agreements are as follows:

   a. Phillips As Agent For The Trustees: Each of the Auction Agreements appoint Phillips as the respective Trustee's exclusive agent to offer the Property for sale in the Auctions and in the Online Auctions from the date of entry of an order approving the Auction Agreements until March 31, 2026 unless extended in writing (the "Term").

   b. Conditions of Sale: The Auction Agreements provide that the "contract for sale of the Property will be between [each respective Trustee] and the Buyer(s) and will be as set out in Phillips' Conditions of Sale and Authorship Warranty published in the Auction catalogue, as modified by the Court Order approving this Agreement and/or at www.phillips.com for the relevant Auction (the "Conditions of Sale")." (A copy of the Conditions of Sale is annexed hereto as **Exhibit I**).[6]

---

[6] Phillips' Authorship Warranty states, in part:

   (d) The buyer understands and agrees that the exclusive remedy for any breach of the Authorship Warranty shall be rescission of the sale and refund of the original Purchase Price paid. This remedy shall constitute the sole remedy and recourse of the buyer against Phillips, any of our affiliated companies and the seller and is in lieu of any other remedy available as a matter of law or equity. This means that none of Phillips, any of our affiliated companies or the seller shall be liable for loss or damage beyond the remedy expressly provided in this Authorship Warranty, whether such loss or damage is characterized as direct, indirect, special, incidental or consequential, or for the payment

c. <u>Phillips' Commission</u>: **No commission will be paid by the Estates to Phillips**. Phillips will be compensated by the "Buyer's Premium", defined as "The commission Phillips charges the successful highest bidder and Buyer of a Lot of the Property as detailed in the applicable Conditions of Sale."

d. <u>Net Sale Proceeds, Including 5% Enhanced Hammer Amount, To Be Paid To The Estates</u>: The Estates will be paid the "Net Sale Proceeds," defined as "In relation to each sold Lot, the Hammer Price, plus any applicable Enhanced Hammer Amount less all charges and other amounts owed by the Seller to Phillips Group companies (if any)." Phillips will pay the Estates an "Enhanced Hammer Amount as part of a sold Lot's Net Sale Proceeds that is equal to 5 percent (5%) of the Lot's Hammer Price."

e. <u>Payments By Phillips To The Trustees</u>: Phillips will send the respective Trustee a Lot's Net Sale Proceeds on each Friday of the week in which Phillips has received payment in full and cleared funds of that Lot's Hammer Price plus the full Buyer's premium and any applicable taxes (a Lot's "<u>Purchase Price</u>"), provided the Lot's Purchase Price has cleared by 5:00 PM EST on the Thursday of such week (a "<u>Sweep</u>"). The first Sweep shall start on the second Friday following the auction. If Friday is not a Working Day, payment will be made on the next following Working Day. (any date above that payment is made for a Lot is that Lot's "<u>Settlement Date</u>").

f. <u>Sale Expenses To Be Paid By The Estates</u>: The Auction Agreements provide that the Trustees are to pay: any actual packing and shipping charges related to the delivery of the Property from the Storage Companies' storage facilities to Phillips; any actual packing and shipping charges, to be approved by the Trustees in advance in writing, if any Property must be returned to the Trustees from Phillips; any actual costs related to any applicable repair, restoration and actual conservation, to be approved by the Trustees in advance in writing; any actual costs consented to by the Trustees related to any certificates or physically non-invasive tests or analyses that Phillips considers necessary to verify the authenticity, attribution or quality of the Property. Phillips will pay the shipper and other suppliers agreed to the Auction Agreements and then be reimbursed by the Trustees from the sale proceeds of Phillips' public auction sales.[7]

g. <u>Disputes and Claims/Jurisdiction</u>: The Bankruptcy Court shall retain exclusive jurisdiction with respect to all Auctions and Private Sales conducted pursuant to the Auction Agreements, and including, but not limited to, interpretation of any the terms and conditions in the Auction Agreements; challenges, disputes, or claims arising out of or in connection with the Auction Agreements; and

---

of interest on the original Purchase Price.

[7] The Estates are also liable for certain expenses under the Custody Agreements, each of which provide that the "Trustee will absorb all costs relating to shipping the Property from its current location to Phillips' New York location and any necessary return shipping. Phillips will pay the shipper and be reimbursed by the SFA bankruptcy estate from the sale proceeds of Phillips' public auction sales."

claims arising while the Property is in the care, custody or control of Phillips or the Trustees.

    h.    <u>Withdrawal Fees</u>: The Estates have potential liability for certain withdrawal fees if artworks are withdrawn from sale after October 21, 2024.

53.    This section is intended only to summarize the general terms of the Auction Agreements. This Court and all parties in interest are respectfully referred to the Auction Agreements for their specific terms.

## **RELIEF REQUESTED**

54.    By this Retention/Sale Motion, the Trustees seek entry of the Proposed Retention/Sale Order: (a) authorizing the SFA Trustee to retain Phillips as her auctioneer under the terms of the SFA Auction Agreement, pursuant to Bankruptcy Code sections 327 and 328 and Bankruptcy Rules 2014 and 6005, and authorizing the Schiff Trustee to retain Phillips as his auctioneer under the terms of the Schiff Auction Agreement, pursuant to Bankruptcy Code sections 327 and 328 and Bankruptcy Rules 2014 and 6005; (b) approving the Auction Agreements, including authorizing Phillips, as Trustees' retained auctioneer, to sell, by way of one or more public auctions, private sales or other transactions, artworks listed on the SFA/Phillips Property List constituting property of the SFA Estate, and artworks listed on the Schiff/Phillips Property List constituting property of the Schiff Estate (with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order this Court) after the Artwork Objections Hearing, "as is" and "where is" and without any representations or warranties by the Estates or the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty[8]), free of all liens, claims, interests, encumbrances, and interests

---

[8] Although the sales are without recourse against the Estates or the Trustees or the Trustees' professionals, the Auction Agreements provide that Phillips may, upon notice to the Trustees, cancel a sale of a Lot for certain reasons

pursuant to Bankruptcy Code sections 363(b), (f) and (m); (c) directing that all Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; (d) directing that, upon the Published Advertisement (defined below) of the Trustees' anticipated sales of the artworks listed on the Phillips Property Schedules, all persons and entities other than the Noticed Parties (who were required to file any objection to the Retention/Sale Motion or to the sale of any specific artwork(s) listed on the Phillips Property Schedules by the September 18 Objection Deadline) are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline; and (e) directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and (f) directing that, with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any kind or nature, and all interests or claims of any kind or nature whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips).

55.     The Trustees also hereby seek entry of the Proposed Sale and Scheduling Order, authorizing Phillips, as the Trustees' retained auctioneer, to sell all artworks listed on the Phillips

---

including where Phillips reasonably determines in its good faith judgment, that "the Buyer has a valid claim under Phillips' Authorship Warranty set forth in the Auction's Conditions of Sale", and if the sale of the Lot is cancelled in that circumstance, and Phillips has paid the Trustee the sums due with respect to that Lot, "Phillips will require the Buyer to return the Lot to us, and you will return the Lot's Net Sale Proceeds to Phillips and Phillips will return the full Purchase Price to the Lot's Buyer."

Property Schedules, except the Excluded Artworks, pursuant to the terms of the Auction Agreements; scheduling the Artwork Objections Hearing; and granting related relief.

56.     The Proposed Retention/Sale Order directs that Noticed Parties who have an objection to the sale of any specific artwork listed on the Phillips Property Schedules must file such objection by no later than September 18, 2024, 7 days prior to the September 25, 2024 hearing on this Retention/Sale Motion.  Proof of notice shall be evidenced by the affidavit of service docketed in connection with this Retention/Sale Motion.

57.     In an abundance of caution, and to ensure that all possible creditors, clients, customers, and parties-in-interest of the SFA Estate and the Schiff Estate are put on notice of this Retention/Sale Motion and the contemplated sales, the Trustees intend to place an advertisement of the Trustees' anticipated sale(s) of the artworks listed on the Phillips Property Schedules in a publication such as the New York Times and/or ARTnews (the "Published Advertisement") which applies to persons and entities other than the Noticed Parties.  The Published Advertisement will detail the Trustees' names and contact information, state that sales via Phillips will commence on or about November 18, 2024, provide a link to the Retention/Sale Motion (with access to the Auction Agreements and Phillips Property Schedules), provide a link to Phillips' Conditions of Sale, and, importantly, require all persons and entities other than the Noticed Parties (who must file an objection by the September 18 Objection Deadline) with objections to the sale of any specific artwork(s) listed on the Phillips Property Schedules to file such objection by no later than October 10, 2024.

58.     Objections to the Estates' sales of the artworks on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attached all relevant documentation.

59. This Retention/Sale Motion directs that Noticed Parties who fail to file an objection on or before the September 18 Objection Deadline to the sale of any specific artwork(s) listed on the Phillips Property Schedules will be precluded from objecting to the sale of any of the artworks listed on the Phillips Property Schedules, and persons and entities other than the Noticed Parties that fail to file an objection on or before the October 10 Objection Deadline to the sale of any specific artwork(s) listed on the Phillips Property Schedules will be precluded from objecting to the sale of any of the artworks listed on the Phillips Property Schedules.

## BASIS FOR RELIEF REQUESTED

## I. THE TRUSTEES' RETENTION OF PHILLIPS AS THEIR AUCTIONEER SHOULD BE APPROVED

60. The Trustees hereby seek to retain Phillips as their auctioneer in the Debtors' cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 6005.

61. Bankruptcy Code section 327(a) provides that a trustee, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

62. Bankruptcy Code § 328(a) provides:

(a) The trustee, …, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have

been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

63.     To the best of the Trustees' knowledge and belief, Phillips does not hold or represent any interest adverse to the SFA Estate or the Schiff Estate and, except as set forth below in the [Jones] [Waltman] Decl., has no connections with the Debtors, their creditors or any other parties in interest or their respective attorneys in these cases.  The Trustees believe that Phillips is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

64.     Bankruptcy Rule 2014(a) provides that "An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents or other professionals pursuant to § 327 … of the Code shall be made … on application of the trustee …". Fed. R. Bankr. P. 2014(a).

65.     Bankruptcy Rule 6005 provides, in relevant part, that "The order of the court approving the employment of an appraiser or auctioneer shall fix the amount or rate of compensation…".  Fed. R. Bank. P. 6005.  As discussed above, no commission will be paid by the Estates to Phillips. Phillips will be compensated by the "Buyer's Premium", defined in the Auction Agreements as "The commission Phillips charges the successful highest bidder and Buyer of a Lot of the Property as detailed in the applicable Conditions of Sale."

66.     Local Rule 2014-1 provides that the applicant seeking to be retained "state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee or contingent fee arrangement."  Local Bankruptcy Rule 2014-1. The Trustees have herein complied with these requirements.

67.     Additionally, Local Rule 6005-1(b) provides that "Unless the Court orders otherwise for cause, compensation and reimbursement of expenses shall be allowed to an auctioneer for sales of property as follows…".   Since no commission will be paid by the Estates

to Phillips under the Auction Agreements, and because the expenses provided for in the Auction Agreements (including sale expenses and potential withdrawal fees discussed above) and in the Custody Agreements are reasonable and necessary, the Trustees should be deemed to be in compliance with this rule.

68.     It is necessary and essential that the Trustees employ an experienced auctioneer to expertly sell the Estates' artworks for the benefit of the respective Estates, and that the sales be done in a prudent and efficient manner to maximize the benefits to the Estates and promote the expeditious administration of the Estates.  As demonstrated above, in view of Phillips' excellent reputation and expertise in selling fine art of the type included in the Debtors' Estates; Phillips' substantial knowledge of the SFA inventory; Phillips' previous extensive work in connection with preparing for sales of SFA artworks; and the favorable terms contained in the Auction Agreements, it is necessary and appropriate and in the best interest of the Estates for the Trustees to retain Phillips as their auctioneer.

## II.     THE AUCTION AGREEMENTS AND PROPOSED SALES BY PHILLIPS SHOULD BE APPROVED PURSUANT TO 11 U.S.C. § 363(b), (f) and (m)

69.     Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, the United States Court of Appeals for the Second Circuit, in applying this provision, has required that it be based upon the sound business judgment of the trustee. See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007); In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b)

application must find from the evidence presented a good business reason to grant such application); Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); see also In re Gen. Motors Corp., 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009); Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated.") (citations omitted).

70.     Further, Bankruptcy Code section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

71.     Bankruptcy Rule 6004(f)(l) provides, in relevant part, that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bank. P. 6004(f)(l).

**A.  The Trustees Have Articulated a Reasonable Business Justification for the Proposed Sales of the Artworks By Phillips Under The Terms of The Auction Agreements**

72.     Ample justification exists for approval of the proposed sales of artworks by Phillips under the terms of the Auction Agreements.

73.     Courts typically consider the following factors in determining whether to approve a sale under section 363: (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was given to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith.  See In re Del. & Hudson Ry., 124 B.R. 169, 176 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); In re United Healthcare Sys., Inc., No. 97¬1159, 1997 WL 176574, at *4 and n.2 (D.N.J. Mar. 26, 1997).

74.     A sound business purpose for the sale of a debtor's assets outside the ordinary

course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. See, e.g., In re Abbotts Dairies of Pa. Inc., 788 F.2d 143 (3d Cir. 1986); Lionel Corp., 722 F.2d 1063. In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See Four B Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (In bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res., Inc., 147 B.R. 650, 659 (Bankr.S.D.N.Y.1992) appeal dismissed, 3 F.3d 49 (2d Cir. 1993) ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988))), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).

75.    The business judgment of a trustee is entitled to great deference. In re MF Glob. Inc., 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015); see also In re Borders Grp., Inc., 453 B.R. 477, 483 (Bankr.S.D.N.Y.2011). A trustee generally satisfies the business judgment standard if he or she "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Integrated Res., Inc., 147 B.R. at 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del.1985)). "Courts should not generally interfere with business decisions absent a showing of 'bad faith, self-interest, or gross negligence.' " Borders, 453 B.R. at 482 (quoting Integrated Res., 147 B.R. at 656).

76.    A trustee's business judgment is entitled to great deference with respect to the procedures to be used in selling assets from the estate. See, e.g., Integrated Res., Inc., 147 B.R at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor in possession are to be reviewed according to the deferential "business judgment"

standard, under which such procedures and arrangements are "presumptively valid").

77.     The Trustees have demonstrated that the favorable sale terms which were negotiated with Phillips represent a sound business purpose to market the artworks for sale so that the maximum value of the artworks can be achieved for the benefit of the Estates.  Further, the integrity of the auctions is assured given that Phillips will conduct the auctions professionally, expertly, and in a public forum.

**B.     The Artworks Proposed To Be Sold By Phillips Are Property Of The Estates**

78.     The Schiff Trustee requests authorization to have Phillips sell the numerous artworks owned by Schiff which are listed on the Schiff/Phillips Property List.  Such artworks are property of the Schiff Estate pursuant to Bankruptcy Code section 541(a).  See 11 U.S.C. § 541(a).

79.     The SFA Trustee requests authorization to have Phillips sell the numerous artworks listed on the SFA/Phillips Property List.  All, or virtually all, of such artworks are property of the SFA Estate, and include (a) artworks owned by SFA, and (b) artworks which are property of the SFA Estate pursuant to Bankruptcy Code section 541(a) and the New York Uniform Commercial Code ("UCC").

80.     Various artworks that were consigned to SFA constitute property of the SFA Estate that the SFA Trustee may sell.  If the owner of an artwork (other than the artist/creator or his/her successor in interest who are protected by N.Y. Arts & Cult. Aff. Law § 12.01) delivered the artwork to SFA for the purposes of sale by SFA, the transaction between the owner and SFA constitutes a consignment as defined by New York UCC § 9-102(a)(20).[9]  If the transaction is a

---

[9] N.Y. U.C.C. § 9-102(a)(20) provides:

> (a) Article 9 definitions. In this article:

> ****

consignment as defined by New York UCC § 9-102(a)(20), and the owner did not file a UCC financing statement, the artwork is property of the SFA Estate, and the artwork may be sold by the SFA Trustee for the benefit of SFA's creditors. See N.Y. U.C.C. § 9-319(a) ("Consignee has consignor's rights. Except as otherwise provided in subsection (b), for purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer."); In re A.N. Frieda Diamonds, Inc., 616 B.R. 295, 310 (Bankr. S.D.N.Y. 2020), aff'd, 633 B.R. 190 (S.D.N.Y. 2021)("In addition, if the consignor has not perfected its purchase money security interest then the consigned goods are subject to the claims of the consignee's creditors generally. *Id.* § 9-319(a). Any unperfected security interest is also unenforceable during a bankruptcy case, and a bankruptcy trustee has the same rights with respect to the consigned goods that a creditor of the debtor would have. *See* 11 U.S.C. § 544. In the absence of a perfected purchase money security interest, then, consigned

---

 (20) "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A) the merchant:

(i) deals in goods of that kind under a name other than the name of the person making delivery;

(ii) is not an auctioneer; and

(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(C) the goods are not consumer goods immediately before delivery; and

(D) the transaction does not create a security interest that secures an obligation.

N.Y. U.C.C. § 9-102(20).  Schiff's testimony at the SFA § 341 meeting of creditors reflects that SFA was not "substantially engaged in selling the goods of others."  The SFA Trustee believes the consignments to SFA constitute consignments as defined in § 9-102(20).

goods are treated as property of the estate, and the consignor merely has an unsecured creditor claim against the debtor."); <u>In re G.S. Distribution, Inc</u>., 331 B.R. 552, 561 (Bankr. S.D.N.Y. 2005)("If a transaction is a consignment under § 9–102(a)(20), the consignor must ordinarily file a financing statement in order to protect its interest in the property from the claims of a bankruptcy trustee or debtor in possession acting on behalf of the estate's creditors under the "strong arm powers" of § 544 of the Bankruptcy Code."); <u>see also</u> <u>In re Salander-O'Reilly Galleries, LLC</u>, 475 B.R. 9, 23 (S.D.N.Y. 2012) ("Thus [when a consignor fails to perfect its purchase money security interest by filing a financing statement], the debtor is deemed to have acquired the consignor's rights to allow a security interest to attach to the consigned item ....").

81.     If a transaction involving delivery of artworks to SFA for sale by SFA is not deemed a consignment as defined by New York UCC § 9–102(a)(20), it should be deemed a "sale or return" under New York UCC § 2-326.[10]  <u>See</u> <u>In re Morgansen's Ltd</u>, 302 B.R. 784, 787, 789 (Bankr. E.D.N.Y. 2003), as corrected (Oct. 14, 2003), affirmed in part and remanded in part, 2005 WL 2370856 (E.D.N.Y. 2005)("The standard approach is first to go to section 9–102(a)(20), and if the transaction does not fit under this section, then to go next to section 2–326…[E]very presumption

---

[10] N.Y. U.C.C. Law § 2-326 provides:

> (1)  Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

> (a)  a "sale on approval" if the goods are delivered primarily for use, and

> (b)  **a "sale or return" if the goods are delivered primarily for resale**.

> (2)  Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

> (3)  Any "or return" term of contract for sale to be treated as a separate contract for sale within the statute of frauds section of this Article (Section 2-201) and as contradicting the sale aspect of the contract within the provisions of this Article on parol or extrinsic evidence (Section2-202).

N.Y. U.C.C. Law § 2-326 [emphasis added].

runs against a delivery to a consumer being a 'sale or return' and against a delivery to a merchant for resale being a 'sale on approval.'"); G.S. Distribution, Inc., 331 B.R. at 562 ("Because the consignment arrangement falls outside the definition of consignment in § 9–102(a)(2), the analysis must proceed to § 2–326 of the U.C.C. to determine the respective rights of the Debtor (acting for its general creditors) and [the consignor]").

82.     If the transaction is a "sale or return" within the meaning of UCC § 2-326(2), the artwork may be sold by the SFA Trustee for the benefit of SFA's creditors.  See N.Y. U.C.C.  § 2-326(2) ("Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; **goods held on sale or return are subject to such claims while in the buyer's possession**.")[emphasis added]; Morgansen's Ltd, 302 B.R. at 789 ("Under UCC Section 2–326 as amended, goods which are consigned for sale, are property of the bankruptcy estate of the 'consignee,' and subject to the claims of the creditors of the entity doing the sale (Morgansen's). If a person takes goods to one who is considered a consignee (a 'buyer' for resale) and that buyer files for bankruptcy relief, the buyer/debtor's trustee will take the goods as property of the debtor's estate. Under section 544(a) of the Bankruptcy Code, these goods may be sold by debtor's trustee."), aff'd in part and remanded in part, 2005 WL 2370856 (E.D.N.Y. 2005)("Although the Bankruptcy Court characterized Morgansen's as a " 'buyer' for resale," there is no evidence that title passed from Goss to Morgansen's with respect to any of the consigned items. Thus, with respect to Section 2-326, the Court requires clarification of the term 'buyer for resale' as used by the Bankruptcy Court to define Morgansen's.").

83.     Based on the above, the Trustees believe that all or virtually all of the artworks they propose to have Phillips sell under the terms of the Auction Agreements constitute property of the Estates, either because they are owned by Schiff or SFA, or because they constitute property of the

SFA Estate pursuant to Bankruptcy Code section 541 and the applicable provisions of the New York UCC.

### C. The Sales of the Artworks Should Be Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f) of the Bankruptcy Code

84.     Section 363(f) of the Bankruptcy Code provides that the Court may authorize a sale of property of the estate, "free and clear of any interest in such property of an entity other than the estate," if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); In re General Bearing Corp., 136 B.R. 361, 363-64 (Bankr. S.D.N.Y. 1992).

85.     The Schiff Trustee is not aware of any liens asserted against property of the Schiff Estate. The SFA Trustee is aware of only the following alleged liens in the SFA Case: a blanket lien on all SFA assets asserted in the City National Bank secured claim against SFA in the filed amount of $111,113.23 (Claim no. 6-1) and a blanket lien on all SFA assets asserted in the City National Bank secured claim against SFA in the filed amount of $32,083.30 (Claim No. 7-1). Although the Petitioning Creditors have asserted secured claims against SFA, they appear to have no liens.

86.     The Trustees will satisfy Bankruptcy Code section 363(f)(3) with respect to any and all liens on the artworks to be sold because the price at which such artworks are to be sold is greater than the aggregate value of all liens on such property. In any event, the SFA Trustee intends to pay off City National Bank's secured claims, to the extent valid, from the net proceeds of the first Phillips auction sale.

## D. The Successful Bidders And Purchasers At Sales By Phillips Are Entitled to Good Faith Purchaser Status Pursuant to Section 363(m) of the Bankruptcy Code

87.     The Trustees request as part of the approval of the Auction Agreements, that the Court find the successful bidders and purchasers at the auctions and other sales by Phillips are qualified to acquire the artworks and will do so in good faith within the meaning of section 363(m) of the Bankruptcy Code.

88.     Pursuant to section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  See Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997); In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Abbotts Dairies of Pa., Inc., 788 F.2d at 147; Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985).

89.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith...." 11 U.S.C. § 363(m). Under section 363(m), "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor or other complaining party] stays the foreclosure [or other] sale pending an appeal." Mann v. Alexander Dawson, Inc. (In re Mann), 907 F.2d 923, 926 (9th Cir. 1990).  Section 363(m) fosters the "policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.'"  Reloeb Co. v. LTV Corp (In re Chateaugay Corp., No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. May 10, 1993) (quoting In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 3d Cir. 1986).  See also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m)…provides

that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

90. Finality of the sales is critical in the Debtors' cases and is required by Phillips, as the successful bidders need assurance that their purchases of artworks will not be subject to future attack by any person or entity. Additionally, such assurance is necessary to generate the maximum purchase price for the artworks being sold by Phillips.

### E. Compliance With LBR 6004-1

91. Local Rule 6004-1(c) provides:

(c) *Manner of Display and Conduct of Auction.* Unless the Court orders otherwise, the auction must be conducted in the following manner:

    (1) the property shall be on public display for a reasonable period of time prior to the sale;

    (2) prior to receiving bids, the auctioneer shall announce the terms of sale;

    (3) where practicable, the property shall be offered for sale first in bulk and then in lots; and

    (4) any property that is not to be included in the sale shall be set apart and conspicuously marked "not included in the sale," and such fact shall be announced by the auctioneer before the sale.

SDNY LBR 6004-1(c).

92. The Trustees submit that Phillips, as Trustees' retained auctioneer, should comply with these requirements, with the exception of subsection (c)(3), which should be dispensed within these cases, as such requirement is not in the best interest of the Estates.

93. Local Rule 6004-1(e) provides:

(e) *Proceeds of Sale.* Upon receipt of the proceeds of sale, the auctioneer immediately must deposit the proceeds in a separate account that the auctioneer maintains for each estate in accordance with the requirements of section 345(a) of the Bankruptcy Code. Unless the Court orders otherwise, payment of the gross proceeds of the sale, less the auctioneer's reimbursable expenses, must be made promptly by the auctioneer to the trustee or debtor in possession, but in no event later than fourteen (14) days after the date on which the proceeds are received with respect to each item or lot sold.

SDNY LBR 6004-1(e).

94.     The Trustees submit that the Court may order otherwise and approve the payment

provisions contained in the Auction Agreements.

95.     Local Rule 6004-1(f) provides:

> (f)     *Report of Sale.* Unless the Court orders otherwise, (i) within twenty-one (21)
> days after the last date of the auction, the auctioneer must file a report with the
> Court and transmit a copy of the report to the United States Trustee, and (ii) if
> all proceeds of the auction have not been received by such date, the auctioneer
> must file a supplemental report within fourteen (14) days after all proceeds
> have been received…

SDNY LBR 6004-1(f).

96.     In accordance with Local Rule 6004-l(f), within twenty-one days of each of the

Auction Sales, Phillips shall file a report with the Court summarizing the results of the Auction

Sales and stating the fees and expenses paid to Phillips under the terms of the Auction Agreements.

The reports of sale shall be served on the U.S. Trustee and any other interested party who

specifically requests a copy.  Phillips will also file the affidavit required by Local Rule 6004-1(g).

97.     Local Rule 6004-1(h) provides:

> (h)     *Advertisement and Publication of Notice of Sale.* An advertisement or
> publication of notice of a sale by auction or otherwise may be made without
> Court approval if it is sufficient to provide adequate notice of the sale and is
> advertised or published at least once in a newspaper of general circulation in
> the city or county in which the property is located. The advertisement or
> publication must include: (i) the date, time and place of the sale; (ii) a
> description of the property to be sold including, with respect to real property,
> the approximate acreage of any real estate outside the limits of any town or
> city, the street, lot and block number of any real estate within any town or
> city, and a general statement of the character of any improvements upon the
> property; (iii) the terms and conditions of the sale; and (iv) the name, address
> and telephone number of the trustee or debtor in possession. The Court may
> fix the manner and extent of advertising and publication at any time.

SDNY LBR 6004-1(h).

98.     In an effort to reach as many interested parties as possible regarding the

contemplated sales of the artworks listed on the Phillips Property Schedules via Phillips, the Trustees intend to place the Published Advertisement in a publication such as the New York Times and/or ARTnews providing notice of the Trustees' anticipated sale of such artworks in. The New York Times is an internationally read and respected daily publication available in both print and electronic format. ARTnews is a similarly prominent electronic publication within the art community boasting over 1.4 million unique users and 1.6 million followers on social media[11]. The Published Advertisement will detail the Trustees' names and contact information, state that sales via Phillips will commence on or about November 18, 2024, provide a link to the Retention/Sale Motion (with access to the Auction Agreements and Phillips Property Schedules), provide a link to Phillips' Conditions of Sale, and, importantly, require all persons and entities other than the Noticed Parties, who have any objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules to file such objection by no later than October 10, 2024.

### F. **Waiver of Stay**

99.      Under Bankruptcy Rule 6004(h), orders authorizing the sale of property under section 363(b) of the Bankruptcy Code are "stayed until the expiration of 14 days after entry of the order" authorizing such sale. Fed. R. Bankr. P. 6004(h).

100.      A waiver of the stay requirement under Bankruptcy Rule 6004(h) will allow the impending Fall 2024 auction sales to proceed under the timetable requested and needed by Phillips. For this reason, the Trustees respectfully request that the Court waive the stay requirement under Bankruptcy Rule 6004(h).

101.      Pursuant to M-383 Order, a trustee is required to highlight any "extraordinary provisions" in a separate section of a sale motion. The Trustees submit that there are no

---

[11] https://www.pmc.com/our-brands/artnews

"extraordinary provisions" with respect to the proposed sales that have not otherwise been highlighted herein.

102.    Based on the foregoing, the Trustees respectfully request entry of the Proposed Retention/Sale Order, (a) authorizing the Trustees to retain Phillips as their auctioneer under the terms of the Auction Agreements, pursuant to Bankruptcy Code sections 327 and 328 and Bankruptcy Rules 2014 and 6005; (b) approving the Auction Agreements, including authorizing Phillips, as Trustees' retained auctioneer, to sell, by way of one or more public auctions, private sales or other transactions, artworks listed on the SFA/Phillips Property List constituting property of the SFA Estate, and artworks listed on the Schiff/Phillips Property List constituting property of the Schiff Estate (with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order this Court) after the Artwork Objections Hearing, "as is" and "where is" and without any representations or warranties by the Estates or the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty[12]), free of all liens, claims, interests, encumbrances, and interests pursuant to Bankruptcy Code sections 363(b), (f) and (m); (c) directing that all Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; (d) directing that, upon the proposed Published Advertisement (defined below) of the Trustees' anticipated sales of the artworks listed on the Phillips Property Schedules, all persons and entities other than the Noticed Parties (who were

---

[12] Although the sales are without recourse against the Estates or the Trustees or the Trustees' professionals, the Auction Agreements provide that Phillips may, upon notice to the Trustees, cancel a sale of a Lot for certain reasons including where Phillips reasonably determines in its good faith judgment, that "the Buyer has a valid claim under Phillips' Authorship Warranty set forth in the Auction's Conditions of Sale", and if the sale of the Lot is cancelled in that circumstance, and Phillips has paid the Trustee the sums due with respect to that Lot, "Phillips will require the Buyer to return the Lot to us, and you will return the Lot's Net Sale Proceeds to Phillips and Phillips will return the full Purchase Price to the Lot's Buyer."

required to file any objection to the Retention/Sale Motion or to the sale of any specific artwork(s) listed on the Phillips Property Schedules by the September 18 Objection Deadline) are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline; and (e) directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and (f) directing that, with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any kind or nature, and all interests or claims of any kind or nature whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips).

## **NOTICE OF THIS MOTION**

103.    Pursuant to Bankruptcy Rules 2002(a)(2) and 6004, the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business. Bankruptcy Rule 2002(c) further provides that such notice must include the time and place of any auction and the time fixed for objections to the sale.

104.    A copy of the notice of motion and this Retention/Sale Motion together with all exhibits will be provided to: all creditors and parties in interest; all persons and entities that have filed a notice of appearance in either of the Debtors' cases; all persons and entities included on the customer list contained in SFA's books and records[13] who have been customers of either of the

---

[13] The names and addresses of such persons and entities will be redacted from the affidavit of service of this Retention/Sale Motion to protect the privacy of such persons and entities.

Debtors at any time between January 1, 2018 and the present[14]; the United States Trustee; and the Debtors' Counsel. To reduce costs to the Estates, the Trustees will serve the Retention/Sale Motion jointly, with costs to be allocated proportionally among the estates by stipulation at a later time, and will file joint proof of service to this effect. The Trustees submit that the foregoing service provides ample and sufficient notice of this Retention/Sale Motion and the return date of the hearing regarding same, which is September 25, 2024, at 10:00 a.m. (ET).

105. However, in an effort to capture the universe of all interested parties (including the prior customers of the Debtors), the Trustees intend to place the Published Advertisement in a publication such as the New York Times and/or ARTnews, a well-known electronic publication and website in the art industry. The Published Advertisement will provide secondary notice of the Retention/Sale Motion to a broader audience and will establish a second objection deadline of October 10, 2024, for persons and entities that did not receive notice per paragraph 104 above.

106. The Trustees further submit that (i) notice of the Retention/Sale Motion, and (ii) the contemplated advertising of the Retention/Sale Motion will provide due process to any person or entity whose interest may be adversely affected by the sales of the artworks listed on the Phillips Property Schedules and an opportunity to be heard.

## NO PRIOR RELIEF

107. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Trustees respectfully request that this Court (i) grant the relief requested herein, (ii) enter an order, substantially in the form of the Proposed Retention/Sale Order annexed hereto as **Exhibit A,** (iii) enter an order, substantially in the form of the Proposed Sale

---

[14] The Trustees requested the Debtors to provide such customer list, but no list has been provided by the Debtors.

and Scheduling Order annexed hereto as **Exhibit F**, and (iv) grant such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
      August 29, 2024

           **TARTER KRINSKY & DROGIN LLP**
           *Attorneys for Deborah J. Piazza, Chapter 7*
           *Trustee of the estate of Schiff Fine Art, LLC*

         By:  *s/ Michael* Brownstein
            Michael Z. Brownstein, Esq.
            Jill Makower, Esq.
            1350 Broadway, 11th Floor
            New York, New York 10018
            (212) 216-8000
            mbrownstein@tarterkrinsky.com
            jmakower@tarterkrinsky.com

Dated: New York, New York
      August 29, 2024

           **GERON LEGAL ADVISORS LLC**
           *Attorneys for Yann Geron, Chapter 7 Trustee of*
           *the estate of Lisa Schiff*

        By:   *s/ Yann Geron*
            Yann Geron, Esq.
            Jeannette Litos, Esq.
            Nicole N. Santucci, Esq.
            370 Lexington Avenue, Suite 1208
            New York, New York 10017
            (646) 560-3224
            ygeron@geronlegaladvisors.com
            jlitos@geronlegaladvisors.com
            nsantucci@geronlegaladvisors.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re:

LISA SCHIFF,

                        Debtor.

--------------------------------------------------------------x

In re:

SCHIFF FINE ART, LLC,

                        Debtor.

--------------------------------------------------------------x

Chapter 7

Case No. 24-10010 (DSJ)

Chapter 7 (Involuntary)

Case No. 24-10039 (DSJ)

**ORDER AUTHORIZING THE TRUSTEES TO RETAIN PHILLIPS AUCTIONEERS LLC AS THEIR AUCTIONEER UNDER THE TERMS OF CERTAIN PROPOSED AUCTION AGREEMENTS, PURSUANT TO 11 U.S.C. §§ 327 AND 328 AND FED. R. BANKR. P. 2014 AND 6005; APPROVING THE AUCTION AGREEMENTS AND AUTHORIZING PHILLIPS AUCTIONEERS LLC, AS TRUSTEES' RETAINED AUCTIONEER, TO SELL, BY WAY OF ONE OR MORE PUBLIC AUCTIONS, PRIVATE SALES OR OTHER TRANSACTIONS, CERTAIN ARTWORKS CONSTITUTING PROPERTY OF THE DEBTORS' ESTATES, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m); AND GRANTING RELATED RELIEF**

Upon consideration of the joint motion [Schiff ECF No. _____; SFA ECF No. _____] (the "Retention/Sale Motion")[1] of Deborah J. Piazza, as Chapter 7 trustee (the "SFA Trustee") in the above-captioned involuntary Chapter 7 case of Schiff Fine Art, LLC ("SFA"), and Yann Geron, as Chapter 7 trustee (the "Schiff Trustee") in the above-captioned voluntary Chapter 7 case of Lisa Schiff ("Schiff"), the von Habsburg Decl. and the Waltman Decl., for entry of:

    (i)     an order:

           a)  authorizing the SFA Trustee and the Schiff Trustee (the "Trustees"), pursuant to sections 327 and 328 of title 11, United States Code (the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Retention/Sale Motion.

"Bankruptcy Code") and Rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to retain Phillips Auctioneers LLC ("Phillips") as auctioneer under the terms of the Auction Agreements; and

b) approving the Auction Agreements and the terms thereof including authorizing Phillips, as retained auctioneer to the Trustees, to sell, by way of one or more public auctions, private sales or other transactions, certain artworks constituting property of the SFA bankruptcy estate (the "SFA Estate") and certain artworks constituting property of the Schiff bankruptcy estate (the "Schiff Estate"), "as is" and "where is" and without any representations or warranties by the SFA Estate or the Schiff Estate (together, the "Estates") or by the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m), with the successful bidders and purchasers to be entitled to the status of a good faith purchaser under Bankruptcy Code section 363(m), and with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order of this Court; and

c) directing that all persons and entities served with notice of the Retention/Sale Motion in accordance with the Bankruptcy Rules and the Local Rules (the "Noticed Parties") are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; and

d) directing that, upon the Published Advertisement of the Trustees' anticipated sales of the artworks listed on the Phillips Property Schedules, all persons and entities other than the Noticed Parties (who were required to file any objection to the Sale/Retention Motion or to the sale of any specific artwork(s) listed on the Phillips Property Schedules by the September 18 Objection Deadline) are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline set out in the Published Advertisement; and

e) directing that, objections to the Estates' sales of the artworks listed on the Phillips Property Schedules must state the basis for such objection, identify the specific artwork(s) at issue, and attach all relevant documentation; and

f) directing that, with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests

or claims of any kind or nature, and all interests or claims of any kind or nature whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips); and

(ii)     an order, in substantially the same form as that annexed as Exhibit F to the Retention/Sale Motion (the "Proposed Sale And Scheduling Order"), authorizing Phillips, as the Trustees' retained auctioneer, to sell all artworks listed on the Phillips Property Schedules, pursuant to the terms of the Auction Agreements, except those artworks excluded by the Trustees or by order of this Court (the "Excluded Artworks") after a hearing on any timely-filed objections to the sale of any specific artworks listed on the Phillips Property Schedules; scheduling a hearing on any timely-filed objections (the "Artwork Objections Hearing"); and granting related relief;

and the Court determining good and sufficient notice of the Trustees' Retention Sale/Motion having been given; and no further notice being required; and a hearing on the Sale/Retention Motion having been held on September 25, 2024; and due deliberation thereon having been had; and due deliberation on any timely filed objections by Noticed Parties having been had; and it appearing that Phillips is a "disinterested person" within the meaning of Bankruptcy Code section 101(14); and that Phillips does not hold or represent an interest adverse to the Estates; and that the Trustees' retention of Phillips is in the best interests of the Debtors' Estates and their creditors; and for good cause shown, it is hereby

**ORDERED**, that the SFA Trustee be, and hereby is, authorized pursuant to Bankruptcy Code sections 327(a) and 328 and Bankruptcy Rules 2014 and 6005, to retain Phillips as her auctioneer under the terms of the SFA Auction Agreement; and it is further

**ORDERED**, that the Schiff Trustee be, and hereby is, authorized pursuant to Bankruptcy Code sections 327(a) and 328 and Bankruptcy Rules 2014 and 6005, to retain Phillips as his auctioneer under the terms of the Schiff Auction Agreement; and it is further

**ORDERED**, that the Auction Agreements are approved and their terms are binding upon the parties thereto; and it is further

-3-

**ORDERED**, that Phillips shall be compensated in accordance with the terms of the Auction Agreements without the necessity of filing a fee application; and it is further

**ORDERED**, that Phillips, as Trustees' retained auctioneer, is authorized to sell, in public auctions, private sales and other transactions, certain artworks which are property of the SFA Estate, and certain artworks which are property of the Schiff Estate (with the list of artworks that are authorized to be sold to be attached to the Auction Agreements in accordance with a subsequent order this Court), "as is" and "where is" and without any representations or warranties by the Estates or the Trustees, and without recourse against the Trustees or the Trustees' professionals, and without recourse against the Estates (except solely as to valid claims outlined in Phillips' Authorship Warranty), free of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m); and it is further

**ORDERED**, that in accordance with Local Rule 6004-l(f), within twenty-one days of each of the auction sales, Phillips shall file a report with the Court summarizing the results of the auction sales and stating the fees and expenses paid to Phillips under the terms of the Auction Agreements, and the reports of sale shall be served on the U.S. Trustee and any other interested party who specifically requests a copy; and it is further

**ORDERED**, that Phillips shall file the affidavit required by Local Rule 6004-1(g); and it is further

**ORDERED**, that the Trustees' joint service of the Retention/Sale Order is deemed sufficient; and it is further

**ORDERED**, that all Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the September 18 Objection Deadline; and it is further

**ORDERED**, that all persons and entities other than the Noticed Parties are precluded from filing an objection to the sale of any specific artwork(s) listed on the Phillips Property Schedules after the October 10 Objection Deadline; and it is further

**ORDERED**, that with the exception of any specific artwork(s) listed on the Phillips Property Schedules that is the subject of a timely filed objection, all artworks listed on the Phillips Property Schedules may be sold by Phillips on behalf of the Trustees and shall not be subject to any interests or claims of any type, nature or kind, and all interests or claims of any type, nature, or kind whatsoever shall be released, terminated and discharged as to the successful bidders and purchasers and their successors and assigns, and as to the Estates and the Trustees and their retained professionals (including Phillips); and it is further

**ORDERED**, that upon transfer of title to the artworks on the Phillips Property Schedules, the successful bidders at the auction sales shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and it is further

**ORDERED**, that, notwithstanding Bankruptcy Rule 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof; and it is further

**ORDERED**, that this Court shall retain jurisdiction over any dispute or controversy arising from or related to the entry of this Order.

Dated: New York, New York
_____, 2024

_____
HONORABLE DAVID S. JONES
United States Bankruptcy Judge

091686\1\170856944.v3

# EXHIBIT B



# Seller's Live Auction and Online Auction Agreement with Enhanced Hammer Potential

This document sets out the terms of the agreement between you ("**you**", "**your**", "**Seller**" and/or the "**Trustee**") and us, Phillips Auctioneers LLC ("**Phillips**" "**we**", "**our**", and/or "**us**"), regarding the sale of the Property identified in Part 3 by public live auction and online auction.

This document is comprised of Part 1 (<u>Summary of Commercial Terms</u>), Part 2 (<u>Terms of Sale</u>), Part 3 (<u>Property Schedule</u>), and Part 4 (<u>the Order</u>) which altogether form the terms of the agreement between you and Phillips (the "**Agreement**"). This Agreement is not binding until all parties have signed it. Capitalised words are explained in the Glossary at the end of Part 2.

# Part 1
# Summary of Commercial Terms
(summarised commercial terms are subject to terms and conditions set out more fully in the Agreement)

| | |
|---|---|
| **Name:** Deborah Piazza solely in her capacity as Chapter 7 Trustee of Schiff Fine Art, LLC | **Agreement No:** 04NYG952 |
| **Address:**<br>Tarter Krinsky & Drogin LLP<br>1350 Broadway<br>11th Floor<br>New York, NY 10018<br>Attn: Michael Z. Brownstein, Esq. and<br>Jill Makower, Esq. | **Telephone Number:** 212.216.8000 |
| **Client Number:** 964949 | **Email:**<br>mbrownstein@tarterkrinsky.com<br>jmakower@tarterkrinsky.com |
| **Property Consigned for Sale**<br>See Part 3 (the "**Property Schedule**") | **Scheduled Live and Online Auction Start Date and Venue**<br>We plan to offer the Property at the **Auction(s)** and the **Online Auction(s)** in the location(s) and on the date(s) set forth in the Property Schedule. |
| **Commission You Will Pay:**<br>We will not charge you a seller's commission on the sale of any Property. | **Physical Loss and Damage to Property**<br>Phillips accepts responsibility for physical loss or damage to the Property at Phillips' expense on the terms set out in Part 2 below (see Part 2, Physical Loss or Damage). |

# PHILLIPS

## Sale Expenses You Pay

Any actual packing and shipping charges related to the delivery of the Property from its current location at one of the following warehouses: (i) Direct Art Express, located at 269 Nonotuck Street Florence, MA 01062 ("DAX"), (ii) Uovo Art, located at 41-54 22nd Street, Long Island City, NY 11101 and 33 Kings Highway, Orangeburg, NY 10962 (together, "Uovo"), or (iii) Lockson Inc., located at 90 Enterprise Avenue South Secaucus, NJ 07094 ("Lockson")to Phillips' New York auction premises and Phillips' warehouse locations ("Phillips' Premises").

Any actual packing and shipping charges, to be approved by you in advance in writing, if any Property must be returned to you from Phillips.

Any actual costs related to any applicable repair, restoration and actual conservation, to be approved by you in advance in writing.

With your prior written consent, any actual costs related to any certificates or physically non-invasive tests or analyses that Phillips considers necessary to verify the authenticity, attribution or quality of the Property, provided it is approved by you in advance in writing.

Phillips will pay the shipper and other suppliers agreed to hereunder and then be reimbursed by you from the sale proceeds of Phillips' public auction sales.

(the "**Sale Expenses**")

## Sale Expenses We Pay

Any applicable installation costs.

Any applicable photography fees.

Any applicable marketing fees.

(the "**Sale Expenses**")

## Delivery of the Property

Phillips will arrange delivery of the Property from its current locations to our premises.

If the Property is unsold following the Auction, Phillips will arrange for it to be collected and for it to be returned to you.

## Fees for Withdrawn Property

See Part 2, Paragraph 6, *Withdrawal*.

## Payment

We will make payment only to the Seller named on this Agreement.

We will send you a Lot's Net Sale Proceeds on each Friday of the week in which Phillips has received payment in full and cleared funds of that Lot's Hammer Price plus the full Buyer's premium and any applicable taxes (a Lot's "**Purchase Price**"), provided the Lot's Purchase Price has cleared by 5:00 PM EST on the Thursday of such week (a "**Sweep**"). The first Sweep shall start on the second Friday following the auction. If Friday is not a **Working Day**, payment will be made on the next following Working Day.

(any date above that payment is made for a Lot is that Lot's "**Settlement Date**").

(See Part 2, *Payment*.)

### Enhanced Hammer Amount

We will pay you an **Enhanced Hammer Amount** as part of a sold Lot's Net Sale Proceeds that is equal to 5 percent (5%) of the Lot's Hammer Price.

# PHILLIPS

## Part 2
## Terms of Sale: Your Agreement With Us

### 1. PHILLIPS AS AGENT

This Agreement appoints Phillips as your exclusive agent to offer the Property for sale in the Auctions and in the Online Auctions from the date of entry of an order substantially in the form of the Proposed Retention/Sale Order (defined below) until 31 March 2026 unless extended in writing (the "**Term**"). The contract for sale of the Property will be between you and the Buyer(s) and will be as set out in Phillips' Conditions of Sale and Authorship Warranty published in the Auction catalogue, as modified by the Court Order approving this Agreement and/or at www.phillips.com for the relevant Auction (the "**Conditions of Sale**"). This Agreement shall be submitted to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") in the Chapter 7 bankruptcy case of Schiff Fine Art, LLC ("**SFA**"), captioned *In re: Schiff Fine Art LLC, Case No. 24-10039 (DSJ)* (the "**SFA Bankruptcy Case**") in order to obtain Bankruptcy Court approval after execution and attached to an applicable motion to provide notice to allow any parties to file objections prior to the Auctions. For the avoidance of doubt, this Agreement is conditional upon Bankruptcy Court approval. Any consigned but unoffered Lot(s) that remain physically with Phillips after expiration of the Term shall be treated as withdrawn under the terms of paragraph 6(b) below. Nothing in this paragraph shall prevent Phillips from amending or modifying its Conditions of Sale for any Auction, provided that such amendment does not vary the agreed terms of this Agreement. In the event of any conflict between an Auction's published Conditions of Sale and this Agreement, the terms of this Agreement shall govern the rights and responsibilities of the Seller and Phillips.

### 2. ABOUT YOU AND THE PROPERTY

To ensure Phillips can offer the Property for sale and that any Buyer will acquire full ownership rights in the Property pursuant to appropriate court order, you provide Phillips and the Buyer with the following confirmations:

(a) *Your Confirmations:* You represent and warrant to Phillips and to any Buyer that, to the best of your knowledge and belief:

    (i) The Trustee and Yann Geron (the "**Schiff Trustee**"), as Chapter 7 trustee in In re Lisa Schiff, Case No. 24-10010 (DSJ) (the "**Schiff Bankruptcy Case**") will file a joint motion (the "Retention/Sale Motion"), requesting various relief in the Retention/Sale Motion, which motion and relief is fully incorporated herein as if fully set forth, including seeking entry of (a) the Retention/Sale Order, and (b) the Proposed Sale and Scheduling Order, which terms are defined in the Trustee's Retention/Sale Motion filed in In re Schiff Fine Art, LLC, Case No. 24-10039 (DSJ).

    (ii) Pursuant to the order entered by the Bankruptcy Court approving the Trustees' retention of Phillips under the terms of the Auction Agreements and approving the Auction Agreements (the "**Retention/Sale Order**"), (1) under 11 U.S.C. §§ 363(b) and (f), you are authorized to sell the Property (which will be listed in the Property Schedule to be annexed hereto as Part 3) after the Court conducts the Artwork Objections Hearing, free and clear of all liens, claims, encumbrances and interests of whatever kind or nature with such liens, claims, interests and encumbrances, if any, attaching only to the Net Proceeds of Sale in such order and priority as they existed immediately prior to the date of the relevant Auction; (2) a Buyer of a Lot will be deemed a good faith purchaser and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m); (3) upon a Buyer's full payment of the

Purchase Price for a Lot, no party with any interests or claims against the SFA Estate shall, and any such party shall be enjoined, with respect to any artworks not excluded from sale in any subsequent order of the Bankruptcy Court, from taking any actions to interfere with the Buyer's title, use or enjoyment of the Lot based on or related to such interests or claims; and (4) upon the sale of a Lot and the Purchase Price having been paid for in full and cleared funds by the successful bidder, that successful bidder shall receive along with Phillips' invoice representing the bill of sale for the Lot, the rights of a good faith purchaser pursuant to section 363(m);

    (iii) Notwithstanding the foregoing, the Trustee acknowledges and agrees that in the event of a Lot's cancellation of sale by Phillips in accordance with the terms of part 2, paragraph 8(e) of this Agreement, the SFA Estate shall be responsible to Phillips for the return of the Lot's Net Sale Proceeds received from Phillips from the Lot's sale.

    (iv) you will pay any applicable income taxes that are incurred by the SFA Estate that are due from you in connection with the sale of the artworks; and

    (v) You will submit your W-9 Form to us prior to the Auction;

(b) Phillips represents and warrants to you that

    (i) the Trustee will not be personally responsible for any debts of the Estate to Phillips; and

    (ii) where we are required to do so under applicable law, Phillips will collect any applicable sales taxes from the Buyers of affected Lots and remit such taxes to the appropriate taxing authorities, as set forth in paragraph 14 below.

### 3. PHYSICAL LOSS OR DAMAGE

a) The Trustee acknowledges and agrees that in accordance with the Custody Agreement between the Trustee on behalf of the SFA Estate and Phillips, dated August 14, 2024 (the "**Custody Agreement**"), Phillips and any of its agents will not to carry specific insurance for any Lot while it is in transit to Phillips and until the condition of such Lot is examined and reported to the Trustee. The Trustee has agreed to arrange or cause to be arranged its own insurance for the time that a Lot is picked up and while it is in transit to Phillips warehouses and up to and until the Lot's condition is reported.

b) *Period of Cover:*
The Trustee agrees that Phillips shall not be responsible for any physical loss or damage to any Lot until the Lot's risk of loss has passed to Phillips as set forth in this paragraph and under the terms of the Custody Agreement. A Lot's risk of loss shall pass to Phillips after: (i) Phillips has uncrated the Lot on Phillips' premises; (ii) Phillips created a condition report for that Lot; and (iii) Phillips has provided written notice to the Trustee that (i) and (ii) have been completed. The Trustee agrees that it will have its insurance company endorse its policy for the Property to name Phillips as a "Loss Payee" and an "Additional Insured" to the extent of Phillips' interests as evidenced by a written certificate of insurance provided to Phillips prior to any shipping of any of the Property. Trustee understands that by naming Phillips as an "Additional Insured" on Trustee's insurance policy, Trustee's insurer will not have the right of subrogation against Phillips.

When the risk of loss has passed to Phillips, Phillips will be responsible to you for physical loss or damage to each Lot from until either the Lot ceases to be in our custody and control and

3

# PHILLIPS

the risk of loss has passed to the Buyer, or if the Lot is to be returned to the Trustee, then until such time possession, custody or control is returned to the Trustee and no longer in our or our shipper's possession, custody and control.

c) *Extent of Cover:* For each Lot, Phillips' liability will be limited to an amount up to but not exceeding: (i) the Lot's latest Mid-Estimate, for physical loss or damage prior to the Auction; (ii) the Lot's Hammer Price, for physical loss or damage to sold Property prior to delivery to the Lot's Buyer; or (iii) the Lot's Reserve price, for physical loss or damage to an unsold Lot.

d) *Limits and Exclusions:* Neither Phillips nor our insurers will be responsible for physical loss or damage to a Lot resulting from the following causes:
   (i) inherent defects in the Lot;
   (ii) humidity or change of weather or other atmospheric conditions not within Phillips' control;
   (iii) damage caused by a Lot's mechanical fault or breakdown (if applicable);
   (iv) wear and tear and gradual deterioration of the Lot;
   (v) damage to the Lot caused by war, radioactive contamination and/or cyberattack;
   (vi) damage occurring while the Lot is in the care or custody of a restorer approved by Trustee in writing; and
   (vii) damage occurring while the Property is in Trustee's possession, custody or control or in the care or custody of shipping and packing agents retained by you (even if recommended by Phillips).

## 4. BEFORE THE AUCTION

You agree to Phillips using its experience, judgment and knowledge in deciding when, where and how best to present, market and sell the Property, including:

(a) *Auction Venue and Date:* The Property will be offered for sale in the Auction(s) and Online Auction(s) described in the Property Schedule. We will have the right, after consultation with the Trustee and WAG (time permitting prior to the Auction), to change or reschedule the place, date, time and manner of sale for the Auction or the Online Auction(s) of the Property.

(b) *Marketing and Catalogue:* Phillips will decide, at no cost or expense to you, how best to present and market the Property for sale. You agree that Phillips will decide upon:
   (i) after consultation with you and WAG, the marketing and promotion of the sale of the Property and the Auction and Online Auction;
   (ii) the description, illustration and presentation of the Property in the relevant Auction catalogue, on Phillips' website, and in other marketing materials and, if applicable, the manner and place of any display, exhibition or viewing of the Property by interested bidders;
   (iii) the contents of any condition report, saleroom notice or announcement;
   (iv) the positioning of the Property in the lot order of the Auction and the Online Auction;
   (v) the timing of the opening and closing of bids on Lots within the Online Auction;
   (vi) research and consultation with such experts and databases as Phillips considers necessary in relation to the Property;
   (vii) any physically non-invasive tests or analyses to verify the authenticity, attribution, quality or condition of the Property whether before or after the Auction and the Online Auction; provided that we shall require you or WAG's prior written consent if any such test or analyses are to be at your expense, and
   (viii) how to divide the Property into Lots.

(c) *Copyright:* You agree that Phillips will have the right to photograph, illustrate or otherwise produce images of the Property for marketing purposes. Phillips will own the copyright in all catalogues, images, illustrations and descriptions of the Property created by us and will have the exclusive right to use such materials as we consider appropriate, subject to Phillips obtaining any required third-party copyright permissions. After each applicable Auction, such images will only be used for internal record keeping purposes; provided however, we will not use these images for any commercial purposes other than for the applicable Auction, and they shall be archived in Phillips' digital catalogues including websites and social media accounts.

## 5. RESERVES AND ESTIMATES

Property in Phillips' auctions is offered for sale with a Low and High Estimate, which are published in the relevant auction's catalogue. It is also subject to a confidential Reserve price below which the Property will not be sold.

(a) *Estimates:* The estimates for Lot shall be set out in the Auction catalogue. The low and high estimates provide a guide for potential Buyers of the price range within which the Property may sell. They are statements of opinion and are not a prediction or guarantee of the price at which the Property will be sold.

(b) *Reserves:* The Reserve is the confidential threshold amount below which Phillips will not sell the Property. The Reserve cannot be higher than the low estimate.

(c) *Selling below the Reserve:* You agree that Phillips may sell a Lot below the Lot's agreed Reserve; *provided, however*, that we agree that you shall receive the amount of sale proceeds that you would have received had the Lot been sold at its Reserve.

## 6. WITHDRAWAL

(a) *Withdrawal by Phillips:* We may withdraw any Lot at any time before the Auction or before or during the Online Auction without any liability if in Phillips' reasonable opinion:

   (i) there is doubt as to the authenticity, authorship or attribution of the Lot;
   (ii) there is doubt as to your ownership of the Lot, your authority to sell it, or the Lot's provenance;
   (iii) a claim is made prior to the Lot's Auction by a creditor of the Estate that has not been heard by or fully resolved by the Bankruptcy Court prior to the Lot's Auction;
   (iv) the Lot has been delivered to Phillips but the Bankruptcy Court has not issued an order directing the sale of the Lot by October 21, 2024;
   (v) you have breached any material provision of this Agreement in any material respect that negatively affects our ability to offer the affected Lots or the Property as a whole;
   (vi) the Lot is damaged or not in the same condition as when Phillips agreed to sell it;
   (vii) a hidden defect or restoration is discovered prior to the sale which was not reasonably apparent when Phillips agreed to sell it;
   (viii) offering the Lot for sale could be illegal or expose you, Phillips or the Buyer to legal action or reputational damage; or
   (ix) the Bankruptcy Court issues an Order requiring Phillips to withdraw the Lot.

(b) *Withdrawal by you:*

You may not withdraw any Lot from the Auction or from the Online Auction without Phillips' prior written consent or pursuant to an order of the Bankruptcy Court.

(c) *Consequences of Withdrawal:* If Phillips agrees to you withdrawing a Lot, or an order of the Bankruptcy Court authorizes and/or directs the withdrawal of, any Lot from the Auction or from the Online Auction for any reason, or if Phillips withdraws any Lot for any set forth in subparagraph (a) above, then you will pay Phillips an amount equal to the costs and expenses actually incurred by Phillips in connection with the withdrawn Lot(s), plus; provided however, you shall only be responsible for such amounts if (i) the withdrawal of any Lot(s) occurs after October 21, 2024 or if the aggregate low estimate of the withdrawn Lot(s) exceeds $40,000.

(d) Any Lot that is not offered within the Term of this Agreement and remains in Phillips or its agents' possession, custody or control, shall be considered withdrawn and you agree to pay Phillips an amount equal to the actual costs and expenses incurred by Phillips in connection with the storage of the withdrawn Lot.

## 7. CONDUCT OF THE AUCTION

You agree to Phillips using its experience, judgment and knowledge to conduct and administer the Auction or the Online Auction including the following aspects relating to the sale of the Property.

(a) *Auction Arrangements:* Subject to the Order, Phillips has complete discretion in all aspects of the arrangement and conduct of the Auction and the Online Auction, including, but not limited to, the time, manner and place of exhibition and Auction of the Property, the placement of the Property and other lots within the Auction, which bids to accept and the rules and procedures relating to bidding and sale; the Online Auction interface and registration process; the start and Closing Date and time of the Online Auction and the withdrawal of Lots from the Online Auction.

(b) *Sale Contract:* Subject to the Order, the Auction and sale of the Property will be conducted in accordance with Phillips' Conditions of Sale applicable to the Auction or from the Online Auction, as published in the relevant catalogue and/or on www.phillips.com.

(c) *Bidding below the Reserve:* The Auctioneer, in accordance with global fine art auction house best practices, may protect the value of a Lot by bidding on behalf of Phillips and the Seller in increments up to but below the Lot's Reserve. In no event shall Phillips purchase any Lot from the Auction on its account by doing such bidding nor will Phillips purchase a Lot on behalf of Seller by doing such bidding.

(d) *Charges to the Buyer:* Phillips will charge the Buyer a Buyer's Premium which Phillips will be entitled to keep. The Buyer's Premium is defined in Phillips' Conditions of Sale.

## 8. PAYMENT

(a) *Date of Payment:* Provided Phillips has received payment in full from the Lot's Buyer, and provided the Lot's sale has not been cancelled for any reason allowed under this Agreement, Phillips will pay you the Net Sale Proceeds, as set forth in Part 1 *Payment* section of this Agreement and as set forth below.

(b) *Currency:* The Net Sale Proceeds will be paid to you in US dollars.

(c) *Credit Terms:* The grant of extended payment terms to potential bidders may encourage bidding in the Auction or the Online Auction. Upon the request of a potential bidder determined by Phillips as being a credit worthy client, Phillips may grant extended payment terms to them if they are the successful bidder of any Lot with Low Estimates that exceeds $20,000. Any extended payment terms granted by us shall not exceed sixty (60) days from the date of the Auction or from the Closing Date of the Online Auction as the situation may require. We will pay you any instalment portion of the Net Sale Proceeds no later than five (5) Working Days after we receive cleared payment in full of such instalment from a Buyer.

(d) *Non-payment or late payment by the Buyer:* We do not guarantee that payment will be received from the Buyer of any Lot. If the Buyer is late or fails to pay us when payment is due. Phillips will consult with you to discuss the options available, including the ability for you to pursue the Lot's Buyer in the SFA Case as set forth in the Conditions of Sale. We will, however, have absolute discretion to decide whether we wish to pursue the Buyer and, if so, by what means and ultimately, whether to cancel the sale of a Lot that has not been paid for. Notwithstanding the foregoing, we will notify you if Phillips chooses in our sole discretion to forego or to cease collection efforts against a defaulting buyer. In such case, we shall confer with Seller and provide you with the necessary identification information and documentation for the defaulting buyer so that Seller may in its discretion engage in its own collection efforts. Seller agrees that Phillips shall cooperate with Seller but shall not have any obligation hereunder to participate in Seller's collection efforts including in any litigation, nor shall Phillips be responsible for any costs or other expenses associated with Seller's collection efforts.

(e) *Cancellation of Sale:*

(i) Phillips may, upon notice to you, cancel a sale of a Lot where Phillips reasonably determines in its good faith judgment, that:

(1) A Buyer of the Lot has defaulted on their payment and Phillips has not received full payment of the Lot's Purchase Price from the Lot's Buyer; provided however, such cancellation shall be subject to the Trustee's rights to pursue the defaulting Buyer in the SFA Case,

(2) the Buyer has a valid claim under Phillips' Authorship Warranty set forth in the Auction's Conditions of Sale; or

(3) a claim has been made by a creditor against the sold Lot and such claim has been heard and deemed valid by an order of the Bankruptcy Court.

(ii) For the purposes of this paragraph, the term "cancel" includes the terms "cancellation", "termination", and "rescission" as those terms are defined under the Uniform Commercial Code.

(iii) If the sale of the Lot is cancelled in any of the circumstances in 8(e)(i)(1) to (3) above and
(1) we have not already paid you the sums due under this paragraph, our obligation to pay you such sums will end; or
(2) we have paid you full or partial Net Sale Proceeds due to you, then, in order to put you, Phillips, and the Lot's Buyer back to the position we were all in prior to the sale, Phillips will require the Buyer to return the Lot to us, and you will return to Phillips the Lot's Net Sale Proceeds received by you and Phillips will return to the Lot's Buyer the full amount

of the Lot's proceeds paid to us by the Lot's Buyer. Once we receive the Lot and the Net Sale Proceeds, we will return the Lot to you unless we believe that doing so would expose us to any legal liability. If for this or any other reason beyond Phillips' reasonable control, Phillips is unable to return the Lot to you, you are still required to repay the Net Sale Proceeds to Phillips.

(f) *Transfer of Ownership:* Pursuant to the Retention/Sale Order, a Lot's Buyer who has paid the Lot's full Purchase Price will be deemed a good faith purchaser and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(g) *Phillips' responsibility for Payment:* Phillips will assume the obligation to pay you the Lot's Net Sale Proceeds itself, only if we release a Lot to the Buyer before receiving payment in full. In such event, Phillips will be treated as the owner of the Lot and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(h) *Enhanced Hammer Amount:* We shall only have an obligation to pay you an Enhanced Hammer Amount for a Lot calculated as described in Part 1 of this Agreement if: (i) the Lot is sold at the Auction; (ii) we have received full payment of the Lot's Purchase Price in cleared funds from the Lot's Buyer; and (iii) the sale of the Lot has not been cancelled for any reason. If payable, the Enhanced Hammer Amount will be treated as part of the Lot's Net Sale Proceeds. For the avoidance of doubt, if the Lot is not sold in the Auction, we will not pay you any Enhanced Hammer Amount as part of the Net Sale Proceeds for that Lot.

## 9. POST-AUCTION SALES

Provided you have given us your prior written approval, then for a period of ninety (90) days following (i) the applicable Auction, and (ii) the Closing Date of the Online Auction, you agree that Phillips may sell in a private sale, any Lot which was unsold in the applicable Auction or the Online Auction. In such circumstances, if the Lot is sold for a post-sale Hammer Price that is the equivalent to the Lot's Reserve or greater, then you shall receive the Net Sale Proceeds that you would have received had the Lot sold at that Hammer Price during the Auction or the Online Auction. For any Lot that is sold post-sale for a Hammer Price that is less than the Lot's Reserve, we will not pay you any Enhanced Hammer Amount as part of the Net Sale Proceeds.

Any post-Auction sale by Phillips is subject to the terms and conditions of this Agreement.

## 10. LIMITATIONS ON OUR LIABILITY

(a) While Phillips makes no representations or warranties to you regarding the Property, its provenance, authenticity, attribution, condition or otherwise, we will take reasonable care when preparing Auction and the Online Auction catalogue descriptions and condition reports based on information provided by you, experts we may consult, the risks inherent in describing unique works of art and collectibles, and the time and resources available to us before the Auction and before the Online Auction.

(b) Phillips will not be responsible to you:

(i) for any mistakes or omissions in the description of any Lot of the Property;
(ii) if any Lot of the Property fails to sell or to achieve a particular Hammer Price;
(iii) if a Lot's Buyer fails to pay for the Lot;

(iv) for any special, consequential, incidental or indirect losses, costs or charges of any kind or any loss of profits
(v) for any acts or omissions of restorers, experts, or authentication bodies; or
(vi) for any acts or omissions of shippers, warehouse providers or other contractors not engaged by Phillips.

(c) If, despite the terms of this Agreement, we are found to be responsible to you for any matters arising out of or in connection with this Agreement and/or the services Phillips provides to you in connection with the sale of the Property, we will not have to pay you more than:
(i) the Lot's Hammer Price, if the Lot is sold;
(ii) the Lot's low estimate if the Lot is not offered for sale for any reason; or
(iii) the Lot's Reserve price in all other circumstances.

## 11. DISPUTES AND CLAIMS

This Agreement shall be governed by Federal law, and, where applicable the laws of New York. The United States Bankruptcy Court for the Southern District of New York shall retain exclusive jurisdiction with respect to all Auctions and Private Sales conducted pursuant to this Agreement, and including, but not limited to, interpretation of any the terms and conditions in the Agreement; challenges, disputes, or claims arising out of or in connection with this Agreement; and claims arising while the Property is in the care, custody or control of Phillips or the Trustee.

## 12. ENDING THE AGREEMENT

*Events beyond our control:* Phillips will not be responsible if for reasons beyond our control we fail or are unable to meet our obligations under this Agreement. Such circumstances include, but are not limited to strike, lockout, adverse weather, flood, storm, earthquake, subsidence and other natural disasters, malicious acts by third-parties, failure and shortage of power supply, war, armed conflict, riot, civil unrest, terrorist action, nuclear and chemical contamination, epidemics, pandemics, and travel bans or other government restrictions on commercial activity.

## 13. PRIVACY

We take the privacy of your information seriously. Unless necessary for the provision of services you have requested from us or as otherwise agreed with you, we do not share your personal data with anyone outside of the Phillips Group.

(a) *Verifying Identity:*

(i) You confirm that your name and address as set out in Part 1 of this Agreement are accurate. You will provide us with any documents or evidence required to verify your identity to comply with our compliance and verification procedures.
(ii) If you are acting as agent for the owner(s) of the Property, you will identify them to us and will provide us with any documents or evidence required to comply with our compliance and verification procedures.

(b) *Using Your Personal Data:*
You understand that we may use your personal data in accordance with our privacy policy as published at www.phillips.com or available by emailing dataprotection@phillips.com.

Our privacy policy sets out:

(i) the types of personal data we will or may collect and use;

(ii) the purposes for which we will or may use your personal data, including for example the provision of auction, private sale, shipping, storage and related services; the performance and enforcement of these terms and conditions; the carrying out of identity and credit checks; keeping you informed about upcoming auctions, exhibitions and special events; and generally where reasonably necessary in the management and operation of our business;

(iii) the lawful bases on which we rely in undertaking our use of your personal data;

(iv) your rights in respect of our use of your personal data; and

(v) other information as required by applicable laws**.**

(c) *Your rights over your personal data:* Our privacy policy explains the rights you have in respect of your personal data, including accessing the personal data we hold about you and correcting it if it is outdated or incorrect.

(d) *Sharing personal data:* We may share your personal data with other parties as described in our privacy policy.

(e) *Transferring personal data:* Phillips is an international business and operates globally through a network of affiliates worldwide. Your personal data may therefore be transferred and used by companies within the Phillips' Group worldwide. If you are resident in the United Kingdom ("UK") or the European Economic Area ("EEA") we will put in place appropriate safeguards to ensure adequate protection of your personal data when it is transferred outside of the UK or the EEA.

## 14. TAXES

(a) *Sales Tax:* We agree to collect sales taxes from a Lot's Buyer and remit that Lot's tax payment to the appropriate taxing authority where and when we are required to do so under applicable law. You will not be responsible for collecting any sales tax from any Lot's Buyer.

(b) *Your Tax Liability:* You agree to pay any income taxes for which the Bankruptcy Estate is liable for from the sale of the Property when and where required.

(c) You are a "U.S. person", as defined under the US Internal Revenue Code of 1986 (the "IRC"), as such, Phillips will be required to file an informational Form 1099-K report with the Internal Revenue Service (the "IRS") if our payments to you in settlement of this Agreement are equal to or greater than Six Hundred US Dollars (USD$600). In such event, we must report: (i) the gross amount of all reportable payments made to you under this Agreement; and (ii) your name, address, and your taxpayer identification number. After the completion of a calendar year, we shall provide you with a copy of the Form 1099-K applicable to transactions that occurred under this Agreement in such calendar year. You shall have fourteen (14) days from our delivery of such Form 1099-K to you to provide us with any comments or corrections you may have. If we do not receive any comments or corrections from you within such fourteen (14) day period, such non-response shall constitute a representation by you that all information contained in the Form 1099-K is true and accurate to the best of your knowledge.

(d) You hereby agree that:

(i) you will timely provide Phillips with either the applicable completed IRS forms and any other related documentation we may require to satisfy our Form 1099-K reporting obligations;

(ii) you will provide Phillips with an IRS Form W-9;

(iii) in the event you do not complete a Form or any other documentation we request from you which is related to our obligation to file Form 1099-K: (x) Phillips may delay

payment to you of any Net Sale Proceeds; and (y) Phillips will be entitled to withhold any U.S. federal taxes due on any payment made to you as may be required by law; and

(iv) if Phillips does not receive any comments or corrections from you to any Form 1099-K provided to you within the fourteen (14) day period described in subparagraph (a) above, such non-response by you shall constitute a representation by you that all information contained in any such Form 1099-K is true and accurate to the best of your knowledge.

## 15. MISCELLANEOUS PROVISIONS

(a) *Entire Agreement:* Subject to signature by you and by Phillips of this Agreement, this Agreement and the Retention/Sale Order, and any further orders of the Court relating to any sale by Phillips of any of the Property and any artworks which may be excluded from the sale f o r m the whole agreement between you and Phillips in respect of the sale of the Property, superseding any agreements you may have previously signed with Phillips with respect to the Property. By signing this Agreement, you agree that there are no other promises, terms, conditions, understandings, arrangements or obligations oral or written other than those contained in this Agreement, the Custody Agreement between Phillips and the Trustee, and the Retention/Sale Order and any other relevant orders of the Bankruptcy Court.

(b) *Amendment:* No variation of this Agreement will be valid unless confirmed in writing and signed by you and us. If necessary, the modification of this Agreement shall be subject to approval by the Bankruptcy Court.

(c) *Validity:* If a court of competent jurisdiction finds part of this Agreement invalid, illegal or unenforceable, that part of the Agreement will be considered deleted, and the rest of this Agreement will not be affected and will remain in full force and effect.

(d) *Transferring Rights and Responsibilities:* This Agreement will be binding upon you and us and permitted successors and assigns. Neither you nor Phillips may assign this Agreement without the prior written consent of the other party, except that Phillips may assign this Agreement to any of Phillips' Group companies without your prior consent.

(e) *Notices:*

(i) Notices to Phillips must be in writing and addressed to the General Counsel, Americas of Phillips, Hartley Waltman at hwaltman@phillips.com and Director of Trusts, Estates and Valuations, Jennifer Jones at jjones@phillips.com.

(j) Notices to the Estate must be in writing and addressed to the Trustee's counsel, Michael Z. Brownstein at mbrownstein@tarterkrinsky.com and Jill Makower at jmakower@tarterkrinsky.com.

(k) *Third Party Rights:* A person, firm, company or corporation who or which is not a party to this Agreement will have no right to enforce any term of this Agreement.

(k) *Signing:* Each of us may sign this Agreement by way of separate documents and electronically. Each document taken together will constitute one and the same signed Agreement.

## GLOSSARY

**Agreement:** The terms and conditions of all parts of this document taken together.

**Auction:** is a Phillips physical auction where bidding is accepted by a live in-person auctioneer through various means of bidding that may

include, in-room bidding, phone bidding, absentee written bids, as well bidding through internet platforms.

**Auction FX Rate**: The applicable foreign currency to Saleroom Currency exchange rate quoted to our treasury department on the applicable Auction Closing Date, which rate will be final and binding.

**Authorship Warranty:** The warranty in respect of the authorship of the Property as referred to in Phillips' Conditions of Sale.

**Buyer**: The highest bidder and successful Buyer of a Lot at the Auction accepted by the Auctioneer.

**Buyer's Premium:** The commission Phillips charges the successful highest bidder and Buyer of a Lot of the Property as detailed in the applicable Conditions of Sale.

**Catalogue FX Rate:** The applicable foreign currency to Saleroom Currency exchange rate quoted to us by our treasury department on the last practical date before the printing or publishing of the catalogue, which rate shall be final and binding.

**Conditions of Sale:** The terms governing bidders and Buyers on one hand and Phillips and sellers on the other hand, as published on our website and in the Auction catalogue, comprising the Conditions of Sale and Authorship Warranty.

**Enhanced Hammer Amount**: The additional amount of Net Sale Proceeds calculated as set out in Part 1.

**Hammer Price:** The amount of the highest bid the auctioneer accepts for the Property in the Auction and the Online Auction.

**High Estimate:** The higher figure in the estimate range within which Phillips in its reasonable opinion considers a Lot may sell.

**Lot:** An item of Property or a set of items of Property sold together as a group.

**Low Estimate:** The lower figure in the estimate range within which Phillips in its reasonable opinion considers a Lot may sell.

**Net Sale Proceeds:** In relation to each sold Lot, the Hammer Price, plus any applicable Enhanced Hammer Amount less all charges and other amounts owed by the Seller to Phillips Group companies (if any).

**Online Auction:** is a Phillips auction where bidding is accepted by us without a live auctioneer within a timed limited period on an internet platform only and not by any other means of bidding.

**Online Auction Closing Date:** the final date that property is offered for public sale by Phillips at the Online Auction.

**Online Conditions of Sale:** The terms governing bidders and Buyers on one hand and Phillips and sellers on the other hand, in online auctions as published on our website comprising the Conditions of Sale and Authorship Warranty.

**Phillips:** The Phillips company or companies listed on page 1 of this Agreement.

**Phillips Commission:** The commission charged by Phillips to you for its services under this Agreement as referenced in Part 1.

**Phillips Group:** All companies from time to time within the Phillips group of companies and in respect of watches, Phillips Fine Watches Limited.

**Property:** One or more Lots of Property as listed in Part 3 either individually or collectively as the context requires.

**Purchase Price:** The amount of a Lot's Hammer Price plus the Lot's applicable Buyer's Premium plus any applicable sales, use and/or VAT taxes due from the Lot's Buyer.

**Reserve:** The confidential value below which a lot may not be sold. The reserve for each lot cannot exceed the Low Estimate.

**Seller:** The person(s) identified in Part 1.

**Settlement FX Rate:** The saleroom auction currency to foreign currency exchange rate quoted to us by our treasury department on the date we pay you the Net Sale Proceeds which rate shall be final and binding.

**Working Day:** is any day other than a weekend or public holiday that Phillips' offices are open for business in the Auction site for the Property. If payment is to be remitted to you on a date that is not a Working Day, we will remit that payment on the next day that is a Working Day.

# PHILLIPS

I agree to the terms of Parts 1, 2 and 3 of this Agreement Number 04NYG952

Signed by: _____
Name:   Deborah Piazza solely in her capacity as Ch. 7 Trustee of Schiff Fine Art, LLC
Dated: _____

Signed: _____
For and on behalf of Phillips Auctioneers LLC
Title: _____
Dated:_____



## Part 3.  Property Schedule

To be attached

# PHILLIPS

## Part 4.  The Order

# PHILLIPS

## Payment Instructions

| | |
|---|---|
| Consignor: **Deborah Piazza solely in her capacity as Ch. 7 Trustee of Schiff Fine Art, LLC** <br> Consignor Address: <br> Tarter Krinsky & Drogin LLP <br> 1350 Broadway <br> 11th Floor <br> New York, NY 10018 <br> Attn: Michael Z. Brownstein, Esq. and <br> Jill Makower, Esq. <br> Client Number: 964949 | Agreement Number: 04NYG952 <br> Agreement Date: 28 August 2024 <br> Sale Details: See Property Schedule |

This letter authorises funds to be transferred to the account details below <span style="color:red">(please note that we can only send payment to Deborah Piazza solely in her capacity as Ch. 7 Trustee of Schiff Fine Art, LLC)</span>. Net sale proceeds will be paid by bank transfer to the account specified below and in the currency of the auction unless specified otherwise at least three business days prior to the date of the sale. Please be advised that Phillips is only responsible for our own bank charges and not those of the beneficiaries/correspondent bank charges.

| Wire Transfers | |
|---|---|
| Beneficiary Bank Name: | |
| Beneficiary Bank Address: | |
| | |
| Beneficiary Bank Post Code/Zip Code: | |
| Beneficiary Bank Account Name: | **Deborah Piazza solely in her capacity as Ch. 7 Trustee of Schiff Fine Art, LLC** |
| Beneficiary Bank Account Number: <br> *(if outside the UK and EU)* | |
| Beneficiary Bank Account IBAN Number: <br> *(Required for all UK and EU banks)* | |
| Beneficiary Bank Account BIC/SWIFT Code: <br> *(or Fedwire Code if BIC/SWIFT not applicable)* | |
| Beneficiary Bank ABA Number: <br> *(Required for USA to USA Bank Transfers)* | |
| Please provide preferred correspondent bank details (as recommended by your account holding bank): | |
| Special Instructions: | |
| | |
| | |
| Reference: | |
| ☐ **I am** a US Person under the IRS definition for 1099-K filings (please next page for IRS details) <br> <u>OR</u> <br> ☐ I am **NOT** a US Person under the IRS definition for 1099-K filings (please see next page for IRS details) | |
| Signature: <br> *(Must match the Seller's Agreement Signature)* <br> **Deborah Piazza solely in her capacity as Ch. 7 Trustee of Schiff Fine Art, LLC** | |

12

# PHILLIPS

- Effective January 1, 2022, the US Internal Revenue Code[1] ("IRC") requires auction houses to file an annual informational Form 1099-K that reports the sale proceeds paid and services given to "U.S. persons" under their seller's consignment agreements. Phillips is not required to file this 1099-K report for non-U.S. persons.

- A U.S. person is any (i) U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust .

- Phillips must report all consignment settlement payments made to U.S. persons in the prior calendar year that equal or exceed Six Hundred US Dollars (US $600). Other required information includes: the U.S. person's name, their address, and their U.S. taxpayer identification number.

- In order to confirm your status to us as either a U.S. person or a non-U.S. person, please fully complete the correct form which is either a: (i) W-9 for U.S. persons; or (ii) a W-8 for non-U.S. persons. Please see the chart below that may help you distinguish which form you choose to use for this purpose. These forms will be kept confidential. We are not required to file these forms with the IRS.

- You must provide us with a copy of your W-9 or W-8 prior to your consignment's Settlement Date. We will not remit your Net Sale Proceeds due to you until you have done so. Please see below for a general description of each type of form that may be used for this purpose and to determine which one you should use.

| Form Name | General Description of who the form applies to* |
|---|---|
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN:https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E:https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI:https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP:https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY:https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

For further questions you may have about this process, please see the FAQ sheet that has been added to this communication.

*This document does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

---

[1] Please refer to Internal Revenue Code of 1986, as amended, section 6050W for full details on the reporting requirements.



**1099-K Information Reporting: Frequently Asked Questions**

All auction houses must file an annual Form 1099-K informational report to the Internal Revenue Service ("**IRS**") concerning transactions conducted on behalf of Buyers and sellers of goods and services. Phillips Auctioneers LLC, and each of our worldwide affiliates ("**Phillips**", "**we**", "**our**"), are subject to this reporting obligation.

This FAQ describes (i) the persons for whom we must file a Form 1099-K; (ii) what information we are obligated to report on a Form 1099-K; (iii) how we may collect the information required for such form; and (iv) what notice we will provide to you prior to the filing of such form.

We note that while Phillips will prepare the annual Form 1099-K, and we provide you with a copy of the form for your review prior to it being filed with the IRS, we are not your tax advisor, and you should always seek advice from your tax advisor first with respect to any questions you may have about this process.

1. **What is the purpose of the Form 1099-K?**

The 1099-K form is not to report any taxes due or collected. The form is only meant to collect information on transfers of funds so that the IRS may monitor suspected underreporting of income. The IRS primarily uses the form to ensure that income is not underreported on the income tax returns of people who have less conventional income streams (for example, freelance workers).

2. **Why am I hearing about this now? Is this a new reporting requirement?**

Prior to January 1, 2022, auction houses only had to file a Form 1099-K when the auction house: (i) transferred more than $20,000 to a payee; and (ii) made an aggregate number of 200 payments to that payee in a calendar year. This reporting threshold, known as a de minimis rule, greatly limited the number of instances in which an auction house had to file a Form 1099-K.

However, effective as of January 1, 2022, the IRS altered the de minimis threshold and now we must report *any* payment to a U.S. person in settlement of a consignment in amounts that exceed $600. To be clear, this wider reporting obligation applies to payments made on or after January 1, 2022. It does not apply to any payments we have made to you prior to January 1, 2022.

3. **How do I know if I am a person for whom Phillips must file a Form 1099-K?**

Phillips must file a Form 1099-K for any reportable payments made to U.S. persons only. A U.S. person for tax purposes means: (i) any U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) any person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust.

Phillips is not required to file the form for payments to persons or entities who are not U.S. persons. However, prior to making a payment to a non-U.S. person payee, we must have documentation that we can rely upon to ensure the payment is not being made to a U.S. person in order for us to not have to report that payment to the IRS.

If we do not have the appropriate documentation from you in our files, we will withhold our payment to you of the Net Sale Proceeds until you have provided us with this documentation.

4. **What is reported on a Form 1099-K?**

Form 1099-K requires us to provide the name, address, and taxpayer identification number of each U.S. person payee. In addition, we must report the gross amount of all reportable payments made to each U.S. person in a calendar year.

Under the IRC, settlements payments of both auction and private sale consignment are reportable. We must report the gross amount which may include fees we have charged to you (such as seller's commission and/or sale expenses), so the reported gross amount may not exactly match the net amount of money actually remitted to you.

The amount is reported on the form is aggregated by month and year. For instance, if we issue three installment payments to you for a sale of a painting, two of which occur in the same month, the payments which occur in the same month would be aggregated on the form and the other will be in the other month noted.



5.   **What will Phillips request of me in order to properly file any necessary Form 1099-K's?**

In order to determine if we are required to file a 1099-K report, we must confirm if you are or are not a U.S. person. If you are a U.S. person, we must report payments made to you; we do not have a reporting obligation if you are not a U.S. person.

All consignors must submit to us a complete d IRS Form W-9 or W-8 if we don't already have your current Form in our records. Generally, U.S. persons will submit a W-9 form to us and non-U.S. persons will submit the applicable W-8 form to us as set out in the chart below. A properly filled out form will ensure that we only file a 1099-K Report with the IRS for U.S. person transactions.

| Form Name | General Description of who the form applies to* |
|---|---|
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN: https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E: https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI: https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP: https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY: https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

*This does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

6.   **How do I get the proper Form W-9 or W-8 to Phillips?**

For the W-9 form, please direct your browser to the following link https://www.irs.gov/pub/irs-pdf/fw9.pdf and fully complete the W-9 form and return it to your Phillips contact.

For the W-8 form, please determine the correct form (using the matrix above or by going to: https://www.irs.gov/forms-pubs/about-form-w-8 for additional information), download it, complete it and then send it back to your Phillips contact.

**W-8BEN:** https://www.irs.gov/pub/irs-pdf/fw8ben.pdf
**W-8BEN-E:** https://www.irs.gov/pub/irs-pdf/fw8bene.pdf
**W-8ECI:** https://www.irs.gov/pub/irs-pdf/fw8eci.pdf
**W-8EXP:** https://www.irs.gov/pub/irs-pdf/fw8exp.pdf
**W-8IMY:** https://www.irs.gov/pub/irs-pdf/fw8imy.pdf

7.   **Will I have an opportunity to review the Form 1099-K that Phillips reports for any reportable payments made to me?**

If Phillips must file a Form 1099-K for any reportable payments made to you, Phillips will provide you with a completed Form 1099-K on or before January 31 of the calendar year after which such payment is made. You will have fourteen (14) days to review the return and confirm the accuracy of all information reported therein. You are required to notify us if there is any change in your identifying information that we must report on the Form 1099-K.

Agreement No. 04NYG952

# EXHIBIT C



# Seller's Live Auction and Online Auction Agreement with Enhanced Hammer Potential

This document sets out the terms of the agreement between you ("**you**", "**your**", "**Seller**" and/or the "**Trustee**") and us, Phillips Auctioneers LLC ("**Phillips**" "**we**", "**our**", and/or "**us**"), regarding the sale of the Property identified in Part 3 by public live auction and online auction.

This document is comprised of Part 1 (<u>Summary of Commercial Terms</u>), Part 2 (<u>Terms of Sale</u>), Part 3 (<u>Property Schedule</u>), and Part 4 (<u>the Order</u>) which altogether form the terms of the agreement between you and Phillips (the "**Agreement**"). This Agreement is not binding until all parties have signed it. Capitalised words are explained in the Glossary at the end of Part 2.

# Part 1
# Summary of Commercial Terms
(summarised commercial terms are subject to terms and conditions set out more fully in the Agreement)

| | |
|---|---|
| **Name:** Yann Geron solely in his capacity as Chapter 7 Trustee of Lisa Schiff Bankruptcy Estate | **Agreement No:** 04NYG951 |
| **Address:**<br>Geron Legal Advisors LLC<br>370 Lexington Avenue, Suite 1208<br>New York, NY 10017<br>Attn: Yann Geron<br>Jeannette Litos<br>Nicole N. Santucci | **Telephone Number:** (646) 560-3224 |
| **Client Number:** 965127 | **Email:**<br>ygeron@geronlegaladvisors.com<br>jlitos@geronlegaladvisors.com<br>nsantucci@geronlegaladvisors.com |
| **Property Consigned for Sale**<br>See Part 3 (the "**Property Schedule**") | **Scheduled Live and Online Auction Start Date and Venue**<br>We plan to offer the Property at the **Auction(s)** and the **Online Auction(s)** in the location(s) and on the date(s) set forth in the Property Schedule. |
| **Commission You Will Pay:**<br>We will not charge you a seller's commission on the sale of any Property. | **Physical Loss and Damage to Property**<br>Phillips accepts responsibility for physical loss or damage to the Property at Phillips' expense on the terms set out in Part 2 below (see Part 2, Physical Loss or Damage). |

# PHILLIPS

### Sale Expenses You Pay

Any actual packing and shipping charges related to the delivery of the Property from its current location at one of the following warehouses: (i) Direct Art Express, located at 269 Nonotuck Street Florence, MA 01062 ("DAX"), (ii) Uovo Art, located at 41-54 22nd Street, Long Island City, NY 11101 and 33 Kings Highway, Orangeburg, NY 10962 (together, "Uovo"), or (iii) Lockson Inc., located at 90 Enterprise Avenue South Secaucus, NJ 07094 ("Lockson")to Phillips' New York auction premises and Phillips' warehouse locations ("Phillips' Premises").

Any actual packing and shipping charges, to be approved by you in advance in writing, if any Property must be returned to you from Phillips.

Any actual costs related to any applicable repair, restoration and actual conservation, to be approved by you in advance in writing.

With your prior written consent, any actual costs related to any certificates or physically non-invasive tests or analyses that Phillips considers necessary to verify the authenticity, attribution or quality of the Property, provided it is approved by you in advance in writing.

Phillips will pay the shipper and other suppliers agreed to hereunder and then be reimbursed by you from the sale proceeds of Phillips' public auction sales.

(the "**Sale Expenses**")

### Sale Expenses We Pay

Any applicable installation costs.

Any applicable photography fees.

Any applicable marketing fees.

(the "**Sale Expenses**")

### Delivery of the Property

Phillips will arrange delivery of the Property from its current locations to our premises.

If the Property is unsold following the Auction, Phillips will arrange for it to be collected and for it to be returned to you.

### Fees for Withdrawn Property

See Part 2, Paragraph 6, *Withdrawal*.

### Payment

We will make payment only to the Seller named on this Agreement.

We will send you a Lot's Net Sale Proceeds on each Friday of the week in which Phillips has received payment in full and cleared funds of that Lot's Hammer Price plus the full Buyer's premium and any applicable taxes (a Lot's "**Purchase Price**"), provided the Lot's Purchase Price has cleared by 5:00 PM EST on the Thursday of such week (a "**Sweep**"). The first Sweep shall start on the second Friday following the auction. If Friday is not a **Working Day**, payment will be made on the next following Working Day.

(any date above that payment is made for a Lot is that Lot's "**Settlement Date**").

(See Part 2, *Payment*.)

**Enhanced Hammer Amount**

We will pay you an **Enhanced Hammer Amount** as part of a sold Lot's Net Sale Proceeds that is equal to 5 percent (5%) of the Lot's Hammer Price.

2

# PHILLIPS

## Part 2
## Terms of Sale: Your Agreement With Us

### 1. PHILLIPS AS AGENT

This Agreement appoints Phillips as your exclusive agent to offer the Property for sale in the Auctions and in the Online Auctions from the date of entry of an order substantially in the form of the Proposed Retention/Sale Order (defined below) until 31 March 2026 unless extended in writing (the "**Term**"). The contract for sale of the Property will be between you and the Buyer(s) and will be as set out in Phillips' Conditions of Sale and Authorship Warranty published in the Auction catalogue, as modified by the Court Order approving this Agreement and/or at www.phillips.com for the relevant Auction (the "**Conditions of Sale**"). This Agreement shall be submitted to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") in the Chapter 7 bankruptcy case of Lisa Schiff ("**Schiff**"), captioned *In re Lisa Schiff, Case No. 24-10010 (DSJ)* (the "**Schiff Bankruptcy Case**") in order to obtain Bankruptcy Court approval after execution and attached to an applicable motion to provide notice to allow any parties to file objections prior to the Auctions. For the avoidance of doubt, this Agreement is conditional upon Bankruptcy Court approval. Any consigned but unoffered Lot(s) that remain physically with Phillips after expiration of the Term shall be treated as withdrawn under the terms of paragraph 6(b) below. Nothing in this paragraph shall prevent Phillips from amending or modifying its Conditions of Sale for any Auction, provided that such amendment does not vary the agreed terms of this Agreement. In the event of any conflict between an Auction's published Conditions of Sale and this Agreement, the terms of this Agreement shall govern the rights and responsibilities of the Seller and Phillips.

### 2. ABOUT YOU AND THE PROPERTY

To ensure Phillips can offer the Property for sale and that any Buyer will acquire full ownership rights in the Property pursuant to appropriate court order, you provide Phillips and the Buyer with the following confirmations:

(a) *Your Confirmations*: You represent and warrant to Phillips and to any Buyer that, to the best of your knowledge and belief:

    (i)    The Trustee and Deborah Piazza (the "**SFA Trustee**"), as Chapter 7 trustee in In re: Schiff Fine Art LLC, Case No. 24-10039 (DSJ) (the "**SFA Bankruptcy Case**") will file a joint motion (the "Retention/Sale Motion"), requesting various relief in the Retention/Sale Motion, which motion and relief is fully incorporated herein as if fully set forth, including seeking entry of (a) the Retention/Sale Order, and (b) the Proposed Sale and Scheduling Order, which terms are defined in the Trustee's Retention/Sale Motion filed in the SFA Bankruptcy Case and in In re Schiff Fine Art, LLC, Case No. 24-10039 (DSJ).

    (ii)    Pursuant to the order entered by the Bankruptcy Court approving the Trustees' retention of Phillips under the terms of the Auction Agreements (the "**Retention/Sale Order**"), (1) under 11 U.S.C. §§ 363(b) and (f), you are authorized to sell the Property (which will be listed in the Property Schedule to be annexed hereto as Part 3) after the Court conducts the Artwork Objections Hearing, free and clear of all liens, claims, encumbrances and interests of whatever kind or nature with such liens, claims, interests and encumbrances, if any, attaching only to the Net Proceeds of Sale in such order and priority as they existed immediately prior to the date of the relevant Auction; (2) a Buyer of a Lot will be deemed a good faith purchaser and entitled to the protections of a good faith purchaser under Bankruptcy Code

section 363(m); (3) upon a Buyer's full payment of the Purchase Price for a Lot, no party with any interests or claims against the Schiff Estate shall, and any such party shall be enjoined, with respect to any artworks not excluded from sale in any subsequent order of the Bankruptcy Court, from taking any actions to interfere with the Buyer's title, use or enjoyment of the Lot based on or related to such interests or claims; and (4) upon the sale of a Lot and the Purchase Price having been paid for in full and cleared funds by the successful bidder, that successful bidder shall receive along with Phillips' invoice representing the bill of sale for the Lot, the rights of a good faith purchaser pursuant to section 363(m);

    (iii)    Notwithstanding the foregoing, the Trustee acknowledges and agrees that in the event of a Lot's cancellation of sale by Phillips in accordance with the terms of part 2, paragraph 8(e) of this Agreement, the Schiff Estate shall be responsible to Phillips for the return of the Lot's Net Sale Proceeds received from Phillips from the Lot's sale.

    (iv)    you will pay any applicable income taxes that are incurred by the Schiff Estate that are due from you in connection with the sale of the artworks; and

    (v)    You will submit your W-9 Form to us prior to the Auction;

(b) Phillips represents and warrants to you that

    (i)    the Trustee will not be personally responsible for any debts of the Estate to Phillips; and

    (ii)    where we are required to do so under applicable law, Phillips will collect any applicable sales taxes from the Buyers of affected Lots and remit such taxes to the appropriate taxing authorities, as set forth in paragraph 14 below.

### 3. PHYSICAL LOSS OR DAMAGE

a) The Trustee acknowledges and agrees that in accordance with the Custody Agreement between the Trustee on behalf of the Schiff Estate and Phillips, dated August 14, 2024 (the "**Custody Agreement**"), Phillips and any of its agents will not to carry specific insurance for any Lot while it is in transit to Phillips and until the condition of such Lot is examined and reported to the Trustee. The Trustee has agreed to arrange or cause to be arranged its own insurance for the time that a Lot is picked up and while it is in transit to Phillips warehouses and up to until the Lot's condition is reported.

b) *Period of Cover:*
The Trustee agrees that Phillips shall not be responsible for any physical loss or damage to any Lot however so occurring until the Lot's risk of loss has passed to Phillips as set forth in this paragraph and under the terms of the Custody Agreement. A Lot's risk of loss shall pass to Phillips after: (i) Phillips has uncrated the Lot on Phillips' premises; (ii) Phillips created a condition report for that Lot; and (iii) Phillips has provided written notice to the Trustee that (i) and (ii) have been completed. The Trustee agrees that it will have its insurance company endorse its policy for the Property to name Phillips as a "Loss Payee" and an "Additional Insured" to the extent of Phillips' interests as evidenced by a written certificate of insurance provided to Phillips prior to any shipping of any of the Property. Trustee understands that by naming Phillips as an "Additional Insured" on Trustee's insurance policy, Trustee's insurer will not have the right of subrogation against Phillips.

When the risk of loss has passed to Phillips, Phillips will be responsible to you for physical loss or damage to each Lot from

# PHILLIPS

until either the Lot ceases to be in our custody and control and the risk of loss has passed to the Buyer, or if the Lot is to be returned to the Trustee, then until such time possession, custody or control is returned to the Trustee and no longer in our or our shipper's possession, custody and control.

c) *Extent of Cover:* For each Lot, Phillips' liability will be limited to an amount up to but not exceeding: (i) the Lot's latest Mid-Estimate, for physical loss or damage prior to the Auction; (ii) the Lot's Hammer Price, for physical loss or damage to sold Property prior to delivery to the Lot's Buyer; or (iii) the Lot's Reserve price, for physical loss or damage to an unsold Lot.

d) *Limits and Exclusions*: Neither Phillips nor our insurers will be responsible for physical loss or damage to a Lot resulting from the following causes:
   (i) inherent defects in the Lot;
   (ii) humidity or change of weather or other atmospheric conditions not within Phillips' control;
   (iii) damage caused by a Lot's mechanical fault or breakdown (if applicable);
   (iv) wear and tear and gradual deterioration of the Lot;
   (v) damage to the Lot caused by war, radioactive contamination and/or cyberattack;
   (vi) damage occurring while the Lot is in the care or custody of a restorer approved by Trustee in writing; and
   (vii) damage occurring while the Property is in Trustee's possession, custody or control or in the care or custody of shipping and packing agents retained by you (even if recommended by Phillips).

## 4.   BEFORE THE AUCTION

You agree to Phillips using its experience, judgment and knowledge in deciding when, where and how best to present, market and sell the Property, including:

(a) *Auction Venue and Date:* The Property will be offered for sale in the Auction(s) and Online Auction(s) described in the Property Schedule. We will have the right, after consultation with the Trustee and WAG (time permitting prior to the Auction), to change or reschedule the place, date, time and manner of sale for the Auction or the Online Auction(s) of the Property.

(b) *Marketing and Catalogue:* Phillips will decide, at no cost or expense to you, how best to present and market the Property for sale. You agree that Phillips will decide upon:
   (i) after consultation with you and WAG, the marketing and promotion of the sale of the Property and the Auction and Online Auction;
   (ii) the description, illustration and presentation of the Property in the relevant Auction catalogue, on Phillips' website, and in other marketing materials and, if applicable, the manner and place of any display, exhibition or viewing of the Property by interested bidders;
   (iii) the contents of any condition report, saleroom notice or announcement;
   (iv) the positioning of the Property in the lot order of the Auction and the Online Auction;
   (v) the timing of the opening and closing of bids on Lots within the Online Auction;
   (vi) research and consultation with such experts and databases as Phillips considers necessary in relation to the Property;
   (vii) any physically non-invasive tests or analyses to verify the authenticity, attribution, quality or condition of the Property whether before or after the Auction and the Online Auction; provided that we shall require you or WAG's prior written consent if any such test or analyses are to be at your expense, and
   (viii) how to divide the Property into Lots.

(c) *Copyright:* You agree that Phillips will have the right to photograph, illustrate or otherwise produce images of the Property for marketing purposes. Phillips will own the copyright in all catalogues, images, illustrations and descriptions of the Property created by us and will have the exclusive right to use such materials as we consider appropriate, subject to Phillips obtaining any required third-party copyright permissions. After each applicable Auction, such images will only be used for internal record keeping purposes; provided however, we will not use these images for any commercial purposes other than for the applicable Auction, and they shall be archived in Phillips' digital catalogues including websites and social media accounts.

## 5.   RESERVES AND ESTIMATES

Property in Phillips' auctions is offered for sale with a Low and High Estimate, which are published in the relevant auction's catalogue. It is also subject to a confidential Reserve price below which the Property will not be sold.

(a) *Estimates:* The estimates for Lot shall be set out in the Auction catalogue. The low and high estimates provide a guide for potential Buyers of the price range within which the Property may sell. They are statements of opinion and are not a prediction or guarantee of the price at which the Property will be sold.

(b) *Reserves:* The Reserve is the confidential threshold amount below which Phillips will not sell the Property. The Reserve cannot be higher than the low estimate.

(c) *Selling below the Reserve:* You agree that Phillips may sell a Lot below the Lot's agreed Reserve; *provided, however*, that we agree that you shall receive the amount of sale proceeds that you would have received had the Lot been sold at its Reserve.

## 6.   WITHDRAWAL

(a) *Withdrawal by Phillips:* We may withdraw any Lot at any time before the Auction or before or during the Online Auction without any liability if in Phillips' reasonable opinion:

   (i) there is doubt as to the authenticity, authorship or attribution of the Lot;
   (ii) there is doubt as to your ownership of the Lot, your authority to sell it, or the Lot's provenance;
   (iii) a claim is made prior to the Lot's Auction by a creditor of the Estate that has not been heard by or fully resolved by the Bankruptcy Court prior to the Lot's Auction;
   (iv) the Lot has been delivered to Phillips but the Bankruptcy Court has not issued an order directing the sale of the Lot by October 21, 2024;
   (v) you have breached any material provision of this Agreement in any material respect that negatively affects our ability to offer the affected Lots or the Property as a whole;
   (vi) the Lot is damaged or not in the same condition as when Phillips agreed to sell it;
   (vii) a hidden defect or restoration is discovered prior to the sale which was not reasonably apparent when Phillips agreed to sell it;
   (viii) offering the Lot for sale could be illegal or expose you, Phillips or the Buyer to legal action or reputational damage; or
   (ix) the Bankruptcy Court issues an Order requiring Phillips to withdraw the Lot.

(b) *Withdrawal by you:*

# PHILLIPS

You may not withdraw any Lot from the Auction or from the Online Auction without Phillips' prior written consent or pursuant to an order of the Bankruptcy Court.

(c) **Consequences of Withdrawal:** If Phillips agrees to you withdrawing a Lot, or an order of the Bankruptcy Court authorizes and/or directs the withdrawal of, any Lot from the Auction or from the Online Auction for any reason, or if Phillips withdraws any Lot for any set forth in subparagraph (a) above, then you will pay Phillips an amount equal to the costs and expenses actually incurred by Phillips in connection with the withdrawn Lot(s), plus; provided however, you shall only be responsible for such amounts if (i) the withdrawal of any Lot(s) occurs after October 21, 2024 or if the aggregate low estimate of the withdrawn Lot(s) exceeds $40,000.

(d) Any Lot that is not offered within the Term of this Agreement and remains in Phillips or its agents' possession, custody or control, shall be considered withdrawn and you agree to pay Phillips an amount equal to the actual costs and expenses incurred by Phillips in connection with the storage of the withdrawn Lot.

## 7. CONDUCT OF THE AUCTION

You agree to Phillips using its experience, judgment and knowledge to conduct and administer the Auction or the Online Auction including the following aspects relating to the sale of the Property.

(a) **Auction Arrangements:** Subject to the Order, Phillips has complete discretion in all aspects of the arrangement and conduct of the Auction and the Online Auction, including, but not limited to, the time, manner and place of exhibition and Auction of the Property, the placement of the Property and other lots within the Auction, which bids to accept and the rules and procedures relating to bidding and sale; the Online Auction interface and registration process; the start and Closing Date and time of the Online Auction and the withdrawal of Lots from the Online Auction.

(b) **Sale Contract:** Subject to the Order, the Auction and sale of the Property will be conducted in accordance with Phillips' Conditions of Sale applicable to the Auction or from the Online Auction, as published in the relevant catalogue and/or on www.phillips.com.

(c) **Bidding below the Reserve:** The Auctioneer, in accordance with global fine art auction house best practices, may protect the value of a Lot by bidding on behalf of Phillips and the Seller in increments up to but below the Lot's Reserve. In no event shall Phillips purchase any Lot from the Auction on its account by doing such bidding nor will Phillips purchase a Lot on behalf of Seller by doing such bidding.

(d) **Charges to the Buyer:** Phillips will charge the Buyer a Buyer's Premium which Phillips will be entitled to keep. The Buyer's Premium is defined in Phillips' Conditions of Sale.

## 8. PAYMENT

(a) **Date of Payment:** Provided Phillips has received payment in full from the Lot's Buyer, and provided the Lot's sale has not been cancelled for any reason allowed under this Agreement, Phillips will pay you the Net Sale Proceeds, as set forth in Part 1 *Payment* section of this Agreement and as set forth below.

(b) **Currency:** The Net Sale Proceeds will be paid to you in US dollars.

(c) **Credit Terms:** The grant of extended payment terms to potential bidders may encourage bidding in the Auction or the Online Auction. Upon the request of a potential bidder determined by Phillips as being a credit worthy client, Phillips may grant extended payment terms to them if they are the successful bidder of any Lot with Low Estimates that exceeds $20,000. Any extended payment terms granted by us shall not exceed sixty (60) days from the date of the Auction or from the Closing Date of the Online Auction as the situation may require. We will pay you any instalment portion of the Net Sale Proceeds no later than five (5) Working Days after we receive cleared payment in full of such instalment from a Buyer.

(d) **Non-payment or late payment by the Buyer:** We do not guarantee that payment will be received from the Buyer of any Lot. If the Buyer is late or fails to pay us when payment is due. Phillips will consult with you to discuss the options available, including the ability for you to pursue the Lot's Buyer in the Schiff Bankruptcy Case as set forth in the Conditions of Sale. We will, however, have absolute discretion to decide whether we wish to pursue the Buyer and, if so, by what means and ultimately, whether to cancel the sale of a Lot that has not been paid for. Notwithstanding the foregoing, we will notify you if Phillips chooses in our sole discretion to forego or to cease collection efforts against a defaulting buyer. In such case, we shall confer with Seller and provide you with the necessary identification information and documentation for the defaulting buyer so that Seller may in its discretion engage in its own collection efforts. Seller agrees that Phillips shall cooperate with Seller but shall not have any obligation hereunder to participate in Seller's collection efforts including in any litigation, nor shall Phillips be responsible for any costs or other expenses associated with Seller's collection efforts.

(e) **Cancellation of Sale:**

   (i) Phillips may, upon notice to you, cancel a sale of a Lot where Phillips reasonably determines in its good faith judgment, that:

   (1) A Buyer of the Lot has defaulted on their payment and Phillips has not received full payment of the Lot's Purchase Price from the Lot's Buyer; provided however, such cancellation shall be subject to the Trustee's rights to pursue the defaulting Buyer in the Schiff Bankruptcy Case,

   (2) the Buyer has a valid claim under Phillips' Authorship Warranty set forth in the Auction's Conditions of Sale; or

   (3) a claim has been made by a creditor against the sold Lot and such claim has been heard and deemed valid by an order of the Bankruptcy Court.

   (ii) For the purposes of this paragraph, the term "cancel" includes the terms "cancellation", "termination", and "rescission" as those terms are defined under the Uniform Commercial Code.

   (iii) If the sale of the Lot is cancelled in any of the circumstances in 8(e)(i)(1) to (3) above and
   (1) we have not already paid you the sums due under this paragraph, our obligation to pay you such sums will end; or
   (2) we have paid you full or partial Net Sale Proceeds due to you, then, in order to put you, Phillips, and the Lot's Buyer back to the position we were all in prior to the sale, Phillips will require the Buyer to return the Lot to us, and you will return to Phillips the Lot's Net Sale Proceeds received by you and Phillips will return to the Lot's Buyer the full amount

5

# PHILLIPS

of the Lot's proceeds paid to us by the Lot's Buyer. Once we receive the Lot and the Net Sale Proceeds, we will return the Lot to you unless we believe that doing so would expose us to any legal liability. If for this or any other reason beyond Phillips' reasonable control, Phillips is unable to return the Lot to you, you are still required to repay the Net Sale Proceeds to Phillips.

(f)  *Transfer of Ownership:*  Pursuant to the Retention/Sale Order, a Lot's Buyer who has paid the Lot's full Purchase Price will be deemed a good faith purchaser and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(g)  *Phillips' responsibility for Payment:*  Phillips will assume the obligation to pay you the Lot's Net Sale Proceeds itself, only if we release a Lot to the Buyer before receiving payment in full. In such event, Phillips will be treated as the owner of the Lot and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(h)  *Enhanced Hammer Amount:* We shall only have an obligation to pay you an Enhanced Hammer Amount for a Lot calculated as described in Part 1 of this Agreement if: (i) the Lot is sold at the Auction; (ii) we have received full payment of the Lot's Purchase Price in cleared funds from the Lot's Buyer; and (iii) the sale of the Lot has not been cancelled for any reason. If payable, the Enhanced Hammer Amount will be treated as part of the Lot's Net Sale Proceeds. For the avoidance of doubt, if the Lot is not sold in the Auction, we will not pay you any Enhanced Hammer Amount as part of the Net Sale Proceeds for that Lot.

## 9.  POST-AUCTION SALES

Provided you have given us your prior written approval, then for a period of ninety (90) days following (i) the applicable Auction, and (ii) the Closing Date of the Online Auction, you agree that Phillips may sell in a private sale, any Lot which was unsold in the applicable Auction or the Online Auction. In such circumstances, if the Lot is sold for a post-sale Hammer Price that is the equivalent to the Lot's Reserve or greater, then you shall receive the Net Sale Proceeds that you would have received had the Lot sold at that Hammer Price during the Auction or the Online Auction. For any Lot that is sold post-sale for a Hammer Price that is less than the Lot's Reserve, we will not pay you any Enhanced Hammer Amount as part of the Net Sale Proceeds.

Any post-Auction sale by Phillips is subject to the terms and conditions of this Agreement.

## 10.  LIMITATIONS ON OUR LIABILITY

(a)  While Phillips makes no representations  or warranties to you regarding the Property, its provenance, authenticity, attribution, condition  or otherwise, we will take reasonable care when preparing Auction and the Online Auction catalogue descriptions and condition reports based on information provided by you, experts we may consult, the risks inherent in describing unique works of art and collectibles, and the time and resources available to us before the Auction and before the Online Auction.

(b)  Phillips will not be responsible to you:

(i)  for any mistakes or omissions in the description of any Lot of the Property;

(ii)  if any Lot of the Property fails to sell or to achieve a particular Hammer Price;

(iii)  if a Lot's Buyer fails to pay for the Lot;

(iv)  for any special, consequential, incidental or indirect losses, costs or charges of any kind or any loss of profits

(v)  for any acts or omissions of restorers, experts, or authentication bodies; or

(vi)  for any acts or omissions of shippers, warehouse providers or other contractors not engaged by Phillips.

(c)  If, despite the terms of this Agreement, we are found to be responsible to you for any matters arising out of or in connection with this Agreement and/or the services Phillips provides to you in connection with the sale of the Property, we will not have to pay you more than:

(i)  the Lot's Hammer Price, if the Lot is sold;

(ii)  the Lot's low estimate if the Lot is not offered for sale for any reason; or

(iii)  the Lot's Reserve price in all other circumstances.

## 11.  DISPUTES AND CLAIMS

This Agreement shall be governed by Federal law, and, where applicable the laws of New York.  The United States Bankruptcy Court for the Southern District of New York shall retain exclusive jurisdiction with respect to all Auctions and Private Sales conducted pursuant to this Agreement, and including, but not limited to, interpretation of any the terms and conditions in the Agreement; challenges, disputes, or claims arising out of or in connection with this Agreement; and claims arising while the Property is in the care, custody or control of Phillips or the Trustee.

## 12.  ENDING THE AGREEMENT

*Events beyond our control:*  Phillips will not be responsible if for reasons beyond our control we fail or are unable to meet our obligations under this Agreement.  Such circumstances include, but are not limited to strike, lockout, adverse weather, flood, storm, earthquake, subsidence and other natural disasters, malicious acts by third-parties, failure and shortage of power supply, war, armed conflict, riot, civil unrest, terrorist action, nuclear and chemical contamination, epidemics, pandemics, and travel bans or other government restrictions on commercial activity.

## 13.  PRIVACY

We take the privacy of your information seriously. Unless necessary for the provision of services you have requested from us or as otherwise agreed with you, we do not share your personal data with anyone outside of the Phillips Group.

(a)  *Verifying Identity:*

(i)  You confirm that your name and address as set out in Part 1 of this Agreement are accurate. You will provide us with any documents or evidence required to verify your identity to comply with our compliance and verification procedures.

(ii)  If you are acting as agent for the owner(s) of the Property, you will identify them to us and will provide us with any documents  or evidence required to comply with  our compliance and verification procedures.

(b)  *Using Your Personal Data:*
You understand that we may use your personal data in accordance with our privacy policy as published at www.phillips.com or available by emailing dataprotection@phillips.com.

Our privacy policy sets out:

(i)  the types of personal data we will or may collect and use;

6

# PHILLIPS

(ii)   the purposes for which we will or may use your personal data, including for example the provision of auction, private sale, shipping, storage and related services; the performance and enforcement of these terms and conditions; the carrying out of identity and credit checks; keeping you informed about upcoming auctions, exhibitions and special events; and generally where reasonably necessary in the management and operation of our business;

(iii)   the lawful bases on which we rely in undertaking our use of your personal data;

(iv)   your rights in respect of our use of your personal data; and

(v)   other information as required by applicable laws**.**

(c)   *Your rights over your personal data:* Our privacy policy explains the rights you have in respect of your personal data, including accessing the personal data we hold about you and correcting it if it is outdated or incorrect.

(d)   *Sharing personal data:*  We may share your personal data with other parties as described in our privacy policy.

(e)   *Transferring personal data:* Phillips is an international business and operates globally through a network of affiliates worldwide. Your personal data may therefore be transferred and used by companies within the Phillips' Group worldwide. If you are resident in the United Kingdom ("UK") or the European Economic Area ("EEA") we will put in place appropriate safeguards to ensure adequate protection of your personal data when it is transferred outside of the UK or the EEA.

## 14.   TAXES

(a)   *Sales Tax:* We agree to collect sales taxes from a Lot's Buyer and remit that Lot's tax payment to the appropriate taxing authority where and when we are required to do so under applicable law. You will not be responsible for collecting any sales tax from any Lot's Buyer.

(b)   *Your Tax Liability:* You agree to pay any income taxes for which the Bankruptcy Estate is liable for from the sale of the Property when and where required.

(c)   You are a "U.S. person", as defined under the US Internal Revenue Code of 1986 (the "IRC"), as such, Phillips will be required to file an informational Form 1099-K report with the Internal Revenue Service (the "IRS") if our payments to you in settlement of this Agreement are equal to or greater than Six Hundred US Dollars (USD$600). In such event, we must report: (i) the gross amount of all reportable payments made to you under this Agreement; and (ii) your name, address, and your taxpayer identification number. After the completion of a calendar year, we shall provide you with a copy of the Form 1099-K applicable to transactions that occurred under this Agreement in such calendar year. You shall have fourteen (14) days from our delivery of such Form 1099-K to you to provide us with any comments or corrections you may have. If we do not receive any comments or corrections from you within such fourteen (14) day period, such non-response shall constitute a representation by you that all information contained in the Form 1099-K is true and accurate to the best of your knowledge.

(d)   You hereby agree that:
(i)   you will timely provide Phillips with either the applicable completed IRS forms and any other related documentation we may require to satisfy our Form 1099-K reporting obligations;
(ii)   you will provide Phillips with an IRS Form W-9;
(iii)   in the event you do not complete a Form or any other documentation we request from you which is related to our obligation to file Form 1099-K: (x) Phillips may delay

payment to you of any Net Sale Proceeds; and (y) Phillips will be entitled to withhold any U.S. federal taxes due on any payment made to you as may be required by law; and

(iv)   if Phillips does not receive any comments or corrections from you to any Form 1099-K provided to you within the fourteen (14) day period described in subparagraph (a) above, such non-response by you shall constitute a representation by you that all information contained in any such Form 1099-K is true and accurate to the best of your knowledge.

## 15.   MISCELLANEOUS PROVISIONS

(a)   *Entire Agreement:* Subject to signature by you and by Phillips of this Agreement, this Agreement and the Retention/Sale Order, and any further orders of the Court relating to any sale by Phillips of any of the Property and any artworks which may be excluded from the sale f o r m  the whole agreement between you and Phillips in respect of the sale of the Property, superseding any agreements you may have previously signed with Phillips with respect to the Property. By signing this Agreement, you agree that there are no other promises, terms, conditions, understandings, arrangements or obligations oral or written other than those contained in this Agreement, the Custody Agreement between Phillips and the Trustee, and the Retention/Sale Order and any other relevant orders of the Bankruptcy Court.

(b)   *Amendment:* No variation of this Agreement will be valid unless confirmed in writing and signed by you and us. If necessary, the modification of this Agreement shall be subject to approval by the Bankruptcy Court.

(c)   *Validity:* If a court of competent jurisdiction finds part of this Agreement invalid, illegal or unenforceable, that part of the Agreement will be considered deleted, and the rest of this Agreement will not be affected and will remain in full force and effect.

(d)   *Transferring Rights and Responsibilities:* This Agreement will be binding upon you and us and permitted successors and assigns. Neither you nor Phillips may assign this Agreement without the prior written consent of the other party, except that Phillips may assign this Agreement to any of Phillips' Group companies without your prior consent.

(e)   *Notices:*
(i)   Notices to Phillips must be in writing and addressed to the General Counsel, Americas of Phillips, Hartley Waltman at hwaltman@phillips.com and Director of Trusts, Estates and Valuations, Jennifer Jones at jjones@phillips.com.
(j)   Notices to the Estate must be in writing and addressed to the Trustee's counsel, Yann Geron at ygeron@geronlegaladvisors.com, Jeannette Litos at jlitos@geronlegaladvisors.com, Nicole N. Santucci at nsantucci@geronlegaladvisors.com.

(k)   *Third Party Rights:* A person, firm, company or corporation who or which is not a party to this Agreement will have no right to enforce any term of this Agreement.

(k)   *Signing:* Each of us may sign this Agreement by way of separate documents and electronically. Each document taken together will constitute one and the same signed Agreement.

## GLOSSARY

**Agreement:** The terms and conditions of all parts of this document taken together.

7

# PHILLIPS

**Auction:** is a Phillips physical auction where bidding is accepted by a live in-person auctioneer through various means of bidding that may include, in-room bidding, phone bidding, absentee written bids, as well bidding through internet platforms.

**Auction FX Rate:** The applicable foreign currency to Saleroom Currency exchange rate quoted to our treasury department on the applicable Auction Closing Date, which rate will be final and binding.

**Authorship Warranty:** The warranty in respect of the authorship of the Property as referred to in Phillips' Conditions of Sale.

**Buyer:** The highest bidder and successful Buyer of a Lot at the Auction accepted by the Auctioneer.

**Buyer's Premium:** The commission Phillips charges the successful highest bidder and Buyer of a Lot of the Property as detailed in the applicable Conditions of Sale.

**Catalogue FX Rate:** The applicable foreign currency to Saleroom Currency exchange rate quoted to us by our treasury department on the last practical date before the printing or publishing of the catalogue, which rate shall be final and binding.

**Conditions of Sale:** The terms governing bidders and Buyers on one hand and Phillips and sellers on the other hand, as published on our website and in the Auction catalogue, comprising the Conditions of Sale and Authorship Warranty.

**Enhanced Hammer Amount:** The additional amount of Net Sale Proceeds calculated as set out in Part 1.

**Hammer Price:** The amount of the highest bid the auctioneer accepts for the Property in the Auction and the Online Auction.

**High Estimate:** The higher figure in the estimate range within which Phillips in its reasonable opinion considers a Lot may sell.

**Lot:** An item of Property or a set of items of Property sold together as a group.

**Low Estimate:** The lower figure in the estimate range within which Phillips in its reasonable opinion considers a Lot may sell.

**Net Sale Proceeds:** In relation to each sold Lot, the Hammer Price, plus any applicable Enhanced Hammer Amount less all charges and other amounts owed by the Seller to Phillips Group companies (if any).

**Online Auction:** is a Phillips auction where bidding is accepted by us without a live auctioneer within a timed limited period on an internet platform only and not by any other means of bidding.

**Online Auction Closing Date:** the final date that property is offered for public sale by Phillips at the Online Auction.

**Online Conditions of Sale:** The terms governing bidders and Buyers on one hand and Phillips and sellers on the other hand, in online auctions as published on our website comprising the Conditions of Sale and Authorship Warranty.

**Phillips:** The Phillips company or companies listed on page 1 of this Agreement.

**Phillips Commission:** The commission charged by Phillips to you for its services under this Agreement as referenced in Part 1.

**Phillips Group:** All companies from time to time within the Phillips group of companies and in respect of watches, Phillips Fine Watches Limited.

**Property:** One or more Lots of Property as listed in Part 3 either individually or collectively as the context requires.

**Purchase Price:** The amount of a Lot's Hammer Price plus the Lot's applicable Buyer's Premium plus any applicable sales, use and/or VAT taxes due from the Lot's Buyer.

**Reserve:** The confidential value below which a lot may not be sold. The reserve for each lot cannot exceed the Low Estimate.

**Seller:** The person(s) identified in Part 1.

**Settlement FX Rate:** The saleroom auction currency to foreign currency exchange rate quoted to us by our treasury department on the date we pay you the Net Sale Proceeds which rate shall be final and binding.

**Working Day:** is any day other than a weekend or public holiday that Phillips' offices are open for business in the Auction site for the Property. If payment is to be remitted to you on a date that is not a Working Day, we will remit that payment on the next day that is a Working Day.

# PHILLIPS

I agree to the terms of Parts 1, 2 and 3 of this Agreement Number 04NYG951

Signed by: _____
Name:   Yann Geron solely in his capacity as Chapter 7 Trustee of the Lisa Schiff Bankruptcy Estate
Dated: _____

Signed: _____
For and on behalf of Phillips Auctioneers LLC
Title: _____
Dated:_____



# Part 3. Property Schedule

To be attached

# PHILLIPS

## Part 4. The Order

# PHILLIPS

## Payment Instructions

| | |
|---|---|
| Consignor: **Yann Geron solely in his capacity as Chapter 7 Trustee of the Lisa Schiff Bankruptcy Estate**<br>Consignor Address:<br>Geron Legal Advisors LLC<br>370 Lexington Avenue, Suite 1208<br>New York, NY 10017<br>Attn: Yann Geron<br>Jeannette Litos<br>Nicole N. Santucci<br>Client Number: 965127 | Agreement Number: 04NYG951<br>Agreement Date: 28 August 2024<br>Sale Details: See Property Schedule |

This letter authorises funds to be transferred to the account details below (please note that we can only send payment to Yann Geron solely in his capacity as Chapter 7 Trustee of the Lisa Schiff Bankruptcy Estate). Net sale proceeds will be paid by bank transfer to the account specified below and in the currency of the auction unless specified otherwise at least three business days prior to the date of the sale. Please be advised that Phillips is only responsible for our own bank charges and not those of the beneficiaries/correspondent bank charges.

| Wire Transfers | |
|---|---|
| Beneficiary Bank Name: | |
| Beneficiary Bank Address: | |
| Beneficiary Bank Post Code/Zip Code: | |
| Beneficiary Bank Account Name: | **Yann Geron solely in his capacity as Chapter 7 Trustee of the Lisa Schiff Bankruptcy Estate** |
| Beneficiary Bank Account Number:<br>*(if outside the UK and EU)* | |
| Beneficiary Bank Account IBAN Number:<br>*(Required for all UK and EU banks)* | |
| Beneficiary Bank Account BIC/SWIFT Code:<br>*(or Fedwire Code if BIC/SWIFT not applicable)* | |
| Beneficiary Bank ABA Number:<br>*(Required for USA to USA Bank Transfers)* | |
| Please provide preferred correspondent bank details (as recommended by your account holding bank): | |
| Special Instructions: | |
| Reference: | |
| ☐ **I am** a US Person under the IRS definition for 1099-K filings (please next page for IRS details)<br><u>OR</u><br>☐ I am **NOT** a US Person under the IRS definition for 1099-K filings (please see next page for IRS details) | |
| Signature:<br>*(Must match the Seller's Agreement Signature)*<br>**Yann Geron solely in his capacity as Chapter 7 Trustee of Lisa Schiff Bankruptcy Estate** | |

12

# PHILLIPS

- Effective January 1, 2022, the US Internal Revenue Code[1] ("IRC") requires auction houses to file an annual informational Form 1099-K that reports the sale proceeds paid and services given to "U.S. persons" under their seller's consignment agreements. Phillips is not required to file this 1099-K report for non-U.S. persons.

- A U.S. person is any (i) U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust .

- Phillips must report all consignment settlement payments made to U.S. persons in the prior calendar year that equal or exceed Six Hundred US Dollars (US $600). Other required information includes: the U.S. person's name, their address, and their U.S. taxpayer identification number.

- In order to confirm your status to us as either a U.S. person or a non-U.S. person, please fully complete the correct form which is either a: (i) W-9 for U.S. persons; or (ii) a W-8 for non-U.S. persons. Please see the chart below that may help you distinguish which form you choose to use for this purpose. These forms will be kept confidential. We are not required to file these forms with the IRS.

- You must provide us with a copy of your W-9 or W-8 prior to your consignment's Settlement Date. We will not remit your Net Sale Proceeds due to you until you have done so. Please see below for a general description of each type of form that may be used for this purpose and to determine which one you should use.

| Form Name | General Description of who the form applies to* |
|---|---|
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN:https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E:https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI:https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP:https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY:https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

For further questions you may have about this process, please see the FAQ sheet that has been added to this communication.

*This document does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

---

[1] Please refer to Internal Revenue Code of 1986, as amended, section 6050W for full details on the reporting requirements.



**1099-K Information Reporting: Frequently Asked Questions**

All auction houses must file an annual Form 1099-K informational report to the Internal Revenue Service ("**IRS**") concerning transactions conducted on behalf of Buyers and sellers of goods and services. Phillips Auctioneers LLC, and each of our worldwide affiliates ("**Phillips**", "**we**", "**our**"), are subject to this reporting obligation.

This FAQ describes (i) the persons for whom we must file a Form 1099-K; (ii) what information we are obligated to report on a Form 1099-K; (iii) how we may collect the information required for such form; and (iv) what notice we will provide to you prior to the filing of such form.

We note that while Phillips will prepare the annual Form 1099-K, and we provide you with a copy of the form for your review prior to it being filed with the IRS, we are not your tax advisor, and you should always seek advice from your tax advisor first with respect to any questions you may have about this process.

1.  **What is the purpose of the Form 1099-K?**

The 1099-K form is not to report any taxes due or collected. The form is only meant to collect information on transfers of funds so that the IRS may monitor suspected underreporting of income. The IRS primarily uses the form to ensure that income is not underreported on the income tax returns of people who have less conventional income streams (for example, freelance workers).

2.  **Why am I hearing about this now? Is this a new reporting requirement?**

Prior to January 1, 2022, auction houses only had to file a Form 1099-K when the auction house: (i) transferred more than $20,000 to a payee; and (ii) made an aggregate number of 200 payments to that payee in a calendar year. This reporting threshold, known as a de minimis rule, greatly limited the number of instances in which an auction house had to file a Form 1099-K.

However, effective as of January 1, 2022, the IRS altered the de minimis threshold and now we must report *any* payment to a U.S. person in settlement of a consignment in amounts that exceed $600. To be clear, this wider reporting obligation applies to payments made on or after January 1, 2022. It does not apply to any payments we have made to you prior to January 1, 2022.

3.  **How do I know if I am a person for whom Phillips must file a Form 1099-K?**

Phillips must file a Form 1099-K for any reportable payments made to U.S. persons only. A U.S. person for tax purposes means: (i) any U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) any person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust.

Phillips is not required to file the form for payments to persons or entities who are not U.S. persons. However, prior to making a payment to a non-U.S. person payee, we must have documentation that we can rely upon to ensure the payment is not being made to a U.S. person in order for us to not have to report that payment to the IRS.

If we do not have the appropriate documentation from you in our files, we will withhold our payment to you of the Net Sale Proceeds until you have provided us with this documentation.

4.  **What is reported on a Form 1099-K?**

Form 1099-K requires us to provide the name, address, and taxpayer identification number of each U.S. person payee. In addition, we must report the gross amount of all reportable payments made to each U.S. person in a calendar year.

Under the IRC, settlements payments of both auction and private sale consignment are reportable. We must report the gross amount which may include fees we have charged to you (such as seller's commission and/or sale expenses), so the reported gross amount may not exactly match the net amount of money actually remitted to you.

The amount is reported on the form is aggregated by month and year. For instance, if we issue three installment payments to you for a sale of a painting, two of which occur in the same month, the payments which occur in the same month would be aggregated on the form and the other will be in the other month noted.



5.  **What will Phillips request of me in order to properly file any necessary Form 1099-K's?**

In order to determine if we are required to file a 1099-K report, we must confirm if you are or are not a U.S. person. If you are a U.S. person, we must report payments made to you; we do not have a reporting obligation if you are not a U.S. person.

All consignors must submit to us a complete d IRS Form W-9 or W-8 if we don't already have your current Form in our records. Generally, U.S. persons will submit a W-9 form to us and non-U.S. persons will submit the applicable W-8 form to us as set out in the chart below. A properly filled out form will ensure that we only file a 1099-K Report with the IRS for U.S. person transactions.

| Form Name | General Description of who the form applies to* |
| --- | --- |
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN: https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E: https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI: https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP: https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY: https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

*This does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

6.  **How do I get the proper Form W-9 or W-8 to Phillips?**

For the W-9 form, please direct your browser to the following link https://www.irs.gov/pub/irs-pdf/fw9.pdf and fully complete the W-9 form and return it to your Phillips contact.

For the W-8 form, please determine the correct form (using the matrix above or by going to: https://www.irs.gov/forms-pubs/about-form-w-8 for additional information), download it, complete it and then send it back to your Phillips contact.

**W-8BEN:** https://www.irs.gov/pub/irs-pdf/fw8ben.pdf
**W-8BEN-E:** https://www.irs.gov/pub/irs-pdf/fw8bene.pdf
**W-8ECI:** https://www.irs.gov/pub/irs-pdf/fw8eci.pdf
**W-8EXP:** https://www.irs.gov/pub/irs-pdf/fw8exp.pdf
**W-8IMY:** https://www.irs.gov/pub/irs-pdf/fw8imy.pdf

7.  **Will I have an opportunity to review the Form 1099-K that Phillips reports for any reportable payments made to me?**

If Phillips must file a Form 1099-K for any reportable payments made to you, Phillips will provide you with a completed Form 1099-K on or before January 31 of the calendar year after which such payment is made. You will have fourteen (14) days to review the return and confirm the accuracy of all information reported therein. You are required to notify us if there is any change in your identifying information that we must report on the Form 1099-K.

# EXHIBIT D

# SFA Property for Phillips 8.19.24

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Beavers | Gina | Fireworks Pop | 2016 | Acrylic on canvas on panel with wood frame | 34 x 32 x 6 in | | 4621 | GROUP A |
| DAX | Ofili | Chris | "Triangle Fall" | 2017 | Oil and charcoal on linen | 63 x 3.5 x 39.5 in | | 6069 | GROUP A |
| DAX | Walker | Kelley | I See now that anyone... | 2003 | mirrored acrylic, four panels | 88 x 93 | | 3881 | GROUP A |
| DAX | Wekua | Andro | Untitled | 2018 | Oil and silkscreen on aluminum | 35 x 3 x 50 in | | 6495 | GROUP A |
| DAX | Wolston | Chris | "Blue Metallic Plantchair" | | | 48 x 40 in | | 7854 | GROUP C |
| DAX | Kruglyanskaya | Ella | Staring Contest | | | 100 x 60 x 4 in | | 4446 | GROUP A |
| DAX | Israel | Alex | Ferris Beuller's Day Off | 2016 | Embossed silkscreen with collage (hand applied stickers) | 18 x 23 | Edition 66 of 10 | 4164.66 | SFA |
| DAX | Oppenheim | Meret | Nachtimmel Mit Achaten | 1971 | Print | 31 x 25 | | 6743.53 | SFA |
| DAX | Do Espirito Santo | Iran | Tubo D Filme | | Sculpture | 8 x 8 x 8 in | Ed 25 | 651 | SFA |
| DAX | Juliano Villani | Jamian | "Is There Room For Bruce" | 2016 | Print | 24 x 18 | ed 85 | 7122.48 | SFA |
| DAX | R. | Tal | Nam Nam (Bin 1) | 2007 | Crayon, gouache and ink on paper | 9 x 2 x 12 in | | 2706 | SFA |
| DAX | Chicago | Judy | What If Woman Ruled The World | 2020 | Archival pigment print on paper | 29 x 2 x 38 in | | 7596 | SFA |
| DAX | Arnio | Eero | Ballchair | 1965 | Chair | | | 8088 | SFA |
| DAX | Auerbach | Tauba | "Fold Slice Topo" | | color aquatint etching | 50 x 40 x 2 in | | SFA094 | SFA |
| DAX | Andreani | Giuilia | L'Art Doit Pendre | 2019 | Work On Paper | 10 x 7 | | 7293 | SFA |
| DAX | Dunham | Carroll | | 2010 | Drawing | 15 x 12 | | 2689 | SFA |
| DAX | Hansdotter | Hanna | Incommodious | 2021 | Glass | 23 x 13 x 13 | | 7680 | SFA |
| DAX | Henke | Lena | Yes I Am Pregnant Bag 4 | 2014 | Photo | 43 x 34 x 4 | | 2763 | SFA |
| DAX | McDonald | Danny | Wrestling With Reflection 2015 (Bin 1) | 2015 | Ultimate warrior vinyl action figure, resin dollhouse vanity with glass mirror | 10 x 6 x 4 in | | 4218 | SFA |
| DAX | Moon | Jiha | Boksoonyi | 2019 | Ceramic | 9 x 6 x 4 | | 7703 | SFA |
| DAX | Moon | Jiha | Pink Beach | 2018 | Ceramic | 10 x 8 x 7 | | 7704 | SFA |
| DAX | Price | Walter | You Get No Bread With One Meatball | 2018 | Drawing | 10 x 13 | | 6744 | SFA |
| DAX | White | Pae | Companions Damaged | 2015 | Gold glaze, porcelain | 7 x 12 x 7 in | | 4302 | SFA |
| DAX | Yousif | Maryam | "Floating Away On Palm Boat" | 2022 | Ceramic | 17 x 16 x 8 | | 8391 | SFA |
| DAX | | Guyton/Walker | Untitled (Knife) | 2004 | Mixed Media On Paper | 16 x 13 x 2 in | | 793 | SFA |
| DAX | Broyard | Henri | 1ll14 2014 - Ac/ Graphite/ C | 2014 | Acrylic and graphite on canvas | 36 x 2 x 32 in | | 2828 | SFA |
| DAX | Garcia-French | Giovanni | Self Portrait | 2012 | Acrylic on canvas | 48 x 48 | | 3674 | SFA |
| DAX | Hooper | Max | Pomacea 2013 (Bin 1) | 2013 | Ecosystème d'eau douce, verre acrylique, dessin, substrat de sable blanc, genus pomacea snails, cartouche de filtration | 17 x 13 x 13 in | | 4423 | SFA |
| DAX | Houdek | Vladmir | Untitled | 2016 | Oil, gouache, and acrylic on canvas | 40 x 31 | | 6026 | SFA |
| DAX | Kuwata | Takuro | Bowl | 2014 | Porcelain | 5 x 5 x 5 | | 3613 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Moon | Jiha | Yellow Wave & Yellow Wave (Crescent Moon) | 2019 / 2020 | Sculptures | 18 x 19 x 19 in | | 7711 | SFA |
| DAX | Moon | Jiha | Yellow Wave & Yellow Wave (Crescent Moon) | 2019 / 2020 | Sculptures | 18 x 19 x 19 in | | 7705 | SFA |
| DAX | Calvin | Brian | Untitled | 2018 | Work On Paper | 10 x 13 | | 6770 | SFA |
| DAX | Hirst | Damien | Untitled (High St/Skull And Crossbones) 2003 | 2003 | Pen on paper | 11 x 9 x 2 in | | 6674 | SFA |
| DAX | Hopper | Dennis | Double Standard, 1961 | 1961, printed 2017 | Gelatin silver print | 14 x 10 x 1 in | ed 2/10 | 6141.2 | SFA |
| DAX | Isaeus-Berlin | Meta | "Ett Slags Paradis" | 2013 | Oil on canvas | 51 x 1 x 45 in | | 7911 | SFA |
| DAX | Kantarovsky | Sanya | Daisy Dukes | 2018 | Monotype | 23 x 19 | | 6837 | SFA |
| DAX | Kantarovsky | Sanya | Smother | 2018 | Monotype | 23 x 19 | | 6838 | SFA |
| DAX | Kantarovsky | Sanya | Doxed | 2018 | Monotype | 23 x 19 | | 6662 | SFA |
| DAX | Kantarovsky | Sanya | Abuse | 2018 | Monotype | 23 x 19 | | 6634 | SFA |
| DAX | McKinniss | Sam | Pansies In A Basket | 2019 | Pastel On Paper | 9 x 12 | | 7524 | SFA |
| DAX | Sundblad | Emily | Untitled (A few women are existing to maintain the surface that heterosexuality is still conceivable) | 2011 | Oil on canvas | 40 x 33 x 3 in | | 1634 | SFA |
| DAX | Blade | Michelle | Solid & Liquid / Sonoma | 2020 | Acrylic ink on poplin | 24 x 2 x 25 in | | 7780 | SFA |
| DAX | Hansen | Channing | Algo 54 1.2.1 - "Blue Faced Leicester... | 2014 | Blue Faced Leicester, Coopworth, ecru California Variegated Mutant, Pygora, Romney, silk, Targhee, and Tunis fibers holographic polymers, cedar | 2 x 37 x 48 in | | 2883 | SFA |
| DAX | Ojo | Kayode | "Closed Audition: Boohoo Plus Verity Slinky Plnge Split Maxi Dress | 2018 | Inkjet On Museum Board | 32 x 3 x 46 in | | 7761 | SFA |
| DAX | Sternberg | Cole | A Horizon Formed By The Progression Of Water, 2015 | 2015 | Painting | 74 x 3 x 98 in | | 4628 | SFA |
| DAX | Ceccaldi | Julien | See Thru | 2014 | Glass paint on plexiglass | 63 x 42 x 7 in | | 6742 | SFA |
| DAX | Fu | Owen | Little Little Princess | 2018 | Painting | 26 x 22 | | 7699 | SFA |
| DAX | Hirst | Damien | For Mr.D 9 (Spin Drawing) | 2001 | Pencil on paper | 17 x 13 x 2 in | | 6675 | SFA |
| DAX | Issakharian | Sarah | "Silent Response" | 2021 | Painting | 98 x 5 x 80 in | | 7943 | SFA |
| DAX | Mapplethorpe | Robert | Snakeman | 1981 | Silver gelatin print | 16 x 20 | ed 15 | 6309.15 | SFA |
| DAX | Temma Hier | Stephanie | "Seen Not Seen" | | oil on linen with glazed stoneware sculpture | 37 x 31 x 10 in | | 7959 | SFA |
| DAX | Tsai | Yun-Ju | "Harmony Everywhere" | 2022 | Oil on canvas | 60 x 2 x 79.5 in | | 8478 | SFA |
| DAX | Young | Coco | Bathers | 2020 | Painting | 45 x 64 | | 8171 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | | Graphite On Paper | 29 x 25 x 2 in | | 2633 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | 2010 | Graphite On Paper | 23 x 17 x 3 in | | 2635 | SFA |
| DAX | Lee | Paul | Purple Water | 2018 | Painting | 60 x 40 | | 6215 | SFA |
| DAX | Nazareth | Paulo | Untitled [Ca- Come To The Shade] (2/2) | | Diptych Part 2/2 Photoprinting On Cotton Paper | 33 x 2 x 25 in | Edition 1 of 5 | 7891 | SFA |
| DAX | Ojo | Kayode | No.5 The Filmnecklace 1/3 | | | 34 x 1 x 26 in | | 7647 / OK_18_023 | SFA |
| DAX | Chassepot | Heloise | I Want To Paint Flowers No. 9 | 2022 | Oil on stitched canvas | 52 x 3 x 77 in | | 8561 | SFA |
| DAX | Ojo | Kayode | L'Amant Double 2Necklacesboxed | 2018 | occasion tux plunge jumpsuits with open back, Jane Stone sexy gold color tassel body chain necklace, fashion statement jewelry, crystal beads, Clare chandelier bead lamp chain, TOBIAS chairs, clear Amac boxes, beveled edge bath mirror | 7 x 41 x 3 in | | 7760 | SFA |
| DAX | Blade | Michelle | Toward Silence / Verdugo Park | 2020 | Acrylic ink on poplin | 45 x 5 x 56 in | | 7783 | SFA |
| DAX | Israel | Alex | As It Lays | 2012 | Digital Video On Hardrive | 7 x 6 x 2 in | ed 1/5 | 3255.1 | SFA |
| DAX | Blade | Michelle | The Puddle | 2020 | Acrylic on poplin | 56 x 39 | | 7781 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Campana | Fernando & Humberto | Yellow Furrychair | 2021 | Chair | 41 xx 43 x 33 | | 8036 | SFA |
| DAX | Johnson | Helen | Grist | 2014 | Synthetic polymer paint on canvas | 34 x 24 | | 4383 | SFA |
| DAX | Johnson | Helen | Myth clouds history | 2014 | Synthetic polymer paint on canvas | 34 x 24 | | 4370 | SFA |
| DAX | Nakamura | Kazumi | A Bird In Its Existence | 2016 | | 83 x 57 x 4 in | | 6073 | SFA |
| DAX | Poswa | Zizipho | Unozakuzaku | 2021 | Charcoal Stoneware and Bronze | 31 x 31 x 42 in | | 7714 | SFA |
| DAX | Tillmans | Wolfgang | Fire Island | 2015 | Photo | 38 x 30 | ed 3 | 4722 | SFA |
| DAX | Stout | Katie | Pink Large Lady Lamp | 2018 | Ceramic | 24 x 12 x 54 in | | 6857 | SFA |
| DAX | Yi | Anicka | Secession | 2020 | High density foam, resin, urethane paint, frame | 30 x 24 | | 7603 | SFA |
| DAX | Krugyanskaya | Ella | "Hammock Girls" (Bin 6) | | Graphite On Paper | 22 x 17 x 3 in | | 3484 | SFA |
| DAX | Krugyanskaya | Ella | "Cowgirls" (Bin 6) | 2014 | Graphite On Paper | 21 x 18 x 2 in | | 3483 | SFA |
| DAX | Krugyanskaya | Ella | Untitled | 2012 | Graphite On Paper | 21 x 17 x 3 in | | 2634 | SFA |
| DAX | Krugyanskaya | Ella | Untitled | 2014 | Graphite on paper | 15 x 21 | | 3869 | SFA |
| DAX | Guyton/Walker | | Untitled | 2005 | Silkscreen | 11 1/2 x 8 in | | 792 | SFA |
| DAX | | Guyton/Walker | Untitled | 2005 | Silkscreen | 11.5 x 8 in | | 791 | SFA |
| DAX | Fallahpisheh | Hadi | Box 10: #7848.8 "Mouse House" | 2021 | Stuffed animals, glazed ceramic pots | 18.5 x 25.5 x 19.5 in | | 7848.8 OR 7785? | SFA |
| DAX | Mytes | Eileen | Were Going To Monte Alban And We'Re Looking For Mr. Churro | | | 28 x 22 x 3 in | | 6867 | SFA |
| DAX | Ojo | Kayode | L'Amant Double Mirrors | | | 37 x 2 x 31 in | | 7760 / OK_18_027 | SFA |
| DAX | Ojo | Kayode | L'Amant Doublechair | | | 18 x 16 x 30 in | | 7760 / OK_18_027 | SFA |
| DAX | Ojo | Kayode | L'Amant Doublechair | | | 18 x 16 x 30 in | | 7760 / OK_18_027 | SFA |
| DAX | Krugyanskaya | Ella | Untitled (Drawing For Lemon And Lips) | 2012 | Graphite on paper | 27 x 33 + three moreDrawings | | 2636 | SFA |
| DAX | Palmer | Frances | Egyptian Vase | 2021 | White earthenware with yellow and dark blue underglaze, electric kiln fired porcelain. | 9 x 7 x 6 | | 8259 | SFA |
| DAX | Ida | Yukimasa | Venus | | Mixed media | 16 x 12 | | 6263 | SFA |
| LOCKSON | Ibrahim | Soimadou | Brown Musa | 2021 | Acrylic on paper | 15 1/2 x 11 1/2 | | 8019 | GROUP C |
| LOCKSON | Ibrahim | Soimadou | Out in the Sticks | 2021 | Acrylic on wooden panel | 23 x 23 | | 8029 | GROUP C |
| LOCKSON | Harrison | Rachel | Where'S My Fucking Peanut | 2012 | Set Of 26 Inkjetprints & Pins | 3.5 x 6 | | 2941 | SFA |
| LOCKSON | Aubock | Carl | Glass Straw Holder | | Straw Holder | | | 8090 | SFA |
| LOCKSON | Catelan | Maurizio | Yes! | 2019 | Porcelain, LED Lightbulb | 7 x 5 x 3 3/4 | Edition of 500 | 7688.27 | SFA |
| LOCKSON | Mesler | Joel | Sunset Sunrise | 2021 | Color Screenprint | 40 x 30 | ed 45 | 7953 | SFA |
| LOCKSON | Palmer | Frances | Wf32 Shino Vase | 2020 | Ceramic | 10 x 7 x 7 | | 8255 | SFA |
| LOCKSON | Palmer | Frances | Wf 58 Shino Vase | 2020 | Ceramic | 4 x 3 x 3 | | 8369 | SFA |
| LOCKSON | Ruppersberg | Allen | Untitled (What Happened To Contemporary Art?) | 2020 | Silkscreen Print | 31 x 40 | | 7638.33 | SFA |
| LOCKSON | Einar Hjorth | Axel | Ufo (Vintae Chair) | 1930 | 2 X Chairs | | | 8096 | SFA |
| LOCKSON | Perez Simao | Marina | Untitled | 2021 | silk organza appliqué over cotton velvet, with cotton embroidery, backed with cotton | 63 x 50 | ed 28 of 30 | 8135 | SFA |
| LOCKSON | Sottsass | Ettore | Coat rack with umbrella stand | 1973 | Coatrack With Umbrella Stand Made By Ivrea Olivetta | 59 x 19 x 19 | | 8133 | SFA |
| LOCKSON | Stout | Katie | Tp Lady, "The Only Lady You Can Expect To Handle Yoyr Shit 2021" | 2021 | Ceramic | 7 x 11 x 3 | | 7660.14 | SFA |
| LOCKSON | Tiravanija | Rirkrit | Untitled 2021 (All You Need Is Dynamite) | 2021 | | 50 x 70 cm | | 8194.5 | SFA |
| LOCKSON | Einar Hjorth | Axel | Sandhamn Chair | 1930s | 6 X Chairs | 31 x 17 | | 8095 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| | Israel | Alex | Willy Wonka And The Chocolate Factory | 2019 | 5 golden ticket prints | 18 x 14 each (5) | ed. 3 of 20, +5 | 7064.3 | |
| LOCKSON | Lowman | Nate | Bullet Hole | 2010 | Silkscreen on silver metallic paper | 35 x 25 | | 3765 | SFA |
| LOCKSON | Sunblad | Emily | Happy Birthday | 2022 | Oil on canvas | 10 x 8 | | 8433 | SFA |
| LOCKSON | Wolfson | Jordan | Untitled | 2017 | Silkscreen | 69 by 49 cm | ed 24/34 | 6520.24 | SFA |
| LOCKSON | Wolfson | Jordan | Untitled | 2017 | Print | 27 x 20 | ed. 35 | 6521.26 | SFA |
| LOCKSON | Parreno | Philippe | Untitled (Sea Creature) | | Painting on Plastic Sheet | 10 x 13 | | 7121 | SFA |
| LOCKSON | Barbour | Karen | When Night Comes And Dreams Come | 2022 | Goauche, flashe and acrylic collage on paper | 30 x 22 | | 8544 | SFA |
| LOCKSON | Barbour | Karen | The Earth Has Vicious Mind | 2022 | Flashe and acrylic on paper | 30 x 22 | | 8549 | SFA |
| LOCKSON | Bradley | Joe | Untitled | 2008 | Work On Paper | 17 x 14 | | 7299 | SFA |
| LOCKSON | Bradley | Joe | Untitled | 2008 | Work On Paper | 17 x 14 | | 7300 | SFA |
| LOCKSON | Calvin | Brian | Rubber Room | 2017/19 | Drawing | 11 x 8 | | 6979 | SFA |
| LOCKSON | Haas Brothers | | Outsider Artichoke | 2017 | Hand-thrown ceramic | 3 x 3 | | 6165 | SFA |
| LOCKSON | Heck | Kati | Skizze Einladung | 2021 | Drawing | 24 x 18 | | 7985 | SFA |
| LOCKSON | Ibrahim | Soimadou | Cornish Colors | 2021 | Work On Paper | 23 x 16 | | 8024 | SFA |
| LOCKSON | Kusaka | Shio | Group 13 | 2014 | Ceramics | 4 works | | 4259 | SFA |
| LOCKSON | Ligoranoreese | | The History of Art of Snow Globes | 2019 | Complete set of 20 glass snow globes with black bases and acrylic text | 7 1/2 x 6 inches | Edition of 10 | 7427 | SFA |
| LOCKSON | Soto Climent | Martin | Dia Shoes | 2009 | Two pairs of vintage women's shoes | 8 x 14 x 10 | | 2513 | SFA |
| LOCKSON | Valdez | Anna | Bird Views | 2022 | Ceramic Vase | 10 x 8 | | 8390 | SFA |
| LOCKSON | Clark | Jake | The Ivy | 2022 | Ceramic | 25 x 16 x 16 | | 8559 | SFA |
| LOCKSON | Gonkar | Gyatso | Joy | 2011 | Work On Paper | 14 x 13 | | 2924 | SFA |
| LOCKSON | Kahn | Misha | Tablelamp | 2015 | Lamp | 17 x 18 x 4 | | 8386 | SFA |
| LOCKSON | Longstreth | Jake | Los Angeles Pines | 2022 | Set of 4 25-colored screen prints on conventry rag paper | 45 x 31 each (4) | | 8502.26 | SFA |
| LOCKSON | Mulligan | Catherine | Blonde 1 | 2021 | Oil On canvas in hand-painted frame | 10 1/4 x 7 1/4 | | 8206 | SFA |
| LOCKSON | Mulligan | Catherine | Untitled | 2020 | Oil on cut canvas | 10 x 8 1/2 | | 8229 | SFA |
| LOCKSON | Wood | Jonas | Untitled | 2021 | Blanket | 130 x 170 cm | | 7690 | SFA |
| LOCKSON | B. | Wurtz | Untitled (Clock) | 2012/13 | Wood, String, Thread, Tyvek, Acrylic Paint, Collage Button and Screw Eyes | 36 x 13 | | 6745 | SFA |
| LOCKSON | Barger | Thomas | Yellow Chair | 2019 | Chair | 60 x 16 x 19 | | 8093 | SFA |
| LOCKSON | Bradford | Katherine | Purple Surf Boards | 2020 | Work On Paper | 14 x 14 | | 7766 | SFA |
| LOCKSON | Culver | Christopher | Empty House | 2020 | Charcoal and Pastel on Paper | 42 x 24 | | 7909 | SFA |
| LOCKSON | Haas Brothers | | Fat Roll Belly Hanging Dong Accretion Vase | 2014 | Ceramic | 10 x 11 x 8 | | 4412 | SFA |
| LOCKSON | Swig/Rashid Johnson | Liz | Gold Military Tag From "Anxious Men" | 2020 | Necklace - 9k gold, rhodium engraving, ruby, red enamel and cord | 9k gold | ed 7 of 25 | 7547.2 | SFA |
| LOCKSON | Swig/Rashid Johnson | Liz | Signet Ring for Anxious Men | 2020 | 9k gold, rhodium engraving, ruby | 44 x 24 mm | Edition 7 of 25 | 7602 | SFA |
| LOCKSON | Yovanovitch | Pierre | "Laura" Walllamp | 2013 | Lamp | 50 x 9 | | 7096 | SFA |
| LOCKSON | Goldin | Nan | 1St Days In Quarantine, Brooklyn, Ny, 2020 | 2020 | Photo | 40 x 53 | Edition of 3 | 7754.1 | SFA |
| LOCKSON | Poswa | Zizipho | Umyeni Viii Miniature (Groom) | 2021 | Ceramic/Bronze | 9 x 5 x 4 | | 8046 | SFA |
| LOCKSON | Swig/Cindy Sherman | Liz | SPA | 2019 | Necklace - Sardony shell cultured pearls, 18k pink gold | 1.7 X 2.3 in | ed. 15 | 7529.2 | SFA |
| LOCKSON | Sherman | Cindy | Untitled #476 (Society Lady) | 2008 | c-print | 84 1/2 x 68 in | ed 2 of 6 | | SFA |
| LOCKSON | Tiravanija | Rirkrit | Untitled 2020 | 2020 | Painting | 12 x 12 | | 7684 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| LOCKSON | Kantarovsky | Sanya | A | 2018 | Work On Paper | 15 x 11 | | 6902 | SFA |
| DAX | Israel | Alex | SPF 18 Head | 2015 | Acrylic on aluminum | | | 6977 | SFA |
| LOCKSON | Mulligan | Catherine | Redhead | 2021 | Painting | 30 x 19 | | 8207 | SFA |
| LOCKSON | Nashat | Shahryar | Boyfriend_04.Jpeg | 2022 | Acrylic Gel, Ink on Paper, Plywood | 15 x 13 | | 8452 | SFA |
| LOCKSON | O'Keefe | Ida | Sea-Shells | 1927 | Painting | 8 x 12 | | 7912 | SFA |
| LOCKSON | Bradford | Katherine | Swim Team And Coach | 2022 | Acrylic on canvas | 16 x 20 | | 8469 | SFA |
| LOCKSON | Collier | Anne | Mirror | 2020 | C-Print | 60 x 46 | ed. 5 | 7583.3 | SFA |
| LOCKSON | Gonkar | Gyatso | Buddha In Our Time / Batman | 2010-2012 | Silkscreen, mixed media and graphite on paper | 33 x 25 1/2 | | 2979 | SFA |
| LOCKSON | Haldeman | Ivy | Colossus, Knee To Elbow, Wrist Bent, Four Fingers Edge Out | 2018 | Painting | 84 x 58 | | 6689 | SFA |
| LOCKSON | Bradford | Katherine | Hand Shake | 2019 | Acrylic on canvas | 80 x 126 | | 7742 | SFA |
| LOCKSON | Aubock | Carl | Cocktail Set | | Cocktail Set | | | 8091 | SFA |
| LOCKSON | Wood | Jonas | Yellow And Orange Orchid Clipping | 2018 | Rug | 66 x 48 | ed 30 | 6486.6 | SFA |
| LOCKSON | Israel | Alex | Willy Wonka And The Chocolate Factory (Box) | 2019 | Box | | | | SFA |
| LOCKSON | Wittenberg | Nicole | Cliff Walk Study | 2021 | Oil on canvas | 25 x 33 | | 7893 | GROUP A |
| LOCKSON | Wittenberg | Nicole | Stormy Weather | 2020 | Pastel On Paper | 15 1/2 x 11 1/2 | | 7913 | GROUP A |
| LOCKSON | Wittenberg | Nicole | Stefania 3 | 2021 | Pastel On Paper | 23 x 19 | | 8316 | GROUP A |
| LOCKSON | Mesler | Joel | Bananas | 2021 | Painting | 80 x 70 | | 7784 | SFA |
| Phillips | Deller | Jeremy | Untitled (Stonehenge at Sunset) | 2013 | Screenprint on somerset Satin 300gsm | 23 5/8 x 35 3/8 | | 3038 | SFA |
| Phillips | Wolfson | Jordan | Fresh, Love, Tea Bag | 2013 | | | | | SFA |
| Phillips | Hylden | Nathan | Untitled (0211 C) | 2011 | acrylic and enamel on linen | 67½ x 47 in | | | SFA |
| Phillips | Morley | Ivan | A True Tale | 2007 | thread on canvas | 49 x 39 | | | SFA |
| Phillips | Quaytman | R.H | Archimedean Point | 2014 | 4 flip lenticular print, mounted to sintra | 32¾ x 20 in | 8 of 10 | | SFA |
| Phillips | Strobert | Kianja | Untitled | 2006 | Painting | 61 x 47 | | 6202 | SFA |
| Phillips | Mason | John | Charcoal Elliptical Orbit With Tracers | | | | | | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| Phillips | Varslev | Frederik | Untitled (Drøbak Kunstforening #11) | 2013 | | | | | SFA |
| UOVO | Elrod | Jeff | Sunset Park | 2013 | UV Ink on canvas | 84 x 63 | | 4071 | GROUP A |
| UOVO | Gilliam | Sam | Red Stretch | 1965 | Acrylic on canvas | 59 x 107 x12 | | 7541 | GROUP A |
| UOVO | Lawler | Louise | Silent Night | 2011-2013 | Direct cibachrome mounted on museum box | 51 x 39 x 2.5 | | 3437.3 | GROUP A |
| UOVO | Pettibon | Raymond | No  Title (Sure it can…) | 2013 | Ink, graphite, charcoal, acrylic and collage on paper | 62 x 67 x 3 | | 2469 | GROUP A |
| UOVO | Prince | Richard | Untitled | 2010 | Acrylic and silkscreen on t-shirt | 33 x 27 x 3 | | 6462 | GROUP A |
| UOVO | Prince | Richard | Untitled (Protest Painting) | 1989-1992 | Acrylic, silkscreen, graphite and paper on canvas | 42 x 21 x 5 | | 6465 | GROUP A |
| UOVO | Prince | Richard | Untitled (Tell Me Everything…) | 1987 | Acrylic, silkscreen on cotton stretch over board | 31 x 26 x 4 | | 6461 | GROUP A |
| UOVO | Prince | Richard | Untitled (Cowboy) | 2000 | Ektacolor print | 42 x 32 x 2.5 | | 6464.1 | GROUP A |
| UOVO | Prince | Richard | Are You Kidding | 1988 | Acrylic and silkscreen on canvas | 66 x 54 x 2 | | 4122 | GROUP A |
| UOVO | Owens | Laura | Untitled | 2014 | 42 of 100 | 22 x 19 x 2 | | 4158 | SFA |
| UOVO | Fordjour | Derek | Magic, Mystery, & Legerdemain | 2022 | Silkscreen on paper | 40 x 27 | | 8271.3 | SFA |
| UOVO | R | Tal | Pyjamas | 2011 | Woodcut | 45 x 23 | ed 12 | 6329.5 | SFA |
| UOVO | Boone | Will | You'Re Being Watched | 2014 | Work On Paper | 30 x 22 | | 2767 | SFA |
| UOVO | Taylor | Henry | Choke Hold | 2010 | Box | 7 x 4 | | 2241 | SFA |
| UOVO | Ethridge | Roe | Untitled (Point Break) | 2010 | C print | 35 x 24 | ed 5 | 1538 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| UOVO | McEneaney | Sarah | *Self-Examination* | 1992 | Painting | 34 x 28 | | #1 | SFA |
| UOVO | Adams | Bill | Ruffian | 2003 | Painting | 30 x 22 | | 36 | SFA |
| UOVO | Denny | Simon | New Management Memorial Plaque Swis Institute Illumination | 2014 | Photo | 26 x 36 | | 3444 | SFA |
| UOVO | Aldrich | Richard | Untitled | 2007 | Painting | 14 x 10 | | 737 | SFA |
| UOVO | Anderson | Sam | Helpful Waitress Angel | 2016 | Sculpture | 20 x 17 x15 | | 6485 | SFA |
| UOVO | Ayari | Nadia | Loop Iii | 2021 | Painting | 60 x 60 | | 7928 | SFA |
| UOVO | Malouf | Mathieu | Passagen Ii (Hr Giger) | 2015 | Painting | 56 x 44 | | 4246 | SFA |
| UOVO | Smith | Josh | Untitled (Jsc08800) | 2008 | Mixed Media | 48 x 36 | | 2321 | SFA |
| UOVO | Spaulings | Reena | Enigma 4 | 2011 | Painting | 22 x 44 | | 2485 | SFA |
| UOVO | Bernstein | Judith | Dick In A Head | 2014 | Work On Paper | 41 x 29 | | 2863 | SFA |
| UOVO | Beshty | Walead | Selected Works (2009-2011/November 15Th 2010 - March 16Th 2011) | 2009-2011 | Colorphotographic Paper | 20 x 30 | | 1533 | SFA |
| UOVO | Comte | Claudia | Bumpy Grumpy | 2013 | Sculpture | 22 x 18 x 6 | | 2541 | SFA |
| UOVO | Novitskova | Katja | Pathfinder | 2014 | Sculpture | 11 x 47 x 47 | | 2736 | SFA |
| UOVO | Nuur | Navid | Untitled | 2014 | Painting | 72 x 54 | | 3903 | SFA |
| UOVO | Boone | Will | Be Quiet | 2013 | Painting | 60 x 76 | | 3802 | SFA |
| UOVO | Klingbeil | Kate | Diggin Myself Out Of A Whole | 2021 | Painting | 59 x 83 | | 8003 | SFA |
| UOVO | Klingbeil | Kate | Sedimental | 2021 | Painting | 60 x 84 | | 8335 | SFA |
| UOVO | Walters | Tara | Secret Garden | 2021 | Painting | 96 x 65 | | 8140 | SFA |
| UOVO | Weiser | Garth | Euromissle | 2012 | Painting | 100 x 83 | | 2981 | SFA |
| UOVO | Akashi | Kelly | Plumb Life Form | 2019 | Sculpture | 38 x 21 x 8 | | 7297 | SFA |
| UOVO | Alvestad | Audun | I Doubt I'Ll Find One Like That Again | 2021 | Painting | 59 x 47 | | 7935 | SFA |
| UOVO | Alvestad | Audun | We'Re Not Here For Long, And The World Is | 2021 | Painting | 59 x 47 | | 7934 | SFA |
| UOVO | Hundley | Elliott | Untitled | 2006 | Anka Painting | 44 x 77 | | 6574 | SFA |
| UOVO | Yang | Mark | Cad, Han, Ind | 2021 | Oil on canvas | 72 x 54 | | 7995 | SFA |
| UOVO | Comte | Claudia | Sculpture Object 30 And Back To The Future | 2014 | Painting / Sculpture | 63 Diameter | | 2783 | SFA |
| UOVO | Elrod | Jeff | Primitive Adventure | 2013 | Acrylic paint on canvas | 80 x 64 | | 3771 | SFA |
| UOVO | Hein | Jeppe | Green Mirror Ballon (Light) | 2017 | Sculpture | 16 x 10 x 10 | ed 3 | 6104 | SFA |
| UOVO | Nashat | Shahryar | Untitled | 2018 | UV print on Hydrocal, gesso, rubber, powder - coated steel | 42 x 34 | | 6273 | SFA |
| UOVO | Prince | Richard | Untitled (Hippie Drawing) | 1997 | Work On Paper | 29 x 22 | | 6749 | SFA |
| UOVO | Bley | Ragna | Edine Relative | 2015 | Painting | 98 x 70 | | 8083 | SFA |
| UOVO | Gardner Gray | Georgia | Feierabend | 2018 | Painting | 51 x 36 | | 6499 | SFA |
| UOVO | Lambie | Jim | Jumping Jack | 2014 | Work On Paper | 71 x 27 | | 3904 | SFA |
| UOVO | Quilty | Ben | *The Easter Bunny* | 2018 | Painting | 104 x 79 | | 6632 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled (Woman Painting Woman) | 2012 | | 27 x 21 x 2 | | 3868 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled | 2014 | Graphite on paper | 15 x 21 | | 3866 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled | 2011 | | 15 x 20 x 2 | | 3612 | SFA |
| UOVO | Nares | James | Untitled | 2002 | | 40 x 30 x 2 | | | SFA |
| UOVO | Price | Seth | Untitled, 2006 | 1996 | Vacuum formed high impact polystyrene | 20 x 17 inches | | 704 | SFA |
| UOVO | Soto Climent | Martin | Tights On Canvas | 2009 | Painting | 35 x 24 | | 2127 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| WAG OFFICES NY | Kantarovsky | Sanya | Pumpkin Ii | 2022 | Print | 27 x 20 | Edition of 100 | 8807 | SFA |
| WAG OFFICES NY | Brown | Cecily | Nana | 2022 | Edition | 20 x 15 | | 8806 | SFA |
| WAG OFFICES NY | Quaytman | R.H. | O Topico, Chapter 27 | 2014 | Painting | 20 x 20 | | 4244 | SFA |
| WAG OFFICES LA | Clark | Jake | Carneys Hot Dog On Sunset | 2021 | Ceramic | 15 x 11 x 11 | | 8215 | SFA |
| WAG OFFICES LA | Marcus | Calvin | Untitled Face Etchings | 2015 | Hand ground line ethings with chine-colle | 11 x 10 each | ed 5 | 4333 | SFA |

# EXHIBIT E

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # |
|---|---|---|---|---|---|---|---|---|
| UOVO | Prodger | Charlotte | Richard/Chain | 2014 | Risograph on Munken Lynx paper | 19 x 14 x 2 | Edition of 200 + 10 AP | 3046 |
| UOVO | Reeder | Scott | LOL Alternatives | | Poster | 24 x 19 x 2 | | 3131 |
| UOVO | Ruppersberg | Allen | Where Should I Go | | | 25 x 17 x 3 | | 2943 |
| UOVO | Kruglyanskaya | Ella | Untitled | 2014 | 5 color screen print | 25 x 16 x 2 | | 3932 |
| UOVO | Owens | Laura | Fruits and Nuts | | | 26 x 18 x 3 | | 3130 |
| UOVO | Sture | Johannesson | The Aquarium | 1969 | Lithograph printed by Permild and Rosen | 40 x 31 x 2 | | 2696 |
| UOVO | Da Corte | Alex | Low Lights | 2018 | Wood frames, plexiglass, spray paint, vin | 57.5 x 57.5 | | 6783 |
| UOVO | Owens | Laura | Untitled | 2014 | | 10 x 10 x 2 | Edition 23 of 100 | 3479 |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # |
|---|---|---|---|---|---|---|---|---|
| DAX | Domanovic | Aleksandra | Disney Letter | 2014 | Digital pigment print on Hahnemuhle Photo Rag 308gsm | 17 x 16 x 3 in | | 3420 |
| DAX | Richards Smit | Guy | President Resigns (Wednesday, November 7, 20 | 2017 | Digital Print | 27 x 34 x 2 in | Edition of 75 | 6219 |
| DAX | Wolfson | Jordan | Bumper Sticker | | Bumper stickers | 23 x 2 x 29 in | | 3421 |
| DAX | Minter | Marilyn | Trumps Plague | 2017 | Hydrocal | 15 x 12 x 5 in | Edition 58 of 100 | 6220 |
| DAX | Kantarovsky | Sanya | Crocodile | | monotype | 33 x 27 x 2 in | | 4379 |
| DAX | Emin | Tracey | Because of You I'm Here | | | Edition of 250 | | OAE5 |
| DAX | Howard | Rachel | Cant Breathe Without You | 2004 | Ink on card | 24 x 19 x 3 in | | 6678 |
| DAX | Pesce | G. | Vase | | | 18 x 13 x 19 in | | 8346 |
| DAX | Saban | Analia | Bouqet Of Flowers With A Cicuit Board | 2014 | Pigmented ink and crayon on Hahnemuhle Museum Etching Paper | 32 x 22 x 3 in | Edition 2 of 30, +10 AP | 3008 |
| DAX | Hirst | Damien | For The Love Of God Believe | 2007 | Silkscreen in colours on woven paper | 17 x 3 x 20 in | | 6676 |
| DAX | Pesce | Gaetano | Contemporary Indian Summer XI Vase | 1995 | Soft resin clear red, matt green | 20.5 x 21 x 27 in | | 8695 |
| DAX | Gilhooly | David | "How Long Lord, How Long 2" | | | 18 x 16 x 8 in | | 6688 |
| DAX | Wool | Christopher | Untitled | 2013 | Lithograph in two colors | 34.5 x 26.5 | | 2744 |
| DAX | Craig-Martin | Michael | Fake 2005 | 2005 | Silkscreen in colours on woven paper | 43 x 41 x 2 in | | 6671 |
| DAX | Gerrard | John | Group of 4 Aps Solar Reserve  (12:00 / 9.01), (12:19/9.01), (18:00 /9.01), (19:00 / 9.01) | | Glicee print on Hahnemuhle photo rag pa | 39 x 39 | Edition 1 of 20, +2 | OAE 11.1 |
| DAX | Hirst | Damien | The Hours Spin Skull | 2009 | Household gloss on plastic skull in uniqu | 6 3/4 | Edition of 210 | 6677 |
| DAX | Platner | Warren | 1 Table Top "Dining Set For Knoll International" | 1966 | Bronze-plated steel, upholstery, smoked glass | 58.5 x 5 x 58.5 in | | 8643 |
| DAX | Henrot | Camille | Tropics Of Love | | | 21 x 17 x 1 in | | 3007 |
| DAX | Thiebaud | Wayne | Little Suckers | 1971/2014 | Aquatint | 12 x 2 x 12 in | Edition 30 of 25 | 7502 |
| DAX | Strachen | Tavares | "Fisher" | 2018 | White neon, transformers, limestone, paper, vinyl, collage | 45 x 27 x 20 in | | 6635 |
| DAX | Israel | Alex | Booties | 2015 | Acrylic on aluminum | 4 x 10 x 9 | | 4630 |
| DAX | Stout | Katie | Unique Double Girl Floorlamp | 2018 | Painted ceramic | 41 x 31 x 79 in | | 6477 |
| DAX | Kantarovsky | Sanya | Untitled, 2013 | | Lithograph | 18 x 25 x 1 in | | 3670 |
| DAX | Israel | Alex | Glove | 2015 | Acrylic on aluminum | 7 x 7 x 14 | | 4631 |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # |
|---|---|---|---|---|---|---|---|---|
| LOCKSON | McEneaney | Sarah | Chinati Night | 2020 | Archival Pigment Print | 18 x 24 | | 8546.54 |
| LOCKSON | von Heyl | Charline | Untitled | 2012 | Four-layer wood block | 23 x 17 | Edition of 85 of 100 | 8547.85 |
| LOCKSON | Akroyd & Harvey | | Climate Change Is Real (Artworks) | 2017 | Archival print on Hanhemule Photo Rag M | 35 1/2 x 26 3/5 | | |
| LOCKSON | Wood | Jonas | Holiday Card | 2018 | Screenprint | 13 x 10 | | 8000 |
| LOCKSON | Berrio | Maria | The Celebration | 2022 | Silkscreen | 30 x 42 | Edition 28 of 77 | 8457 |
| LOCKSON | Oehlen | Albert | Gold Box | 1975 | Limited Edition Book in custom Gold Box | 15 x 12 x 2 1/2 | Edition 22 of 25 | 7135 |
| LOCKSON | Wood | Jonas | no title (Diet 7up) | 2016 | Print on paper | 10 1/2 x 13 | Edition 97 of 150 | 6332 |
| LOCKSON | Wood | Jonas | Untitled | 2017 | | 10 1/2 x 8 | | 7120.97 |

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                                 Chapter 7

LISA SCHIFF,

                                                 Case No. 24-10010 (DSJ)

                        Debtor.

------------------------------------------------------------x
In re:

                                                 Chapter 7 (Involuntary)

SCHIFF FINE ART, LLC,

                                                 Case No. 24-10039 (DSJ)

                        Debtor.

------------------------------------------------------------x

**ORDER APPROVING SALE OF CERTAIN PROPERTY OF THE ESTATES AND SCHEDULING HEARING ON ANY TIMELY-FILED OBJECTIONS TO THE SALE OF ANY SPECIFIC ARTWORKS BY PHILLIPS AUCTIONEERS LLC AS TRUSTEES' RETAINED AUCTIONEER**

Upon the *Trustees' Joint Motion For Entry Of: (i) An Order Authorizing The Trustees To Retain Phillips Auctioneers LLC As Their Auctioneer Under The Terms Of Certain Proposed Auction Agreements, Pursuant To 11 U.S.C. §§ 327 And 328 And Fed. R. Bankr. P. 2014 And 6005; Approving The Auction Agreements And Authorizing Phillips Auctioneers LLC, As Trustees' Retained Auctioneer, To Sell, By Way Of One Or More Public Auctions, Private Sales Or Other Transactions, Certain Artworks Constituting Property Of The Debtors' Estates, Free And Clear Of All Liens, Claims, Encumbrances And Interests, Pursuant To 11 U.S.C. § 363(b), (f) And (m); And Granting Related Relief; And (ii) An Order Scheduling A Hearing On Any Timely-Filed Objections To The Sale Of Any Specific Artworks, And Granting Related Relief* [Schiff ECF No. _____; SFA ECF No. _____] (the "Retention/Sale Motion")[1] jointly filed by Deborah J. Piazza,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Retention/Sale Motion.

as Chapter 7 trustee (the "<u>SFA Trustee</u>") in the above-captioned involuntary Chapter 7 case of Schiff Fine Art, LLC ("<u>SFA</u>"), and Yann Geron, as Chapter 7 trustee (the "<u>Schiff Trustee</u>") in the above-captioned voluntary Chapter 7 case of Lisa Schiff ("<u>Schiff</u>"); and the Court determining good and sufficient notice of the Retention Sale/Motion having been given; and no further notice being required; and a hearing on the Retention/Sale Motion having been held on September 25, 2024; and due deliberation thereon having been had; and due deliberation on any timely filed objections by Noticed Parties having been had; and the Court having entered an order on September __, 2024 (the "<u>Retention/Sale Order</u>"), authorizing the SFA Trustee and the Schiff Trustee (the "<u>Trustees</u>") to retain Phillips Auctioneers LLC ("<u>Phillips</u>") as auctioneer under the terms of the Auction Agreements, and approving the Auction Agreements and granting related relief; it is hereby

**ORDERED**, that (i) in the event no objections to the sale of any specific artworks listed on the Phillips Property Schedules are timely filed (a) by any of the Noticed Parties on or before September 18, 2024, and (b) by any person or entity other than the Noticed Parties on or before October 10, 2024, or (ii) any and all such objections are resolved on or before October 10, 2024, the Court will enter an order authorizing Phillips, as retained auctioneer to the Trustees, to sell all artworks listed on the Phillips Property Schedules (other than the Excluded Artworks, as defined below) "as is" and "where is" and without any representations or warranties by the Estates or by the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m), with the successful bidders and purchasers to be entitled to the status of a good faith purchaser under Bankruptcy Code section 363(m), and it is further

091686\1\170856961.v1

**ORDERED**, that in the event any objections to the sale of any specific artworks listed on the Phillips Property Schedules are timely filed by any person or entity other than the Noticed Parties on or before October 10, 2024, a hearing will be held via Zoom for Government, before the Honorable David S. Jones, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004 on **October 17, 2024 at 10:00 a.m.** (the "Artwork Objections Hearing"); and it is further

**ORDERED**, that as soon as practicable after the Artwork Objections Hearing, the Court will enter an order authorizing Phillips, as retained auctioneer to the Trustees, to sell all artworks listed on the Phillips Property Schedules except those artworks excluded by the Trustees or this Court (the "Excluded Artworks") "as is" and "where is" and without any representations or warranties by the Estates or by the Trustees, and without recourse against the Estates or the Trustees or the Trustees' professionals (except solely against the Estates as to valid claims outlined in Phillips' Authorship Warranty), free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code sections 363(b), (f) and (m), with the successful bidders and purchasers to be entitled to the status of a good faith purchaser under Bankruptcy Code section 363(m), with the list of artworks that are authorized to be sold to be attached to the Order, and such list shall be attached to the Auction Agreements; and it is further

**ORDERED**, that the Artwork Objections Hearing, if necessary under the terms of this Order, will be held by the Bankruptcy Court via Zoom for Government. Any party that wishes to appear at the Zoom Artwork Objections Hearing, whether making a "live" or "listen only" appearance before the Court, needs to register by **October 16, 2024 at 4:00 p.m.** an electronic appearance by going to Judge Jones' chambers page on the Court website,

, and clicking on the "eCourtAppearances" tab.  The Artwork Objections Hearing may be adjourned, from time to time, by announcement in open Court without any further or other notice thereof; and it is further

      **ORDERED**, that if any timely-filed objections are not resolved on or before the Artwork Objections Hearing, the Bankruptcy Court may schedule further hearings on such objections; and it is further

      **ORDERED**, that the Bankruptcy Court shall retain jurisdiction over any dispute or controversy arising from or related to the entry of this Order.

Dated:  New York, New York
        _____, 2024

                                                    _____
                                                HONORABLE DAVID S. JONES
                                                United States Bankruptcy Judge

091686\1\170856961.v1

# EXHIBIT G

# PHILLIPS

**CUSTODY AGREEMENT**

WHEREAS, Deborah J. Piazza, solely in her capacity as Chapter 7 trustee of the estate of Schiff Fine Art, LLC ("Trustee"), intends to file a motion (the "Retention/Sale Motion") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking orders providing, among other things, for approval of the Trustee's retention of Phillips Auctioneers LLC ("Phillips") as the Trustee's auctioneer in the Schiff Fine Art, LLC ("SFA") Chapter 7 bankruptcy case and to authorize the Trustee, through Phillips, as agent for the Trustee, to conduct certain public auction sales, private sales and other transactions relating to property of the SFA bankruptcy estate; and

WHEREAS, the Trustee and Phillips are negotiating an agreement for the consignment by the Trustee to Phillips of certain property of the SFA bankruptcy estate (the "Consignment Agreement").

It is hereby agreed, by and between the Trustee and Phillips, as follows:

Subject to the provisions set forth below, the Trustee and Phillips agree that pending Bankruptcy Court approval of the Retention/Sale Motion and the Consignment Agreement, the Trustee hereby appoints Phillips as agent for the temporary removal, care, custody, and control of that certain property described in the attached Property Schedule (each a "Lot" and collectively, the "Property") from each Lot's current location on the terms and conditions set forth herein.

The Property will be released to Phillips while the parties continue to negotiate the Consignment Agreement.

The Trustee will absorb all costs relating to shipping the Property from its current location to Phillips' New York location and any necessary return shipping. Phillips will pay the shipper and be reimbursed by the SFA bankruptcy estate from the sale proceeds of Phillips' public auction sales. The Property will be under the care, custody and control of Phillips from the time of release to Phillips until the sales of the Property are concluded by Phillips and returned to the locations to be determined by the Trustee by a date mutually agreed upon by Phillips and the Trustee.

The Trustee acknowledges and agrees that Phillips and any of its agents will not carry specific insurance for any Property while it is in transit to Phillips and until the condition of such Property is examined and reported to the Trustee. The Trustee has agreed to arrange or cause to be arranged the SFA Estate's own insurance for the time that the Property is picked up and while it is in transit to Phillips warehouses and up to and until the Property's condition is reported.

The Trustee agrees that Phillips shall not be responsible for any physical loss or damage to any Lot however so occurring until the Lot's risk of loss has passed to Phillips as set forth in this paragraph. A Lot's risk of loss shall pass to Phillips after: (i) Phillips has uncrated the Lot on Phillips' premises; (ii) Phillips created a condition report for that Lot; and (iii) Phillips has provided written notice to the Trustee that (i) and (ii) have been completed. The Trustee agrees that it will have its insurance company endorse its policy for the Property to name Phillips as a "Loss Payee" and an "Additional Insured" to the extent of Phillips' interests as evidenced by a written certificate of insurance provided to Phillips prior to any shipping of any of the Property. Trustee understands that by naming Phillips as an "Additional Insured" on Trustee's insurance policy, Trustee's insurer will not have the right of subrogation against Phillips.

When the risk of loss has passed to Phillips, Phillips shall provide coverage against loss or damage to the Property for an amount up to the respective Lot's mid-estimate subject to the terms listed below. Phillips' maximum liability for any Lot shall not exceed the respective Lot's mid-estimate. Neither Phillips nor Phillips' insurers shall be responsible for loss or damage resulting from the following causes: (i) inherent defects in the Property; (ii) humidity or change of weather or other atmospheric conditions not within Phillips' control; (iii) damage caused by mechanical fault or breakdown (if applicable); (iv) wear and tear and gradual deterioration; (v) damage caused by war, terrorism, radioactive contamination and/or cyberattack; (vi) damage occurring while the Property is in the care or custody of a restorer approved by Trustee in writing; and (vii) damage occurring while the Property is in Trustee's possession or control or in the care or custody of shipping and packing agents retained by Trustee (even if recommended by Phillips).

This Agreement is made by and between Trustee and Phillips and is effective as of the last date set forth below and shall be governed by and construed in accordance with the laws of the State of New York. The United States Bankruptcy Court for the Southern District of New York will deal exclusively with any contractual or non-contractual disputes or claims arising out of or in connection with this Agreement.

Signed by: _____

Name: Deborah J. Piazza solely in her capacity as Ch. 7 Trustee of the estate of Schiff Fine Art, LLC

Dated: _____8/14/24_____

DocuSigned by:

Hartley Waltman

Signed: _____6CBBA417FC1E4E1..._____

For and on behalf of Phillips Auctioneers LLC

Title: _____as General Counsel, Americas

Dated: _____8/14/2024_____

# Property Schedule

**[attached]**

# SFA Property for Phillips 8.19.24

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Beavers | Gina | Fireworks Pop | 2016 | Acrylic on canvas on panel with wood frame | 34 x 32 x 6 in | | 4621 | GROUP A |
| DAX | Ofili | Chris | "Triangle Fall" | 2017 | Oil and charcoal on linen | 63 x 3.5 x 39.5 in | | 6069 | GROUP A |
| DAX | Walker | Kelley | I See now that anyone... | 2003 | mirrored acrylic, four panels | 88 x 93 | | 3881 | GROUP A |
| DAX | Wekua | Andro | Untitled | 2018 | Oil and silkscreen on aluminum | 35 x 3 x 50 in | | 6495 | GROUP A |
| DAX | Wolston | Chris | "Blue Metallic Plantchair" | | | 48 x 40 in | | 7854 | GROUP C |
| DAX | Kruglyanskaya | Ella | Staring Contest | | | 100 x 60 x 4 in | | 4446 | GROUP A |
| DAX | Israel | Alex | Ferris Beuller's Day Off | 2016 | Embossed silkscreen with collage (hand applied stickers) | 18 x 23 | Edition 66 of 10 | 4164.66 | SFA |
| DAX | Oppenheim | Meret | Nachtimmel Mit Achaten | 1971 | Print | 31 x 25 | | 6743.53 | SFA |
| DAX | Do Espirito Santo | Iran | Tubo D Filme | | Sculpture | 8 x 8 x 8 in | Ed 25 | 651 | SFA |
| DAX | Juliano Villani | Jamian | "Is There Room For Bruce" | 2016 | Print | 24 x 18 | ed 85 | 7122.48 | SFA |
| DAX | R. | Tal | Nam Nam (Bin 1) | 2007 | Crayon, gouache and ink on paper | 9 x 2 x 12 in | | 2706 | SFA |
| DAX | Chicago | Judy | What If Woman Ruled The World | 2020 | Archival pigment print on paper | 29 x 2 x 38 in | | 7596 | SFA |
| DAX | Arnio | Eero | Ballchair | 1965 | Chair | | | 8088 | SFA |
| DAX | Auerbach | Tauba | "Fold Slice Topo" | | color aquatint etching | 50 x 40 x 2 in | | SFA094 | SFA |
| DAX | Andreani | Giuilia | L'Art Doit Pendre | 2019 | Work On Paper | 10 x 7 | | 7293 | SFA |
| DAX | Dunham | Carroll | | 2010 | Drawing | 15 x 12 | | 2689 | SFA |
| DAX | Hansdotter | Hanna | Incommodious | 2021 | Glass | 23 x 13 x 13 | | 7680 | SFA |
| DAX | Henke | Lena | Yes I Am Pregnant Bag 4 | 2014 | Photo | 43 x 34 x 4 | | 2763 | SFA |
| DAX | McDonald | Danny | Wrestling With Reflection 2015 (Bin 1) | 2015 | Ultimate warrior vinyl action figure, resin dollhouse vanity with glass mirror | 10 x 6 x 4 in | | 4218 | SFA |
| DAX | Moon | Jiha | Boksoonyi | 2019 | Ceramic | 9 x 6 x 4 | | 7703 | SFA |
| DAX | Moon | Jiha | Pink Beach | 2018 | Ceramic | 10 x 8 x 7 | | 7704 | SFA |
| DAX | Price | Walter | You Get No Bread With One Meatball | 2018 | Drawing | 10 x 13 | | 6744 | SFA |
| DAX | White | Pae | Companions Damaged | 2015 | Gold glaze, porcelain | 7 x 12 x 7 in | | 4302 | SFA |
| DAX | Yousif | Maryam | "Floating Away On Palm Boat" | 2022 | Ceramic | 17 x 16 x 8 | | 8391 | SFA |
| DAX | | Guyton/Walker | Untitled (Knife) | 2004 | Mixed Media On Paper | 16 x 13 x 2 in | | 793 | SFA |
| DAX | Broyard | Henri | 1Il14 2014 - Ac/ Graphite/ C | 2014 | Acrylic and graphite on canvas | 36 x 2 x 32 in | | 2828 | SFA |
| DAX | Garcia-French | Giovanni | Self Portrait | 2012 | Acrylic on canvas | 48 x 48 | | 3674 | SFA |
| DAX | Hooper | Max | Pomacea 2013 (Bin 1) | 2013 | Ecosystème d'eau douce, verre acrylique, dessin, substrat de sable blanc, genus pomacea snails, cartouche de filtration | 17 x 13 x 13 in | | 4423 | SFA |
| DAX | Houdek | Vladmir | Untitled | 2016 | Oil, gouache, and acrylic on canvas | 40 x 31 | | 6026 | SFA |
| DAX | Kuwata | Takuro | Bowl | 2014 | Porcelain | 5 x 5 x 5 | | 3613 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Moon | Jiha | Yellow Wave & Yellow Wave (Crescent Moon) | 2019 / 2020 | Sculptures | 18 x 19 x 19 in | | 7711 | SFA |
| DAX | Moon | Jiha | Yellow Wave & Yellow Wave (Crescent Moon) | 2019 / 2020 | Sculptures | 18 x 19 x 19 in | | 7705 | SFA |
| DAX | Calvin | Brian | Untitled | 2018 | Work On Paper | 10 x 13 | | 6770 | SFA |
| DAX | Hirst | Damien | Untitled (High St/Skull And Crossbones) 2003 | 2003 | Pen on paper | 11 x 9 x 2 in | | 6674 | SFA |
| DAX | Hopper | Dennis | Double Standard, 1961 | 1961, printed 2017 | Gelatin silver print | 14 x 10 x 1 in | ed 2/10 | 6141.2 | SFA |
| DAX | Isaeus-Berlin | Meta | "Ett Slags Paradis" | 2013 | Oil on canvas | 51 x 1 x 45 in | | 7911 | SFA |
| DAX | Kantarovsky | Sanya | Daisy Dukes | 2018 | Monotype | 23 x 19 | | 6837 | SFA |
| DAX | Kantarovsky | Sanya | Smother | 2018 | Monotype | 23 x 19 | | 6838 | SFA |
| DAX | Kantarovsky | Sanya | Doxed | 2018 | Monotype | 23 x 19 | | 6662 | SFA |
| DAX | Kantarovsky | Sanya | Abuse | 2018 | Monotype | 23 x 19 | | 6634 | SFA |
| DAX | McKinniss | Sam | Pansies In A Basket | 2019 | Pastel On Paper | 9 x 12 | | 7524 | SFA |
| DAX | Sundblad | Emily | Untitled (A few women are existing to maintain the surface that heterosexuality is still conceivable) | 2011 | Oil on canvas | 40 x 33 x 3 in | | 1634 | SFA |
| DAX | Blade | Michelle | Solid & Liquid / Sonoma | 2020 | Acrylic ink on poplin | 24 x 2 x 25 in | | 7780 | SFA |
| DAX | Hansen | Channing | Algo 54 1.2.1 - "Blue Faced Leicester... | 2014 | Blue Faced Leicester, Coopworth, ecru California Variegated Mutant, Pygora, Romney, silk, Targhee, and Tunis fibers holographic polymers, cedar | 2 x 37 x 48 in | | 2883 | SFA |
| DAX | Ojo | Kayode | "Closed Audition: Boohoo Plus Verity Slinky Plnge Split Maxi Dress | 2018 | Inkjet On Museum Board | 32 x 3 x 46 in | | 7761 | SFA |
| DAX | Sternberg | Cole | A Horizon Formed By The Progression Of Water, 2015 | 2015 | Painting | 74 x 3 x 98 in | | 4628 | SFA |
| DAX | Ceccaldi | Julien | See Thru | 2014 | Glass paint on plexiglass | 63 x 42 x 7 in | | 6742 | SFA |
| DAX | Fu | Owen | Little Little Princess | 2018 | Painting | 26 x 22 | | 7699 | SFA |
| DAX | Hirst | Damien | For Mr.D 9 (Spin Drawing) | 2001 | Pencil on paper | 17 x 13 x 2 in | | 6675 | SFA |
| DAX | Issakharian | Sarah | "Silent Response" | 2021 | Painting | 98 x 5 x 80 in | | 7943 | SFA |
| DAX | Mapplethorpe | Robert | Snakeman | 1981 | Silver gelatin print | 16 x 20 | ed 15 | 6309.15 | SFA |
| DAX | Temma Hier | Stephanie | "Seen Not Seen" | | oil on linen with glazed stoneware sculpture | 37 x 31 x 10 in | | 7959 | SFA |
| DAX | Tsai | Yun-Ju | "Harmony Everywhere" | 2022 | Oil on canvas | 60 x 2 x 79.5 in | | 8478 | SFA |
| DAX | Young | Coco | Bathers | 2020 | Painting | 45 x 64 | | 8171 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | | Graphite On Paper | 29 x 25 x 2 in | | 2633 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | 2010 | Graphite On Paper | 23 x 17 x 3 in | | 2635 | SFA |
| DAX | Lee | Paul | Purple Water | 2018 | Painting | 60 x 40 | | 6215 | SFA |
| DAX | Nazareth | Paulo | Untitled [Ca- Come To The Shade] (2/2) | | Diptych Part 2/2 Photoprinting On Cotton Paper | 33 x 2 x 25 in | Edition 1 of 5 | 7891 | SFA |
| DAX | Ojo | Kayode | No.5 The Filmnecklace 1/3 | | | 34 x 1 x 26 in | | 7647 / OK_18_023 | SFA |
| DAX | Chassepot | Heloise | I Want To Paint Flowers No. 9 | 2022 | Oil on stitched canvas | 52 x 3 x 77 in | | 8561 | SFA |
| DAX | Ojo | Kayode | L'Amant Double 2Necklacesboxed | 2018 | occasion tux plunge jumpsuits with open back, Jane Stone sexy gold color tassel body chain necklace, fashion statement jewelry, crystal beads, Clare chandelier bead lamp chain, TOBIAS chairs, clear Amac boxes, beveled edge bath mirror | 7 x 41 x 3 in | | 7760 | SFA |
| DAX | Blade | Michelle | Toward Silence / Verdugo Park | 2020 | Acrylic ink on poplin | 45 x 5 x 56 in | | 7783 | SFA |
| DAX | Israel | Alex | As It Lays | 2012 | Digital Video On Hardrive | 7 x 6 x 2 in | ed 1/5 | 3255.1 | SFA |
| DAX | Blade | Michelle | The Puddle | 2020 | Acrylic on poplin | 56 x 39 | | 7781 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| DAX | Campana | Fernando & Humberto | Yellow Furrychair | 2021 | Chair | 41 xx 43 x 33 | | 8036 | SFA |
| DAX | Johnson | Helen | Grist | 2014 | Synthetic polymer paint on canvas | 34 x 24 | | 4383 | SFA |
| DAX | Johnson | Helen | Myth clouds history | 2014 | Synthetic polymer paint on canvas | 34 x 24 | | 4370 | SFA |
| DAX | Nakamura | Kazumi | A Bird In Its Existence | 2016 | | 83 x 57 x 4 in | | 6073 | SFA |
| DAX | Poswa | Zizipho | Unozakuzaku | 2021 | Charcoal Stoneware and Bronze | 31 x 31 x 42 in | | 7714 | SFA |
| DAX | Tillmans | Wolfgang | Fire Island | 2015 | Photo | 38 x 30 | ed 3 | 4722 | SFA |
| DAX | Stout | Katie | Pink Large Lady Lamp | 2018 | Ceramic | 24 x 12 x 54 in | | 6857 | SFA |
| DAX | Yi | Anicka | Secession | 2020 | High density foam, resin, urethane paint, frame | 30 x 24 | | 7603 | SFA |
| DAX | Kruglyanskaya | Ella | "Hammock Girls" (Bin 6) | | Graphite On Paper | 22 x 17 x 3 in | | 3484 | SFA |
| DAX | Kruglyanskaya | Ella | "Cowgirls" (Bin 6) | 2014 | Graphite On Paper | 21 x 18 x 2 in | | 3483 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | 2012 | Graphite On Paper | 21 x 17 x 3 in | | 2634 | SFA |
| DAX | Kruglyanskaya | Ella | Untitled | 2014 | Graphite on paper | 15 x 21 | | 3869 | SFA |
| DAX | Guyton/Walker | | Untitled | 2005 | Silkscreen | 11 1/2 x 8 in | | 792 | SFA |
| DAX | | Guyton/Walker | Untitled | 2005 | Silkscreen | 11.5 x 8 in | | 791 | SFA |
| DAX | Fallahpisheh | Hadi | Box 10: #7848.8 "Mouse House" | 2021 | Stuffed animals, glazed ceramic pots | 18.5 x 25.5 x 19.5 in | | 7848.8 OR 7785? | SFA |
| DAX | Myles | Eileen | Were Going To Monte Alban And We'Re Looking For Mr. Churro | | | 28 x 22 x 3 in | | 6867 | SFA |
| DAX | Ojo | Kayode | L'Amant Double Mirrors | | | 37 x 2 x 31 in | | 7760 / OK_18_027 | SFA |
| DAX | Ojo | Kayode | L'Amant Doublechair | | | 18 x 16 x 30 in | | 7760 / OK_18_027 | SFA |
| DAX | Ojo | Kayode | L'Amant Doublechair | | | 18 x 16 x 30 in | | 7760 / OK_18_027 | SFA |
| DAX | Kruglyanskaya | Ella | *Untitled (Drawing For Lemon And Lips)* | 2012 | Graphite on paper | 27 x 33 + three moreDrawings | | 2636 | SFA |
| DAX | Palmer | Frances | Egyptian Vase | 2021 | White earthenware with yellow and dark blue underglaze, electric kiln fired porcelain. | 9 x 7 x 6 | | 8259 | SFA |
| DAX | Ida | Yukimasa | Venus | | Mixed media | 16 x 12 | | 6263 | SFA |
| LOCKSON | Ibrahim | Soimadou | Brown Musa | 2021 | Acrylic on paper | 15 1/2 x 11 1/2 | | 8019 | GROUP C |
| LOCKSON | Ibrahim | Soimadou | Out in the Sticks | 2021 | Acrylic on wooden panel | 23 x 23 | | 8029 | GROUP C |
| LOCKSON | Harrison | Rachel | Where'S My Fucking Peanut | 2012 | Set Of 26 Inkjetprints & Pins | 3.5 x 6 | | 2941 | SFA |
| LOCKSON | Aubock | Carl | Glass Straw Holder | | Straw Holder | | | 8090 | SFA |
| LOCKSON | Catelan | Maurizio | Yes! | 2019 | Porcelain, LED Lightbulb | 7 x 5 x 3 3/4 | Edition of 500 | 7688.27 | SFA |
| LOCKSON | Mesler | Joel | Sunset Sunrise | 2021 | Color Screenprint | 40 x 30 | ed 45 | 7953 | SFA |
| LOCKSON | Palmer | Frances | Wf32 Shino Vase | 2020 | Ceramic | 10 x 7 x 7 | | 8255 | SFA |
| LOCKSON | Palmer | Frances | Wf 58 Shino Vase | 2020 | Ceramic | 4 x 3 x 3 | | 8369 | SFA |
| LOCKSON | Ruppersberg | Allen | Untitled (What Happened To Contemporary Art?) | 2020 | Silkscreen Print | 31 x 40 | | 7638.33 | SFA |
| LOCKSON | Einar Hjorth | Axel | Ufo (Vintae Chair) | 1930 | 2 X Chairs | | | 8096 | SFA |
| LOCKSON | Perez Simao | Marina | Untitled | 2021 | silk organza appliqué over cotton velvet, with cotton embroidery, backed with cotton | 63 x 50 | ed 28 of 30 | 8135 | SFA |
| LOCKSON | Sottsass | Ettore | Coat rack with umbrella stand | 1973 | Coatrack With Umbrella Stand Made By Ivrea Olivetta | 59 x 19 x 19 | | 8133 | SFA |
| LOCKSON | Stout | Katie | Tp Lady, "The Only Lady You Can Expect To Handle Yoyr Shit 2021" | 2021 | Ceramic | 7 x 11 x 3 | | 7660.14 | SFA |
| LOCKSON | Tiravanija | Rirkrit | Untitled 2021 (All You Need Is Dynamite) | 2021 | | 50 x 70 cm | | 8194.5 | SFA |
| LOCKSON | Einar Hjorth | Axel | Sandhamn Chair | 1930s | 6 X Chairs | 31 x 17 | | 8095 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| | Israel | Alex | Willy Wonka And The Chocolate Factory | 2019 | 5 golden ticket prints | 18 x 14 each (5) | ed. 3 of 20, +5 | 7064.3 | |
| LOCKSON | Lowman | Nate | Bullet Hole | 2010 | Silkscreen on silver metallic paper | 35 x 25 | | 3765 | SFA |
| LOCKSON | Sunblad | Emily | Happy Birthday | 2022 | Oil on canvas | 10 x 8 | | 8433 | SFA |
| LOCKSON | Wolfson | Jordan | Untitled | 2017 | Silkscreen | 69 by 49 cm | ed 24/34 | 6520.24 | SFA |
| LOCKSON | Wolfson | Jordan | Untitled | 2017 | Print | 27 x 20 | ed. 35 | 6521.26 | SFA |
| LOCKSON | Parreno | Philippe | Untitled (Sea Creature) | | Painting on Plastic Sheet | 10 x 13 | | 7121 | SFA |
| LOCKSON | Barbour | Karen | When Night Comes And Dreams Come | 2022 | Goauche, flashe and acrylic collage on paper | 30 x 22 | | 8544 | SFA |
| LOCKSON | Barbour | Karen | The Earth Has Vicious Mind | 2022 | Flashe and acrylic on paper | 30 x 22 | | 8549 | SFA |
| LOCKSON | Bradley | Joe | Untitled | 2008 | Work On Paper | 17 x 14 | | 7299 | SFA |
| LOCKSON | Bradley | Joe | Untitled | 2008 | Work On Paper | 17 x 14 | | 7300 | SFA |
| LOCKSON | Calvin | Brian | Rubber Room | 2017/19 | Drawing | 11 x 8 | | 6979 | SFA |
| LOCKSON | Haas Brothers | | Outsider Artichoke | 2017 | Hand-thrown ceramic | 3 x 3 | | 6165 | SFA |
| LOCKSON | Heck | Kati | Skizze Einladung | 2021 | Drawing | 24 x 18 | | 7985 | SFA |
| LOCKSON | Ibrahim | Soimadou | Cornish Colors | 2021 | Work On Paper | 23 x 16 | | 8024 | SFA |
| LOCKSON | Kusaka | Shio | Group 13 | 2014 | Ceramics | 4 works | | 4259 | SFA |
| LOCKSON | Ligoranoreese | | The History of Art of Snow Globes | 2019 | Complete set of 20 glass snow globes with black bases and acrylic text | 7 1/2 x 6 inches | Edition of 10 | 7427 | SFA |
| LOCKSON | Soto Climent | Martin | Dia Shoes | 2009 | Two pairs of vintage women's shoes | 8 x 14 x 10 | | 2513 | SFA |
| LOCKSON | Valdez | Anna | Bird Views | 2022 | Ceramic Vase | 10 x 8 | | 8390 | SFA |
| LOCKSON | Clark | Jake | The Ivy | 2022 | Ceramic | 25 x 16 x 16 | | 8559 | SFA |
| LOCKSON | Gonkar | Gyatso | Joy | 2011 | Work On Paper | 14 x 13 | | 2924 | SFA |
| LOCKSON | Kahn | Misha | Tablelamp | 2015 | Lamp | 17 x 18 x 4 | | 8386 | SFA |
| LOCKSON | Longstreth | Jake | Los Angeles Pines | 2022 | Set of 4 25-colored screen prints on conventry rag paper | 45 x 31 each (4) | | 8502.26 | SFA |
| LOCKSON | Mulligan | Catherine | Blonde 1 | 2021 | Oil On canvas in hand-painted frame | 10 1/4 x 7 1/4 | | 8206 | SFA |
| LOCKSON | Mulligan | Catherine | Untitled | 2020 | Oil on cut canvas | 10 x 8 1/2 | | 8229 | SFA |
| LOCKSON | Wood | Jonas | Untitled | 2021 | Blanket | 130 x 170 cm | | 7690 | SFA |
| LOCKSON | B. | Wurtz | Untitled (Clock) | 2012/13 | Wood, String, Thread, Tyvek, Acrylic Paint, Collage Button and Screw Eyes | 36 x 13 | | 6745 | SFA |
| LOCKSON | Barger | Thomas | Yellow Chair | 2019 | Chair | 60 x 16 x 19 | | 8093 | SFA |
| LOCKSON | Bradford | Katherine | Purple Surf Boards | 2020 | Work On Paper | 14 x 14 | | 7766 | SFA |
| LOCKSON | Culver | Christopher | Empty House | 2020 | Charcoal and Pastel on Paper | 42 x 24 | | 7909 | SFA |
| LOCKSON | Haas Brothers | | Fat Roll Belly Hanging Dong Accretion Vase | 2014 | Ceramic | 10 x 11 x 8 | | 4412 | SFA |
| LOCKSON | Swig/Rashid Johnson | Liz | Gold Military Tag From "Anxious Men" | 2020 | Necklace - 9k gold, rhodium engraving, ruby, red enamel and cord | 9k gold | ed 7 of 25 | 7547.2 | SFA |
| LOCKSON | Swig/Rashid Johnson | Liz | Signet Ring for Anxious Men | 2020 | 9k gold, rhodium engraving, ruby | 44 x 24 mm | Edition 7 of 25 | 7602 | SFA |
| LOCKSON | Yovanovitch | Pierre | "Laura" Walllamp | 2013 | Lamp | 50 x 9 | | 7096 | SFA |
| LOCKSON | Goldin | Nan | 1St Days In Quarantine, Brooklyn, Ny, 2020 | 2020 | Photo | 40 x 53 | Edition of 3 | 7754.1 | SFA |
| LOCKSON | Poswa | Zizipho | Umyeni Viii Miniature (Groom) | 2021 | Ceramic/Bronze | 9 x 5 x 4 | | 8046 | SFA |
| LOCKSON | Swig/Cindy Sherman | Liz | SPA | 2019 | Necklace - Sardony shell cultured pearls, 18k pink gold | 1.7 X 2.3 in | ed. 15 | 7529.2 | SFA |
| LOCKSON | Sherman | Cindy | Untitled #476 (Society Lady) | 2008 | c-print | 84 1/2 x 68 in | ed 2 of 6 | | SFA |
| LOCKSON | Tiravanija | Rirkrit | Untitled 2020 | 2020 | Painting | 12 x 12 | | 7684 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| LOCKSON | Kantarovsky | Sanya | A | 2018 | Work On Paper | 15 x 11 | | 6902 | SFA |
| DAX | Israel | Alex | SPF 18 Head | 2015 | Acrylic on aluminum | | | 6977 | SFA |
| LOCKSON | Mulligan | Catherine | Redhead | 2021 | Painting | 30 x 19 | | 8207 | SFA |
| LOCKSON | Nashat | Shahryar | Boyfriend_04.Jpeg | 2022 | Acrylic Gel, Ink on Paper, Plywood | 15 x 13 | | 8452 | SFA |
| LOCKSON | O'Keefe | Ida | Sea-Shells | 1927 | Painting | 8 x 12 | | 7912 | SFA |
| LOCKSON | Bradford | Katherine | Swim Team And Coach | 2022 | Acrylic on canvas | 16 x 20 | | 8469 | SFA |
| LOCKSON | Collier | Anne | Mirror | 2020 | C-Print | 60 x 46 | ed. 5 | 7583.3 | SFA |
| LOCKSON | Gonkar | Gyatso | Buddha In Our Time / Batman | 2010-2012 | Silkscreen, mixed media and graphite on paper | 33 x 25 1/2 | | 2979 | SFA |
| LOCKSON | Haldeman | Ivy | Colossus, Knee To Elbow, Wrist Bent, Four Fingers Edge Out | 2018 | Painting | 84 x 58 | | 6689 | SFA |
| LOCKSON | Bradford | Katherine | Hand Shake | 2019 | Acrylic on canvas | 80 x 126 | | 7742 | SFA |
| LOCKSON | Aubock | Carl | Cocktail Set | | Cocktail Set | | | 8091 | SFA |
| LOCKSON | Wood | Jonas | Yellow And Orange Orchid Clipping | 2018 | Rug | 66 x 48 | ed 30 | 6486.6 | SFA |
| LOCKSON | Israel | Alex | Willy Wonka And The Chocolate Factory (Box) | 2019 | Box | | | | SFA |
| LOCKSON | Wittenberg | Nicole | Cliff Walk Study | 2021 | Oil on canvas | 25 x 33 | | 7893 | GROUP A |
| LOCKSON | Wittenberg | Nicole | Stormy Weather | 2020 | Pastel On Paper | 15 1/2 x 11 1/2 | | 7913 | GROUP A |
| LOCKSON | Wittenberg | Nicole | Stefania 3 | 2021 | Pastel On Paper | 23 x 19 | | 8316 | GROUP A |
| LOCKSON | Mesler | Joel | Bananas | 2021 | Painting | 80 x 70 | | 7784 | SFA |
| Phillips | Deller | Jeremy | Untitled (Stonehenge at Sunset) | 2013 | Screenprint on somerset Satin 300gsm | 23 5/8 x 35 3/8 | | 3038 | SFA |
| Phillips | Wolfson | Jordan | Fresh, Love, Tea Bag | 2013 | | | | | SFA |
| Phillips | Hylden | Nathan | Untitled (0211 C) | 2011 | acrylic and enamel on linen | 67½ x 47 in | | | SFA |
| Phillips | Morley | Ivan | A True Tale | 2007 | thread on canvas | 49 x 39 | | | SFA |
| Phillips | Quaytman | R.H | Archimedean Point | 2014 | 4 flip lenticular print, mounted to sintra | 32¼ x 20 in | 8 of 10 | | SFA |
| Phillips | Strobert | Kianja | Untitled | 2006 | Painting | 61 x 47 | | 6202 | SFA |
| Phillips | Mason | John | Charcoal Elliptical Orbit With Tracers | | | | | | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| Phillips | Varslev | Frederik | Untitled (Drøbak Kunstforening #11) | 2013 | | | | | SFA |
| UOVO | Elrod | Jeff | Sunset Park | 2013 | UV Ink on canvas | 84 x 63 | | 4071 | GROUP A |
| UOVO | Gilliam | Sam | Red Stretch | 1965 | Acrylic on canvas | 59 x 107 x12 | | 7541 | GROUP A |
| UOVO | Lawler | Louise | Silent Night | 2011-2013 | Direct cibachrome mounted on museum box | 51 x 39 x 2.5 | | 3437.3 | GROUP A |
| UOVO | Pettibon | Raymond | No Title (Sure it can...) | 2013 | Ink, graphite, charcoal, acrylic and collage on paper | 62 x 67 x 3 | | 2469 | GROUP A |
| UOVO | Prince | Richard | Untitled | 2010 | Acrylic and silkscreen on t-shirt | 33 x 27 x 3 | | 6462 | GROUP A |
| UOVO | Prince | Richard | Untitled (Protest Painting) | 1989-1992 | Acrylic, silkscreen, graphite and paper on canvas | 42 x 21 x 5 | | 6465 | GROUP A |
| UOVO | Prince | Richard | Untitled (Tell Me Everything...) | 1987 | Acrylic, silkscreen on cotton stretch over board | 31 x 26 x 4 | | 6461 | GROUP A |
| UOVO | Prince | Richard | Untitled (Cowboy) | 2000 | Ektacolor print | 42 x 32 x 2.5 | | 6464.1 | GROUP A |
| UOVO | Prince | Richard | Are You Kidding | 1988 | Acrylic and silkscreen on canvas | 66 x 54 x 2 | | 4122 | GROUP A |
| UOVO | Owens | Laura | Untitled | 2014 | 42 of 100 | 22 x 19 x 2 | | 4158 | SFA |
| UOVO | Fordjour | Derek | Magic, Mystery, & Legerdemain | 2022 | Silkscreen on paper | 40 x 27 | | 8271.3 | SFA |
| UOVO | R | Tal | Pyjamas | 2011 | Woodcut | 45 x 23 | ed 12 | 6329.5 | SFA |
| UOVO | Boone | Will | You'Re Being Watched | 2014 | Work On Paper | 30 x 22 | | 2767 | SFA |
| UOVO | Taylor | Henry | Choke Hold | 2010 | Box | 7 x 4 | | 2241 | SFA |
| UOVO | Ethridge | Roe | Untitled (Point Break) | 2010 | C print | 35 x 24 | ed 5 | 1538 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| UOVO | McEneaney | Sarah | *Self-Examination* | 1992 | Painting | 34 x 28 | | #1 | SFA |
| UOVO | Adams | Bill | Ruffian | 2003 | Painting | 30 x 22 | | 36 | SFA |
| UOVO | Denny | Simon | New Management Memorial Plaque Swis Institute Illumination | 2014 | Photo | 26 x 36 | | 3444 | SFA |
| UOVO | Aldrich | Richard | Untitled | 2007 | Painting | 14 x 10 | | 737 | SFA |
| UOVO | Anderson | Sam | Helpful Waitress Angel | 2016 | Sculpture | 20 x 17 x15 | | 6485 | SFA |
| UOVO | Ayari | Nadia | Loop Iii | 2021 | Painting | 60 x 60 | | 7928 | SFA |
| UOVO | Malouf | Mathieu | Passagen Ii (Hr Giger) | 2015 | Painting | 56 x 44 | | 4246 | SFA |
| UOVO | Smith | Josh | Untitled (Jsc08800) | 2008 | Mixed Media | 48 x 36 | | 2321 | SFA |
| UOVO | Spaulings | Reena | Enigma 4 | 2011 | Painting | 22 x 44 | | 2485 | SFA |
| UOVO | Bernstein | Judith | Dick In A Head | 2014 | Work On Paper | 41 x 29 | | 2863 | SFA |
| UOVO | Beshty | Walead | Selected Works (2009-2011/November 15Th 2010 - March 16Th 2011) | 2009-2011 | Colorphotographic Paper | 20 x 30 | | 1533 | SFA |
| UOVO | Comte | Claudia | Bumpy Grumpy | 2013 | Sculpture | 22 x 18 x 6 | | 2541 | SFA |
| UOVO | Novitskova | Katja | Pathfinder | 2014 | Sculpture | 11 x 47 x 47 | | 2736 | SFA |
| UOVO | Nuur | Navid | Untitled | 2014 | Painting | 72 x 54 | | 3903 | SFA |
| UOVO | Boone | Will | Be Quiet | 2013 | Painting | 60 x 76 | | 3802 | SFA |
| UOVO | Klingbeil | Kate | Diggin Myself Out Of A Whole | 2021 | Painting | 59 x 83 | | 8003 | SFA |
| UOVO | Klingbeil | Kate | Sedimental | 2021 | Painting | 60 x 84 | | 8335 | SFA |
| UOVO | Walters | Tara | Secret Garden | 2021 | Painting | 96 x 65 | | 8140 | SFA |
| UOVO | Weiser | Garth | Euromissle | 2012 | Painting | 100 x 83 | | 2981 | SFA |
| UOVO | Akashi | Kelly | Plumb Life Form | 2019 | Sculpture | 38 x 21 x 8 | | 7297 | SFA |
| UOVO | Alvestad | Audun | I Doubt I'Ll Find One Like That Again | 2021 | Painting | 59 x 47 | | 7935 | SFA |
| UOVO | Alvestad | Audun | We'Re Not Here For Long, And The World Is | 2021 | Painting | 59 x 47 | | 7934 | SFA |
| UOVO | Hundley | Elliott | Untitled | 2006 | Anka Painting | 44 x 77 | | 6574 | SFA |
| UOVO | Yang | Mark | Cad, Han, Ind | 2021 | Oil on canvas | 72 x 54 | | 7995 | SFA |
| UOVO | Comte | Claudia | Sculpture Object 30 And Back To The Future | 2014 | Painting / Sculpture | 63 Diameter | | 2783 | SFA |
| UOVO | Elrod | Jeff | Primitive Adventure | 2013 | Acrylic paint on canvas | 80 x 64 | | 3771 | SFA |
| UOVO | Hein | Jeppe | Green Mirror Ballon (Light) | 2017 | Sculpture | 16 x 10 x 10 | ed 3 | 6104 | SFA |
| UOVO | Nashat | Shahryar | Untitled | 2018 | UV print on Hydrocal, gesso, rubber, powder - coated steel | 42 x 34 | | 6273 | SFA |
| UOVO | Prince | Richard | Untitled (Hippie Drawing) | 1997 | Work On Paper | 29 x 22 | | 6749 | SFA |
| UOVO | Bley | Ragna | Edine Relative | 2015 | Painting | 98 x 70 | | 8083 | SFA |
| UOVO | Gardner Gray | Georgia | Feierabend | 2018 | Painting | 51 x 36 | | 6499 | SFA |
| UOVO | Lambie | Jim | Jumping Jack | 2014 | Work On Paper | 71 x 27 | | 3904 | SFA |
| UOVO | Quilty | Ben | *The Easter Bunny* | 2018 | Painting | 104 x 79 | | 6632 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled (Woman Painting Woman) | 2012 | | 27 x 21 x 2 | | 3868 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled | 2014 | Graphite on paper | 15 x 21 | | 3866 | SFA |
| UOVO | Kruglyanskaya | Ella | Untitled | 2011 | | 15 x 20 x 2 | | 3612 | SFA |
| UOVO | Nares | James | Untitled | 2002 | | 40 x 30 x 2 | | | SFA |
| UOVO | Price | Seth | Untitled, 2006 | 1996 | Vacuum formed high impact polystyrene | 20 x 17 inches | | 704 | SFA |
| UOVO | Soto Climent | Martin | Tights On Canvas | 2009 | Painting | 35 x 24 | | 2127 | SFA |

| LOCATION | LAST | FIRST | ARTWORK TITLE | YEAR | MEDIUM | DIMENSIONS | ARTWORK NOTES | SFA Inventory # | SALE CATEGORY |
|---|---|---|---|---|---|---|---|---|---|
| WAG OFFICES NY | Kantarovsky | Sanya | Pumpkin Ii | 2022 | Print | 27 x 20 | Edition of 100 | 8807 | SFA |
| WAG OFFICES NY | Brown | Cecily | Nana | 2022 | Edition | 20 x 15 | | 8806 | SFA |
| WAG OFFICES NY | Quaytman | R.H. | O Topico, Chapter 27 | 2014 | Painting | 20 x 20 | | 4244 | SFA |
| WAG OFFICES LA | Clark | Jake | Carneys Hot Dog On Sunset | 2021 | Ceramic | 15 x 11 x 11 | | 8215 | SFA |
| WAG OFFICES LA | Marcus | Calvin | Untitled Face Etchings | 2015 | Hand ground line ethings with chine-colle | 11 x 10 each | ed 5 | 4333 | SFA |

# EXHIBIT H

# PHILLIPS

**CUSTODY AGREEMENT**

WHEREAS, Yann Geron, solely in his capacity as Chapter 7 trustee of the estate of Lisa Schiff ("Trustee"), intends to file a motion (the "Retention/Sale Motion") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking orders providing, among other things, for approval of the Trustee's retention of Phillips Auctioneers LLC ("Phillips") as the Trustee's auctioneer in the Lisa Schiff ("Schiff") Chapter 7 bankruptcy case and to authorize the Trustee, through Phillips, as agent for the Trustee, to conduct certain public auction sales, private sales and other transactions relating to property of the Schiff bankruptcy estate; and

WHEREAS, the Trustee and Phillips are negotiating an agreement for the consignment by the Trustee to Phillips of certain property of the Schiff bankruptcy estate (the "Consignment Agreement").

It is hereby agreed, by and between the Trustee and Phillips, as follows:

Subject to the provisions set forth below, the Trustee and Phillips agree that pending Bankruptcy Court approval of the Retention/Sale Motion and the Consignment Agreement, the Trustee hereby appoints Phillips as agent for the temporary removal, care, custody, and control of that certain property described in the attached Property Schedule (each a "Lot" and collectively, the "Property") from each Lot's current location on the terms and conditions set forth herein.

The Property will be released to Phillips while the parties continue to negotiate the Consignment Agreement.

The Trustee will absorb all costs relating to shipping the Property from its current location to Phillips' New York location and any necessary return shipping. Phillips will pay the shipper and be reimbursed by the Schiff bankruptcy estate from the sale proceeds of Phillips' public auction sales. The Property will be under the care, custody and control of Phillips from the time of release to Phillips until the sales of the Property are concluded by Phillips and returned to the locations to be determined by the Trustee by a date mutually agreed upon by Phillips and the Trustee.

The Trustee acknowledges and agrees that Phillips and any of its agents will not carry specific insurance for any Property while it is in transit to Phillips and until the condition of such Property is examined and reported to the Trustee. The Trustee has agreed to arrange or cause to be arranged the estate's own insurance for the time that the Property is picked up and while it is in transit to Phillips warehouses and up to and until the Property's condition is reported.

The Trustee agrees that Phillips shall not be responsible for any physical loss or damage to any Lot however so occurring until the Lot's risk of loss has passed to Phillips as set forth in this paragraph. A Lot's risk of loss shall pass to Phillips after: (i) Phillips has uncrated the Lot on Phillips' premises; (ii) Phillips created a condition report for that Lot; and (iii) Phillips has provided written notice to the Trustee that (i) and (ii) have been completed. The Trustee agrees that it will have its insurance company endorse its policy for the Property to name Phillips as a "Loss Payee" and an "Additional Insured" to the extent of Phillips' interests as evidenced by a written certificate of insurance provided to Phillips prior to any shipping of any of the Property. Trustee understands that by naming Phillips as an "Additional Insured" on Trustee's insurance policy, Trustee's insurer will not have the right of subrogation against Phillips.

When the risk of loss has passed to Phillips, Phillips shall provide coverage against loss or damage to the Property for an amount up to the respective Lot's mid-estimate subject to the terms listed below. Phillips' maximum liability for any Lot shall not exceed the respective Lot's mid-estimate. Neither Phillips nor Phillips' insurers shall be responsible for loss or damage resulting from the following causes: (i) inherent defects in the Property; (ii) humidity or change of weather or other atmospheric conditions not within Phillips' control; (iii) damage caused by mechanical fault or breakdown (if applicable); (iv) wear and tear and gradual deterioration; (v) damage caused by war, terrorism, radioactive contamination and/or cyberattack; (vi) damage occurring while the Property is in the care or custody of a restorer approved by Trustee in writing; and (vii) damage occurring while the Property is in Trustee's possession or control or in the care or custody of shipping and packing agents retained by Trustee (even if recommended by Phillips).

091686\I\170820062.v1

Doc ID: e0782d80192a02244d2e4dd95db13706c6da0a40

This Agreement is made by and between Trustee and Phillips and is effective as of the last date set forth below and shall be governed by and construed in accordance with the laws of the State of New York. The United States Bankruptcy Court for the Southern District of New York will deal exclusively with any contractual or non-contractual disputes or claims arising out of or in connection with this Agreement.

Signed by: _*Yann Geron*_____

Name: Yann Geron, solely in his capacity as Ch. 7 Trustee of the estate of Lisa Schiff

Dated: 08 / 14 / 2024 _____


Signed by: _*Hartley Waltman*_____

Name: Hartley Waltman _____

For and on behalf of Phillips Auctioneers LLC

Title: General Counsel, Americas _____

Dated: 08 / 14 / 2024 _____

# Property Schedule

**[attached]**

Doc ID: e0782d80192a02244d2e4dd95db13706c6da0a40


| | |
|---|---|
| **Title** | Schiff_Phillips Custody Agreement_FINAL_execution |
| **File name** | Schiff_Phillips C...eement_FINAL.docx |
| **Document ID** | e0782d80192a02244d2e4dd95db13706c6da0a40 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **08 / 14 / 2024**<br>17:27:50 UTC | Sent for signature to Hartley Waltman (hwaltman@phillips.com) and Yann Geron (ygeron@geronlegaladvisors.com) from jlitos@geronlegaladvisors.com<br>IP: 96.224.21.190 |
| VIEWED | **08 / 14 / 2024**<br>17:34:50 UTC | Viewed by Hartley Waltman (hwaltman@phillips.com)<br>IP: 69.125.187.234 |
| SIGNED | **08 / 14 / 2024**<br>17:38:14 UTC | Signed by Hartley Waltman (hwaltman@phillips.com)<br>IP: 69.125.187.234 |
| VIEWED | **08 / 14 / 2024**<br>17:54:16 UTC | Viewed by Yann Geron (ygeron@geronlegaladvisors.com)<br>IP: 71.251.220.131 |
| SIGNED | **08 / 14 / 2024**<br>17:55:02 UTC | Signed by Yann Geron (ygeron@geronlegaladvisors.com)<br>IP: 71.251.220.131 |
| COMPLETED | **08 / 14 / 2024**<br>17:55:02 UTC | The document has been completed. |

# EXHIBIT I

# CONDITIONS OF SALE

Effective as of August 26, 2024

The Conditions of Sale and Authorship Warranty set forth below govern the relationship between bidders and buyers, on the one hand, and Phillips and sellers, on the other hand. All prospective buyers should read these Conditions of Sale and Authorship Warranty carefully before bidding.

## 1.
### INTRODUCTION

Each lot in this catalogue is offered for sale and sold subject to: (a) the Conditions of Sale and Authorship Warranty; (b) the Special Notices and Symbols printed at the end of this document; and (c) supplements to this catalogue or other written material posted by Phillips in the saleroom, in each case as amended by any addendum or announcement by the auctioneer prior to the auction.

By bidding at the auction, whether in person, through an agent, by written bid, by telephone, online or other means, bidders and buyers agree to be bound by these Conditions of Sale, as so changed or supplemented, and Authorship Warranty. These Conditions of Sale, as so changed or supplemented, and Authorship Warranty contain all the terms on which Phillips and the seller contract with the buyer.

## 2.
### PHILLIPS AS AGENT

Phillips acts as an agent for the seller, unless otherwise indicated in this catalogue or at the time of auction. On occasion, Phillips may own a lot directly, in which case we will act in a principal capacity as a consignor, or a company affiliated with Phillips may own a lot, in which case we will act as agent for that company, or Phillips or an affiliated company may have a legal, beneficial or financial interest in a lot as a secured creditor or otherwise.

## 3.
### CATALOGUE DESCRIPTIONS AND CONDITION OF PROPERTY

Lots are sold subject to the Authorship Warranty, as described in the catalogue (unless such description is changed or supplemented, as provided in Paragraph 1 above) and in the condition that they are in at the time of the sale on the following basis:

(a) The knowledge of Phillips in relation to each lot is partially dependent on information provided to us by the seller, and Phillips is not able to and does not carry out exhaustive due diligence on each lot. Prospective buyers acknowledge this fact and accept responsibility for carrying out inspections and investigations to satisfy themselves as to the lots in which they may be interested. Notwithstanding the foregoing, we shall exercise such reasonable care when making express statements in catalogue descriptions or condition reports as is consistent with our role as auctioneer of lots in this sale and in light of (i) the information provided to us by the seller; (ii) scholarship and technical knowledge and (iii) the generally accepted opinions of relevant experts, in each case at the time any such express statement is made.

(b) Each lot offered for sale at Phillips is available for inspection by prospective buyers prior to the auction. Phillips accepts bids on lots on the basis that bidders (and independent experts on their behalf, to the extent appropriate given the nature and value of the lot and the bidder's own expertise) have fully inspected the lot prior to bidding and have satisfied themselves as to both the condition of the lot and the accuracy of its description.

(c) Prospective buyers acknowledge that many lots are of an age and type which means that they are not in perfect condition. As a courtesy to clients, Phillips may prepare and provide condition reports to assist prospective buyers when they are inspecting lots. Catalogue descriptions and condition reports may make reference to particular imperfections of a lot, but bidders should note that lots may have other faults not expressly referred to in the catalogue or condition report. All dimensions are approximate. Illustrations are for identification purposes only and cannot be used as precise indications of size or to convey full information as to the actual condition of lots.

(d) Information provided to prospective buyers in respect of any lot, including any pre-sale estimate, whether written or oral, and information in any catalogue, condition or other report, commentary or valuation, is not a representation of fact but rather a statement of opinion held by Phillips. Any pre-sale estimate may not be relied on as a prediction of the selling price or value of the lot and may be revised from time to time by Phillips in our absolute discretion. Neither Phillips nor any of our affiliated companies shall be liable for any difference between the pre-sale estimates for any lot and the actual price achieved at auction or upon resale.

## 4.
### BIDDING AT AUCTION

(a) Phillips has absolute discretion to refuse admission to the auction or participation in the sale. All bidders must register prior to bidding, supplying such information and references as required by Phillips.

(b) As a convenience to bidders who cannot attend the auction in person, Phillips may, if so instructed by the bidder, execute written absentee bids on a bidder's behalf. Absentee bidders are required to submit bids on the "Absentee Bid Form," a copy of which is printed in this catalogue or otherwise available from Phillips. Bids must be placed in the currency of the sale. The bidder must clearly indicate the maximum amount he or she intends to bid, excluding the buyer's premium and any applicable sales or use taxes. The auctioneer will not accept an instruction to execute an absentee bid which does not indicate such maximum bid. Our staff will attempt to execute an absentee bid at the lowest possible price taking into account the reserve and other bidders. Any absentee bid must be received at least 24 hours in advance of the sale. In the event of identical bids, the earliest bid received will take precedence.

(c) Telephone bidders are required to submit bids on the "Telephone Bid Form," a copy of which is printed in this catalogue or otherwise available from Phillips. Telephone bidding is available for lots whose low pre-sale estimate is at least $1000. Phillips reserves the right to require written confirmation of a successful bid from a telephone bidder by fax or otherwise immediately after such bid is accepted by the auctioneer. Telephone bids may be recorded and, by bidding on the telephone, a bidder consents to the recording of the conversation.

(d) Bidders may participate in an auction by bidding online through Phillips's online live bidding platform available on our website at www. phillips.com. To bid online, bidders must register online at least 24 hours before the start of the auction. Online bidding is subject to approval by Phillips's bid department in our sole discretion. As noted in Paragraph 3 above, Phillips encourages online bidders to inspect prior to the auction any lot(s) on which they may bid, and condition reports are available upon request. Bidding in a live auction can progress quickly. To ensure that online bidders are not placed at a disadvantage when bidding against bidders in the room or on the telephone, the procedure for placing bids through Phillips's online bidding platform is a one-step process. By clicking the bid button on the computer screen, a bidder submits a bid. Online bidders acknowledge and agree that bids so submitted are final and may not under any circumstances be amended or retracted. During a live auction, when bids other than online bids are placed, they will be displayed on the online bidder's computer screen as 'floor,' 'phone' or 'paddle no' bids. 'Floor' bids include bids made by the auctioneer to protect the reserve. In the event that an online bid and a 'floor' or 'phone' bid are identical, the 'floor' or 'phone' bid will take precedence. The next bidding increment is shown for the convenience of online bidders under the bid button. The bidding increment available to online bidders may vary from the next bid actually taken by the auctioneer, as the auctioneer may deviate from Phillips's standard increments at any time at his or her discretion, but an online bidder may only place a bid in a whole bidding increment. Phillips's bidding increments are published in the Special Notices section at the end of these Conditions of Sale.

(e) When making a bid, whether in person, by absentee bid, on the telephone or online, a bidder accepts personal liability to pay the purchase price, as described more fully in Paragraph 6 (a) below, plus all other applicable charges unless it has been explicitly agreed in writing with Phillips before the commencement of the auction that the bidder is acting as agent on behalf of an identified third party acceptable to Phillips and that we will only look to the principal for such payment. If you are being advised by anyone to bid, you should confirm with them that they do not have a financial interest in the Lot.

(f) By registering and participating in the auction, whether in person, by absentee bid, on the telephone or online, bidders represent, warrant and confirm that (i) unless otherwise expressly agreed in writing with Phillips prior to the auction, they are bidding on their own behalf and not on behalf of anyone else (ii) they will be paying the Purchase Price from their own funds (iii) that their participation in the auction and payment of the Purchase

Price is lawful and shall not breach any applicable sanctions laws, and (iv) any bids placed by them, or on their behalf, are not the product of any collusive or other anti-competitive agreement and are otherwise consistent with federal and state antitrust law, and are not in breach of any applicable law, Government sanctions and other regulatory measures in force from time to time.

(g) Arranging absentee, telephone and online bids is a free service provided by Phillips to prospective buyers. While we undertake to exercise reasonable care in undertaking such activity, we cannot accept liability for failure to execute such bids except where such failure is caused by our willful misconduct.

(h) Employees of Phillips and our affiliated companies, including the auctioneer, may bid at the auction by placing absentee bids so long as they do not know the reserve when submitting their absentee bids and otherwise comply with our employee bidding procedures.

5.
CONDUCT OF THE AUCTION

(a) Unless otherwise indicated by the symbol • each lot is offered subject to a reserve, which is the confidential minimum selling price agreed by Phillips with the seller. The reserve will not exceed the low pre-sale estimate at the time of the auction. However, if the lot is subject to a third party guarantee and the lot's irrevocable bid exceeds the lot's low estimate, then the lot's reserve will be set at the amount of the irrevocable bid. Lots with guarantees and third party guarantees are identified by the symbols O♦. Please see the Special Notices page below for more details on guarantees and third party guarantees.

(b)The auctioneer has discretion at any time to refuse any bid, withdraw any lot, re-offer a lot for sale (including after the fall of the hammer) if he or she believes there may be error or dispute and take such other action as he or she deems reasonably appropriate. Phillips shall have no liability whatsoever for any such action taken by the auctioneer. If any dispute arises after the sale, our sale record is conclusive. The auctioneer may accept bids made by a company affiliated with Phillips provided that the bidder does not know the reserve placed on the lot.

(c) The auctioneer will commence and advance the bidding at levels and in increments he or she considers appropriate. In order to protect the reserve on any lot, the auctioneer may place one or more bids on behalf of the seller up to the reserve without indicating he or she is doing so, either by placing consecutive bids or bids in response to other bidders. If a lot is offered without reserve, unless there are already competing absentee bids, the auctioneer will generally open the bidding at 50% of the lot's low pre-sale estimate. In the absence of a bid at that level, the auctioneer will proceed backwards at his or her discretion until a bid is recognized and will then advance the bidding from that amount. Absentee bids on no reserve lots will, in the absence of a higher bid, be executed at approximately 50% of the low pre-sale estimate or at the amount of the bid if it is less than 50% of the low pre-sale estimate. If there is no bid whatsoever on a no reserve lot, the auctioneer may deem such lot unsold.

(d) The sale will be conducted in US dollars and payment is due in US dollars. For the benefit of international clients, pre-sale estimates in the auction catalogue may be shown in pounds sterling and/or euros and, if so, will reflect approximate exchange rates. Accordingly, estimates in pounds sterling or euros should be treated only as a guide. If a currency converter is operated during the sale, it is done so as a courtesy to bidders, and Phillips accepts no responsibility for any errors in currency conversion calculation.

(e) Subject to the auctioneer's reasonable discretion, the highest bidder accepted by the auctioneer will be the buyer and the striking of the hammer marks the acceptance of the highest bid and the conclusion of a contract for sale between the seller and the buyer. Risk and responsibility for the lot passes to the buyer as set forth in Paragraph 7 below.

(f) If a lot is not sold, the auctioneer will announce that it has been "passed," "withdrawn," "returned to owner" or "bought-in."

(g) Any post-auction sale of lots offered at auction shall incorporate these Conditions of Sale and Authorship Warranty as if sold in the auction.

6.
PURCHASE PRICE AND PAYMENT

(a) The buyer agrees to pay us, in addition to the hammer price of the lot, the buyer's premium and any applicable sales tax (the 'Purchase Price'). The buyer's premium is 27% of the hammer price up to and including $1,000,000; plus 21% of the portion of the hammer price above $1,000,000 up to and including $6,000,000; plus 14.5% of the portion of the hammer price above $6,000,000. Phillips reserves the right to pay

from our compensation an introductory commission to one or more third parties for assisting in the sale of property offered and sold at auction.

(b) Sales tax, use tax and excise and other taxes are payable in accordance with applicable law. All prices, fees, charges and expenses set out in these Conditions of Sale are quoted exclusive of applicable taxes. Phillips will only accept valid resale certificates from US dealers as proof of exemption from sales tax. All foreign buyers should contact the Client Accounting Department about tax matters.

(c) Unless otherwise agreed, a buyer is required to pay for a purchased lot immediately following the auction regardless of any intention to obtain an export or import license or other permit for such lot. Payments must be made by the invoiced party in US dollars either by cash or wire transfer, as follows:

(i) Phillips will accept payment in cash provided that the total amount paid in cash or cash equivalents does not exceed US$2,000. Buyers paying in cash should do so in person at our Client Accounting Desk at 432 Park Avenue during regular weekday business hours.

(ii) Payment by wire transfer may be sent directly to Phillips.
Bank transfer details:
Bank of America, N. A.
One Bryant Park, New York, NY 10036
SWIFT Code: BOFAUS3N
ABA Routing: 026009593
For the account of: Phillips Auctioneers LLC
Account no.: 483084171064
Please reference the relevant sale and lot number.

(d) Credit Cards: As a convenience to our Buyers, Phillips will accept payment for their purchases via American Express, Visa and MasterCard. Credit card payments at our New York premises will only be accepted for New York auctions.

Please note your use of your credit card may incur a surcharge added by your credit card issuer. Phillips will not charge you this surcharge if you use your credit card for your purchases with us that are less than US $30,000 or if you remit your payment by wire transfer. However, if you choose to use your credit card for a purchase that equals or exceeds US $30,000, Phillips will charge you a surcharge that does not exceed the amount of the surcharge charged by your credit card issuer.

If you wish to take advantage of the convenience of using your credit card, you must notify our Client Accounts department prior to the date that your payment is due. Your invoice will then clearly reflect the cost to you of each payment method that you may choose between: that is, either a payment via wire transfer or a payment via credit card with the surcharge amount clearly identified. You may then choose at the time of payment to pay by either payment method.

If you pay for your purchase using a credit card from an issuer located outside the United States, you will be responsible for payment of any international transaction fee incurred by such use and charged by your credit card issuer. Before you remit any payment, you should check with your card issuer whether international transaction fees will apply to your purchase. If you have registered and bid as a company, your purchases will need to be paid via a credit card issued to your company's account and not under your personal account.

Phillips does not retain any credit card information.

By making a payment via credit card, you: (i) warrant and represent that you are the cardholder; and (ii) acknowledge and agree that Phillips has no liability for our not receiving your payment if it is refused by or declined by your card issuer, or for any other reason for non-payment by them. Please ensure by contacting Phillips or your card issuer that your payment has been remitted and accepted.

(e) Title in a purchased lot will not pass until Phillips has received the Purchase Price for that lot in cleared funds. Phillips is not obliged to release a lot to the buyer until title in the lot has passed and appropriate identification has been provided, and any earlier release does not affect the passing of title or the buyer's unconditional obligation to pay the Purchase Price.

7.
COLLECTION OF PROPERTY & TRANSFER OF RISK OF LOSS

(a) Collection & Shipping if you are a Buyer of a Lot:

(i) Immediately following the Auction, all Lots will be transferred to Phillips' shipping and art storage agent, SRI Fine Art Services ("SRI"), located at 211 Mount Prospect Avenue, Unit B, Clifton, New Jersey.

(ii) Free storage will be provided to you for a period of thirty (30) calendar days following the Auction. If you have not collected your purchases by that date, you will be charged fees and interest until they have been physically collected. Please see section 8 below for further details for Uncollected Lots.

(iii) Phillips will not release any purchased Lot to you or to your agent, nor will it be shipped to you, until: (1) we have received your full payment of your Lot's Purchase Price in cleared funds; (2) you have paid any other outstanding amounts due from you to Phillips and any of our affiliated companies, including any Charges payable pursuant to Paragraph 8(a) below; and (3) you have satisfied the Anti–Money Laundering, Know Your Client, and Anti–Terrorism financing conditions required by us in our discretion.

(iv) Once you have satisfied our conditions, you must promptly arrange the shipping of or your physical collection of your purchase.

1. If you are shipping your Lot through our agent SRI, please send Phillips' Shipping & Collection Form to ShippingNewYork@phillips.com or contact our Shipping Department directly at +1 212 940 1372. After Phillips' receipt of your written instructions, we will provide you with SRI's shipping quote. If you choose to use SRI, they will, acting as Phillips' agent, provide you with your shipment's tracking information.

2. If, instead, you are collecting your Lot or you are using your own shipper and they are collecting your Lot from SRI, you must first make a collection appointment by emailing Phillips' Shipping & Collection Form to collections@phillips.com. Appointments must be made and confirmed by us in writing at least 48 hours in advance of the planned collection. You or your authorized representative should arrive prior to the scheduled collection appointment time with proper government issued identification. If you are not attending the appointment, your representative must present your written authorization for them to collect your Lot, without which, you or your shipper will not be admitted into the SRI facility and your Lot will not be released to them. During the appointment your Lot will be unpacked allowing you and/or your representative to fully inspect it prior to collection. If you have arranged for your own fine art shipper to collect your Lot, they must inspect it prior their packing and collecting it from SRI. Your shipper must provide their own appropriate packing materials for their shipment of your Lot.

3. Limited Collection from Phillips' Long Island City Warehouse. On occasion, Phillips will provide a limited number of Lots selected within our discretion to be transferred from SRI to our Long Island City Warehouse located at 29–09 37th Avenue Long Island City, NY 11101 ("LIC") for your collection. We will only transfer selected Lots to LIC if you have provided us with at least seven (7) days written notice and your collection date can be accommodated by us within the 30-day post–sale period. We will provide you with an appointment date and time if your request is granted.

(b) Transfer of Risk of Physical Loss and Damage Liability to the Buyer:

(i) You will become fully responsible for risk of physical loss or damage to your purchase on the earlier date to occur of: (A) seven (7) calendar days after the Auction; and (B) the date that you or your agent collects your purchase (the "Risk Transfer Date"). You should ensure that you have your own fine art insurance cover at your own cost and in place for your purchase at or before the time of the Risk Transfer Date. This is required whether your purchase remains in storage at SRI, or if it is collected by you or by shippers organized by you, or if your shipment is organized through Phillips or SRI. Note that you may purchase transit insurance coverage from SRI at the time your shipment is organized.

(ii) Prior to the Risk Transfer Date, Phillips accepts responsibility for physical loss or damage to your Lot up to a maximum of the Purchase Price paid by you. Note that Phillips coverage is subject to the terms of Phillips own insurance policy which contains the exclusions in Phillips' set forth in Paragraph 7(c) below.

(iii) You agree that on the Risk Transfer Date, all of Phillips' responsibility for physical loss or damage to your Lot will end and agree that: (1) you will be fully liable for any physical loss or damage to your Lot; (2) you will arrange for your Lot to be covered under your own insurance policy, which shall include coverage for risk of physical loss or damage caused by negligence (including Phillips' or its agents' negligence); (3) you will notify and arrange with your insurance carrier to waive any right of subrogation against both Phillips and Phillips' insurers, related to physical loss or damage to your Lot while it remains in Phillips' or Phillips' agent's care, custody and control; (4) you release Phillips from and against any liability for physical loss or damage to your Lot, no matter what caused the physical loss or damage, including any damage resulting during the Lot's packing and/or shipment; (5) you will pay for the full amount of any claims brought against Phillips that arise from the Lot's physical loss or damage, including any costs, expenses, or attorneys' fees, that Phillips incurs as a result of such claims; (6) any payment made by Phillips with respect to a physical loss or damage claim to

your Lot prior to Phillips' legal liability having first been proven, shall not be a waiver of Phillips' rights within this paragraph; and (7) you will indemnify and hold Phillips harmless from any and all third–party claims, actions, liabilities, losses, damages, costs, and expenses of any kind (including reasonable legal fees) arising out of or in connection with our or our agent's possession or control of the Lot.

(iv) As a convenience to Buyers, and for a fee, Phillips may agree to accept responsibility for physical loss or damage to a purchased Lot beyond the Risk Transfer Date while the Lot remains in Phillips' care, custody, and control, provided that prior to the expiration of Risk Transfer Date: (A) Phillips have accepted liability in a signed writing by us to you; and (B) Phillips have received your payment of our physical loss or damage liability fees. Our acceptance of this responsibility will be subject to other conditions set out in the Buyer Information packs sent to Buyers following the Auction and to our standard liability exclusions set forth below.

(c) Phillips' Physical Loss or Damage Liability Exclusions: Phillips will not be responsible for any physical loss or damage to your purchased Lot at any time, whether prior to or after the Risk Transfer Date (or during any extension in accordance with paragraph 7(b)(iv)) above, if the physical loss or damage to your Lot results from or is caused by any of the following circumstances: (i) inherent defects in the Lot; (ii) humidity or change of weather or other atmospheric conditions not within Phillips' reasonable control; (iii) mechanical fault or breakdown (if applicable); (iv) wear and tear and gradual deterioration; (v) war, radioactive contamination and/ or cyberattack; (vi) the damage occurred while the Lot was in the care or custody of a restorer; or (vii) the damage occurred while the Lot is in your possession, custody or control or in the possession, custody or control of shipping and packing agents retained by you (even if such shippers and/or packing agents have been recommended by Phillips).

(d) Hand–Carries: As a courtesy to Buyers who plan to hand–carry their purchased Lot from SRI, LIC, or from our sale site, Phillips will, without charge, wrap their Lot in a manner suitable for your hand–carry only. If you so choose to instruct us in writing to provide the Lot to you for your hand–carry, whether or not it is made with our recommendation, you agree that any physical loss or damage to the Lot is entirely at your risk and your responsibility and you shall arrange for your own insurance coverage at your sole expense . You agree that Phillips will not be liable for any acts or omissions for how the Lot is packed by us or by any third party packers.

(d) Sales Taxes are due at the time of collection: Under applicable New York and New Jersey state and local laws, unless you can provide us with a valid Sales Tax Resale Certificate that proves that you are a US art dealer and are specifically exempt under the law, you will be liable for payment to remit to Phillips the applicable sales taxes due prior to your or your shipper's collection of your purchase from SRI in New Jersey or from us in New York. You agree to pay Phillips all applicable sales taxes that are due on your Lot's purchase for our remittance of it to the applicable state tax authorities. (See Paragraph 17 for Sales Tax details).

(e) International Shipments: You are responsible for paying all duties and local taxes payable to export your Lot from its US location and those payable to import the Lot to its ultimate foreign destination. These amounts are payable by you upon your receipt of your Lot and are not included by us or by SRI on your shipping invoice.

(f) Export and Import Bans and Restrictions: The export and/or the import of your Lot out of the US and into certain foreign countries (including but not limited to Russia, Belarus, Iran, Cuba, and North Korea) may be prohibited pursuant to US and other government sanctions and regulatory measures in force from time to time. See section 17 below. Note that it is your sole responsibility to ensure, prior to bidding, that your plans to ship your purchase from Phillips do not conflict with applicable US laws as well as applicable law in your foreign shipment route and destination. (Please also see Section Error! Reference source not found.).

8.
FAILURE TO COLLECT YOUR PURCHASES

(a) If you fail to collect your purchased Lot within thirty (30) calendar days of the Auction, Phillips may apply any or all of the following "Charges" for each uncollected Lot: (i) a Late Collection Fee of $10 per day per Lot for regular sized Lots and $40 per day per Lot for Oversized Lots; plus (ii) a levy for the uncollected Lot's handling within our warehouse and for the Lot's removal from the warehouse, plus (iii) interest that accrues on these amounts at the rate of 16% per annum after the thirty (30) calendar day post auction period has expired.

(b) We will not release any Lots to you or to your shippers until all Charges, applicable taxes, plus any other outstanding amounts due to Phillips and our affiliated companies, have been paid by you in full cleared funds.

(c) If your Lot has not been collected by you by one hundred and eighty (180) days following the Auction, and you have not already paid that Lot's applicable sales taxes, then you agree that your Lot will be treated as released physically to you in New Jersey (if the Lot is located at SRI), or in New York (if the Lot is located at LIC or at Phillips' premises) and the Lot's purchase price shall be subjected to the applicable State and City sales taxes of the location where it is warehoused by us, and

In such circumstances, you authorize Phillips to arrange for the Lot's resale by Phillips either (x) via public auction, or (y) via a private sale; with the Lot's estimates and reserve, if offered at auction, or the purchase price, if offered privately, to be set by Phillips within our reasonable commercial discretion with Phillips taking a commercially reasonable commission and our applicable buyer's premium associated with the successful sale of the Lot.

You further agree that all net proceeds realized from the sale of your Lot will be applied first against any unpaid sales taxes related to your original purchase (see 8(c) above); then the Charges and other costs associated with bringing the Lot to the sale site and our marketing it for sale; then all other outstanding costs and expenses owed by you to Phillips and/or to any of our affiliated companies, and then, with the balance of any remaining proceeds payable to your account.

## 9.
### REMEDIES FOR NON-PAYMENT

(a) Without prejudice to any rights the seller may have, if the buyer without prior agreement fails to make payment of the Purchase Price for a lot in cleared funds within seven days of the auction, Phillips may in our sole discretion exercise one or more of the following remedies: (i) store the lot at Phillips's premises or elsewhere at the buyer's sole risk and expense at the same rates as set forth in Paragraph 8 (a) above; (ii) cancel the sale of the lot, retaining any partial payment of the Purchase Price as liquidated damages; (iii) reject future bids from the buyer or render such bids subject to payment of a deposit; (iv) charge interest at 12% per annum from the date payment became due until the date the Purchase Price is received in cleared funds; (v) subject to notification of the buyer, exercise a lien over any of the buyer's property which is in the possession of Phillips and instruct our affiliated companies to exercise a lien over any of the buyer's property which is in their possession and, in each case, no earlier than 30 days from the date of such notice, arrange the sale of such property and apply the proceeds to the amount owed to Phillips or any of our affiliated companies after the deduction from sale proceeds of our standard vendor's commission and all sale-related expenses; (vi) resell the lot by auction or private sale, with estimates and a reserve set at Phillips reasonable discretion, it being understood that in the event such resale is for less than the original hammer price and buyer's premium for that lot, the buyer will remain liable for the shortfall together with all costs incurred in such resale; (vii) commence legal proceedings to recover the hammer price and buyer's premium for that lot, together with interest and the costs of such proceedings; (viii) set off the outstanding amount remaining unpaid by the buyer against any amounts which we or any of our affiliated companies may owe the buyer in any other transactions; (ix) release the name and address of the buyer to the seller to enable the seller to commence legal proceedings to recover the amounts due and legal costs or (x) take such other action as we deem necessary or appropriate.

(b) As security to us for full payment by the buyer of all outstanding amounts due to Phillips and our affiliated companies, Phillips retains, and the buyer grants to us, a security interest in each lot purchased at auction by the buyer and in any other property or money of the buyer in, or coming into, our possession or the possession of one of our affiliated companies. We may apply such money or deal with such property as the Uniform Commercial Code or other applicable law permits a secured creditor to do. In the event that we exercise a lien over property in our possession because the buyer is in default to one of our affiliated companies, we will so notify the buyer. Our security interest in any individual lot will terminate upon actual delivery of the lot to the buyer or the buyer's agent.

(c) In the event the buyer is in default of payment to any of our affiliated companies, the buyer also irrevocably authorizes Phillips to pledge the buyer's property in our possession by actual or constructive delivery to our affiliated company as security for the payment of any outstanding amount due. Phillips will notify the buyer if the buyer's property has been delivered to an affiliated company by way of pledge.

## 10.
### RESCISSION BY PHILLIPS

Phillips shall have the right, but not the obligation, to rescind a sale without notice to the buyer if we reasonably believe that there is a material breach of the seller's representations and warranties or the Authorship Warranty or an adverse claim is made by a third party. Upon notice of Phillips's election

to rescind the sale, the buyer will promptly return the lot to Phillips, and we will then refund the Purchase Price paid to us. As described more fully in Paragraph 13 below, the refund shall constitute the sole remedy and recourse of the buyer against Phillips and the seller with respect to such rescinded sale.

## 11.
### EXPORT, IMPORT AND ENDANGERED SPECIES LICENSES AND PERMITS

Before bidding for any property, prospective buyers are advised to make their own inquiries as to whether a license is required to export a lot from the US or to import it into another country. Prospective buyers are advised that some countries prohibit the import of property made of or incorporating plant or animal material, such as coral, crocodile, ivory, whalebone, Brazilian rosewood, rhinoceros horn or tortoiseshell, irrespective of age, percentage or value. Accordingly, prior to bidding, prospective buyers considering export of purchased lots should familiarize themselves with relevant export and import regulations of the countries concerned. It is solely the buyer's responsibility to comply with these laws and to obtain any necessary export, import and endangered species licenses or permits. Failure to obtain a license or permit or delay in so doing will not justify the cancellation of the sale or any delay in making full payment for the lot. As a courtesy to clients, Phillips has marked in the catalogue lots containing potentially regulated plant or animal material, but we do not accept liability for errors or for failing to mark lots containing protected or regulated species.

### EXPORT AND IMPORT BANS AND RESTRICTIONS
Buyers should note that the export of items offered for sale in the Auction to certain countries (including Russia and Belarus) may be prohibited pursuant to Government sanctions and other regulatory measures in force from time to time. Please contact the department organizing the Auction for further details.

## 12.
### PRIVACY

(a) You acknowledge and understand that we may process your personal data (including potentially special category data) in accordance with our privacy policy from time to time as published at www.phillips.com or available by emailing dataprotection@phillips.com.

(b) Our privacy policy sets out: (i) the types of personal data we will or may collect and process; (ii) the purposes for which we will or may process your personal data (including for example the provision of auction, private sale and related services; the performance and enforcement of these terms and conditions; the carrying out of identity and credit checks; keeping you informed about upcoming auctions, exhibitions and special events; and generally where reasonably necessary in the management and operation of our business); (iii) the lawful bases on which we rely in undertaking our processing of your personal data; (iv) your rights in respect of our processing of your personal data; and (v) various other information as required by applicable laws.

(c) Phillips premises and sale and exhibition venues are subject to CCTV video surveillance and recording for security, client service and bid monitoring purposes and will be filmed during the auction for simultaneous live broadcast on our and third party websites and applications. By remaining in these areas, you acknowledge that you may be photographed, filmed and recorded and grant your permission for your likeness and voice to be included in such recordings. If you do not wish to be photographed or filmed or appear in such recordings, please speak to a member of Phillips staff.

Your communications with Phillips, including by telephone and online (e.g. telephone and on-line bidding) may also be recorded for security, client service and bid monitoring purposes. Where we record such information we will process it in accordance with our Privacy Policy available at ww.phillips.com.

## 13.
### LIMITATION OF LIABILITY

(a) Subject to subparagraph (e) below, the total liability of Phillips, our affiliated companies and the seller to the buyer in connection with the sale of a lot shall be limited to the Purchase Price actually paid by the buyer for the lot.

(b) Except as otherwise provided in this Paragraph 13, none of Phillips, any of our affiliated companies or the seller (i) is liable for any errors or omissions, whether orally or in writing, in information provided to prospective buyers by Phillips or any of our affiliated companies or (ii) accepts responsibility to any bidder in respect of acts or omissions, whether negligent or otherwise, by Phillips or any of our affiliated companies in connection with the conduct of the auction or for any other matter relating to the sale of any lot.

(c) All warranties other than the Authorship Warranty, express or implied, including any warranty of satisfactory quality and fitness for purpose, are specifically excluded by Phillips, our affiliated companies and the seller to the fullest extent permitted by law.

(d) Subject to subparagraph (e) below, none of Phillips, any of our affiliated companies or the seller shall be liable to the buyer for any loss or damage beyond the refund of the Purchase Price referred to in subparagraph (a) above, whether such loss or damage is characterized as direct, indirect, special, incidental or consequential, or for the payment of interest on the Purchase Price to the fullest extent permitted by law.

(e) No provision in these Conditions of Sale shall be deemed to exclude or limit the liability of Phillips or any of our affiliated companies to the buyer in respect of any fraud or fraudulent misrepresentation made by any of us or in respect of death or personal injury caused by our negligent acts or omissions.

## 14.
### COPYRIGHT

The copyright in all images, illustrations and written materials produced by or for Phillips relating to a lot, including the contents of this catalogue, is and shall remain at all times the property of Phillips and such images and materials may not be used by the buyer or any other party without our prior written consent. Phillips and the seller make no representations or warranties that the buyer of a lot will acquire any copyright or other reproduction rights in it.

## 15.
### GENERAL

(a) These Conditions of Sale, as changed or supplemented as provided in Paragraph 1 above, and Authorship Warranty set out the entire agreement between the parties with respect to the transactions contemplated herein and supersede all prior and contemporaneous written, oral or implied understandings, representations and agreements.

(b) Notices to Phillips shall be in writing and addressed to the department in charge of the sale, quoting the reference number specified at the beginning of the sale catalogue. Notices to clients shall be addressed to the last address notified by them in writing to Phillips.

(c) These Conditions of Sale are not assignable by any buyer without our prior written consent but are binding on the buyer's successors, assigns and representatives.

(d) Should any provision of these Conditions of Sale be held void, invalid or unenforceable for any reason, the remaining provisions shall remain in full force and effect. No failure by any party to exercise, nor any delay in exercising, any right or remedy under these Conditions of Sale shall act as a waiver or release thereof in whole or in part.

## 16.
### LAW AND JURISDICTION

(a) The rights and obligations of the parties with respect to these Conditions of Sale and Authorship Warranty, the conduct of the auction and any matters related to any of the foregoing shall be governed by and interpreted in accordance with laws of the State of New York, excluding its conflicts of law rules.

(b) Phillips, all bidders and all sellers agree to the exclusive jurisdiction of the (i) state courts of the State of New York located in New York City and (ii) the federal courts for the Southern and Eastern Districts of New York to settle all disputes arising in connection with all aspects of all matters or transactions to which these Conditions of Sale and Authorship Warranty relate or apply.

(c) All bidders and sellers irrevocably consent to service of process or any other documents in connection with proceedings in any court by facsimile transmission, personal service, delivery by mail or in any other manner permitted by New York law or the law of the place of service, at the last address of the bidder or seller known to Phillips.

(d) Phillips and bidders agree that if either party institutes any legal suit, action or proceeding against the other party for enforcement of these Conditions of Sale (or obtain any remedy regarding the breach of these Conditions of Sale), or arising out of these Conditions of Sale, including but not limited to, contract, equity, tort, fraud, and statutory claims, then the prevailing party in a final, non-appealable judgment regarding the suit, action or proceeding is entitled to receive, and the non–prevailing party shall pay, in addition to all other remedies to which the prevailing party

may be entitled, the costs and expenses incurred by the prevailing party in conducting or defending the suit, action, or proceeding, including all of the prevailing party's reasonable attorney's fees.

## 17.
### SALES TAX

(a) Unless the buyer has delivered a valid certificate evidencing exemption from tax, the buyer shall pay applicable sales tax on any lot picked up or delivered anywhere in the states of New York, California, Colorado, Connecticut, Florida, Illinois, Michigan, Minnesota, Arizona, Arkansas, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Missouri, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, Wyoming, Washington DC or the commonwealth of Puerto Rico.

(b) If the point of delivery or transfer of possession for any purchased lot to the buyer or the buyer's designee (including any private carrier) occurs in New York or in New Jersey, then the sale is subject to New York or New Jersey sales taxes at the applicable existing rate.

(c) If the buyer arranges shipping for any purchased lot in New York or New Jersey by a common carrier (that is, the United States Postal Service, United Parcel Service, or FedEx) that does not operate under a private agreement or contract with negotiated terms to be delivered to an out of state destination, then the sale is not subject to the applicable New York or New Jersey sales tax.

# AUTHORSHIP WARRANTY

Phillips warrants the authorship of property in this auction catalogue described in headings in BOLD or CAPITALIZED type for a period of five years from date of sale by Phillips, subject to the exclusions and limitations set forth below.

(a) Phillips gives this Authorship Warranty only to the original buyer of record (i.e., the registered successful bidder) of any lot. This Authorship Warranty does not extend to (i) subsequent owners of the property, including purchasers or recipients by way of gift from the original buyer, heirs, successors, beneficiaries and assigns; (ii) property where the description in the catalogue states that there is a conflict of opinion on the authorship of the property; (iii) property where our attribution of authorship was on the date of sale consistent with the generally accepted opinions of specialists, scholars or other experts; (iv) property whose description or dating is proved inaccurate by means of scientific methods or tests not generally accepted for use at the time of the publication of the catalogue or which were at such time deemed unreasonably expensive or impractical to use or likely in our reasonable opinion to have caused damage or loss in value to the lot or (v) property where there has been no material loss in value from the value of the lot had it been as described in the heading of the catalogue entry.

(b) In any claim for breach of the Authorship Warranty, Phillips reserves the right, as a condition to rescinding any sale under this warranty, to require the buyer to provide to us at the buyer's expense the written opinions of two recognized experts approved in advance by Phillips. We shall not be bound by any expert report produced by the buyer and reserve the right to consult our own experts at our expense. If Phillips agrees to rescind a sale under the Authorship Warranty, we shall refund to the buyer the reasonable costs charged by the experts commissioned by the buyer and approved in advance by us.

(c) Subject to the exclusions set forth in subparagraph (a) above, the buyer may bring a claim for breach of the Authorship Warranty provided that (i) he or she has notified Phillips in writing within three months of receiving any information which causes the buyer to question the authorship of the lot, specifying the auction in which the property was included, the lot number in the auction catalogue and the reasons why the authorship of the lot is being questioned and (ii) the buyer returns the lot to Phillips to the saleroom in which it was purchased in the same condition as at the time of its auction and is able to transfer good and marketable title in the lot free from any third party claim arising after the date of the auction. Phillips has discretion to waive any of the foregoing requirements set forth in this subparagraph (c) or subparagraph (b) above.

(d) The buyer understands and agrees that the exclusive remedy for any breach of the Authorship Warranty shall be rescission of the sale and refund of the original Purchase Price paid. This remedy shall constitute the sole remedy and recourse of the buyer against Phillips, any of our affiliated

companies and the seller and is in lieu of any other remedy available as a matter of law or equity. This means that none of Phillips, any of our affiliated companies or the seller shall be liable for loss or damage beyond the remedy expressly provided in this Authorship Warranty, whether such loss or damage is characterized as direct, indirect, special, incidental or consequential, or for the payment of interest on the original Purchase Price.

## SPECIAL NOTICES & SYMBOLS

The following Special Notice applies to any Lot identified in the Auction Catalogue as "Property sold to Benefit the creditors of Lisa Schiff and Schiff Fine Art, LLC." and supersedes and replaces the identified provisions in these Conditions of Sale.

The following provision replaces paragraph 16(a), (b) and (c) of these Conditions of Sale:

16 Law & Jurisdiction

(a) The rights and obligations of the parties with respect to these Conditions of Sale, the Authorship Warranty, the conduct of the Auction and any matters related to any of the foregoing shall be governed by and interpreted in accordance with Federal Law, and where applicable, the laws of the State of New York, excluding its conflicts of law rules.

(b) Phillips, all bidders, the Seller and the Lot's buyer agree that the United States Bankruptcy Court for the Southern District of New York shall retain exclusive jurisdiction with respect to the Auction, including, but not limited to, interpretation of any the terms and conditions in these Conditions of Sale; challenges, disputes, and/or claims arising out of or in connection with the Conditions of Sale and/or the Auction.

(c) All bidders, the Sellers and a Lot's buyer irrevocably consent to service of process or any other documents in connection with proceedings in any court by facsimile transmission, personal service, delivery by mail or in any other manner permitted by New York law or the law of the place of service, at the last address of the bidder or seller known to Phillips

The following key explains the symbols you may see next to lots identified in Phillips' sale catalogue:

O Guaranteed Property
Lots designated with the symbol O are the subject of a minimum price guarantee. In such cases, Phillips has guaranteed to the Seller of the Lot that, regardless of the outcome of the Lot's sale, the Seller shall receive no less than a minimum sum. This guarantee may be provided solely by Phillips or jointly with a third party guarantor.

♦ Third Party Guarantee
Where Phillips has agreed to a minimum price guarantee it assumes the financial risk of a lot failing to sell or selling for less than the lot's minimum price guarantee. Because the sums involved can be significant Phillips may choose to share the burden of that financial risk with a third party. The third party agrees to share the risk and commits in advance of the sale, usually by way of a written irrevocable bid, to buy the lot for an agreed amount whether or not there are competing bidders for the lot. If there are competing bidders, third party guarantors may continue to bid above their written irrevocable bid. In this way the third party guarantor assumes some or all of Phillips' risk of the bidding not reaching the amount of the minimum price guarantee.

In return for the third party underwriting or sharing this risk, Phillips will compensate the third party. The compensation may be in the form of a fixed fee and/or for an amount that is calculated against the lot's hammer price.  If the third party guarantor is the lot's successful bidder, their compensation may be netted against the Lot's full hammer price and buyer's premium.

Disclosure of financial interest by third parties
Phillips requires third party guarantors to disclose their financial interest in the lot to anyone whom they are advising. If you are contemplating bidding on a lot that is the subject of a third party guarantee, and you are being advised by someone or if you have asked someone to bid on your behalf, you should always ask them to confirm whether or not they have a financial interest in the outcome of the sale of the lot.

Δ Property in Which Phillips Has an Ownership Interest
Lots with this symbol indicate that Phillips owns the lot in whole or in part or has an economic interest in the lot equivalent to an ownership interest.

· No Reserve
Unless indicated by a · , all lots in this catalogue are offered subject to a reserve. A reserve is the confidential value established between Phillips and the seller and below which a lot may not be sold. The reserve for each lot is generally set at a percentage of the low estimate and will not exceed the low pre-sale estimate, unless the lot is underwritten by a third party with an irrevocable bid that exceeds the lot's low estimate, in which case the reserve will be set at the level of the irrevocable bid.

Σ Endangered Species
Lots with this symbol have been identified at the time of cataloguing as containing endangered or other protected species of wildlife which may be subject to restrictions regarding export or import and which may require permits for export as well as import. Please refer to Paragraph 11 of these Conditions of Sale.

Electrical and Mechanical Lots
All lots with electrical and/or mechanical features are sold on the basis of their decorative value only and should not be assumed to be operative. It is essential that, prior to any intended use, the electrical system is verified and approved by a qualified electrician.

Interested Parties
In situations where a person who is allowed to bid on a lot has a direct or indirect interest in that lot, (e.g., the beneficiary or executor of an estate selling the lot; or a joint owner of the lot; or a party providing or participating in a guarantee on the lot, Phillips will make an announcement in the saleroom that interested parties with a financial interest may be bidding on the lot.

Bidding Increments
Bidding generally opens below the low estimate and advances in increments of up to 10%, subject to the auctioneer's discretion. Absentee bids that do not conform to the increments set below may be lowered to the next bidding increment.

| | |
|---|---|
| $50 to $1,000 | by $50s |
| $1,000 to $2,000 | by $100s |
| $2,000 to $3,000 | by $200s |
| $3,000 to $5,000 | by $200s, 500, 800 (i.e. $4,200, 4,500, 4,800) |
| $5,000 to $10,000 | by $500s |
| $10,000 to $20,000 | by $1,000s |
| $20,000 to $30,000 | by $2,000s |
| $30,000 to $50,000 | by $2,000s, 5,000, 8,000 |
| $50,000 to $100,000 | by $5,000s |
| $100,000 to $200,000 | by $10,000s |
| above $200,000 | auctioneer's discretion |

The auctioneer may vary the increments during the course of the auction at their own discretion.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                            :        Chapter 7

                                                 :

LISA SCHIFF,                                      :        Case No. 24-10010 (DSJ)

                                                 :

                       Debtor.         :

---------------------------------------------------------------x

In re                                            :        Chapter 7

                                                 :

SCHIFF FINE ART,                                 :        Case No. 24-10039 (DSJ)

                                                 :

                       Debtor.         :

---------------------------------------------------------------x

**DECLARATION OF ELIZABETH VON HABSBURG IN SUPPORT OF TRUSTEES'
JOINT MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE TRUSTEES
TO RETAIN PHILLIPS AUCTIONEERS LLC AS THEIR AUCTIONEER UNDER THE
TERMS OF CERTAIN PROPOSED AUCTION AGREEMENTS, PURSUANT TO 11
U.S.C. §§ 327 AND 328 AND FED. R. BANKR. P. 2014 AND 6005, AND (B) APPROVING
THE AUCTION AGREEMENTS AND AUTHORIZING PHILLIPS AUCTIONEERS
LLC, AS TRUSTEES' RETAINED AUCTIONEER, TO SELL, BY WAY OF ONE OR
MORE PUBLIC AUCTIONS, PRIVATE SALES OR OTHER TRANSACTIONS,
CERTAIN ARTWORKS CONSTITUTING PROPERTY OF THE DEBTORS'
ESTATES, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS, PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m)**

        Elizabeth von Habsburg, declares the following under the penalties of perjury pursuant to

11 U.S.C.§ 1746:

        1.        I am the managing director of the Winston Art Group ("WAG") and file this

declaration in support of the joint motion (the "Retention/Sale Motion") of Yann Geron (the

"Schiff Trustee"), as the Chapter 7 trustee of the estate of Lisa Schiff ("Schiff"), and Deborah J.

Piazza (the "SFA Trustee" and, together with the Schiff Trustee, the "Trustees"), as Chapter 7

trustee in the above-captioned involuntary Chapter 7 case of Schiff Fine Art, LLC ("SFA")

(together Schiff and SFA are, the "Debtors") seeking, among other relief, authorization to retain

Phillips Auctioneers LLC ("Phillips") as their auctioneer under the terms of certain proposed auction agreements, and approving the auction agreements and authorizing Phillips, as the Trustees' auctioneer to sell certain artworks (the "Artworks") constituting property of the Debtors by way of one or more public auctions, private sales, or other transactions.

2.      As detailed in the Retention/Sale Motion and prior pleadings filed in these cases, prior to its involuntary bankruptcy case, SFA filed an assignment for the benefit of creditors proceeding in New York State Supreme Court on May 15, 2023 (the "Assignment Proceeding"). Douglas J. Pick, the Assignee (the "Assignee") in the Assignment Proceeding, engaged WAG to assist in the cataloguing, negotiating with auction houses and interested parties, and ultimate sale of all the property belonging to SFA. WAG spent hundreds of hours to create a detailed and comprehensive master inventory list of all property, contact and use its leverage in the art market to negotiate with interested parties for sale of the property, and oversee all collection management and logistical matters relating to the property.

3.      WAG spent considerable time putting together a comprehensive inventory list with as many Artworks as could possibly be identified to try and maximize the amount of property that could be sold and thereby maximize sale proceeds.  When WAG completed the inventory in a clear enough manner, it approached interested parties for the sale of the Artworks at a variety of major and regional auction houses, and local furniture and furnishings buyers to obtain competitive estimates and buyout offers for the Artworks.  WAG created clear comparisons of the received offers and, with the Assignee, determined that a sale of the higher-value Artworks through Phillips was the path most likely to maximize sale proceeds.

4.      WAG was in the final stages of organizing the Spring and Fall 2024 sales of most of the Artworks via Phillips Auctioneers when the involuntary case against SFA was filed and put the sale efforts on hold.

5.      On January 4, 2024, Schiff filed a voluntary Chapter 7 petition in this Court (the "Schiff Case").

6.      On January 10, 2024, an involuntary Chapter 7 petition was filed against SFA commencing the involuntary Chapter 7 case against SFA in this Court (the "SFA Case").

7.      On March 12, 2024, an order for relief was entered in the SFA Case.

8.      On May 29, 2024 WAG was retained in the SFA Case to serve as the SFA Trustee's art consultant.

9.      On July 8, 2024 WAG was retained in the Schiff Case to serve as the Schiff Trustee's art consultant.

10.     In consultation with the Trustees in the SFA Case and the Schiff Case, WAG has advised the Trustees that the contemplated sales through Phillips are still the most likely to maximize value for the estates.  In addition to Phillips' expertise in selling fine art, Phillips' services on behalf of the Debtors' will be performed under extremely favorable economic terms, negotiated by WAG, that significantly benefit the bankruptcy estates as follows:

a) The Trustees will pay a zero (0%) percent Seller's Commission at Phillips (ordinarily, the industry standard for auction house seller's commissions is 10% at the major auction houses, and 10-20% or more at the regional auction houses);

b) Rather than obtaining only the hammer price on each Artwork sold at auction, WAG has negotiated an agreement with Phillips that the Trustees, as seller, will

receive an additional five (5%) percent of the hammer price on every Artwork sold (an "<u>Enhanced Hammer</u>"). This means that out of the buyer's premium (an amount paid by the buyer in excess of the hammer price that the auction house normally keeps from each Artwork sold[1]) the Trustees will receive the full hammer price (with no seller's commission deducted per para. 9(a) supra) plus an additional five (5%) percent that Phillips will relinquish from its buyer's premium;

c) Phillips will waive all standard fees for insurance, photography, and cataloguing. Auction houses typically charge sellers standard fees such as 1-2% on each Artwork for insurance and a per Artwork fee of $150 or more for photography and cataloguing.

d) Phillips has also agreed to certain marketing terms aimed to maximize the success of the sales including:

      i. prime lot placement during sales (taking into account where in the sale will the lots maximize their value, which auctioneer is holding the sale, which lots this property will follow, and more);
     ii. enhanced marketing strategies for pieces;
   iii. prime pre-sale exhibition locations;
   iv. ensuring there are no competing lots in the same sale by the same artist; and
    v. retaining the ability to withdraw and move artworks into different sales without paying withdrawal fees that are normally due to sellers.

11. WAG has actively participated in the negotiations between the Trustees and Phillips, reviewed the resulting Auction Agreements in detail, and determined that the foregoing

---

[1] For each Artwork sold at auction in United States by Phillips, it charges the respective buyer a non-negotiable "Buyer's Premium" in addition to the hammer price as follows: (a) 27% on the amount of the hammer price up to and including $1,000,000; (b) 21% on the amount of the hammer price above $1,000,000 up to and including $6,000,0000; and (c) 14.5% on the amount of the hammer price above $6,000,000.

terms, and other terms favorable to the estates, are contained in the Auction Agreements annexed to the Retention/Sale Motion and are most likely to maximize value for the Schiff Estate and the SFA Estate.

12.     For the reasons set forth at length in the Retention/Sale Motion, including the estates' valuable inventories of fine artworks, Phillips' expertise in selling fine art of the type contemplated herein, Phillips' substantial knowledge of the estates' inventory, Phillips' previous extensive work in connection with preparing for sales of SFA artworks, and the favorable terms contained in the Auction Agreements, WAG supports approval Retention/Sale Motion and believes that the relief requested is in the best interests of the Schiff Estate and the SFA Estate.

Dated: August 29, 2024

_____
Elizabeth von Habsburg

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| LISA SCHIFF, | : | Case No. 24-10010 (DSJ) |
| | : | |
| Debtor. | : | |

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| SCHIFF FINE ART, LLC, | : | Case No. 24-10039 (DSJ) |
| | : | |
| Debtor. | : | |

------------------------------------------------------------x

**DECLARATION OF HARTLEY WALTMAN, ESQ. IN SUPPORT OF THE TRUSTEES'
JOINT MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE TRUSTEES TO
RETAIN PHILLIPS AUCTIONEERS LLC AS THEIR AUCTIONEER**

Hartley Waltman, Esq. declares the following under the penalties of perjury pursuant to

11 U.S.C.§ 1746:

1.      I am in-house general counsel to Phillips Auctioneers LLC ("Phillips"), with

offices located at 432 Park Avenue, New York, New York 10022, and submit this declaration in

support of the joint motion of Yann Geron (the "Schiff Trustee"), as Chapter 7 of the estate of Lisa

Schiff ("Schiff"), and Deborah J. Piazza (the "SFA Trustee"), as Chapter 7 trustee of the estate of

Schiff Fine Art, LLC ("SFA") (together, the Schiff Trustee and SFA Trustee are the "Trustees"),

seeking entry of an order, among other things, authorizing the Trustees to retain Phillips as their

auctioneer (the "Retention/Sale Motion").

2.      Phillips is an international auction house specializing in the sale of fine arts and

antiques since 1796.

3.      The Trustees intend to sell, by way of one or more public auctions, private sales

or other transactions, certain artworks constituting property of the SFA estate and the Schiff

estate on the terms and conditions detailed in the Retention/Sale Motion. In order to assist with the sale process, the Trustees intend to retain Phillips pursuant to the terms of the proposed *Seller's Live Auction and Online Auction Agreement with Enhanced Hammer Potential* which has been negotiated at arms' length with each of the Trustees (the "<u>Auction Agreements</u>"), and which generally provide as follows[1]:

a) The Trustees will pay a zero (0%) percent Seller's Commission to Phillips;

b) For each artwork sold at auction by Phillips in the United States, Phillips will charge the respective buyer a non-negotiable "Buyer's Premium" in addition to the hammer price as follows: (i) 27% on the amount of the hammer price up to and including $1,000,000; (ii) 21% on the amount of the hammer price above $1,000,000 up to and including $6,000,0000; and (iii) 14.5% on the amount of the hammer price above $6,000,000;

c) The Trustees, as sellers, will receive an additional five (5%) percent of the hammer price on every Artwork sold (an "enhanced hammer"). This means that out of the Buyer's Premium (detailed above), the Trustees will receive the full hammer price (with no seller's commission deducted) plus an additional five (5%) percent that Phillips will give up from its Buyer's Premium; and

d) Phillips will waive its other standard fees that are typically charged by auction houses to sellers, including 1-2% fee on each Artwork for insurance, and a per Artwork fee for photography and cataloguing of $150 or more.

4.     Phillips is experienced and qualified to represent the Schiff Trustee and the SFA Trustee in connection with their administration of the Schiff and SFA estates. The services to be rendered by Phillips include all those services set forth in the Retention/Sale Motion and, by incorporation, the Auction Agreements.

---

[1] For ease of reference, the Trustees have included a summary of the salient terms of the Auction Agreements. Parties are encouraged to review the Auction Agreements in its entirety and not rely on the summary set forth herein. To the extent there is any express or implied conflict between the terms of the Auction Agreements and the description contained herein, the terms of the Auction Agreements shall control.

5.     I have reviewed the lists of creditors, parties-in-interest, assigned U.S. Trustee employees, and the assigned Judge and his staff for the SFA Estate and the Schiff Estate (the "Estates' Conflict Parties").     To the best of my knowledge, after reasonable and diligent investigation, Phillips does not have any current connection with the Estates' Conflict Parties other than Phillips having sold certain artworks in 2024 for 1     Estate's Conflict Parties with such artworks being unrelated to the either the estate of Schiff Fine Art, LLC or the estate of Lisa Schiff.

6.     Upon information and belief, Phillips does not have any current business relationships with the Estates' Conflict Parties.  Phillips will continue to review its records and files and will advise all parties if it becomes aware of any such current connections.

7.     Despite the best efforts of Phillips to identify and disclose its connections with the Estates' Conflict Parties, Phillips is unable to state with absolute certainty that every client representation or other connection has been disclosed. Phillips may have past, current or future relationships with creditors, clients or other parties in interest of the Schiff Estate and/or SFA Estate in connection with matters unrelated to these cases. At this time, Phillips is not aware of any such representations. In this regard, if Phillips discovers additional information that requires disclosure, Phillips will file a supplemental disclosure with the Court.

8.     Phillips agrees not to share any compensation it may receive with another party or person, other than with the members and associates of Phillips.

9.     To the best of my knowledge, Phillips does not represent an adverse interest to the Schiff Estate or the SFA Estate, is disinterested under 11 U.S.C. § 101(14), and does not represent or hold any interest adverse to the Schiff Trustee, the SFA Trustee, the Schiff Estate, or the SFA Estate with respect to the matter for which Phillips will be retained.

10.     I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2024

Hartley Waltman, Esq.